IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Michael D. Van Deelen, | Civil Action File |
| | No. 4:23-cv-3729 |
| Plaintiff, | |
| | |
| v. | Jury Trial Demanded |
| | |
| David R. Jones, Elizabeth Carol Freeman, Jackson Walker, LLP, Kirkland & Ellis, LLP, and Kirkland & Ellis International, LLP | |

To the Honorable Alia Moses,
Chief United States District Judge:

**<u>PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

Comes now Plaintiff, Michael D. Van Deelen, by and through counsel, and in support of his claims against the above-named Defendants, David R. Jones ("Judge Jones"), Elizabeth Carol Freeman ("Freeman"), Jackson Walker, LLP ("Jackson Walker"), and Kirkland & Ellis, LLP, and Kirkland & Ellis International, LLP,[1] (collectively, "Defendants") and respectfully states:

---

[1] Defendants Kirkland & Ellis, LLP and Kirkland & Ellis International, LLP are referred to collectively herein as Kirkland & Ellis.

## INTRODUCTION

1.      This lawsuit follows perhaps the most significant bankruptcy scandal in U.S. history, as recently documented by the Fifth Circuit.[2] For years, the (recently resigned) Chief Judge of the Bankruptcy Court for the Southern District of Texas, Judge David R. Jones, awarded Jackson Walker, the law firm where his live-in girlfriend and former clerk, Elizabeth Freeman, was a partner, millions of dollars in attorneys' fees. Neither Judge Jones, nor Freeman, nor any law firm disclosed this long-term and ongoing relationship in any bankruptcy proceeding.

2.      Plaintiff Michael Van Deelen was a creditor in one of these bankruptcies and lost his entire investment of 30,000 shares in McDermott International, Inc. stock. He inadvertently uncovered the Jones-Freeman relationship after receiving an anonymous letter that he filed as an addendum to a motion to recuse Judge Jones. Van Deelen filed this action initially against Judge Jones for violations of his constitutional rights. Since then, it has become increasingly clear that Van Deelen and many others are the victims of a larger enterprise consisting of, at a minimum, Judge Jones, Freeman, Jackson Walker, and Kirkland & Ellis.

3.      Judge Jones previously noted that "due to the sheer volume of cases and the issues involved, the bankruptcy process in the Southern District of Texas is heavily

---

[2] Exhibit 1, Complaint Identified by the Chief Judge of the Fifth Circuit Court of Appeals Against United States Bankruptcy Judge David R. Jones, Southern District of Texas, Under the Judicial Improvement Act of 2002.

dependent upon the honesty and integrity of the lawyers that participate in the process."[3] It is critical then to "protect[] the integrity of the bankruptcy process itself against those who seek to take advantage through deception or nondisclosure."[4]

4.      Judge Jones and Freeman plainly deceived the public and interested parties in bankruptcies by failing to disclose their relationship. But they did not deceive Jackson Walker or Kirkland & Ellis. Both firms knew of the relationship and used it to profit. They brought in tens of millions of dollars (or more) through the Jones-Freeman conduit and said nothing of it. In fact, they affirmatively held themselves out as disinterested, leaving creditors and others who might object in the dark.

5.      Debtors received favorable treatment and attorneys got rich in a bankruptcy system akin to shipping lettuce by rabbits. This is not simply an ethical lapse; nor is it an omission that can be fully redressed by the U.S. Trustee's efforts to claw back attorneys' fees in some of the bankruptcy proceedings. As described herein, Jackson Walker, and even Kirkland & Ellis, who oversaw the bankruptcies as lead counsel, filed numerous misleading and dishonest federal court papers without disclosing the Jones-Freeman relationship, amounting to bankruptcy fraud, honest services fraud, mail and wire fraud, and obstruction of justice—actionable under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Further, Jackson Walker, Kirkland & Ellis,

---

[3] *In re Decloutte*, No14-35557, 2018 Bankr. LEXIS 1869, *1 (Bankr. S.D. Tex. June 20, 2018) (J. Jones).
[4] *In re Edwards*, 510 B.R. 554, 558 (Bankr. S.D. Tex. Apr. 9, 2014) (J. Jones).

Freeman, and Jones breached their fiduciary duties to the creditors and other interested parties in the bankruptcies, committed fraud, and were unjustly enriched. Plaintiff seeks the forfeiture of attorneys' fees, statutory damages, compensatory damages including mental anguish, and other damages in connection with Defendants' violations of RICO and breaches of fiduciary duty, among other cause of action.

## **PARTIES**

6.      Plaintiff Michael D. Van Deelen is a natural person and resident of Spring, Texas. Mr. Van Deelen was a shareholder of McDermott International, Inc., and formerly a pro se litigant in the bankruptcy filed by Jackson Walker and presided over by Judge Jones while his live-in girlfriend was a partner at the Firm.

7.      Defendant David R. Jones is a natural person. Jones is the former Chief Judge of the Bankruptcy Court for the Southern District of Texas. He was served with process at 515 Rusk Avenue Houston, Texas 77002 and has also made an appearance before this Court. Additionally, the United States government can be served by certified mail upon the civil process clerk at the U.S. Attorney's Office and by certified mail to the Attorney General of the United States in Washington D.C.

8.      Defendant Elizabeth Carol Freeman is a natural person, licensed Texas attorney, former partner at Jackson Walker, LLP, and owner of The Liz Freeman Law Firm, PLLC in Houston, Texas. Freeman is an individual and a citizen and resident of Harris County, Texas, and may be served with process at 6530 Rolla, Houston, Texas 77055.

4

9.      Defendant Jackson Walker, LLP is a limited liability partnership incorporated and existing under the laws of the State of Texas with its principal place of business at 2323 Ross Avenue, Suite 600, Dallas, Texas 75201. It may be served through any of its general partners, including C. Wade Cooper, at 2323 Ross Avenue, Suite 600, Dallas, Texas 75201.

10.     Defendant Kirkland & Ellis, LLP is a limited liability partnership incorporated and existing under the laws of the State of Illinois with its principal place of business at 300 North LaSalle, Chicago, Illinois 60654. It may be served through its registered agent, C T Corporation System, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

11.     Defendant Kirkland & Ellis International, LLP, is a limited liability partnership incorporated and existing under the laws of the State of Delaware with its principal place of business at 300 North LaSalle, Chicago, Illinois 60654. It may be served through its registered agent, National Registered Agents, Inc., at 1209 Orange Street, Wilmington, Delaware 19801.

12.     Upon information and belief, certain individuals, or entities other than the listed Defendants may have been involved in the misconduct alleged herein. Those Defendants, being currently unknown to Plaintiff, are designated as John Does.

## JURISDICTION AND VENUE

13.     This Court has original federal question jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiff brings claims under RICO, which is a federal statute. 18 U.S.C. §§ 1961, *et seq.*

14.     The Court also has subject matter jurisdiction pursuant to 18 U.S.C. § 1964(c), which provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court." Plaintiff seeks recovery for injuries to business or property caused by violations of RICO (18 U.S.C. §§ 1961, *et seq.*); he suffered "economic injur[ies]" that as described *infra*, are "concrete and particular and not speculative." *Soto v. Vanderbilt Mortg. & Fin., Inc.*, No. C-10-66, 2010 LEXIS 87951, at *43 (S.D. Tex. 2010).

15.     This Court also has jurisdiction over this action under 28 U.S.C. § 1331 because it is a civil action arising under the Constitution.

16.     This Court also has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. §1367. The Plaintiffs' state law claims are so related to their claims under RICO (18 U.S.C. §§ 1961, *et seq*) that they form part of the same case or controversy.

17.     Venue is proper in this District under 18 U.S.C. 1965(a) because it is where Defendants reside, are found, and transact their affairs.

18.     In addition, venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred in this District. Venue is proper because Defendants do business in this District and the causes of action arose, in substantial part, in this District.

19.     Venue is additionally proper in this District under 28 U.S.C. § 1391 because Defendants are residents of this District for venue purposes and conduct business in

this District. Additionally, Jackson Walker, LLP is a corporations organized under the laws of this State.

## FACTUAL ALLEGATIONS

### I.   David Jones makes himself the nation's leading mega-bankruptcy judge.

20.     In 2015, Judge Jones was appointed Chief Judge of the Bankruptcy Court for the Southern District of Texas. In a few years, he transformed it into the nationwide center for high-dollar[5] complex Chapter 11 bankruptcies.[6]   Judge Jones signed a General Order in 2018 directing all complex Chapter 11 cases filed in the Southern District, across all divisions, to two judges—himself and Judge Marvin Isgur.[7]  He also set up a "complex advisory" committee of bankruptcy attorneys, including the head of Kirkland & Ellis LLP's bankruptcy practice, who is not admitted to practice in Texas.[8]

21.     "In the years after the creation of the complex case system, Houston quickly attracted large bankruptcies that previously might have landed in Delaware or New York."[9] Thanks to Judge Jones' efforts "Houston went from being a bankruptcy backwater to becoming the single most popular destination for large, public company

---

[5] Sujeet Indap, The downfall of the judge who dominated bankruptcy in America, THE FINANCIAL TIMES (Nov. 21, 2023), accessible at https://www.ft.com/content/574f0940-d82e-4e4a-98bd-271058cce434 (last visited Dec. 4, 2023).
[6] See Adam J. Levitin, Judge Shopping in Chapter 11 Bankruptcy, 323 ILL. L. REV. 351, 372 (2013).
[7] See General Order 2018-1 (Jan. 29, 2018).
[8] See General Order 2018-6, (Bankr. S.D. Tex. June 29, 2018) (listing James Sprayregen on the committee).
[9] Indap, supra note 5.

bankruptcy filings."[10] Just in 2023, for example, "of the 54 large Chapter 11 cases filed, twenty-five landed in SDTX, where only two judges, including Jones, oversaw large restructurings. This near-majority was more than those total bankruptcy filings in the traditional stalwarts, Delaware and New York, combined."[11]

22.     Judge Jones executed his plan with the "guaranty of case assignment to one of two judges who want to attract mega-cases and understand the need to 'sell' the venue to debtors."[12]

## II.     By at least 2017, Judge Jones and his clerk, Elizabeth Freeman, start an intimate relationship and live together in a jointly-owned home.

23.     Elizabeth Freeman clerked for Judge Jones in the bankruptcy court for the Southern District of Texas for six years[13]—sometime between 2011 and 2018. At some point, the two started a romantic relationship.

24.     By 2017, the two were living together.[14] On June 26, 2017, they executed a survivorship agreement as co-owners of a million dollar-plus home in Houston.[15]

---

[10] Levitin, *supra* note 6 at 374.
[11] Indap, *supra* note 5.
[12] Levitin, *supra* note 5 at 373.
[13] https://lizfreemanlaw.com/about.html, last visited December 4, 2023.
[14] Exhibit 1, Complaint Identified by the Chief Judge of the Fifth Circuit Court of Appeals Against United States Bankruptcy Judge David R. Jones, Southern District of Texas, Under the Judicial Improvement Act of 2002.
[15] *See* Exhibit 2, June 26, 2017 Survivorship Agreement executed by Freeman and Jones; e-filed and e-recorded by the Harris County Clerk on June 27, 2017. Judge Jones filed his November 24, 2023 pro se motion to confirm and/or extend response date from his co-owned home.

25.     The relationship may have begun earlier. Judge Jones purchased another million-dollar home in Coldspring, Texas, on September 1, 2016.[16] On information and belief, Freeman had been living in that house since 2007.[17]

26.     Further, on information and belief, Freeman's parents moved into the house in Coldspring in approximately 2020.[18] Judge Jones still owns that house as well.[19] Freeman also formed the Freeman Family Coldspring Real Estate Holdings, LLC in February 2023, and lists herself as registered agent at 245 N. Fairway Loop, Coldspring, Texas 77331, less than two miles from the home purchased by Judge Jones.[20]

### III.     Freeman joins Jackson Walker and the Firm's bankruptcy practice before Judge Jones skyrockets.

27.     As Judge Jones became "the busiest bankruptcy judge in the United States,"[21] Freeman left her six-year clerkship[22] to join the bankruptcy section at Jackson Walker, LLP's Houston office.[23] Jackson Walker announced Freeman as a partner in 2018,

---

[16] *See* Complaint, No. 23-cv-3729, Dkt. 1-1, App. A, at 5—6.

[17] *See id* at 6.

[18] *See id.*

[19] *See id.* at 5.

[20] *See* Exhibit 3, Franchise Tax Account Status for Freeman Family Coldspring Real Estate Holdings, LLC. To the extent Freeman directed funds obtained through the Jones-Freeman-Jackson Walker-Kirkland & Ellis Enterprise to Coldspring Real Estate Holdings, LLC, Plaintiff reserves the right to amend his complaint to add the entity as a defendant.

[21] Tom Hals, Exclusive-Law Firm Tied to Bankruptcy Judge Resignation Did Not Make Conflict Disclosures-Data Analysis, Reuters (Oct. 30, 2023), https://www.usnews.com/news/top-news/articles/2023-10-30/exclusive-law-firm-tied-to-bankruptcy-judge-resignation-did-not-make-conflict-disclosures-data-analysis, last visited Dec. 4, 2023.

[22] https://lizfreemanlaw.com/about.html, last visited Dec. 4, 2023.

[23] Chief Judge Priscilla Richman of the Fifth Circuit stated in her written order that Freeman "was a partner in the Jackson Walker LLP law firm, it appears from at least 2017 until December 2022." Ex. 1 at 1.

highlighting her former position as "permanent law clerk to the Chief Bankruptcy Judge for the U.S. Bankruptcy Court for the Southern District of Texas."[24]

28.     With Freeman's arrival, Jackson Walker began securing appointments in myriad large Chapter 11 cases, serving as local counsel with Kirkland & Ellis as lead.[25] The relationship goes back to 2018, when "the firms represented Colorado's Westmoreland Coal in its Chapter 11 filed in Houston" before Judge Jones.[26]

29.     By 2019, Jackson Walker was "the leading counsel firm for corporate debtors filing for bankruptcy in Houston."[27] And by 2022 and in 2023, Jackson Walker was number one in the nation in local counsel appointments in large bankruptcies.[28] "Kirkland & Ellis [led] large debtor-side representations … by a significant margin, while Jackson Walker, Kirkland's preferred local counsel in the Southern District of Texas, picked up more local debtor's representations than any other firm."[29] "Kirkland

---

[24]   https://www.jw.com/news/jackson-walker-expands-bankruptcy-reorganization-wealth-planning-and-white-collar-defense-practices/, last visited Dec. 4, 2023.

[25]   *See* Brenda Sapino Jeffries, Kirkland's Bankruptcy Partnership With Jackson Walker Could Be a Sign of Things to Come, The American Lawyer (Online) (Aug. 25, 2020), accessible at https://www.law.com/americanlawyer/2020/08/25/kirklands-bankruptcy-partnership-with-jackson-walker-could-be-a-sign-of-things-to-come/, last visited Dec. 4, 2023.

[26]   Brenda Sapino Jeffreys, Jackson Walker Reaps Benefits of Evolving Big Law Collaborations, Law.com (Aug. 17, 2023), https://www.law.com/texaslawyer/2023/08/17/jackson-walker-reaps-the-benefits-of-evolving-big-law-collaborations/, last visited Dec. 4, 2023.

[27]   Hals, *supra* note 21.

[28]   The American Lawyer: Jackson Walker is Nation's Top Local Counsel in Large Bankruptcies, as Bankruptcy and Restructuring Filings Rebound (Aug. 4, 2023) https://www.jw.com/news/mention-bankruptcy-top-local-counsel-american-lawyer/, last visited Dec. 4, 2023.

[29]   Dan Roe, Law.com, Kirkland & Ellis, Jackson Walker Dominate Debtor-Side Bankruptcy as Restructuring Market Heats Up (Aug. 3, 2023), accessible at https://www.law.com/americanlawyer/2023/08/03/kirkland-ellis-jackson-walker-dominate-debtor-side-bankruptcy-as-restructuring-market-heats-up/.

& Ellis, the dominant US debtor law firm, had tapped Jackson as co-counsel in at least 46 large cases since 2018, according to data collected by bankruptcydata.com."[30]

30.     With 200 lawyers in its Houston office, it might be questioned why Kirkland & Ellis would need local counsel at all. One commentator remarked that "[t]he relationship between the world's only $4 billion firm (Kirkland Ellis) and Jackson Walker … shows that two firms can build a working relationship that goes beyond a traditional referral arrangement."[31]

31.     Indeed, Jackson Walker managing partner Wade Cooper explained that "[i]n an awful lot of the [Chapter 11] cases Kirkland filed, we are either local counsel or co-counsel to help with conflicts[.]"[32] Among other attributes of the Firm, Cooper boasted, "[w]e know a lot about the local politics[.]"[33] In fact, the Financial Times reported that a lawyer from a large bankruptcy firm stated that "Jackson Walker was useful as a back channel to Houston's two judges; Freeman had previously been a clerk to Jones while another bankruptcy partner, Matthew Cavenaugh, had clerked for Isgur."[34]

---

[30] Indap, *supra* note 5.
[31]  Jeffries, *supra* note 25.
[32] *Id.*
[33] *Id.*
[34] Indap, *supra* note 5.

### IV.  Jackson Walker, Freeman, and Kirkland & Ellis collect millions of dollars in cases before Judge Jones without anyone disclosing the intimate relationship.

32.     Judge Jones presided over at least 26 cases in which he awarded Jackson Walker more than $12 million in attorneys' fees and expenses while Freeman was a partner at Jackson Walker and while Freeman and Jones were living together and having an intimate relationship.[35] This includes approximately $1 million in fees billed directly by Freeman herself.[36] Meanwhile, Kirkland & Ellis was awarded over $162 million in attorneys' fees as lead counsel in cases in which Jackson Walker served as co-counsel before Judge Jones.

33.     Of course, "at all times when Elizabeth Freeman was a Jackson Walker LLP partner, and regardless of whether she provided services or advice in a case, there is a reasonable probability that [she], as a partner in that firm, obtained a financial benefit from, or had a financial interest in, fees approved by Judge Jones."[37] As co-owner of a shared home with Freeman, there is reasonable probability that Judge Jones benefitted from the fees he awarded to her as well.

34.     Judge Jones did not recuse himself in any of these cases, nor did he disclose his relationship with Freeman to the parties, their counsel, or those otherwise affected by

---

[35] Motion for Relief for Judgment in *In re 4E Brands NorthAmerica LLC*, filed on November 3, 2023, No. 22-50009, Dkt. 517 at Ex. 6A–B. Plaintiff respectfully moves for this Court to take judicial notice of all federal court filings referenced in this amended complaint.
[36] *Id.*
[37] Ex. 1 at 2.

the bankruptcies.[38] Neither Freeman, nor Jackson Walker, nor Kirkland & Ellis as lead counsel disclosed the relationship in any of the cases.[39]

35.     One example of this financial arrangement in which Jackson Walker, Freeman, is the Seadrill Partners LLC bankruptcy. On December 23, 2020, Jackson Walker partner Cavenaugh filed an application to be retained as co-counsel and local counsel for the debtors and debtors-in-possession in the Seadrill Partners LLC bankruptcy before Judge Jones.[40] Cavenaugh submitted a verified declaration of disinterestedness pursuant to Bankruptcy Rule 2014(a).[41]

36.     Under the rules governing bankruptcy proceedings, for a firm to be employed by a debtor or debtor-in-possession, it must show that it is *disinterested* and must disclose all "connections[.]" 11 U.S.C. § 101(14), 327; Fed. R. Bankr. P. 2014 (requiring "a verified statement of the person to be employed setting forth the person's connections with the debtor, creditor, or any other party of interest"). Cavenaugh did not disclose the relationship between the Jackson Walker partner and the bankruptcy judge overseeing the case. Nor did Freeman, who actively worked on and billed in the case.[42]

37.     Kirkland & Ellis also filed an application for employment as counsel for the debtors and debtors in possession.[43] Kirkland & Ellis partner Brian E. Schartz

---

[38] *Id.*
[39] Hals, *supra* note 21.
[40] *In re Seadrill Partners LLC, et al.*, No. 20-35740, Dkt. 110.
[41] *Id.* at Dkt. 110 at Ex. B pdf p. 19.
[42] *Id.* at Dkt. 643, Ex. 4, pdf p. 120.
[43] *Id.* at Dkt. 107.

submitted a declaration of disinterestedness with a statement that the Firm conducted a search for and found no potential connections with bankruptcy judges, including Judge Jones.[44]

38.     Judge Jones appointed Jackson Walker and Kirkland & Ellis on January 15, 2021, without disclosing his intimate relationship with Jackson Walker partner Freeman.[45] On July 8, 2021, Jackson Walker moved for $286,885 in attorneys' fees, including $28,223 in fees billed by Freeman.[46] Kirkland & Ellis moved for $4.8 million.[47] Both firms submitted their filings without disclosing the Jones-Freeman relationship. Judge Jones awarded Jackson Walker's full $286,885 fee request on August 10, 2021, never mentioning his intimate relationship with Freeman.[48] He also awarded Kirkland & Ellis its full request of $4.8 million in fees.[49] The Firms accepted the funds without advising anyone of the relationship between the judge and the Jackson Walker partner and without amending their disclosures.

---

[44] *Id.* at Dkt. 107, Ex. A, pdf. p. 15, Schedule 1(f), pdf. p. 48.
[45] *Id.* at Dkt. 135—136.
[46] *Id.* at Dkt. 643, Ex. 4, pdf p. 120.
[47] *Id.* at Dkt. 635 at 2.
[48] *Id.* at Dkt. 690.
[49] *Id.* at Dkt. 674.

**V.    Jackson Walker files bankruptcy for McDermott, the case is assigned to Judge Jones, the Firm files a declaration of disinterestedness, and Jones awards the Firm attorneys' fees without anyone disclosing the Jones-Freeman relationship.**

39.    In another case (and a case in which Plaintiff was a creditor), Cavenaugh filed a Chapter 11 bankruptcy petition on behalf of McDermott International, Inc., ("McDermott") a provider of engineering, procurement, construction, and installation and technology services for customers in the energy industry.[50] Although initially assigned to Judge Isgur, Judge Jones ultimately presided over the McDermott case.[51]

40.    On February 19, 2020, Jackson Walker partner Cavenaugh filed an application for Jackson Walker to be appointed as co-counsel and conflicts counsel for debtors and debtors in possession.[52] In the engagement letter attached to the application, Cavenaugh referenced Jackson Walker's representation of McDermott "as local and conflicts counsel to assist … primary reorganization counsel Kirkland & Ellis LLP and Kirkland & Ellis International LLP…."[53]

41.    Cavanaugh e-filed a declaration of "disinterestedness,"[54] under penalty of perjury, disclosing conflicts of interest in Jackson Walker's application for

---

[50] *In re McDermott*, 20-30336, Dkt. 1.

[51] *McDermott*, 20-30336, Docket entry from Jan. 22, 2020 ("Judge David R Jones added to case. Involvement of Judge Marvin Isgur Terminated").

[52] *Id.* at Dkt. 424.

[53] *Id.* at Dkt. 424-1 at PDF 3.

[54] *Id.* at Dkt. 424-2 at 1 (Cavenaugh submitting a "verified statement of disinterestedness pursuant to Bankruptcy Rule 2014(a)").

appointment.[55] He did not disclose the intimate, domestic relationship between a Jackson Walker partner and the bankruptcy judge overseeing the case.[56] Nor did Freeman, who actively worked on and billed in the case, disclose the intimate relationship between herself and Judge Jones.[57]

42.     Cavenaugh also e-filed the application for Kirkland & Ellis to serve as lead counsel for the debtors and debtors in possession, including a declaration of disinterestedness completed by Kirkland & Ellis partner Joshua Sussberg that did not identify the relationship between Judge Jones and Freeman.[58]

43.     On March 9, 2020, Judge Jones entered an order appointing Jackson Walker, never mentioning his relationship with a partner from the Firm.[59] Nevertheless, he ordered Jackson Walker to "review its files periodically during the pendency of these chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, Jackson Walker LLP will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a)[.]"[60]

---

[55] *Id.* at Dkt. 424-2.
[56] *Id.*
[57] *Id.* at Dkt. 991 Ex. 4.
[58] *Id.* at Dkt. 428, Dkt. 428-1
[59] *Id.* at Dkt. 591.
[60] *Id.* at Dkt. 591 at 2.

Judge Jones entered an order authorizing the retention of Kirkland & Ellis on March 17, 2020.[61]

44.     On March 12 and 14, 2020, Judge Jones entered orders confirming McDermott's plan of organization.[62] And on August 14, 2020, Cavenaugh filed an application for $391,655 in attorneys' fees plus $21,154.16 in expenses for Jackson Walker covering less than two months of work (between January 21–March 12, 2020).[63] Freeman accounted for 29% of this billing, or $114,002.50.[64] Among her 147 hours, Freeman billed 2.7 hours for attending a January 23, 2020 telephonic hearing before Judge Jones.[65] While petitioning for these fees, neither Cavenaugh, Freeman, nor any attorney at Jackson Walker disclosed the intimate relationship between Judge Jones and the Jackson Walker partner.

45.     Also on August 14, 2020, Cavenaugh e-filed Kirkland & Ellis's application for $8.2 million in attorneys' fees and $142,428.01 in expenses.[66] Kirkland & Ellis partner, Sussberg, submitted a supporting declaration without disclosing the Jones-Freeman relationship.[67]

---

[61] *Id.* at Dkt. 692.
[62] *Id.* at Dkts. 665, 684.
[63] *Id.* at Dkt. 991.
[64] *Id.* at Dkt. 991 Ex. 4.
[65] *Id.* at Dkt. 991 at Ex. 2 (p. 29 of PDF).
[66] *Id.* at Dkt. 990 at 2.
[67] *Id.* at Dkt. 990 Ex. A.

46.     Judge Jones awarded Kirkland & Ellis and Jackson Walker their full fee requests (including Freeman's $114,002.50) on September 8, 2020 – adopting the firms' proposed orders verbatim.[68] In the order, Judge Jones failed to disclose he was awarding fees to the law firm where his girlfriend, with whom he shared a home, was a partner. The firms accepted the funds without ever disclosing the relationship or amending their disclosures.

47.     Judge Jones' failure to disclose his intimate relationship with Freeman was a non-judicial, administrative matter required of all individuals and parties to the bankruptcy proceeding. His participation in the enterprise consisted of other non-judicial acts, including maintaining the intimate relationship with Freeman, which allowed him, Jackson Walker, Freeman, and Kirkland & Ellis to profit and cement their place as stalwarts in mega-bankruptcy practice. Judge Jones acted in the absence of jurisdiction by presiding over this case when circumstances required his dismissal.

**VI.     Jackson Walker claims it learned of the relationship in March 2021, but as with Freeman and Kirkland & Ellis, continues hiding the relationship in ongoing bankruptcies.**

48.     Jackson Walker claims it first learned of the Jones-Freeman relationship in March 2021[69] even though, on information and belief, Freeman had been in the relationship

---

[68] *Id.* at Dkts. 1020, 1021.
[69] Alexander Gladstone, *Justice Department Watchdog Disputes Texas Firm's Fees Over Lawyer's Relationship with Judge*, Wall Street Journal (Nov. 3, 2023), accessible at https://www.wsj.com/articles/doj-watchdog-seeks-to-reverse-some-fees-paid-to-law-firm-jackson-walker-7b50a000?tpl=br, last visited Dec. 4, 2023.

and living with Jones during her entire employment at the Firm, and the Firm's increased appointments in Judge Jones' court coincided precisely with her arrival. According to the Firm, after it made the discovery, it conducted an inquiry, consulted outside ethics counsel, and instructed Freeman to stop working and billing on any case assigned to Jones.[70]

49.     What Jackson Walker (and Freeman and Kirkland & Ellis) indisputably did not do for the period between March 2021, when Jackson Walker supposedly first learned of the relationship, and December 2022, when Freeman left the firm,[71] is disclose the relationship in the bankruptcy proceedings or correct any of its declarations of disinterestedness omitting the relationship.

50.     "The Fifth Circuit has uniformly held that under Rule 2014(a), full disclosure is a continuing responsibility, and an attorney is under a duty to promptly notify the court if any potential for conflict arises." *Beirne, Maynard & Parson, L.L.P. v. Cypresswood Land Partners*, 2010 U.S. Dist. LEXIS 146549, *25-26 (citing *In re W. Delta Oil Co.*, 432 F.3d 347, 355 (5th Cir. 2005)). The McDermott bankruptcy remained pending for another year and eight months after Jackson Walker's claimed discovery of the relationship, yet neither it, nor Freeman, nor Kirkland & Ellis ever disclosed the intimate relationship

---

[70] Alexander Gladstone, et al., Bankruptcy Judge Jones to Stop Handling Major Cases After Relationship with Lawyer Revealed, Wall Street Journal (Oct. 14, 2023), https://www.wsj.com/articles/bankruptcy-judge-jones-to-stop-handling-complex-cases-after-relationship-with-lawyer-revealed-fad88b0c?tpl=br, last visited Dec. 4, 2023.
[71] Freeman ultimately left Jackson Walker in December 2022 and opened her own firm, the Law Office of Liz Freeman. *See* Ex. 1 at 1–2.

between Freeman and Judge Jones. On September 16, 2022, Cavenaugh filed a motion for final decree for Jackson Walker and Kirkland & Ellis, still never disclosing the relationship or amending the declarations of disinterestedness.[72] Judge Jones entered a final decree closing the bankruptcy on October 5, 2022, again not disclosing the relationship.[73]

51.     Notwithstanding Jackson Walker's representations, on information and belief, Freeman continued to work on cases assigned to Judge Jones behind the scenes between March 2021 and December 2022. During this time, Jackson Walker and Kirkland & Ellis continued to benefit from the Jones-Freeman relationship, filing at least nine applications to be appointed counsel in bankruptcy cases before Jones, with Kirkland & Ellis joining in at least three.[74] In two of those cases, Jackson Walker listed

---

[72] *McDermott*, 20-30336, Dkt. 1126.

[73] *Id.* at Dkt. 1128.

[74] *Seadrill Limited*, No. 21-30427, Dkt. 250 (Mar. 8, 2021) (application to employ Jackson Walker as Co-Counsel and Conflicts Counsel); *Brilliant Energy, LLC*, No. 21-30936, Dkt. 68 (Apr. 13, 2021) (application to employ Jackson Walker LLP as special counsel); *Katerra Inc.*, No. 21-31861, Dkt. 289 (Jun. 29, 2021) (application to employ Jackson Walker as co-counsel and conflicts counsel for the debtors and debtors in possession); *Basic Energy Services, Inc.*, No. 21-90002, Dkt. 809 (Dec. 13, 2021) (Jackson Walker's application as counsel for the debtors); *Strike LLC*, No. 21-90054, Dkt. 363 (Jan. 6, 2022) (Jackson Walker's application as co-counsel and conflicts counsel); *Seadrill New Finance Limited*, No. 22-90001, Dkt. 94 (Feb. 8, 2022) (Jackson Walker application for co-counsel and conflicts counsel); *4E Brands Northamerica LLC*, No. 22-50009, Dkt. 72 (Mar. 24, 2022) (Jackson Walker application as counsel for debtor and debtor in possession); *Sungard AS New Holdings*, No. 22-90018, Dkt. 211 (May 10, 2022) (Jackson Walker application for co-counsel and conflicts counsel to the debtors); *LaForta Gestao e Investments*, No. 22-90126, Dkt. 67 (Jul. 15, 2022) (Jackson Walker application for counsel for debtor and debtor in possession); *see also* Alexander Gladstone, Texas Law Firm Didn't Disclose Possible Conflict Involving Bankruptcy Judge, The Wall Street Journal (Oct. 27, 2023), accessible at https://www.wsj.com/articles/texas-law-firm-didnt-disclose-possible-conflict-involving-bankruptcy-judge-3761ffe0, last visited Dec. 4, 2023.

Jones as a potential party in interest, but affirmatively represented that it searched his name against internal records and did not find any connections involving him.[75]

52.     Kirkland and Ellis joined Jackson Walker in at least three cases in that period, and while applying as lead counsel, failed to disclose the Jones-Freeman relationship even while identifying Judge Jones in the schedule of bankruptcy judges searched for a potential conflict and listing none.[76]

53.     Additionally, while Freeman was a partner at Jackson Walker, the firm also represented parties in cases mediated by Judge Jones, and Freeman worked and billed on many of those cases, with Jackson Walker, Freeman, and Judge Jones again keeping the relationship a secret.[77] In fact, even after Freeman left the Firm in December 2022, Jackson Walker continued to retain and bill for her as a contract attorney before Judge Jones, again without anyone disclosing the Jones-Freeman domestic partnership.[78]

---

[75] *See In re Strike, LLC, et al.*, 21-90054, Dkt. 363 Ex. B at ¶¶ 4–5, 15, Schedule 1 (Jan. 6, 2022); *In re Katerra Inc., et al.*, 21-31861, Dkt. 289 Ex. B at ¶¶ 4–5, 15, Schedule 1 (June 29, 2021).

[76] *Seadrill Limited*, No. 21-30427, Dkt. 242 (Mar. 8, 2021) (application to employ Kirkland & Ellis LLP and Kirkland & Ellis International LLP as attorneys for debtors e-filed by Cavenaugh; listing Judge Jones in the schedule of bankruptcy judges searched for a potential conflict, and listing none); *Katerra Inc.*, No. 21-31861, Dkt. 244 & 244-1 (Jun. 25, 2021) (application for retention of Kirkland & Ellis as attorneys for debtors and debtors in possession; listing Judge Jones in the schedule of bankruptcy judges searched for a potential conflict, and listing none); *Seadrill New Finance Limited*, No. 22-90001, Dkt. 92 & 92-1 (Feb. 8, 2022) (Kirkland & Ellis application as counsel for debtors; listing Judge Jones in the schedule of bankruptcy judges searched for a potential conflict, and listing none).

[77] *See e.g. In re Sanchez Energy Corp., et al.*, No. 19-34508, Dkt. 1093 (Mar. 26, 2020) (order appointing Jones as mediator), Dkt. 1432 (Jul 2, 2020) (Jackson Walker application for compensation filed by Elizabeth Freeman).

[78] Ex. 1 at 1–2; *see In re GWG Holdings, Inc., et al.*, Dkt. 2158 at PDF p. 273.

54.     In a bankruptcy before Judge Isgur involving GWG Holdings, Jackson Walker moved to have Judge Jones appointed as mediator in November 2022, the month before Freeman left the Firm.[79] According to Harvard bankruptcy professor Jared Ellis, this conflict should have been disclosed "to protect the integrity of the mediation process."[80] Neither Freeman nor the Firm disclosed the relationship. Judge Isgur then appointed Judge Jones on January 5, 2023.[81]

55.     Freeman appeared at the mediation[82] and was appointed trustee for the post-confirmation Wind Down Trust.[83] In this role, Freeman "was expected to be paid $100,000 a month for the first six months, then $50,000 a month after that[.]"[84]

56.     Again, neither Jackson Walker, nor Freeman, nor Judge Jones disclosed the intimate relationship. Nor did Jackson Walker amend its declaration of disinterestedness supporting appointment, which in the schedule of searched parties, listed "N/A" for the section concerning Bankruptcy Judges for the Southern District of Texas.[85]

57.     On August 21, 2023, Jackson Walker moved for $1.3 million in attorneys' fees in the GWG Holdings bankruptcy, including $23,415 for time billed by Freeman while

---

[79] *Id.* at Dkt. 1128.
[80] Gladstone, *supra* note 69. .
[81] *In re GWG Holdings, Inc., et al.*, 22-90032, Dkt. 1323 at 2.
[82] Freeman's billing records indicate she participated in the mediation before Judge Jones in January and February 2023. *GWG Holdings,* No. 22-90032, Dkt. 2158 at PDF pp. 179–80, 195.
[83] *Id.* at Dkt. 2246 at 5.
[84] Hals, *supra* note 21.
[85] *GWG Holdings*, 22-90032, Dkt. 828 at schedule 1(n) (pdf p. 20).

a partner at Jackson Walker.[86] The firm also sought costs of $205,157.81 billed by The Law Office of Liz Freeman.[87] Judge Isgur postponed ruling on these fees pending an objection raised by the U.S. Trustee. Freeman continues to work and bill in the GWG Holdings case.

## VII. Plaintiff objects to the confirmation plan in the McDermott bankruptcy, files an adversary proceeding, and moves for recusal.

58.   Plaintiff Michael Van Deelen, a McDermott shareholder with 30,000 shares, objected to the proposed confirmation plan in the McDermott bankruptcy on February 27, 2020.[88] He participated in several hearings before Judge Jones, which included heated exchanges, with Plaintiff expressing his belief that the judge was antagonistic towards him.[89] Additionally, Van Deelen and a partner for Kirkland & Ellis each asserted that insults were made by the other on the day of the confirmation hearing.[90] Judge Jones sided with the latter and ordered, among other things, that Van Delen could "not enter the federal courthouse except with the escort of a court security officer" and

---

[86] *Id.* at Dkt. 2158 at PDF pp. 1, 135, 137, 139–40, 144–45, 275.

[87] *Id.* at Dkt. 2158 at PDF p. 273. Similarly, "[o]n November 11, a month after her relationship with Jones was [publicly] revealed, Freeman submitted a fee request for $257,000 for work on IEH Auto Parts' bankruptcy. [Judge] Isgur, overseeing the case, assigned Jones to lead a New York City mediation session in April for which she billed her time at $750 per hour, plus travel expenses. Her application attested to her 'disinterestedness' — and still made no mention of her relationship with David R. Jones." Indap, *supra* note 5; *In re IEH Auto Parts Holding LLC, et al.*, No. 23-90054, Dkt. 181 (application to appoint Jackson Walker as counsel); Dkt. 183 (application to employ the Law Office of Liz Freeman, PLLC as Co-Counsel and Conflicts Counsel); Dkt. 356 (order appointing Judge Jones as mediator); Dkt. 991 (final fee application for The Law Office of Liz Freeman seeking $255,150 in fees, including fees and expenses from mediation before her intimate partner).

[88] *McDermott*, 20-30336, Dkt. 510.

[89] *See e.g., id.* at Dkt. 664 at 27; Dkt. 690 at 138.

[90] *Id.* at Dkt. 694, 701.

referred his conduct to the United States Attorney and the United States Marshall for investigation.[91]

59.    McDermott also filed an action in state district court against McDermott officers, alleging conversion, fraud, and other state-law torts.[92] The officers, represented by Jackson Walker and Kirkland & Ellis, removed and the case was assigned to Judge Jones.[93] Van Deelen filed an initial motion to recuse on July 27, 2020, without awareness of the intimate relationship between Judge Jones and the Jackson Walker partner.[94] On March 8, 2021, Van Deelen filed an addendum to his motion to recuse, attaching an anonymous letter received discussing corruption by Judge Jones and his intimate relationship with Freeman.[95]

## VIII.  Jackson Walker, Freeman, Kirkland & Ellis, and Judge Jones continue to flout their duty to disclose, and the recusal motion is denied.

60.    After conferring with Judge Jones, Judge Isgur decided to hear the recusal motion in the adversary proceeding.[96] Judge Isgur ordered the addendum filed by Van Deelen sealed,[97] and after a hearing, denied the recusal motion on March 10, 2021.[98]

---

[91] *Id.* at Dkt. 719 at 2.
[92] *Van Deelen v. Dickson, et al.*, 20-03309, Dkt. 1, Ex. 1 (original state court petition).
[93] *Id.* at Dkt. 1.
[94] *Id.* at Dkt. 6.
[95] *Id.* at Dkt. 39.
[96] *Id.* at Dkt. 40.
[97] *Id.* at Dkt. 40. As of December 4, 2023, the document appears to be under seal.
[98] *Id.* at Dkt. 42.

Neither Jackson Walker, nor Freeman, nor Kirkland & Ellis, nor Judge Jones admitted to the relationship during the hearing[99] or in response to the motion to recuse.

61.     Judge Jones dismissed the adversary proceeding on October 12, 2021.[100] Van Deelen appealed this along with the denial of the motion to recuse to the district court, with Judge Andrew Hanen presiding.[101] Again, neither Jackson Walker, nor Freeman, nor Kirkland & Ellis, nor Judge Jones disclosed the relationship and Judge Hanen affirmed the dismissal and denial of the motion to recuse on January 9, 2023.[102] That decision is pending before the Fifth Circuit.[103]

## IX.     Judge Jones admits the intimate relationship with Freeman.

62.     Months after Van Deelen's valid allegations, Judge Jones finally admitted to the press both his intimate relationship with Freeman and that he has shared a home with her for years.[104] Judge Jones maintained he had no duty to disclose because the couple was unmarried and no economic benefit flowed to him from her legal work.[105] According to Judge Jones, he and Freeman agreed years ago that she would never appear in his courtroom.[106] In fact, Freeman billed for appearing for a two-and-a-half hour telephonic hearing before Judge Jones in the McDermott bankruptcy on January

---

[99] *Id.* at Dkt, 47.
[100] *Id.* at Dkt. 81.
[101] *Van Deelen v. Dickson, et al.*, 21-03369, Dkt. 1.
[102] *Id.* at Dkt. 33.
[103] *Van Deelen v. Dickson, et al.*, 23-20436 (5th Cir.).
[104] Alexander Gladstone & Andrew Scurria, Bankruptcy Judge Jones Named in Lawsuit Over Romantic Relationship with Local Lawyer, Wall Street Journal Pro, (Oct. 7, 2023).
[105] *Id.*
[106] *Id.*

23, 2020.[107] Otherwise, Judge Jones remarked, "I just simply think I'm entitled to a certain degree of privacy."[108]

### X.   Judge Jones resigns after the Fifth Circuit finds "probable cause to believe [he] engaged in misconduct[.]"

63.    On October 13, 2023, Chief Judge Priscilla Richman of the Fifth Circuit entered a written order identifying a complaint against Judge Jones.[109] Chief Judge Richman found "probable cause to believe that misconduct by Judge Jones has occurred."[110]

64.    Chief Judge Richman observed that "Judge Jones is in an intimate relationship with Elizabeth Freeman. It appears that they have cohabited (living in the same house or home) since approximately 2017."[111] She further recognized that Judge Jones had awarded substantial attorneys' fees payable to Jackson Walker for services performed by Freeman.[112] Even in cases in which it does not appear Freeman provided legal services or advice, "there is a reasonable probability that Elizabeth Freeman, as a partner in that firm, obtained a financial benefit from, or had a financial interest in, fees approved by Judge Jones.[113]

---

[107] *McDermott*, 20-30336, Dkt. 991 at Ex. 2 (p. 29 of PDF).
[108] *Id.*
[109] Ex. 1.
[110] *Id.* at 1.
[111] *Id.*
[112] *Id.* at 2.
[113] *Id.*

65.     As Chief Judge Richman noted, Judge Jones' failure to apprise the courts of the relationship during the motion to recuse likely changed the outcome of the motion.[114] Further, "[b]ecause the motion was denied, and Judge Jones did not voluntarily recuse, Judge Jones presided in the case and approved Jackson Walker LLP's attorneys' fees. Court records appear to reflect that those fees included amounts for services Elizabeth Freeman performed in connection with the case."[115]

66.     Chief Judge Richman found unpersuasive the argument that disclosure was unnecessary because Jones and Freeman were not married. Considerations for recusal "applicable to a judge's spouse should also be considered with respect to a person other than a spouse with whom the judge maintains both a household and an intimate relationship."[116]

67.     On October 15, 2023, two days after the Fifth Circuit's written order finding probable cause of misconduct, Judge Jones submitted his resignation, effective November 15, 2023.

## XI.     The U.S. Trustee files Rule 60(b)(6) motions asking for vacatur of orders awarding Jackson Walker fees and expenses.

68.     On November 3, 2023, the U.S. Trustee began filing motions under Fed. R. Civ. P. 60(b)(6) requesting that orders awarding fees and expenses be set aside.[117] As the

---

[114] *Id.* at 3.
[115] *Id.*
[116] *Id.* at 4 (citing Commentary to Canon 3C of the Code of Conduct for United States).
[117] *See e.g., 4E Brands*, 22-50009, Dkt. 517.

U.S. Trustee observed "all orders awarding fees and expenses are tainted" in light of "Judge Jones's failure to recuse himself from presiding over cases where Jackson Walker was counsel for the debtor-in-possession while Freeman was both living with him and a partner at Jackson Walker[.]"[118]

## XII. In response to the U.S. Trustee's filings, Jackson Walker claims it learned of the intimate relationship in March 2021 and again sometime in 2022, informed Kirkland & Ellis, but never disclosed the relationship in bankruptcy proceedings.

69.     On November 13, 2023, Jackson Walker responded to the U.S. Trustee, claiming it learned of the relationship after Van Deelen sent an email to Cavenaugh on March 6, 2021, and Freeman then "confirmed that there had been a romantic relationship."[119] According to Jackson Walker, Freeman indicated her intimate relationship with Judge Jones was in the past,[120] that it ended "prior to March 2020,"[121] and that they "each own their own homes" and "do not and have not lived together."[122] Jackson Walker then "disclosed these matters to our Kirkland co-counsel, who disclosed them to the client."[123]

70.     However, "[m]ultiple Kirkland partners told the [Financial Times] that they were *long aware* of the romantic relationship between the pair, though [they] did not know

---

[118] *Id.* at Dkt. 517 at 3.
[119] *Id.* at Dkt. 526-1 at 4.
[120] *Id.* at Dkt. 526 at 1, 4.
[121] *Id.* at 4.
[122] *Id.* at 4.
[123] *Id.* at Dkt. 526-1 at 3–4.

how advanced it was."[124] Rather than believing the relationship had ended, "[t]he Kirland lawyers assumed the pair had received clearance from a superior court or decided that it was not Kirland's place to intervene in Jackson's retention applications."[125]

71.     Although both firms then knew Van Deelen's allegations concerning the intimate relationship between Jones and Freeman were true, at least in the past, neither disclosed what they knew to Judge Isgur while advocating against the motion to recuse. And neither firm disclosed the relationship in the McDermott bankruptcy. In fact, neither firm disclosed the relationship in any of the bankruptcies before Judge Jones. For example, Jackson Walker and Kirkland & Ellis failed to disclose the relationship in a declaration of disinterestedness filed in the Seadrill Limited bankruptcy on March 8, 2021,[126] immediately after Jackson Walker admitted to learning of the relationship.

72.     Jackson Walker claims it believed disclosure was unnecessary because it had been told the relationship ended. Even if true, Jackson Walker still had an obligation to disclose the recent relationship between the presiding judge and its partner.[127] That is

---

[124] Indap, *supra* note 5.

[125] *Id.*

[126] *Seadrill Limited*, No. 21-30427, Dkt. 250 (Mar. 8, 2021) (application to employ Jackson Walker as Co-Counsel and Conflicts Counsel); Dkt. 242 (Mar. 8, 2021) (application to employ Kirkland & Ellis LLP and Kirkland & Ellis International LLP as attorneys for debtors e-filed by Cavenaugh; listing Judge Jones in the schedule of bankruptcy judges searched for a potential conflict, and listing none).

[127] Other firms disclose much lesser connections to court personnel in applications to be retained. For example, Gray Reed disclosed that while Judge Jones "was attending law school, he worked on a part-time basis for Gray Reed assisting with Gray Reed's IT systems." *In re Whiting Petroleum Corp., et al.*,

particularly the case because the Firm's application and supporting declaration of disinterestedness in this case and others were filed while the relationship *was* ongoing. At the very least, the Firm had a duty to correct the disclosure once it learned of the relationship. Nevertheless, the Firm decided not to disclose the relationship or amend its declaration of disinterestedness.

73.     Further, had the Firm performed a cursory check of real property records instead of relying on Freeman's say-so, it would have discovered not only that Freeman and Judge Jones co-owned a house, but also that Jones purchased another home in Coldspring, Texas where Freeman previously resided and where Freeman's parents began residing in 2020. Jackson Walker instead accepted Freeman's flimsy denial, which could have been easily debunked with minimal investigation or by talking with other partners, including those from Kirkland & Ellis. It did not because it wanted to continue profiting from the relationship.

74.     Regardless, Freeman, a partner at Jackson Walker, unquestionably knew of her ongoing intimate relationship with Judge Jones, that they lived together, and co-owned a home. As an attorney and partner in Jackson Walker, Freeman's "[k]nowledge and

---

No. 20-32021, Dkt. 308-2, Schedule 2 (May 8, 2020); Hals, *supra* note 21 ("disclosing connections to judges appears to be a standard practice. In the court filings Reuters reviewed, the larger national law firms that worked for the debtor alongside Jackson Walker always indicated that they had searched for connections to the judges on the bankruptcy court").

actions are said to be imputed to all members of a firm[.]"[128] Freeman's actions benefitted the Firm with coveted appointments and millions of dollars in attorneys' fees, meaning the Firm and its partners are charged with knowledge of the intimate relationship and their shared home even if the Firm's leadership continues to claim ignorance.[129]

### XIII.  Jackson Walker "rediscovers" the Jones-Freeman relationship in 2022, and although Freeman leaves the Firm, the parties continue to profit from the arrangement without disclosing it.

75.    On information and belief, the Jones-Freeman relationship continued ongoing through 2021 and into 2022, when Jackson Walker claims (at some point) it once again learned of the intimate relationship, this time through an unidentified "credible third party[.]"[130] Jackson Walker again failed to make proper disclosures to affected parties and chose not to amend its declaration of disinterestedness in either the McDermott

---

[128] *In re Bradley*, 495 B.R. 747, 791 (Bankr. S.D. Tex. 2013) (citing *In re Depugh*, 409 B.R. 125, 141 (Bankr. S.D. Tex. 2009); *In re Anderson*, 330 B.R. 180, 187 (Bankr. S.D. Tex. 2005) (finding that knowledge and actions impute from one attorney at a firm to all other attorneys with whom they work)); *see also In re Corrugated Container Antitrust Litigation*, 659 F.2d 1341, 1346 (5th Cir. 1981) ("knowledge is imputed to partners of the lawyer disqualified, even if the partnership is later dissolved") (citations omitted).

[129] "[I]mputation turns on whether the agent was acting for or against the principal's interest; knowledge acquired by an agent acting adversely to his principal is not attributable to the principal." *Reneker v. Offill*, 2012 U.S. Dist. LEXIS 83017, 2012 WL 2158733, at *11 (N.D. Tex. June 14, 2012) (citing *Askanase v. Fatjo*, 828 F. Supp. 465, 470 (S.D. Tex. 1993)); *see also Askanase v. Fatjo*, 130 F.3d 657, 666 (5th Cir. 1997) ("[c]ourts will impute knowledge to the corporation as long as the officer/director is acting on the corporation's behalf") (citing *FDIC v. Ernst & Young*, 967 F.2d 166, 171 (5th Cir. 1992)); *FDIC v. Shrader & York*, 991 F.2d 216 (5th Cir. 1993) (describing the "adverse interest" exception to imputation, and noting that that "an agent's knowledge falls within this exception only if the agent acts 'entirely for his own or another's purposes.'") (quoting the Restatement (Second) of Agency § 282(1) (1957)).

[130] *4E Brands*, 21-30936, Dkt. 258 at 4.

case or any of the other pending bankruptcies in which Jackson Walker had been appointed counsel before Judge Jones. Further, although partners at Kirkland & Ellis long knew of the relationship as well, they continued not to disclose it.

76.     Jackson Walker claimed it deducted from Freeman's compensation as an equity partner any profits associated with work performed by the Firm in cases before Judge Jones. But the Firm did not return the $12.6 million in fees it collected from Judge Jones while its partner was in an intimate relationship with him.

77.     Jackson Freeman claims Freeman "separated" from the Firm in 2022 after learning for a second time that she was in an intimate relationship with Judge Jones. However, Freeman continued to work as co-counsel with Jackson Walker on matters before Jones—again, without proper disclosures or remedial steps.[131]

78.     On information and belief, this "separation" was window-dressing to create an appearance of propriety; a fig-leaf for an improper relationship that Jackson Walker knew about and wanted to continue for its own profit. Freeman's firm website does not identify a physical address, listing a P.O. Box in downtown Houston at a U.S. Post Office location.[132] On information and belief, even after the so-called "separation,"

---

[131] *GWG Holdings*, 22-90032, Dkt. 1128, Dkt. 1323 at 2, Dkt. 2158 at PDF pp. 179–80, 195, Dkt. 2246 at 5.
[132] https://lizfreemanlaw.com/contact.html, last visited Dec. 4, 2023.

Freeman continued to use Jackson Walker offices to conduct work, collaborate with Jackson Walker lawyers, and even held mediations there through at least March 2023.[133]

79.    The only reasonable inference is Jackson Walker knew of the Jones-Freeman relationship the entire time, collected huge profits from the relationship, and only took steps to improve the "optics" of the situation, but never actually did anything to remedy it, including making the required disclosures to the court or affected parties. Freeman, Jackson Walker, Kirkland & Ellis, and Judge Jones all profited from their secret, all at the expense of creditors, shareholders, and others, not to mention the integrity of the United States bankruptcy system.

## XIV. Defendants failed to satisfy their obligations to disclose the Jones-Freeman relationship and disqualify Judge Jones.

80.    Bankruptcy Rule 5004(a) provides that a "bankruptcy judge shall be governed by 28 U.S.C. § 455," which mandates disqualification of a judge "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. §455(a); *see also* Cannon 3(C)(1) for United States Judges ("[a] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned"). Bankruptcy Rule 5004(a) further provides that a "bankruptcy judge shall be...disqualified from presiding over the proceeding or contested matter in which the

---

[133] Indap, *supra* note 5 ("After leaving Jackson Walker, Freeman established the Law Office of Liz Freeman. Business was immediately brisk; Jackson Walker has hired her as a contract attorney or co-counsel on multiple occasions in 2023, even letting her occasionally use a conference room, according to a person familiar with the matter.").

disqualifying circumstance arises." In addition, Rule 5004(b) specifically rendered Judge Jones disqualified from awarding compensation "to a person...with whom the judge is so connected as to render it improper for the judge to authorize such compensation."

81.    That Judge Jones and Freeman were unmarried is irrelevant. As Chief Judge of the Fifth Circuit observed, "[r]ecusal considerations applicable to a judge's spouse should also be considered with respect to a person other than a spouse with whom the judge maintains both a household and an intimate relationship."[134] Judge Jones was obligated to recuse himself from presiding over this case and awarding attorneys' fees to the law firm in which his live-in girlfriend was a partner and actively worked on and billed in the case.

82.    These proceedings were extremely stressful for Van Deelen. He sustained mental anguish damages as a result of the harsh treatment he received in court, and as a result of learning his case was litigated in a courtroom corrupted by fraud, in which the law firms, Freeman, and the judge conspired to enrich themselves, with no level playing field for protesting creditors and investors.

---

[134] Ex. 1 at 4 (quoting Commentary to Cannon 3C of the Code of Conduct for United States Judges).

## **CLAIMS FOR RELIEF**

## **COUNT I**
## **VIOLATION OF TITLE 18 US.C. § 1962(C):  CONDUCTING THE AFFAIRS OF THE ENTERPRISE THROUGH A PATTERN OF RACKETEERING ACTIVITY**
### *(Against All Defendants)*

83.    Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs as though fully set forth herein.

84.    Plaintiff asserts this claim against Defendants for violation of the RICO Act. Plaintiff specifically claims that Defendants violated 18 U.S.C. § 1962(c).

85.    From the point that Freeman joined Jackson Walker (either in 2017 or 2018)[135] and continuing until October 2023, in the State of Texas and elsewhere, Defendants did unlawfully, knowingly, and intentionally conduct and participate, directly and indirectly, in the conduct, management, and operation of the affairs of the Enterprise (otherwise referred to herein as the "Jones-Freeman-Jackson Walker-Kirkland & Ellis Enterprise"), which was engaged in and affected interstate commerce through a pattern of racketeering activity consisting of numerous acts of racketeering in the State of Texas and elsewhere, indictable under Title 18 U.S.C. § 1503 (obstruction of justice), § 1341

---

[135] It is unclear precisely when Freeman joined Jackson Walker. The Ethics Complaint filed by the chief judge of the 5th U.S. Circuit Court of Appeals at New Orleans on October 13, 2023 states that Freeman was a partner in Jackson Walker "from at least 2017." Ex. 1 at 1. Jackson Walker recently claimed it hired her "on May 14, 2018, as an income partner in the bankruptcy group. She was later promoted to equity partner effective January 1, 2021." *4E Brands*, No. 22-50009, Dkt. 526 at 2.

(mail fraud), § 1343 (wire fraud), § 152 (bankruptcy fraud) and § 1346 (honest services fraud).

86.    At all relevant times, Defendants Jones, Freeman, Jackson Walker, and Kirkland & Ellis were "persons" within the meaning of 18 U.S.C. § 1962(c) and as defined by the statute. 18 U.S.C. § 1961 (defining a culpable "person" to include "an entity capable of holding a legal or beneficial interest in property"). Defendants are each "persons" capable of holding legal or beneficial interests in property. *See* 18 U.S.C. § 1961.

87.    Defendants constitute an association-in-fact enterprise with a clear common purpose, clear relationships between them and a longevity sufficient to permit Defendants to pursue the purpose of the Enterprise. Specifically, the purpose of the Jones-Freeman-Jackson Walker-Kirkland & Ellis Enterprise was to utilize the intimate relationship between Judge Jones and Freeman to enrich Freeman, Jackson Walker, and Kirkland & Ellis directly and increase their prestige and influence in bankruptcy practice, while also enriching Judge Jones directly or indirectly, all without disclosing the intimate relationship to affected parties and creditors. The Enterprise carried out this purpose through bankruptcy fraud, mail fraud, wire fraud, obstruction of justice, and theft of honest services mail/wire fraud.

88.    Defendants are a group of business entities and individuals associated in fact, which were engaged in, and the activities of which affected, interstate commerce. Each Defendant participated in the operation and management of the Enterprise. As such,

Defendants collectively have constituted an "enterprise" as that term is defined in 18 U.S.C. § 1961 (4).

89.    The Jones-Freeman-Jackson Walker-Kirkland & Ellis Enterprise functioned as a continuing association-in-fact enterprise from approximately 2017 to approximately October 2023, when Judge Jones resigned. Plaintiff alleges closed-ended continuity based on a series of related predicates extending over a substantial period—at least five years.

90.    The Jones-Freeman-Jackson Walker-Kirkland & Ellis Enterprise consists of Defendants Jones, Freeman, Jackson Walker, and Kirkland & Ellis associating together in fact for a common purpose, namely to commit bankruptcy fraud, mail fraud, wire fraud, and theft of honest services mail/wire fraud so as to enrich themselves through improperly influenced and self-interested bankruptcy court proceedings.

91.    The Enterprise functioned to achieve the shared goal of enriching Defendants (both directly through approval of improper attorneys' fee awards and indirectly by elevating the status and demand for Defendants Jackson Walker, Freeman, and Kirkland & Ellis as bankruptcy attorneys) by securing favorable bankruptcy court appointments and rulings – including millions of dollars, if not tens of millions of dollars, awarded to Jackson Walker and Kirkland & Ellis as attorneys' fees - that were influenced by intimate relationships and self-interest and not based exclusively on the merits.

92.   Defendants carried out the Enterprise through improper and unlawful acts including, but not limited to, the following:

a.   securing the appointment of Jackson Walker, Freeman, and/or Kirkland & Ellis on bankruptcy cases before Judge Jones despite Jones having a personal and financial interest in the outcome of the case;

b.   influencing the assignment of bankruptcy cases involving clients of Jackson Walker, Freeman, and Kirkland & Ellis to Judge Jones, despite Jones having a personal and financial interest in the outcome of the case;

c.   failing to recuse, or seek the recusal of Judge Jones;

d.   failing to inform the court, creditors, opposing parties, and others of the intimate relationship between Judge Jones and Freeman;

e.   failing to remove Freeman from cases before Judge Jones;

f.   deceiving the public, the judiciary, and bankruptcy creditors such as Plaintiff;

g.   withholding from Plaintiff and the public facts material to federal bankruptcy court decisions;

h.   defrauding creditors such as Plaintiff;

i.   influencing the orders issued in bankruptcy proceedings for the benefit of Defendants (and clients represented by Defendants) and to the detriment of creditors such as Plaintiff;

j.     enhancing the status, reputation and demand for the services of Defendants Jackson Walker, Freeman, and Kirkland & Ellis as bankruptcy attorneys by issuing rulings favorable to Defendants Jackson Walker and Freeman (and the clients they represented);

k.     profiting from the issuance of bankruptcy court rulings favoring Defendants and Defendants' clients that were issued in violation of law;

l.     securing large awards of attorneys' fees that directly benefitted Jackson Walker, Freeman, and Kirkland & Ellis indirectly benefitted Judge Jones himself without disclosing the Jones-Freeman relationship;

m.     shielding themselves from public, judicial and governmental scrutiny of wrongful acts;

n.     covering up the existence, purpose, and acts of the Enterprise by denying the existence of an intimate relationship between Freeman and Judge Jones;

o.     covering up the existence, purpose, and acts of the Jones-Freeman-Jackson Walker-Kirkland & Ellis Enterprise by failing to disclose the existence of the intimate relationship when disclosure was required.

93.     The Enterprise has pursued a course of conduct of deceit, misrepresentation, and conspiracy to deceive and defraud Plaintiff and the public, to withhold from Plaintiff and the public facts material to federal bankruptcy court decisions, and to influence, issue and secure favorable bankruptcy court rulings in violation of law.

94.     The participants in this Enterprise have repeatedly and continuously engaged in a pattern of racketeering activities from approximately 2017 or 2018 to 2023. During that time, Judge Jones presided over at least 26 cases, and perhaps more, in which he awarded Defendant Jackson Walker at least $12.6 million in attorneys' fees under 11 U.S.C. § 330 and § 331. The compensation awards from Judge Jones to Jackson Walker occurred while Freeman was both a Jackson Walker partner and living with Judge Jones in an intimate relationship. This includes approximately $1 million in fees billed by Freeman in 17 of those cases:

| Bankruptcy Debtor | Jackson Walker Application for Appointment | Fees Awarded to Jackson Walker by Judge Jones | Fees Awarded to Freeman by Judge Jones | Date of Final Fee Award |
|---|---|---|---|---|
| Westmoreland Coal Company | 11/8/2018[136] | $678,806[137] | $129,629.50 | 08/14/2019 |
| Jones Energy | 4/3/2019[138] | $92,854[139] | $10,582 | 07/23/2019 |
| McDermott International Inc. | 2/19/2020[140] | $391,655[141] | $114,002.50 | 09/08/2020 |
| Sheridan Holding Company I, LLC | 4/2/2020[142] | $11,779.50[143] | $3,565 | 07/13/2020 |

---

[136] *In re Westmoreland Coal Company, et al.*, No. 18-35672, Dkt. 376.
[137] *Id.* at Dkt. 2162 (Jackson Walker application for fees) 2249 (order awarding fees).
[138] *In re Jones Energy, Inc., et al.*, No. 19-32112, Dkt. 125.
[139] *Id.* at Dkt. 242 (Jackson Walker application for fees); Dkt. 251 (order awarding fees).
[140] *McDermott*, No. 20-30336, Dkt. 424.
[141] *Id.* at Dkt. 991 (Jackson Walker application for fees); Dkt. 1021 (order awarding fees).
[142] *In re Sheridan Holding Company, I, LLC*, No. 20-31884, Dkt. 130.
[143] *Id.* at Dkt. 162 (Jackson Walker application for fees); Dkt. 213 (order awarding fees).

| | | | | |
|---|---|---|---|---|
| Whiting Petroleum Corporation | 4/17/2020[144] | $695,091.50[145] | $36,115 | 11/06/2020 |
| Hornbeck Offshore Services, Inc. | 6/1/2020[146] | $61,428[147] | $4,727.50 | 08/11/2020 |
| Stage Stores Inc. | 6/4/2020[148] | $182,655.50[149] | $29,295 | 12/16/2020 |
| Neiman Marcus Group LTD, LLC | 6/3/2020[150] | $380,573.50[151] | $49,910 | 12/10/2020 |
| J.C. Penny Company, Inc. | 6/11/2020[152] | $1,087,263[153] | $286,159 | 04/08/2021 |
| Chesapeake Energy Corporation | 7/16/2020[154] | $912,742[155] | $192,258 | 04/20/2021 |
| Covia Holdings Corporation | 7/21/2020[156] | $325,181[157] | $51,021 | 04/07/2021 |
| Volusion, LLC | 8/26/2020[158] | $339,428[159] | $62,897 | 02/26/2021 |
| Denbury Resources Inc. | 8/28/2020[160] | $124,321.50[161] | $37,122.50 | 11/25/2020 |

---

[144] *Whiting*, No. 20-32021, Dkt. 173

[145] *Id.* at Dkt. 796 (Jackson Walker application for fees); Dkt. 840 (order awarding fees).

[146] *In re Hornbeck Offshore Services, Inc., et al.*, No. 20-32679, Dkt. 132.

[147] *Id.* at Dkt. 270 (Jackson Walker application for fees); Dkt. 283 (order awarding fees).

[148] *In re Stage Stores,* Inc., et al., No. 20-32564, Dkt. 385.

[149] *Id.* at Dkt. 931 (Jackson Walker application for fees); Dkt. 983 (order awarding fees).

[150] *In re Neiman Marcus Group LTD, LLC., et al.*, No. 20-32519, Dkt. 750.

[151] *Id.* at Dkt. 2046 (Jackson Walker application for fees); Dkt. 2147 (order awarding fees).

[152] *In re JC Penny, Company Inc.*, No. 20-20182, Dkt. 685.

[153] *Id.* at Dkt. 2739 (Jackson Walker application for fees); Dkt. 2874 (order awarding fees).

[154] *In re Chesapeake Energy Corporation*, No. 20-33233, Dkt. 370.

[155] *Id.* at Dkt. 3303 (Jackson Walker application for fees); Dkt. 3509 (order awarding fees).

[156] *In re Covia Holdings Corporation, et al.*, No. 20-33295, Dkt. 195.

[157] *Id.* at Dkt. 1205 (Jackson Walker application for fees); Dkt. 1304 (order awarding fees).

[158] *In re Volusion, LLC*, No. 20-50082, Dkt. 74.

[159] *Id.* at Dkt. 166 (Jackson Walker application for fees); Dkt. 172 (order awarding fees).

[160] *In re Denbury Resources Inc., et al.*, No. 20-33801, Dkt. 238.

[161] *Id.* at Dkt. 363 (Jackson Walker application for fees); Dkt. 384 (order awarding fees); Dkt. 407 (supplemental application); Dkt. 442 (order awarding supplemental fees).

| | | | |
|---|---|---|---|
| iQor Holdings Inc. | 9/28/2020[162] | $63,842[163] | $1,670 | 12/30/2020 |
| Bouchard Transportation Co., Inc. | 10/28/2020[164] | $436,790[165] | $23,380 | 11/12/2021 |
| Mule Sky LLC (Gulfport Energy) | 12/11/2020[166] | $765,173.50[167] | $54,525.50 | 08/23/2021 |
| Seadrill Partners, LLC | 12/23/2020[168] | $286,885[169] | $28,223 | 08/10/2021 |
| Seadrill Limited | 3/8/2021[170] | $501,242[171] | $5,594.50 | 01/07/2022 |
| Brilliant Energy, LLC | 4/13/2021[172] | $186,363.50[173] | $0 | 12/30/2022 |
| Katerra Inc. | 6/29/2021[174] | $858,653.01[175] | $0 | 01/28/2022 |
| Basic Energy Services, Inc. | 12/13/2021[176] | $1,543,432.34[177] | $0 | 09/29/2022 |
| Strike LLC | 1/6/2022[178] | $875,026[179] | $0 | 08/18/2022 |

---

[162] *In re iQor Holdings Inc., et al.,* No. 20-34500, Dkt. 154.

[163] *Id.* at Dkt. 233 (Jackson Walker application for fees); Dkt. 252 (order awarding fees).

[164] *In re Bouchard Transportation Co., Inc., et al.,* No. 20-34682, Dkt. 173.

[165] *In re Tug Robert J. Bouchard, Corporation,* No. 20-34758, Dkt. 29 (Jackson Walker application for fees); Dkt. 63 (order awarding fees).

[166] *In re Gulfport Energy Corporation,* No. 20-35562, Dkt. 390.

[167] *In re Mule Sky LLC, et al.,* No. 20-35561, Dkt. 10 (Jackson Walker application for fees); Dkt. 212 (order awarding fees).

[168] *In re Seadrill Partners, LLC, et al.,* No. 20-35740, Dkt. 110.

[169] *Id.* at Dkt. 643 (Jackson Walker application for fees); Dkt. 690 (order awarding fees).

[170] *In re Seadrill Limited, et al.,* No. 21-30427, Dkt. 250.

[171] *Id.* at Dkt. 1281 (Jackson Walker application for fees); Dkt. 1340 (order awarding fees).

[172] *In re Brilliant Energy, LLC,* No. 21-30936, Dkt. 68.

[173] *Id.* at Dkt. 234 (Jackson Walker application for fees); Dkt. 241 (order awarding fees)

[174] *In re Katerra Inc., et al.,* No. 21-31861, Dkt. 289.

[175] *Id.* at Dkt. 1523 (Jackson Walker application for fees); Dkt. 1639 (order awarding fees).

[176] *In re Basic Energy Services, Inc., et al.,* No. 21-90002, Dkt. 809.

[177] *Id.* at Dkt. 1459 (Jackson Walker application for fees) Dkt. 1511 (order awarding fees).

[178] *In re Strike LLC, et al.,* No. 21-90054, Dkt. 363.

[179] *Id.* at Dkt. 1220 (Jackson Walker application for fees); Dkt. 1248 (order awarding fees).

| | | | | |
|---|---|---|---|---|
| Seadrill   New Finance Limited | 2/8/2022[180] | $27,286[181] | $0 | 02/21/2022 |
| 4E   Brands Northamerica LLC | 3/24/2022[182] | $859,425.5[183] | $0 | 12/29/2022 |
| Sungard   AS New Holdings | 5/10/2022[184] | $414,495[185] | $0 | 12/30/2022 |
| LaForta   — Gestao   e Investments | 7/15/2022[186] | $505,907.50[187] | $0 | 10/04/2023 |
| **Total** | | **$12,608,299.45** | **$1,120,677.00** | |

95.     For its part, Kirkland was awarded over $162 million in attorneys' fees as lead counsel in cases in which Jackson Walker served as co-counsel before Judge Jones. Kirkland & Ellis partners knew about the intimate relationship between Jones and Walker, yet failed to disclose the relationship or include it in their declaration of disinterestedness even though it was lead counsel overseeing the reorganization.

| Bankruptcy Debtor | Kirkland & Ellis Application for Appointment | Fees Awarded to Kirkland Ellis by Judge Jones | Date of Final Fee Award |
|---|---|---|---|
| Westmoreland Coal Company | 10/22/2018[188] | $9,495,567.65[189] | 8/20/2019[190] |

---

[180] *In re Seadrill New Finance Limited, et al.,* No. 22-90001, Dkt. 94.
[181] *Id.* at Dkt. 99 (Jackson Walker application for fees); Dkt. 121 (order awarding fees).
[182] *In re 4E Brands North America LLC,* No. 22-50009, Dkt. 72.
[183] *Id.* at Dkt. 391 (Jackson Walker application for fees); Dkt. 427-1 (order awarding fees).
[184] *In re Sungard AS New Holdings, et al.,* No. 22-90018, Dkt. 211.
[185] *Id.* at Dkt. 850 (Jackson Walker application for fees); Dkt. 897 (order awarding fees).
[186] *In re LaForta Gestao e Investmentimentos Sociedade Unipessoal LDA,* No. 22-90126, Dkt. 67.
[187] *Id.* at Dkt. 286 (Jackson Walker application for fees); Dkt. 298 (order awarding fees).
[188] *Westmoreland Coal Company,* No. 18-35672, Dkt. 227
[189] *Id.* at Dkt. 2278
[190] *Id.*

| | | | |
|---|---|---|---|
| Jones Energy | 4/23/2019[191] | $1,192,125.00[192] | 7/2/2019[193] |
| McDermott International Inc. | 2/19/2020[194] | $8,257,742.50[195] | 9/8/2020[196] |
| Sheridan Holding Company I, LLC | 4/1/2020[197] | $158,486.50[198] | 5/28/2020[199] |
| Whiting Petroleum Corporation | 4/16/2020[200] | $10,461,562.00[201] | 10/29/2020[202] |
| Hornbeck Offshore Services, Inc. | 5/26/2020[203] | $1,476,937.00[204] | 8/11/2020[205] |
| Stage Stores LLC | 5/28/2020[206] | $1,966,436.00[207] | 12/16/2020[208] |
| Neiman Marcus Group LTD, LLC | 6/3/2020[209] | $10,334,120.00[210] | 12/10/2020[211] |
| J.C. Penny Company, Inc. | 6/11/2020[212] | $17,581,886.00[213] | 4/7/2021[214] |

[191] *Jones Energy,* No. 19-32112, Dkt. 121.
[192] *Id.* at Dkt. 250.
[193] *Id.*
[194] *McDermott International Inc.,* No. 20-30336, Dkt. 428.
[195] *Id.* at Dkt. 1020.
[196] *Id.*
[197] *Sheridan Holding Company, I, LLC,* No. 20-31884, Dkt. 125.
[198] *Id.* at Dkt. 185.
[199] *Id.*
[200] *Whiting Petroleum Corporation,* No. 20-32021, Dkt. 153.
[201] *Id.* at Dkt. 832.
[202] *Id.*
[203] *Hornbeck Offshore Services, Inc.,* Dkt. 118
[204] *Id.* at Dkt. 282.
[205] *Id.*
[206] *Stage Stores LLC,* No. No.20-32564, Dkt.*351*
[207] *Id.* at Dkt. 984
[208] *Id.*
[209] *Neiman Marcus Group LTD,* No. 20-32519, Dkt. 748.
[210] *Id.* at Dkt. 2146.
[211] *Id.*
[212] *JC Penny, Company Inc.,* No. 20-20182, Dkt. 684.
[213] *Id.* at Dkt. 2865.
[214] *Id.*

| | | | |
|---|---|---|---|
| Chesapeake Energy Corporation | 7/16/2020[215] | $23,448,619.50[216] | 4/26/2021[217] |
| Covia Holdings Corporation | 7/8/2020[218] | $14,962,568.00[219] | 3/8/2021[220] |
| Denbury Resources Inc. | 8/28/2020[221] | $2,148,213.50[222] | 11/25/2020[223] |
| iOor Holdings Inc. | 9/28/20202[224] | $886,010.00[225] | 1/8/2021[226] |
| Bouchard Transportation Co., Inc. | 10/27/2020[227] | $3,441,866.00[228] $3,214,819.00[229] | 3/15/2021[230] 6/10/2021[231] |
| Mule Sky LLC (Gulfport Energy) | 12/17/2020[232] | $15,605,476.00[233] | 7/21/2021[234] |
| Seadrill Partners, LLC | 12/23/2020[235] | $2,219,555.00[236] | 8/03/2021[237] |

---

[215] *Chesapeake Energy Corporation,* No. 20-33233, Dkt. 372.

[216] *Id.* at Dkt. 3541.

[217] *Id.*

[218] *Covia Holdings Corporation,* No. 20-33295, Dkt. 125.

[219] *Id.* at Dkt. 1232.

[220] *Id.*

[221] *Denbury Resources Inc.,* No. 20-33801, Dkt. 234.

[222] *Id.*  at Dkt. 382.

[223] *Id.*

[224] *iOor Holdings Inc.,* No. 20-34500, Dkt 152

[225] *Id.* at Dkt. 259

[226] *Id.*

[227] *Bouchard Transportation Co., Inc.,* No. 20-34682, Dkt. 167.

[228] *Id.* at Dkt. 658 (Order Granting First Interim Fee Award)

[229] *Id.* at Dkt 967 (Order Granting Second Interim Fee Award)

[230] *Id.* at Dkt. 658 (Order Granting First Interim Fee Award)

[231] *Id.* at Dkt 967 (Order Granting Second Interim Fee Award)

[232] *Mule Sky LLC (Gulfport Energy),* 20-35562 at Dkt. 460.

[233] *Mule Sky LLC,* No. 20-3556, at Dkt. 72.

[234] *Id.*

[235] *Seadrill Partners, LLC,* No. 20-35740, Dkt. 107.

[236] *Id.*  at Dkt. 674.

[237] *Id.*

| Seadrill Limited | 3/8/2021[238] | $22,613,288.23[239] | 12/28/2020[240] |
|---|---|---|---|
| Katerra Inc. | 6/25/2021[241] | $12,920,192.21[242] | 1/26/202[243] |
| Seadrill New Finance Limited | 2/8/2022[244] | $212,994.00[245] | 3/10/2022[246] |
| Total | | $162,598,464.09 | |

96.     The Defendants' wrongful conduct in furtherance of the Jones-Freeman-Jackson Walker-Kirland & Ellis Enterprise, including the predicate acts described herein, was a direct and substantial cause of injury to Plaintiff. Defendants intended to enrich themselves at the expense of the bankruptcy estate and creditors, such as Plaintiff. As a foreseeable result of Defendants' conduct, Plaintiff was deprived of the opportunity to have bankruptcy proceedings determined on the merits free from the influence of interested parties. Additionally, as a foreseeable result of Defendants' conduct, Plaintiff's financial recovery as a bankruptcy creditor was reduced because the bankruptcy estate available to pay creditors, including Plaintiff, was diminished by the fees improperly awarded to Jackson Walker, Freeman, and Kirkland & Ellis by Judge Jones.

---

[238] *Seadrill Limited,* No. 21-30427, Dkt. 242
[239] *Id.* at Dkt.1325
[240] *Id.*
[241] *Katerra Inc.,* No. 21-31861, Dkt. 244.
[242] *Id..* at Dkt. 1631.
[243] *Id.*
[244]   *Seadrill New Finance Limited,* No. 22-90001, Dkt. 92.
[245]   *Id.*  at Dkt. 106.
[246]   *Id.*

97.     At all relevant times, the Enterprise engaged in interstate commerce and the activities of the Enterprise affected interstate commerce. Defendants' conduct in furtherance of the goals of the Enterprise included, but was not limited to, the following actions affecting interstate commerce:

(1) Out of state litigants appeared before Judge Jones.[247]

(2) Defendants Freeman, Jackson Walker, and Kirkland & Ellis represented out-of-state litigants in bankruptcy proceedings before Judge Jones.[248]

(3) Defendants caused the movement of money, including attorneys' fees and bankruptcy estate assets, from one state to another.

(4) Defendants caused the transfer of services from one state to another.

98.     Defendants' predicate acts were related to each other in that they involved the same pattern of using mail and wire communications to perpetuate the frauds that Defendants Jackson Walker, Freeman, and Kirkland & Ellis were not interested parties in proceedings before Judge Jones, that Judge Jones was not subject to recusal in cases involving Defendants Jackson Walker and Freeman because of his intimate relationship with Freeman, and that positions and funds were being awarded/approved to

---

[247] *See U.S. v. Stratton,* 649 F.2d 1066, 1075 fn. 12 (5th Cir. 1981) (finding "ample evidence" of a connection between racketeering acts involving bribery of judge and interstate commerce where, among other things, out-of-state-litigants appeared before the judge).
[248] *Id.*

Defendants Jackson Walker, Freeman, and Kirkland & Ellis based solely on the evidence and merits and not due to influence and self-dealing.

99.     As described in this Complaint, Defendants' pattern of racketeering activity includes, but is not limited to, two or more violations of 18 U.S.C. § 1503 (obstruction of justice), § 1341 (mail fraud), § 1343 (wire fraud), § 152 (bankruptcy fraud) and § 1346 (honest services fraud).

### Violations of 18 U.S.C. § 1503 (Obstruction of Justice)

100.    Defendants have committed multiple instances of obstruction of justice in violation of 18 U.S.C. § 1503 which also constitutes racketeering activity within the meaning of 18 U.S. C. § 1961(1). Section 1503 prohibits any person from influencing, obstructing, impeding or intimidating any officer of a federal court in the discharge of his duty.[249]

101.    Defendants violated 18 U.S.C. § 1503(a) through acts of influence as set forth in this Complaint, which acts include, but are not limited to, the following:

    a.  Freeman used her intimate, personal relationship with Judge Jones to influence favorable rulings in cases where she or Defendants Jackson Walker and/or Kirkland & Ellis appeared before Judge Jones.

    b.  Defendants Jackson Walker and Kirland & Ellis used their knowledge of the relationship between Freeman and Judge Jones to influence Judge

---

[249] 18 U.S.C. § 1503(a).

Jones to issue favorable rulings in cases where Defendants Jackson Walker and/or Kirkland & Ellis appeared before Judge Jones.

c.  Defendant Jackson Walker influenced Judge Jones to make rulings that were favorable to Jackson Walker and its clients by offering lucrative payments and prestigious case assignments to Freeman that indirectly benefitted Judge Jones.

d.  All Defendants knowingly and deliberately concealed, or failed to properly reveal, the existence of an intimate, personal relationship between Freeman and Judge Jones, thereby influencing officers of the bankruptcy court to permit the assignment of cases involving Defendants Freeman, Jackson Walker, and/or Kirkland & Ellis to Judge Jones' court.

102.   Judge Jones was an "officer in or of" a federal district court within the meaning of 18 U.S.C. § 1503 prohibiting influencing, impeding or intimidating any officer of a federal court in the discharge of his duty.

103.   These acts of influence obstructed justice and were at the heart of Defendants' scheme to enrich and benefit themselves through the issuance of favorable appointments and rulings from Judge Jones.

**Violations of 18 U.S.C. § 1341 (Mail Fraud)**

104.   Defendants have committed multiple instances of mail fraud in violation of 18 U.S.C. § 1341 which also constitutes racketeering activity within the meaning of 18 U.S.C. § 1961(1).

105.   For purpose of executing and attempting to execute their course of conduct, Defendants would, and did, knowingly cause to be placed in any Post Office or authorized depository for mail, items to be sent and delivered by the United States Postal Services, including but not limited to: (i) matters used to communicate with each other as co-conspirators and to further the goals of the Enterprise, (ii) matters used to communicate with clients and potential clients regarding the favorable outcomes Defendants Freeman, Jackson Walker, and/or Kirkland & Ellis have and would be able to obtain in proceedings before Judge Jones, (iii) matters containing misrepresentations or omissions regarding the relationship that existed between Freeman and Judge Jones, and (iv) invoices and billing materials reflecting fees sought and awarded to Defendants.

106.   Defendant's scheme to defraud was dependent upon information and documents passed by mail, in furtherance of Defendants' deceptive scheme, including, but not limited to, the following:

a.   <u>Application to be Appointed as Co-Counsel and Conflicts Counsel for Debtors and Debtors in Possession</u> prepared by Jackson Walker and signed by Jackson Walker partner, Matthew Cavenaugh, and filed in the United States Bankruptcy Court for the Southern District of Texas on or about February 19, 2020 in the McDermott bankruptcy.[250] Under the rules governing a bankruptcy proceeding, a firm seeking to be employed by a

---

[250] *McDermott*, 20-30336, Dkt. 424.

debtor or debtor in possession must show that it is disinterested and must disclose all connections. Jackson Walker submitted a declaration of disinterestedness disclosing conflicts of interest in the Firm's application for appointment; but did not disclose the intimate relationship between the Jackson Walker partner and the judge overseeing the case.[251] To the contrary, Jackson Walker affirmatively stated it was a disinterested party.

b.  <u>Application for an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession</u> prepared by Kirkland & Ellis and e-filed by Jackson Walker partner Cavenaugh on February 19, 2020.[252] Even though its partners long knew of the Jones-Freeman relationship, Kirkland & Ellis partner Sussberg submitted a declaration of disinterestedness that did not identify the relationship between Judge Jones and its local counsel's partner Freeman, even while discussing a conflicts search involving bankruptcy judges.[253]

c.  <u>Order Appointing Jackson Walker as Co-Counsel and Conflicts Counsel for Debtors and Debtors in Possession</u> entered by Judge Jones on March 9, 2020

---

[251] *Id.* at Dkt. 424-2.
[252] *Id.* at Dkt. 428.
[253] *Id.* at Dkt. 428-1 at ¶ 28.

in the McDermott bankruptcy.[254] In the Order, Judge Jones instructed Jackson Walker to periodically review its files to ensure that no conflict or other disqualifying circumstances exists.[255] Judge Jones instructed Jackson Walker to promptly supplement its declaration of disinterestedness if any new relevant facts or relationships are uncovered or arise. Judge Jones did not disclose in the Order the intimate relationship he was having with Jackson Walker partner, Freeman.[256]

d.  Application for Attorneys' Fees filed on August 14, 2020 by Cavanaugh on behalf of Jackson Walker in the McDermott bankruptcy.[257] The application requested over $400,000 in fees and expenses for less than two months work including $114,002.50 in fees for Freeman.[258] The application did not disclose the intimate relationship between Judge Jones and Jackson Walker partner, Freeman and did not trigger Jackson Walker to amend its declaration of disinterestedness.

e.  Application for Attorneys' Fees filed on August 14, 2020 by Cavenaugh on behalf of Kirkland & Ellis for $8.2 million in attorneys' fees and $142,428.01 in expenses.[259] Kirkland & Ellis partner Sussberg submitted a supporting

---

[254] *Id.* at Dkt. 591.
[255] *Id.* at 2.
[256] *Id.* at Dkt. 991.
[257] *Id.*
[258] *Id.*
[259] *Id.* at Dkt. 990.

declaration without disclosing the Jones-Freeman relationship or amending

its declaration of disinterestedness.[260]

f.   <u>Orders Awarding Attorneys' Fees</u> to Kirkland & Ellis and Jackson Walker for

the full amounts requested, entered by Judge Jones on September 8, 2020 in

the McDermott bankruptcy.[261] In the orders, Judge Jones did not disclose

that he was awarding fees to his intimate partner, Freeman, and to his intimate

partner's firm, Jackson Walker.

g.   <u>Motion for Final Decree</u> to close bankruptcy proceedings filed by Michael

Cavenaugh on behalf of Jackson Walker and Kirkland & Ellis on September

16, 2022 in the McDermott bankruptcy.[262] Despite admitted knowledge of

the intimate relationship between Judge Jones and its partner, Freeman, at

this time and in violation of its continuing responsibility to supplement its

declaration of disinterestedness if new information or relationships are

uncovered, neither Jackson Walker nor Kirkland & Ellis disclosed the

relationship between Judge Jones and Freeman.

h.   <u>Final Decree</u> entered by Judge Jones closing the McDermott bankruptcy on

October 5, 2022, again not disclosing the relationship.[263]

---

[260] *Id.* at Dkt. 990 Ex. A.
[261] *Id.* at Dkt. 1020, 1021.
[262] *Id.* at Dkt. 1126.
[263] *Id.* at Dkt. 1128.

107.   These mail communications were part and parcel of Defendants' scheme to defraud Plaintiff and benefit themselves through the issuance of improper rulings from Judge Jones that favored his romantic and domestic partner, Freeman, and the firm for which she worked, Jackson Walker.

## Violations of 18 U.S.C. § 1343 (Wire Fraud)

108.   Defendants have committed multiple instances of wire fraud in violation of 18 U.S.C. § 1343 which also constitutes racketeering activity within the meaning of 18 U.S.C. § 1961(1).

109.   For purpose of executing and attempting to execute their scheme to defraud creditors including Plaintiff, through material deceptions, Defendants would, and did, knowingly transmit and cause to be transmitted in interstate commerce by means of wire "transmissions" communications including but not limited to: (i) emails and telephone calls used to communicate with each other as co-conspirators and to further the goals of the Enterprise, (ii) emails and telephone calls used to communicate with clients and potential clients regarding the favorable outcomes Defendants Freeman, Jackson Walker, and Kirkland & Ellis have and would be able to obtain in proceedings before Judge Jones, (iii) electronic filings of documents containing misrepresentations or omissions regarding the relationship that existed between Freeman and Judge Jones, and (iv) electronic invoices and billing materials reflecting attorneys' fees sought by and awarded to Defendants.

110.   Defendant's scheme to defraud was dependent upon information and documents passed by wire in furtherance of Defendants' deceptive scheme, including, but not limited to, the following:

a.   <u>Application to be Appointed as Co-Counsel and Conflicts Counsel for Debtors and Debtors in Possession</u> prepared by Jackson Walker and signed by Jackson Walker partner, Matthew Cavenaugh, and filed in the United States Bankruptcy Court for the Southern District of Texas on or about February 19, 2020 in the McDermott bankruptcy.[264] Under the rules governing a bankruptcy proceeding, a firm seeking to be employed by a debtor or debtor in possession must show that it is disinterested and must disclose all connections. Jackson Walker submitted a declaration of disinterestedness disclosing conflicts of interest in the Firm's application for appointment; but did not disclose the intimate relationship between the Jackson Walker partner and the judge overseeing the case. To the contrary, Jackson Walker affirmatively stated it was a disinterested party.

b.   <u>Application for an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession</u> prepared by Kirkland & Ellis and e-

---

[264] *Id.* at Dkt. 424.

filed by Jackson Walker partner Cavenaugh on February 19, 2020.[265] Even though its partners long knew of the relationship, Kirkland & Ellis partner Sussberg submitted a declaration of disinterestedness that did not identify the relationship between Judge Jones and its local counsel's partner Freeman, even while discussing a conflicts search involving bankruptcy judges.[266]

   c. <u>Order Appointing Jackson Walker as Co-Counsel and Conflicts Counsel for Debtors and Debtors in Possession</u> entered by Judge Jones on March 9, 2020 in the McDermott bankruptcy.[267] In the Order, Judge Jones instructed Jackson Walker to periodically review its files to ensure that no conflict or other disqualifying circumstances exist.[268] Judge Jones instructed Jackson Walker to promptly supplement its declaration of disinterestedness if any new relevant facts or relationships are uncovered or arise.[269] Judge Jones did not disclose in the Order the intimate relationship he was having with Jackson Walker partner, Freeman.

   d. <u>Application for Attorney's Fees</u> filed on August 14, 2020 by Michael Cavanaugh on behalf of Jackson Walker in the McDermott bankruptcy.[270] The application requested over $400,000 in fees and expenses for less than

---

[265] *Id.* at Dkt. 428.
[266] *Id.* at Dkt. 428-1 at ¶ 28.
[267] *Id.* at Dkt. 591.
[268] *Id.* at 2.
[269] *Id.*
[270] *Id.* at Dkt. 991.

two months work including $114,002.50 in fees for Freeman.[271] The application did not disclose the intimate relationship between Judge Jones and Jackson Walker partner, Freeman, and did not trigger Jackson Walker to amend its declaration of disinterestedness.

e. <u>Application for Attorneys' Fees</u> filed on August 14, 2020 by Cavenaugh on behalf of Kirkland & Ellis for $8.2 million in attorneys' fees and $142,428.01 in expenses.[272] Kirkland & Ellis partner Sussberg submitted a supporting declaration without disclosing the Jones-Freeman relationship or amending its declaration of disinterestedness.[273]

f. <u>Orders Awarding Attorneys' Fees</u> to Kirkland & Ellis and Jackson Walker for the full amounts requested, entered by Judge Jones on September 8, 2020 in the McDermott bankruptcy.[274] In the orders, Judge Jones did not disclose that he was awarding fees to his intimate partner, Freeman, and to his intimate partner's firm, Jackson Walker.

g. <u>Motion for Final Decree</u> to close bankruptcy proceedings filed by Michael Cavenaugh on behalf of Jackson Walker and Kirkland & Ellis on September 16, 2022 in the McDermott bankruptcy.[275] Despite admitted knowledge of

---

[271] *Id.*
[272] *Id.* at Dkt. 990.
[273] *Id.* at Dkt. 990 Ex. A.
[274] *Id.* at Dkt. 1020, 1021.
[275] *Id.* at Dkt. 1126.

the intimate relationship between Judge Jones and  Freeman at this time, and in violation of its continuing responsibility to supplement its declaration of disinterestedness if new information or relationships are uncovered, neither Jackson Walker nor Kirkland & Ellis disclosed the relationship between Judge Jones and Freeman.

h. <u>Final Decree</u> entered by Judge Jones closing the McDermott bankruptcy on October 5, 2022, again not disclosing the relationship.

111.   These wire communications were part and parcel of Defendants' scheme to defraud Plaintiff and benefit themselves through the issuance of improper rulings from Judge Jones that favored his romantic partner, Freeman, the firm for which she worked, Jackson Walker, and lead counsel Kirkland & Ellis.

**Violations of 18 U.S.C. § 1346 (Honest Services Mail and Wire Fraud)**

112.   Defendants' scheme or artifice to defraud was designed and intended to deprive Plaintiff and the public of the intangible right of honest services in violation of 18 U.S.C. § 1341 (mail fraud), § 1343 (wire fraud) and § 1346 (honest services fraud). Plaintiff and all parties affected by the McDermott bankruptcy were entitled to honest services from the judge presiding over the bankruptcy and from the attorneys representing the debtor and debtor-in-possession.

113.   Defendants misused the intimate relationship between Judge Jones and Freeman for personal gain and advantage.  That is, Defendants deprive Plaintiff and the public of the intangible right of honest services by benefitting from the secret intimate

relationship between Freeman and Jones.  Defendants Jackson Walker, Kirkland & Ellis, and Freeman benefitted, directly or indirectly, by receiving financial compensation, enhanced status as bankruptcy attorneys, and favorable rulings for their clients due to the involvement of Judge Jones' intimate partner, Freeman.  Judge Jones, in turn, benefitted indirectly from the financial payments and enhanced opportunities afforded to Freeman by Jackson Walker and Kirkland & Ellis because of her involvement and influence in proceedings in his Court.

114.   Defendants' repeated representations of disinterestedness and failure to disclose the intimate relationship between the Judge Jones and Freeman were material, false representations made as part of the scheme. Indeed, "[l]itigants in all of our courts are entitled to expect that the rules will be followed, the required disclosures will be made, and that the court's decisions will be based on a record that contains all the information applicable law and regulations require."[276]

115.   Defendants unlawful and unfair practices are actionable, particularly where Defendants had a fiduciary duty to Plaintiff. As attorneys for the debtor-in-possession, Freeman and Jackson Walker owed a fiduciary duty to the bankruptcy estate and to Plaintiff as a creditor of the bankruptcy estate. As a federal judge, Judge Jones owed a

---

[276] *Alix v. McKinsey & Co.*, 23 F.4th 196, 204 (2d Cir. 2022) (denying Rule 12(b)(6) motion to dismiss against RICO/bankruptcy fraud allegation concerning fraudulent disclosure statement).

fiduciary duty to the public and to the litigants before him. Judge Jones owed a fiduciary duty to Plaintiff, before him as a creditor, in a bankruptcy case over which he presided.

116.    Defendants willfully participated in the scheme to deprive Plaintiff and the public of the intangible right of honest services through multiple acts of mail fraud and wire fraud as outlined above. Defendants' acts of honest services fraud were committed by use of the mails and wires as previously alleged.

### Violations of 18 U.S.C. § 152 (Bankruptcy Fraud)

117.    Defendants have committed multiple instances of bankruptcy fraud in violation of 18 U.S.C. §§ 152(2), 152(3) and 152(6) each of which also constitute racketeering activity within the meaning of 18 U.S. C. § 1961(1).

118.    Under 18 U.S.C. § 152(2) a defendant commits bankruptcy fraud if he or she "knowingly and fraudulently makes a false oath or account in or in relation to any case under title 11." Defendants committed acts of bankruptcy fraud by knowingly and fraudulently declaring that they were not interested parties in cases before Judge Jones despite awareness of the relationship between Freeman and Judge Jones. For example, Jackson Walker submitted a February 19, 2020 declaration of disinterestedness in the McDermott bankruptcy disclosing conflicts of interest in the Firm's application for appointment; but did not disclose the intimate relationship between the Jackson Walker partner and the judge overseeing the case. To the contrary, Jackson Walker affirmatively stated it was a disinterested party.

119.   Additionally, Kirkland & Ellis submitted a February 19, 2020 declaration of disinterestedness in the McDermott bankruptcy disclosing conflicts of interest in the Firm's application for appointment; but did not disclose the intimate relationship between the Jackson Walker partner and the judge overseeing the case. Even though its partners long knew of the relationship, Kirkland & Ellis failed to identify the relationship between Judge Jones and its local counsel's partner, Freeman, even while discussing a conflicts search involving bankruptcy judges.

120.   Defendants Jackson Walker, Freeman, and Kirkland & Ellis also committed acts of bankruptcy fraud by continuing to file pleadings and documents in Judge Jones court, including the August 14, 2020 applications for attorneys' fees and September 16, 2022 motion for final decree to close bankruptcy proceedings filed by Cavenaugh in the McDermott bankruptcy, and by continuing to engage in proceedings in Judge Jones' court without disclosing the relationship between Freeman and Judge Jones.

121.   Under 18 U.S.C. § 152(3) a defendant commits bankruptcy fraud if he or she "knowingly and fraudulently makes a false declaration, certificate, verification or statement under penalty of perjury…in or in relation to any case under Title 11." Defendants Jackson Walker, Freeman, and Kirkland & Ellis committed acts of bankruptcy fraud by knowingly and fraudulently declaring that the Firm was not an interested party in cases before Judge Jones or failing to disclose the Jones-Freeman relationship in the declarations of disinterestedness as set forth in the preceding paragraphs, despite awareness of the relationship between Freeman and Judge Jones.

Defendants Jackson Walker, Freeman, and Kirkland & Ellis also committed acts of bankruptcy fraud by continuing to file or allowing to be filed pleadings and documents in Judge Jones court, as set forth in the preceding paragraphs, and continuing to engage in proceedings in Judge Jones' court without disclosing the relationship between Freeman and Judge Jones.

122.   Judge Jones committed acts of bankruptcy fraud by finding that Jackson Walker and Freeman were disinterested parties despite knowledge of the relationship between himself and Freeman and by continuing to preside over cases involving Jackson Walker and Freeman despite the intimate relationship between himself and Freeman without ever disclosing the relationship.  Judge Jones' acts of bankruptcy fraud include his order appointing Jackson Walker as co-counsel and conflicts counsel for debtors and debtors in possession on March 9, 2020 in the McDermott bankruptcy without disclosing his intimate relationship with a Jackson Walker partner, Freeman.  They also include his September 8, 2020 order awarding Jackson Walker attorneys' fees (including fees billed by Freeman) without disclosing that he was awarding fees to his intimate partner, Freeman, and to his intimate partner's firm, Jackson Walker.

123.   Under 18 U.S.C. § 152(6) a defendant commits bankruptcy fraud if he or she "knowingly and fraudulently gives, offers, receives, or attempt to obtain any money or property, renumeration, compensation, reward, advantage, or promise thereof for acting or forbearing to act in any cause under title 11."  Defendants committed acts of bankruptcy fraud by knowingly and fraudulently giving (Judge Jones) and receiving

(Jackson Walker, Freeman, and Kirkland & Ellis directly, and Judge Jones indirectly through Freeman) attorneys' fees in the McDermott bankruptcy (including the August 14, 2020 applications for attorneys' fees filed by Cavenaugh and the September 8, 2020 order entered by Judge Jones awarding fees) and other advantageous appointments and rulings in bankruptcy proceedings.

124.    Defendants' racketeering activities described herein were the substantial and proximate cause of damages to Plaintiff, including but not limited to the improper appointment and award of attorneys' fees to Jackson Walker, Freeman, and Kirkland & Ellis. Further, because Defendants' conduct targeted the federal judiciary and the bankruptcy process in particular, "the judiciary's responsibility to superintend the integrity of the bankruptcy process lessens the plaintiff's burden to show a direct injury, at least at the pleading stage."[277]

125.    Plaintiff is entitled to and respectfully requests (1) three times his actual damages, (2) attorneys' fees, (3) pre-judgment and post-judgment interest, (4) costs, (5) disgorgement of profits and forfeiture of fees, (6) nominal damages, (7) any other damages permitted pursuant to 18 U.S.C. § 1964(c), and (8) such other and further relief as may be just and appropriate.

---

[277] *Id.* at 207 (cleaned up).

**COUNT II**
**CONSPIRACY TO ENGAGE IN A PATTERN OF RACKETEERING**
**ACTIVITY IN VIOLATION OF TITLE 18 US.C. § 1962(D)**
*(Against All Defendants)*

126.   Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs as though fully set forth herein.

127.   All Defendants conspired and agreed, either directly or indirectly, to commit a substantive offense under 18 U.S.C. § 1962(c) as described above.

128.   All Defendants did act in agreement by participating, either directly or indirectly, in the conduct of the affairs of said RICO enterprise through a pattern of racketeering activity, all in violation of 18 U.S.C. §§ 1962(b) and (d).

129.   From approximately 2017 or 2018 through the fall of 2023, all Defendants cooperated jointly and severally in the commission of two or more of the predicate acts that are itemized at 18 U.S.C. §§ 1961(1) (A) and (B), in violation of 18 U.S.C. § 1962(d) as previously set forth in Count I. Defendants committed these predicate acts as part of a continuous course of conduct that was a pattern of racketeering activities.

130.   Defendants' conspiracy to engage in racketeering activity through the predicate acts set forth in Count I were the substantial and proximate cause of damage to Plaintiff. Because Defendants' conduct targets the federal judiciary and the bankruptcy process in particular, "the judiciary's responsibility to superintend the integrity of the

bankruptcy process lessens the plaintiff's burden to show a direct injury, at least at the pleading stage."[278]

131.    Plaintiff is entitled to and respectfully requests (1) three times his actual damages, (2) attorneys' fees, (3) pre-judgment and post-judgment interest, (4) costs, and (5) any other damages permitted pursuant to 18 U.S.C. § 1964(c), (6) disgorgement of profits and forfeiture of fees, (7) nominal damages, and (8) such other and further relief as may be just and appropriate.

**COUNT III**
**COMMON LAW FRAUD**
*(Against All Defendants)*

132.    Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs as though fully set forth herein.

133.    Plaintiff alleges common-law fraud against all Defendants. In Texas, the elements of common law fraud are: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *Allstate Ins. Co v. Receivable Fin. Co. LLC*, 501 F.3d 398, 406 (5th Cir. 2007) (citing *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001)).

---

[278] *Alix*, 23 F.4th at 207 (cleaned up).

134.     The details of Defendants' material misrepresentations are set forth in more detail in Count I and the preceding sections, which are incorporated herein by reference. Defendants Jackson Walker and its partner Freeman, along with lead counsel in the reorganization Kirkland & Ellis, committed common-law fraud by knowingly declaring that Jackson & Walker was not an interested party in cases before Judge Jones and/or failing to disclose the relationship in the declarations of disinterestedness. For example, Jackson Walker submitted a February 19, 2020 declaration of disinterestedness in the McDermott bankruptcy disclosing conflicts of interest in the Firm's application for appointment; but did not disclose the intimate relationship between the Jackson Walker partner and the judge overseeing the case. To the contrary, Jackson Walker affirmatively stated it was a disinterested party.

135.     Additionally, Kirkland & Ellis submitted a February 19, 2020 declaration of disinterestedness in the McDermott bankruptcy disclosing conflicts of interest in the firm's application for appointment; but did not disclose the intimate relationship between the Jackson Walker partner and the judge overseeing the case. Even though its partners long knew of the relationship, Kirkland & Ellis failed to identify the relationship between Judge Jones and its local counsel's partner, Freeman, even while discussing a conflicts search involving bankruptcy judges.

136.     These were material representations in that the disclosure was required to secure appointment under the Bankruptcy Code. At the time the representations were made, Jackson Walker, Freeman, and Kirkland & Ellis knew about the relationship between

Judge Jones and Freeman, but nevertheless falsely represented the Firm was disinterested. Jackson Walker, Freeman, and Kirkland & Ellis made the representations with the intent that all parties to the bankruptcy would rely on it and not challenge the appointments. All parties to the bankruptcy, including Plaintiff, relied on the false representation, and thereby suffered injury by, among other things, Jackson Walker, Freeman, and Kirkland & Ellis securing appointment and receiving attorneys' fees from the bankruptcy estate awarded by Judge Jones, all without disclosure of the intimate relationship.

137.   Defendants Jackson Walker, Freeman, and Kirkland & Ellis also committed fraud by continuing to file or allow to be filed pleadings and documents in Judge Jones court, including the August 14, 2020 applications for attorneys' fees and the September 16, 2022 motion for final decree to close bankruptcy proceedings filed by Cavenaugh on behalf of Jackson Walker and Kirkland & Ellis in the McDermott bankruptcy, and continuing to engage in proceedings in Judge Jones' court without disclosing the relationship between Freeman and Judge Jones and without correcting the declarations of disinterestedness.

138.   These documents filed or allowed to be filed by Jackson Walker and Freeman while failing to correct the declarations of disinterestedness were material misrepresentations that the previously-filed disclosure of disinterestedness were valid. At the time the representations were made, Jackson Walker, Freeman, and Kirland & Ellis knew about the relationship between Judge Jones and Freeman, but nevertheless

falsely represented that there was no conflict involving Judge Jones and that Jackson Walker was disinterested by failing to correct the declarations of disinterestedness. Jackson Walker, Freeman, and Kirkland & Ellis made the representations with the intent that all parties to the bankruptcy would rely on them and not challenge the appointment, award of attorneys' fees, and other filings. All parties to the bankruptcy, including Plaintiff, relied on the false representations, and thereby suffered injury when, among other things, Jackson Walker, Freeman, and Kirkland & Ellis were appointed and awarded attorneys' fees from the bankruptcy estate by Judge Jones, all without disclosure of the intimate relationship.

139.   Judge Jones committed fraud by finding that Jackson Walker and Freeman were disinterested parties despite his knowledge of the relationship between himself and Freeman and by continuing to preside over cases involving Jackson Walker and Freeman despite the intimate relationship between himself and Freeman and without ever disclosing the relationship. Judge Jones' fraud includes his order appointing Jackson Walker as co-counsel and conflicts counsel for debtors and debtors in possession on March 9, 2020 in the McDermott bankruptcy without disclosing his intimate relationship with a Jackson Walker partner, Freeman.  By appointing Jackson Walker, he falsely represented that the Firm was disinterested when he knew that he was having an intimate relationship with Freeman, a partner of the Firm. Judge Jones made the representation with the intent that all parties to the bankruptcy would rely on it and not challenge the appointment. All parties to the bankruptcy, including Plaintiff,

relied on the false representation, and thereby suffered injury when, among other things, Jackson Walker was appointed and awarded attorneys' fees from the bankruptcy estate by Judge Jones, all without disclosure of the intimate relationship.

140.    Judge Jones also committed fraud in his September 8, 2020 order awarding Jackson Walker attorneys' fees (including fees billed by Freeman) without disclosing that he was awarding fees to his intimate partner, Freeman, and to his intimate partner's firm, Jackson Walker. By awarding Jackson Walker attorneys' fees, he falsely represented that the Firm was disinterested when he knew that he was having an intimate relationship with Freeman, a partner of the Firm. Judge Jones made the representation with the intent that all parties to the bankruptcy would rely on it and not challenge the award of attorneys' fees. All parties to the bankruptcy, including Plaintiff, relied on the false representation, and thereby suffered injury when Jackson Walker was awarded attorneys' fees from the bankruptcy estate by Judge Jones, all without disclosure of the intimate relationship.

141.    The foregoing misrepresentations were made willfully and with knowledge of their falsity when made. Alternatively, Defendants made these representations recklessly without any knowledge of the truth and as a positive assertion.

142.    Plaintiff is entitled to actual damages and exemplary damages based on Defendants' fraud. Tex. Civ. Prac. & Rem. Code § 41.003(a).  Plaintiff also requests disgorgement of profits and forfeiture of fees, nominal damages, and such other and further relief as may be just and appropriate.

## COUNT IV
## BREACH OF FIDUCIARY DUTY
*(Against All Defendants)*

143.   Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs as though fully set forth herein.

144.   Upon the filing of a chapter 11 petition, the debtor becomes a debtor-in-possession ("DIP") with fiduciary duties to its creditors. *Barron & Newburger, P.C. v. Tex. Skyline, Ltd. (In re Woerner),* 783 F.3d 266, 271 (5th Cir. 2015) (citing 11 U.S.C. §§ 1101, 1106–08).  Lawyers representing DIPs must have their employment approved by the bankruptcy court and must satisfy a host of obligations, including requirements to disclose all "connections" and to satisfy ethics standards, among others, prohibiting conflicts of interest. 11 U.S.C. §§ 101(14), 327

145.   As attorneys for, among other things, debtors-in-possession, Defendants Freeman, Jackson Walker, and Kirkland & Ellis owed a fiduciary duty to the bankruptcy estate and to Plaintiff as a creditor of the bankruptcy estate.

146.   Plaintiff, as a creditor of the bankruptcy estate, reposed confidence and trust in Defendants Freeman, Jackson Walker, and Kirkland & Ellis as conflicts counsel and/or counsel for the debtor-in-possession. Plaintiff relied, directly or indirectly, on Defendants Freeman, Jackson Walker, and Kirkland & Ellis to carry out their function as conflicts counsel and/or counsel for the debtor-in-possession in a manner that enabled the fair resolution of bankruptcy proceedings.

147.   Counsel for a debtor in possession owes a fiduciary duty to the estate and to creditors of the estate that includes, but is not limited to:

    a.  a duty to reveal known conflicts of interest with court professionals,

    b.  a duty to disclose acts of conversion, concealment, or misuse of estate property,

    c.  a duty to reveal matters having an adverse effect on the bankruptcy estate,

    d.  a duty to avoid actions that would wrongfully deplete the fund from which creditors were to be paid, and

    e.  a duty to avoid intentional wrongs.

148.   Defendants Freeman, Jackson Walker, and Kirkland & Ellis knew or should have known that creditors, such as Plaintiff, relied on their proper oversight and preservation of the bankruptcy estate from which creditors were to be paid and to reveal any matters adversely impacting the fair, impartial handling of the bankruptcy estate.

149.   Plaintiff relied on the false representations of Defendants Freeman, Jackson Walker, and Kirkland & Ellis as being disinterested parties in the bankruptcy proceedings before Judge Jones. Plaintiff relied on the false representations of Defendants Freeman, Jackson Walker, and Kirkland & Ellis as to the reasonableness and appropriateness of fees that were paid from the bankruptcy estate (thereby reducing the estate that was available to pay creditors such as Plaintiff), and that such fees were not the product of an undisclosed, intimate relationship between the petitioning attorney and her firm and the judge awarding them.

150.   As a federal judge, Judge Jones owed a fiduciary duty to the public and to the litigants before him. Judge Jones owed a fiduciary duty to Plaintiff who was before Judge Jones as a creditor in a bankruptcy proceeding presided over by Judge Jones.

151.   Judge Jones, as a federal bankruptcy judge, owed a fiduciary duty to the public and to the litigants who appeared in his courtroom. Such a duty embodies: (i) a duty of loyalty, which encompasses impartiality, (ii) a duty of candor, (iii) a duty of good faith and fair dealing, and (iv) a duty to refrain from all forms of self-dealing, including the duty to refrain from dealings benefiting persons (such as Freeman) who are closely identified with the fiduciary.

152.   Judge Jones owed a fiduciary duty to the public and to the litigants that appeared in his courtroom including, but not limited to:

a.  a duty to reveal conflicts of interest with litigants and/or their counsel,

b.  a duty to decide matters impartially based solely on the evidence,

c.  a duty to disqualify himself in a proceeding in which his impartiality might reasonably be questioned,

d.  a duty to disqualify himself from awarding compensation to a person with whom he is so connected as to render it improper for the judge to authorize such compensation,

e.  a duty to reveal matters having an adverse effect on the bankruptcy estate,

f.  a duty to avoid actions that would wrongfully deplete the estate from which creditors were to be paid,

g. a duty to avoid self-dealing, and

h. a duty to avoid intentional wrongs.

153. Judge Jones knew or should have known that Plaintiff, as a litigant in his court, relied on him to be free from influence or self-interest in overseeing bankruptcy proceedings, properly oversee and preserve the bankruptcy estate from which creditors were to be paid, and reveal any matters adversely impacting the fair and impartial adjudication of the bankruptcy estate.

154. Plaintiff relied on Judge Jones' implicit and explicit assurances that there were no undisclosed interested parties involved in the bankruptcy proceedings before Judge Jones. Plaintiff relied on the rulings of Judge Jones as to the reasonableness and appropriateness of fees that were paid from the bankruptcy estate (thereby reducing the estate that was available to pay creditors such as Plaintiff) to the other Defendants.

155. Defendants, each, breached their fiduciary duties by acts including, but not limited to:

a. securing the appointment of Defendants Freeman, Jackson Walker, and Kirkland & Ellis as attorneys on bankruptcy cases, including in the McDermott bankruptcy, before Judge Jones despite Judge Jones' having a personal and financial interest in the outcome of the case;

b. providing false or misleading information for purposes of deceiving the public, the judiciary, and bankruptcy creditors such as Plaintiff;

c.  withholding from Plaintiff and the public facts material to federal bankruptcy court decisions;

d.  Judge Jones failing to recuse or the law firms failing to move to disqualify Judge Jones where it was clear his impartiality might reasonably be questioned, and Judge Jones failing to recuse or the law firms failing to move to disqualify Judge Jones from awarding compensation to a law firm and individual with whom he was so connected as to render it improper for the judge to authorize such compensation;

e.  defrauding creditors such as Plaintiff;

f.  influencing the orders issued in bankruptcy proceedings for the benefit of Defendants (and clients represented by Defendants) and to the detriment of creditors such as Plaintiff;

g.  enhancing the status, reputation, and demand for the services of Defendants Freeman, Jackson Walker, and Kirkland & Ellis as bankruptcy attorneys by issuing rulings favorable to Defendants Freeman, Jackson Walker, and Kirkland & Ellis (and the clients they represented);

h.  profiting from the issuance of bankruptcy court rulings favoring Defendants and Defendants' clients,

i.  acting to benefit their own self-interest to the detriment of Plaintiff and other creditors;

j.  shielding themselves from public, judicial and governmental scrutiny relating to the relationship between Freeman and Judge Jones; and

k.  committing intentional wrongs.

156.  Defendants knew or should have known that creditors, such as Plaintiff, would be harmed by Defendants actions in breach of Defendants' fiduciary duties.

157.  As a direct and proximate result of Defendants' breaches of their fiduciary duties, Judge Jones improperly presided over a case in which his impartiality should have been reasonably questioned, and Plaintiff suffered damages including, but not limited to economic harm, monetary loss, emotional distress, and mental anguish. These proceedings were extremely stressful for Van Deelen. He sustained mental anguish damages as a result of the harsh treatment he received in court, and as a result of learning his case was litigated in a courtroom corrupted by fraud, in which the law firms, Freeman, and the judge conspired to enrich themselves, and with no level playing field for protesting creditors and investors.

158.  Plaintiff is entitled to and respectfully requests (1) compensatory damages, (2) damages for emotional distress and mental anguish, (3) punitive damages, (4) pre-judgment and post-judgment interest, (5) costs of suit, (6) disgorgement of profits and forfeiture of fees, (7) nominal damages, and (8) such other and further relief as may be just and appropriate.

## COUNT V
## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
*(Against Defendants Kirkland & Ellis, LLP and Kirkland & Ellis International, LLP)*

159. Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs as though fully set forth herein.

160. At all times Defendants Kirkland & Ellis, LLP and Kirkland & Ellis International, LLP (Kirkland & Ellis) were aware of the fiduciary duties owed to Plaintiff, the creditors, and other interested parties to the McDermott bankruptcy by Jackson Walker, Freeman, and Judge Jones.

161. Despite this knowledge, Kirkland & Ellis aided and abetted Jackson Walker, Freeman, and Judge Jones in their breach of their respective fiduciary duties owed to Plaintiff, the creditors, and other interested parties to the McDermott Bankruptcy.

162. As a direct and proximate result of Kirkland & Ellis' wrongful acts and omissions, Plaintiff suffered damages.

163. Plaintiff is entitled to and respectfully requests (1) compensatory damages, (2) damages for emotional distress and mental anguish, (3) punitive damages, (4) pre-judgment and post-judgment interest, (5) costs of suit, (6) disgorgement of profits and forfeiture of fees, (7) nominal damages and (8) such other and further relief as may be just and appropriate.

## COUNT VI
## <u>NEGLIGENT MISREPRESENTATION</u>
*(Against All Defendants)*

164.   Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs as though fully set forth herein.

165.   Defendants provided misleading and false information and/or omitted information regarding past or existing material facts relating to the intimate relationship between Freeman and Judge Jones.

166.   Defendants provided misleading and false information and/or omitted information by representing themselves to be disinterested.  Defendants negligently, carelessly, or without reasonable grounds for believing it to be true, misrepresented themselves as "disinterested" in the proceedings before Judge Jones

167.   Under the rules governing bankruptcy proceedings, for a firm to be employed by a debtor or debtor-in-possession, it must show that it is *disinterested* and must disclose all "connections[.]" 11 U.S.C. § 101(14), 327; Fed. R. Bankr. P. 2014 (requiring "a verified statement of the person to be employed setting forth the person's connections with the debtor, creditor, or any other party of interest").

168.   On February 19, 2020, a Jackson Walker partner, Cavenaugh, filed an application for Jackson Walker to be appointed as co-counsel and conflicts counsel in the Chapter 11 bankruptcy case filed on behalf of McDermott International, Inc.  Plaintiff was a creditor in that case.

169.   In connection with the McDermott bankruptcy case,  Cavanaugh e-filed a declaration of "disinterestedness," purporting to disclose any conflicts of interest in the Firm's application for appointment.   He did not disclose the intimate, domestic relationship between the Jackson Walker partner and the bankruptcy judge overseeing the case. Nor did Freeman, who actively worked on and billed in the case, disclose the intimate relationship between herself and Judge Jones.

170.   Cavenaugh also e-filed the application for Kirkland & Ellis to serve as lead counsel for McDermott, including a declaration of disinterestedness, completed by Kirkland & Ellis partner Sussberg, that did not identify the relationship between Judge Jones and Freeman

171.   Neither Freeman, nor Jackson Walker, nor Kirkland & Ellis as lead counsel, disclosed the intimate relationship between Freeman and Judge Jones in the McDermott case or in any other case in which they were counsel.

172.   On March 9, 2020, Judge Jones entered an order appointing Jackson Walker as co-counsel and conflicts counsel for McDermott.  Judge Jones did not disclose his intimate relationship with a partner of the firm he was appointing.  Instead, he fostered the false impression that conflicts would be taken seriously in his court by instructing Jackson Walker to "review its files periodically during the pendency of these chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, Jackson Walker LLP will

use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a)[.]"

173.    On March 17, 2020, Judge Jones entered an order authorizing the employment of Kirkland & Ellis as lead counsel for McDermott.  Again, Judge Jones did not disclose the intimate relationship between himself and co-counsel for McDermott.

174.    In August 2020, Jackson Walker filed an application for $391, 655 in attorneys' fees for less than two months of work.  Freeman accounted for 29% of Jackson Walker's billing, or $114,002.50.  Among her 147 hours, Freeman billed 2.7 hours for attending a January 23, 2020 telephonic hearing before Judge Jones.  While petitioning for these fees, neither Cavenaugh, nor Freeman, nor any attorney at Jackson Walker disclosed the intimate relationship between Judge Jones and the Jackson Walker partner.

175.    Also in August, 2020, Cavenaugh e-filed Kirkland & Ellis's application for $8.2 million in attorneys' fees and $142,428.01 in expenses.[279]  Kirkland & Ellis  partner Sussberg submitted a supporting declaration without disclosing the Jones-Freeman relationship.

176.    Judge Jones awarded Kirkland & Ellis and Jackson Walker their full fee requests (including Freeman's $114,002.50) on September 8, 2020, and adopted their proposed

---

[279] *Id.* at Dkt. 990 at 2.

orders verbatim.  Judge Jones did not disclose that he was awarding fees to the law firm where his girlfriend, with whom he shared a home, was a partner.

177.   Defendants had a duty to the Court, to Plaintiff and other creditors in the bankruptcy proceeding, and to the general public, to provide truthful, accurate and complete information about the intimate relationship between Freeman and Judge Jones because that relationship created a situation where Judge Jones' impartiality might reasonably be questioned.

178.   Defendants failed to exercise reasonable care by failing to provide truthful, accurate, and complete information about circumstances -- the relationship between Freeman, as counsel for one of the parties, and Judge Jones, as the presiding judge -- that could reasonably bear on the impartiality of the bankruptcy proceeding.

179.   Because of Defendants' failure to exercise reasonable care, the information provided to  the Court, the general public, and to creditors, including Plaintiff, regarding the relationship between Freeman and Judge Jones was misleading and/or false, including, but not limited to, the following:

    (a) affirmatively misrepresenting that Defendants were disinterested despite the intimate relationship between Freeman and Judge Jones,

    (b) omitting disclosure of the intimate relationship between Freeman and Judge Jones when such information called into question the impartiality of proceedings, and

    (c) failing to correct prior statements of disinterestedness once the relationship

between Freeman and Judge Jones became known.

180.    Defendants intended Plaintiff, and other creditors, to rely upon their misrepresentations of disinterestedness, so that Plaintiff, and other creditors, would not object to Jackson Walker and Kirkland & Ellis' representation of McDermott or seek the recusal of Judge Jones.

181.    All parties to the bankruptcy, including Plaintiff, reasonably relied on Defendants' false representations that they were disinterested, and remained ignorant to the truth of the intimate relationship between Judge Jones and the Jackson Walker partner.

182.    As a direct and proximate cause of Defendants' negligent misrepresentations, Plaintiff thereby suffered injury when, among other things, Jackson Walker and Kirkland & Ellis were appointed and awarded attorneys' fees from the bankruptcy estate by Judge Jones, all without disclosure of the intimate relationship.   Plaintiff suffered damages including, but not limited to economic harm, monetary loss, mental anguish, and emotional distress.

183.    Plaintiff is entitled to and respectfully requests (1) compensatory damages, (2) damages for emotional distress and mental anguish, (3) punitive damages, (4) pre-judgment and post-judgment interest, (5) costs of suit, (6) disgorgement of profits and forfeiture of fees, (7) nominal damages, and (8) such other and further relief as may be just and appropriate.

## COUNT VII
## PROFESSIONAL NEGLIGENCE
*(Against Defendants Jackson Walker, Kirkland & Ellis, LLP,*
*Kirkland & Ellis International, LLP, and Elizabeth Freeman)*

184.   Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs as though fully set forth herein.

185.   Defendants acts and omissions as pled above constitute legal malpractice and professional negligence.

186.   Defendants undertook to provide legal services for McDermott International, Inc. in connection with McDermott's Chapter 11 bankruptcy proceedings.

187.   At all relevant times, Defendants held themselves out as experts in the field of bankruptcy law.

188.   In the course of handling the bankruptcy matter for McDermott, Defendants negligently, intentionally and/or fraudulently made representations to Plaintiff that they were disinterested in the bankruptcy proceeding.   In reliance upon these representations, Plaintiff did not know, and had no reason to know, that Judge Jones was involved in an intimate relationship with one of McDermott's lawyers. Accordingly, Plaintiff was deprived of the opportunity to object to Jackson Walker and Kirkland & Ellis' representation of McDermott and/or to seek the disqualification of Judge Jones.

189.   Plaintiff avers that Defendants were negligent and/or committed malpractice in the following regards:

e. By failing to inform the Court and litigants, including Plaintiff, that Jackson Walker partner, Elizabeth Freeman, was involved in an intimate relationship with Judge Jones during the period that Defendants were representing McDermott in bankruptcy proceedings before Judge Jones,

f. By affirmatively representing to the Court, litigants and public that they were disinterested, despite the fact that Jackson Walker partner, Elizabeth Freeman, was involved in an intimate relationship with Judge Jones during the period that Defendants were representing McDermott in bankruptcy proceedings before Judge Jones,

g. By failing to correct prior statements of disinterestedness once the relationship between Freeman and Judge Jones became known,

190.   Defendants knew that as a creditor in McDermott's bankruptcy proceeding, Plaintiff was among a limited group that could reasonably have been expected to have access to Defendants' misrepresentations and could reasonably have been expected to act in reliance upon such misrepresentations.

191.   Each of the Defendants had a duty to provide legal services that a reasonable and prudent attorney would have provided under the same or similar circumstances. Defendants failed to provide legal services that a reasonably prudent attorney would have provided under the same or similar circumstances. Defendants conduct constitutes professional negligence and legal malpractice.

192.    As a direct and proximate result of Defendants' negligence and/or malpractice, Plaintiff suffered damages including, but not limited to economic harm, monetary loss, and emotional distress.

193.    Plaintiff is entitled to and respectfully requests (1) compensatory damages, (2) damages for emotional distress and mental anguish, (3) punitive damages, (4) pre-judgment and post-judgment interest, (5) costs of suit, (6) disgorgement of profits and forfeiture of fees, (7) nominal damages, and (8) such other and further relief as may be just and appropriate.

**COUNT VIII**
**COMMON-LAW CIVIL CONSPIRACY**
*(Against All Defendants)*

194.    Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs as though fully set forth herein.

195.    Plaintiff alleges a civil conspiracy against all Defendants in connection with (1) Jackson Walker, Freeman, and Kirkland & Ellis securing appointment before Judge Jones and collecting millions of dollars in attorneys' fees  from Judge Jones without any of the Defendants disclosing the Jones-Freeman intimate relationship and while affirmatively representing disinterestedness; and (2) Defendants' breaching their fiduciary duty to creditors including Plaintiff and other interested parties to the McDermott bankruptcy.

196.   The elements of civil conspiracy are (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result.[280]

197.   Defendants agreed to collect profit through the Jones-Freeman relationship by securing lucrative appointments before Judge Jones and millions of dollars in attorneys' fees, with all Defendants profiting directly or indirectly from the arrangement. Defendants had a meeting of the mind on the object of the conspiracy, unlawfully collecting millions in attorneys' fees and securing lucrative appointments—and on the course of action—failing to disclose the Jones-Freeman intimate relationship and affirmatively representing disinterestedness.

198.   These misrepresentations, including but not limited to the declaration of disinterestedness and subsequent pleadings and participation in proceedings made without amending the disclosures are unlawful, overt acts. The creditors, Plaintiffs, and other interested parties to the McDermott bankruptcy suffered damages as a proximate result, including but not limited to the improper appointment and award of attorneys' fees to Freeman, Jackson Walker, and Kirkland & Ellis. Further, because Defendants' conduct targets the federal judiciary and the bankruptcy process in particular, "the

---

[280] *United Biologics, L.L.C. v. Allergy & Asthma Network*, 819 F. App'x 204, 208 (5th Cir. 2020) (citing *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983)).

judiciary's responsibility to superintend the integrity of the bankruptcy process lessens the plaintiff's burden to show a direct injury, at least at the pleading stage."[281]

199.    Defendants also committed civil conspiracy to breach their fiduciary duty to creditors including Plaintiff and other interested parties to the McDermott bankruptcy by agreeing not to disclose the intimate Jones-Freeman relationship and to affirmatively represent disinterestedness while collecting unlawful profit. Defendants took one or more unlawful acts, including filing fraudulent declarations of disinterestedness and failing to amend them, and creditors, including Plaintiff, and other interested parties were damaged as the proximate result.

200.    Plaintiff is entitled to and respectfully requests actual damages, including mental anguish damages, nominal damages, and exemplary damages.

**COUNT IX**
**UNJUST ENRICHMENT**
*(Against All Defendants)*

201.    Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs as though fully set forth herein.

202.    Defendants enriched themselves at the expense of the bankruptcy estate and the creditors, such a Plaintiff. As a foreseeable result of Defendants' conduct, Plaintiff's recovery as a bankruptcy creditor was reduced because the bankruptcy estate available to pay creditors, including Plaintiff, was diminished by the fees improperly awarded to

---

[281] *Alix*, 23 F.4th at 207 (cleaned up).

Jackson Walker and Kirkland & Ellis by Judge Jones who was having an intimate relationship with and co-owned/shared a home with a Jackson Walker partner, Freeman.

203.   Defendants' wrongful and fraudulent conduct, as alleged in this Complaint, caused Defendants to become unjustly enriched and receive benefits that otherwise would not have been achieved. Specifically, Jackson Walker took $286,885 in attorneys' fees in the McDermott bankruptcy, including $28,223 in fees billed by Freeman, all without ever disclosing the Jones-Freeman relationship. On information and belief, Freeman received financial benefit from this case, and Judge Jones, as Freeman's intimate partner and co-owner of a shared home, received indirect benefits as well.

204.   Had the Defendants not engaged in the wrongful conduct, particularly had they revealed the existence of an intimate relationship between Judge Jones and Freeman who was a partner at Jackson Walker, Defendants Jackson Walker and Freeman would not have been awarded fees by Judge Jones.

205.   In equity and fairness, Defendants must return the fees wrongfully approved by Judge Jones and collected by Defendants Jackson Walker and Freeman for work on the McDermott bankruptcy case while Defendants were undisclosed, interested parties.

## COUNT X
## BIVENS CLAIM FOR INTERFERENCE WITH CONSTITUTIONAL RIGHTS
*(Against Judge Jones)*

206.   Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs as though fully set forth herein.

207.   This cause of action is brought under the United States Constitution pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971) for Judge Jones' violations of Plaintiff's clearly established rights under the Fifth and Fourteenth Amendments of the United States Constitution.

208.   The actions of Judge Jones violated Plaintiff of clearly established constitutional rights not to be deprived of life, liberty and property without due process of law and to not be deprived of the right to equal protection under the laws under the Fifth and Fourteenth Amendments of the United States Constitution.

209.   The acts and omissions of Judge Jones violated Plaintiff's rights under the Fifth and Fourteenth Amendments of the United States Constitution including, but not limited to, the following constitutional rights:

    a.   Deprivation of Plaintiff's property without due process of law,

    b.   Deprivation of Plaintiff's right to an unbiased tribunal,

    c.   Deprivation of Plaintiff's right to know opposing evidence,

    d.   Deprivation of Plaintiff's right to have a decision based exclusively on the evidence presented,

e.    Deprivation of Plaintiff's right to equal access to courts,

f.    Deprivation of Plaintiff's right to equal protection under the laws.

210.   Judge Jones violated the federal constitution through acts including, but not limited to: (i) influencing the assignment of bankruptcy cases so that cases involving clients of Defendant Jackson Walker and Freeman were heard in his court,   (ii) approving the payment of attorneys' fees to Defendants Jackson Walker and Freeman, (iii) making judicial decisions based on personal relationships and self-interest rather than the evidence presented, (iv) failing to disclose to Plaintiff and other creditors his intimate relationship with an attorney (Defendant Freeman) representing the debtor, and (v) issuing rulings favorable to Jackson Walker and Freeman to enhance the status and reputation of Freeman and Jackson Walker as bankruptcy attorneys so as to increase demand for their services.

211.   Judge Jones was a federal officer acting under color of federal authority at the time that he violated Plaintiff's Constitutional rights.

212.   Plaintiff sues Judge Jones in his personal capacity with regard to Plaintiff's *Bivens* claim against Judge Jones.

213.   Plaintiff lacks a statutory cause of action, or an available statutory cause of action does not provide a meaningful remedy for the unconstitutional actions of Judge Jones.

214.   An appropriate remedy, namely damages, can be imposed against Judge Jones for his unconstitutional actions against the Plaintiff.

215.   Plaintiff was damaged by Judge Jones' actions including, but not limited to, Plaintiff suffering a loss of his civil rights, suffering a deprivation of equal access to the courts, suffering a deprivation of due process, suffering monetary losses, and being caused emotional distress and pain and suffering.

216.   Plaintiff is entitled to and respectfully requests (1) compensatory damages, (2) punitive damages, (3) nominal damages, (4) reasonable attorneys' fees and costs, and (5) such other and further relief as may be just and appropriate.

## COUNT XI
## CONSPIRACY TO INTERFERE WITH CONSTITUTIONAL RIGHTS UNDER BIVENS
*(Against All Defendants)*

217.   Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs as though fully set forth herein.

218.   Beginning in approximately 2017 and continuing through approximately October 2023,  the exact dates being unknown to Plaintiffs, in Texas and elsewhere, Defendants did knowingly and intentionally and unlawfully combine, conspire, and agree, under color of federal and state law, to enrich themselves (and to elevate their status and reputation) by depriving Plaintiff of his constitutional rights to equal protection and due process in bankruptcy proceedings involving Defendants Freeman and Jackson Walker and presided over by Judge Jones.

219.   By the conduct described in the preceding counts, Defendants conspired and agreed together, whether directly or indirectly, for the purpose of enriching themselves

by depriving Plaintiff of his constitutional rights under the Fifth and Fourteenth Amendments of the United States Constitution.

220. Defendants' overt acts in furtherance of the conspiracy, as set forth in this Complaint, include but are not limited to the following:

    a. securing the appointment of Jackson Walker and/or Freeman as counsel on bankruptcy cases before Judge Jones despite Judge Jones' having a personal and financial interest in the outcome of the case;

    b. deceiving the public, the judiciary, and bankruptcy creditors such as Plaintiff,

    c. withholding from Plaintiff and the public facts material to federal bankruptcy court decisions,

    d. defrauding creditors such as Plaintiff,

    e. influencing the orders issued in bankruptcy proceedings for the benefit of Defendants (and clients represented by Defendants) and to the detriment of creditors such as Plaintiff,

    f. enhancing the status, reputation and demand for Defendants Jackson Walker and Freeman's services as bankruptcy attorneys by issuing rulings favorable to Defendants Jackson Walker and Freeman (and the clients they represented),

    g. profiting from the issuance of bankruptcy court rulings favoring Defendants and Defendants' clients,

h. securing large attorneys' fees that directly benefitted Jackson Walker, Kirkland & Ellis and Freeman and indirectly benefitted Judge Jones himself,

i. shielding themselves from public, judicial and governmental scrutiny of wrongful acts.

221.   Defendants' conspiracy to interfere with Plaintiff's constitutional rights included illegal actions including, but not limited to 18 U.S.C. § 1503 (obstruction of justice), § 1341(mail fraud), § 1343 (wire fraud), § 152 (bankruptcy fraud), and § 1346 (honest services fraud).

222.   As a direct and proximate result of Defendants' acts and omissions, Plaintiff suffered damages including, but not limited to, a loss of his civil rights, deprivation of equal access to the courts, deprivation of due process, monetary losses, emotional distress, and mental anguish.

223.   Plaintiff is entitled to and respectfully requests (1) compensatory damages, (2) punitive damages, (3) nominal damages, (4) reasonable attorneys' fees and costs, and (5) such other and further relief as may be just and appropriate.

### COUNT XII
### RESPONDEAT SUPERIOR AND/OR AGENCY LIABILITY
*(Against Defendants Jackson Walker, Kirkland & Ellis, LLP,*
*Kirkland & Ellis International, LLP)*

224.   Plaintiff repeats and realleges each and every allegation contained in the paragraphs above as if set forth here in full.

225.    Each of the entities named in this Complaint—Jackson Walker, LLP, Kirkland

& Ellis, LLP and Kirkland & Ellis International, LLP—is liable for the acts of its agents

under the doctrine of respondent superior and/or under agency law and/or for the acts

of its partners or employees.

226.    In the alternative, Jackson Walker, LLP and Kirkland & Ellis, their employees,

agents and ostensible agents engaged in joint ventures, joint enterprises, and/or are

liable under the direct corporate liability theory, conspiracy, and/or are liable under the

theory of respondeat superior.

## PRAYER FOR RELIEF

227.    WHEREFORE, PREMISES CONSIDERED, Plaintiff prays for the following

relief:

   a.    An order finding that Defendants' actions, as set out above, violate RICO

         (18 U.S.C. § 1962(a); constitute obstruction of justice (18 U.S.C. §1503),

         mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), bankruptcy

         fraud (18 U.S.C. § 152), and honest services fraud (18 U.S.C. § 1346); and

         constitute a conspiracy to commit RICO violations (18 U.S.C. § 1962(d)).

   b.    An order finding Defendants breached their fiduciary duties and

         committed fraud against Plaintiff.

   c.    An order finding Defendants violated Plaintiff's clearly established

         constitutional rights to due process and equal protection of the laws;

d.      Enter judgment against Defendants for monetary, actual, consequential, and compensatory damages, including mental anguish damages, caused by Defendants unlawful conduct.

e.      Order the disgorgement of profits and forfeiture of fees obtained by Defendants through wrongful conduct;

f.      Award Plaintiffs statutory damages;

g.      Award Plaintiffs nominal damages;

h.      Award Plaintiffs costs and expenses of suit;

i.      Award Plaintiffs pre and post-judgment interest; and

j.      Award such other and further relief to which Plaintiffs may be entitled at law or in equity.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

By:  /s/ Mikell A. West
Mikell A. West
Texas State Bar No. 24070832
S.D. Tex. Bar No. 1563058
Robert W. Clore
Texas State Bar No. 24012426
S.D. Tex. Bar No. 2032287
BANDAS LAW FIRM, P.C.
802 Carancahua Street, Suite 1400
Corpus Christi, Texas 78401
Telephone: (361) 698-5200
Facsimile: (361) 698-5222
mwest@bandaslawfirm.com
rclore@bandaslawfirm.com

## CERTIFICATE OF SERVICE

The undersigned attorney does hereby certify that a true and correct copy of the foregoing instrument was served on all parties or counsel of record as listed below, on the CM/ECF system, which provides for service on all parties or counsel of record in accordance with the electronic filing protocols in place, by certified mail, by fax, and/or U.S. regular mail, and/or any other proper method of service, on this the 11th day of January 2024.

***Via CM/ECF Notification*** &
***Via CMRRR 9589 0710 5270 0583 3634 83***
David R. Jones
6530 Rolla Street
Houston, Texas 77055