IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Michael D. Van Deelen, <br><br> Plaintiff, <br><br> v. <br><br> David R. Jones, Elizabeth Carol Freeman, Jackson Walker, LLP, Kirkland & Ellis, LLP, and Kirkland & Ellis International, LLP | Civil Action File <br> No. 4:23-cv-3729 <br><br><br> Jury Trial Demanded |

To the Honorable Alia Moses,
Chief United States District Judge:

## PLAINTIFF'S RESPONSE TO DEFENDANT DAVID R. JONES' MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(6)

Plaintiff Michael D. Van Deelen files this response to Defendant David R. Jones' Rule 12(b)(6) motion to dismiss.

### SUMMARY OF THE RESPONSE

1. Plaintiff has filed an amended complaint that moots Defendant Jones' argument for dismissal under Rule 12(b)(6). Plaintiff's First Amended Complaint focuses on a collaboration between the law firm Jackson Walker, its partner

Elizabeth Freeman, the law firm Kirkland & Ellis,[1] and Judge Jones (collectively "Defendants"), in furtherance of an illegal enterprise. Each member of the enterprise knew of the longstanding, intimate relationship between Jones and Freeman and had a duty to disclose it in bankruptcy proceedings, yet none did so. Through the secret Jones-Freeman conduit, Defendants were able to collect millions of dollars in fees and cement their places as leaders in mega-bankruptcies in the United States; all at the expense of creditors like Plaintiff Michael Van Deelen, and the United States bankruptcy system in general.

2. Jones seeks the cover of judicial immunity. But the facts alleged in Plaintiff's First Amended Complaint demonstrate plausible bases for overcoming his claimed immunity. First, Jones' participation in the corrupt enterprise included non-judicial acts. Indeed, Defendants' scheme to gain profits and prestige rested on the decidedly non-judicial act of Jones maintaining an intimate relationship with an attorney who regularly practiced in his Court. Additionally, Jones' failure to disclose the intimate relationship between himself and Freeman was a non-judicial, administrative matter in that all individuals and parties involved in a bankruptcy proceeding (not merely judges) are required to disclose conflicts. Lastly, because Jones was required to

---

[1] Defendants Kirkland & Ellis, LLP and Kirkland & Ellis International, LLP are referred to collectively herein as Kirkland & Ellis.

recuse himself but did not, his actions were taken in the absence of jurisdiction. For each of these reasons, judicial immunity does not entitle Jones to dismissal.

3.  Otherwise, Jones argues that "[t]o the extent that the Plaintiff seeks declaratory and injunctive relief regarding a prior court order, this action constitutes an inappropriate collateral attack on the ongoing appellate process, fails to include necessary parties, and cannot proceed."[2] This argument is mooted by Plaintiff's amended complaint, which does not seek declaratory or injunctive relief regarding a prior court order, and which is not a collateral attack on the ongoing appellate process.

## FACTUAL BACKGROUND

4.  This lawsuit follows perhaps the most significant bankruptcy scandal in U.S. history, as recently documented by the Fifth Circuit.[3] For years, the (recently-resigned) Chief Judge of the Bankruptcy Court for the Southern District of Texas, David R. Jones, awarded Jackson Walker, the law firm where his live-in girlfriend, Elizabeth Freeman, was a partner, millions of dollars in attorneys' fees. Neither Jones, nor Freeman, nor any law firm disclosed this long-term and ongoing personal and intimate relationship in any bankruptcy proceeding.

---

[2] Dkt. 9 at 1.
[3] *See* Dkt. 10-1.

5. Plaintiff Michael Van Deelen was a creditor in one of the bankruptcy cases before Judge Jones and lost his entire investment of 30,000 shares in McDermott International, Inc. stock. Van Deelen inadvertently uncovered the Jones-Freeman relationship after receiving an anonymous letter that he filed as an addendum to a motion to recuse Jones. Thereafter, Van Deelen filed this action initially against Jones alone for violations of his constitutional rights. Since then, it has become increasingly clear that Van Deelen and many others are the victims of a larger enterprise consisting of, at a minimum, Jones, Freeman, Jackson Walker, and Kirkland & Ellis.

6. Jones and Freeman plainly deceived the public and interested parties in bankruptcies by failing to disclose their relationship; but Jackson Walker and Kirkland & Ellis knew of the relationship and used it to profit.[4] Indeed, a recent article from the Financial Times confirmed:

> Jackson Walker said it had informed Kirkland about its 2021 inquiry into Freeman's relationship with Jones. Multiple Kirkland partners told the FT that they were long aware of the romantic relationship between the pair, though did not know how advanced it was. The Kirkland lawyers assumed the pair had received clearance from a superior court or decided that it was not Kirkland's place to intervene in Jackson's retention application.[5]

---

[4] *See* Dkt. 10 at 28–31; *see also* Sujeet Indap, The downfall of the judge who dominated bankruptcy in America, The Financial Times (Nov. 21, 2023), accessible at https://www.ft.com/content/574f0940-d82e-4e4a-98bd-271058cce434 (last visited Dec. 4, 2023).
[5] Indap, *supra* note 4; *see* Dkt. 10 at 28–29 (quoting article).

4

As described in Plaintiffs' Amended Complaint, Jackson Walker and Kirkland & Ellis brought in tens of millions of dollars (or more) through the Jones-Freeman conduit and said nothing of it. In fact, they affirmatively held themselves out as disinterested, leaving creditors and others who might object in the dark.

7. Judge Jones himself has said that "due to the sheer volume of cases and the issues involved, the bankruptcy process in the Southern District of Texas is heavily dependent upon the honesty and integrity of the lawyers that participate in the process."[6] It is critical then to "protect[] the integrity of the bankruptcy process itself against those who seek to take advantage through deception or nondisclosure."[7]

8. Unfortunately, Jones did not live by his words. In Jones' court, debtors received favorable treatment and attorneys got rich in a bankruptcy system akin to shipping lettuce by rabbits. This is not simply an ethical lapse. Nor is it an omission that can be fully redressed by the U.S. Trustee's efforts to claw back attorneys' fees in some of the bankruptcy proceedings. As described in Plaintiff's Amended Complaint, Jackson Walker, and even Kirkland & Ellis, who oversaw the bankruptcies as lead counsel, filed numerous misleading and dishonest federal court papers without disclosing the Jones-Freeman relationship, amounting to bankruptcy fraud, honest services fraud, mail and wire fraud, and obstruction of justice—

---

[6] *In re Decloutte*, No14-35557, 2018 Bankr. LEXIS 1869, *1 (Bankr. S.D. Tex. June 20, 2018) (J. Jones).
[7] *In re Edwards*, 510 B.R. 554, 558 (Bankr. S.D. Tex. Apr. 9, 2014)(J. Jones).

actionable under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Further, Jackson Walker, Kirkland & Ellis, Freeman, and Jones breached their fiduciary duties to the creditors and other interested parties in the bankruptcies, committed fraud, made negligent misrepresentations, committed professional malpractice, and were unjustly enriched. Plaintiff's Amended Complaint seeks the return of attorneys' fees, statutory damages, compensatory damages including mental anguish, and other damages in connection with Defendants' violations of RICO and breaches of fiduciary duty, among other cause of action.[8]

### LEGAL STANDARD

9. When a defendant files a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the trial court must assess whether the complaint states a plausible claim for relief. *See Raj v. Louisiana State Univ.*, 714 F.3d 322, 329-30 (5th Cir. 2013). A motion to dismiss should be denied where a complaint contains "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim has facial plausibility when the factual content of the complaint allows the court to draw a reasonable inference that the

---

[8] Plaintiff's causes of action against Defendant Jones include violations of 18 U.S.C. § 1962(c) (RICO), violations of 18 U.S.C. § 1962(D) (RICO conspiracy), common-law fraud, breach of fiduciary duty, negligent misrepresentation, common-law civil conspiracy, unjust enrichment, constitutional violations under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971), and conspiracy to commit constitutional violations.

defendant is liable for the harm alleged. *Id.*; *Backe v. LeBlanc,* 691 F.3d 645, 648 (5th Cir. 2012).

10. These standards are the same when a motion to dismiss is based on an immunity defense. When immunity is asserted, the question is whether the complaint pleads facts that, when taken as true, would overcome the movant's assertion of immunity. *Hinojosa v. Livingston,* 807 F.3d 657, 663 (5th Cir. 2015) (considering a motion to dismiss based on a qualified immunity defense). Because Plaintiff's First Amended Complaint states a plausible factual basis for overcoming Judge Jones' assertion of judicial immunity, his motion to dismiss should be denied.

### ARGUMENT

**I. Jones' Motion to Dismiss is Mooted by Plaintiff's Filing of an Amended Complaint.**

11. Defendant Jones' motion to dismiss should itself be dismissed. Generally, when a plaintiff files an amended complaint while a motion to dismiss is pending, the motion to dismiss is dismissed as moot unless the amended complaint fails to address the defects raised in the motion. *See Hymes v. AmCap Mortg., Ltd*., No. H-19-515, 2019 U.S. Dist LEXIS 66464, *5–6 (S.D. Tex. Apr. 18, 2019) (citations omitted). The claimed defects raised by Jones' motion to Plaintiff's initial complaint are all addressed in the amended complaint. Further, because "applying the pending motion to the amended complaint would cause confusion or detract from the efficient resolution of the issues, … it makes sense to require the defendant to file a new

motion specifically addressing the amended complaint." *Chase v. Hodge*, No. 1:20-CV-175-RP, 2020 U.S. Dist. LEXIS 267257, *3–4 (W.D. Tex. Sept. 2, 2020) (quotation omitted). Thus, Jones' present motion should be dismissed.

## II. Jones is Not Entitled to Judicial Immunity for Non-judicial Acts Raised in Plaintiff's First Amended Complaint.

12. Jones' motion fails in its assertion of judicial immunity as it pertains to Plaintiff's new allegations. Generally, "judicial immunity extends to all judicial acts which are not performed in the clear absence of all jurisdiction." *Adams v. McIany*, 764 F.2d 294, 297 (5th Cir. 1985). However, a judge is not immune from liability for "nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity." *Davis v. Tarrant County Tex.*, 565 F.3d 214, 221 (5th Cir. 2009) (quoting *Mireles v. Waco*, 502 U.S. 9, 11 (1991)).

13. To determine whether a judge's conduct involved judicial acts, four factors are considered: (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether those acts arose directly out of a visit to the judge in his official capacity. *See Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir. 1993). Here, Jones acted outside of his judicial capacity in two regards.

### A. Jones' maintenance of a secret relationship with an attorney who appeared regularly in his court was not a judicial act.

14. As described in Plaintiff's First Amended Complaint, much of Jones' conduct, including his essential role in the corrupt RICO enterprise, was non-judicial. At the heart of the RICO enterprise was the secret Jones-Freeman relationship which enabled Defendants to boost their professional reputations and collect millions of dollars in fees. Yet, there can be little debate that maintenance of a secret intimate relationship, with a practicing attorney who appears regularly in the judge's court, is not a normal function of a United States District Judge. The first factor weighs decisively against Jones' assertion of judicial immunity.

15. Second, maintenance of the Jones-Freeman relationship (to further the enterprise) did not occur in the courtroom or center around a case pending before the court. Freeman and Jones share at least one home together as domestic partners. Thus, the secret Jones-Freeman relationship occurred outside the courtroom and appropriate adjunct spaces. Likewise, while the Jones-Freeman relationship was used to influence bankruptcy cases, the relationship itself and Jones' act of being in the relationship was not centered around a case. Lastly, Jones' involvement in a relationship with Freeman presumably did not derive from any visit to Jones in his official capacity. Thus, the judicial immunity factors weigh against extending judicial immunity to Jones for his role in the RICO enterprise and for the claims asserted against him in Plaintiff's First Amended Complaint.

16. In *Malina*, a judge was not entitled to judicial immunity for "three incidents … not closely related to a general judicial function[,]" including arresting the plaintiff, using an officer to unofficially summon him, and then charging him. *Malina*, 994 F.2d at 1124. Maintaining a relationship with a former clerk and partner at a law firm in furtherance of a corrupt enterprise for profit is even less a judicial act, and even further removed from any general judicial function.

### B. Jones' failure to disclose his intimate relationship with Freeman in proceedings where Freeman was involved as an attorney was not a judicial act.

17. Plaintiff's First Amended Complaint also alleges non-judicial acts by Jones in failing to disclose the conflict created by his relationship with Freeman.[9] Jones' covering up his romantic relationship with Freeman is not a normal judicial function. In fact, disclosing conflicts is something required of <u>all</u> professionals in a bankruptcy proceeding. *See* 11 U.S.C. § 101(14), 327; Fed. R. Bankr. P. 2014.

18. In *Jones v. King*, a judge ordered prospective jurors arrested after they remained at the general assembly despite being unqualified to serve. No. P:22-CV-

---

[9] *See* Dkt. 10 at 18, 21, 38–39.

00030-DC, 2023 U.S. Dist. LEXIS 199137, *1 (W.D. Tex. Nov. 4, 2023). After suit was filed, the district court denied the judge's motion to dismiss on judicial immunity grounds. *Id*. at *20. The court concluded that the judge's conduct in qualifying jurors at a general assembly is a ministerial, and not judicial, act. *Id.* at *8. The court relied heavily on *Ex parte Virginia*, 100 U.S. 339 (1880), which likewise recognized that the act of selecting jurors is not judicial in nature. The reasoning in both cases "is clear: 'the duty of selecting jurors [in a general qualification proceeding] might as well have been committed to a private person as to one holding the office of a judge. [The task] can be assigned to nonjudicial personnel like the county clerk or the sheriff." *Id*. at *10.

19. Similarly, the disclosure requirements for conflicts are applicable to professionals across the board – they are not solely judicial obligations. Jones' failure to disclose his intimate relationship with the Jackson Walker partner was thus a ministerial act not covered by the protections of judicial immunity.

**III. Jones is Not Entitled to Judicial Immunity for Actions Made in the Complete Absence of Jurisdiction, After He Improperly Failed to Recuse Himself.**

20. "[A] judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Davis*, 565 F.3d at 214 (quoting *Mireles v. Waco*, 502 U.S. 9, 11 (1991)). As specified in the First Amended Complaint, "Jones

acted in the absence of jurisdiction by presiding over [the] case when circumstances required his dismissal."[10]

21. Jones had a mandatory duty to recuse himself but did not. The governing statute[11] provides that "[a]ny justice, judge, or magistrate [magistrate judge] of the United States *shall* disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455 (emphasis added).[12] The standard is objective and considers whether a reasonable person with knowledge of all the facts "would harbor doubts concerning the judge's impartiality." *Tejero v. Portfolio Recovery Assocs., L.L.C.*, 955 F.3d 453, 463 (5th Cir. 2020) (quoting *United States v. Jordan*, 49 F.3d 152, 155 (5th Cir. 1995)).

22. Any reasonable person with knowledge of the intimate, domestic relationship between Jones and Freeman would have concluded Jones' impartiality was in question. *See* Complaint Identified by the Chief Judge of the Fifth Circuit Court of Appeals Against United States Bankruptcy Judge David R. Jones, Southern District of Texas, Under the Judicial Improvement Act of 2002 (Oct. 13, 2023)[13] (finding

---

[10] Dkt. 10 at 18.
[11] *See* Bankruptcy Rule 5004(a) ("[a] bankruptcy judge shall be governed by 28 U.S.C. § 455").
[12] Further, under Bankruptcy Rule 5004(b), "[a] bankruptcy judge shall be disqualified from allowing compensation to a person...with whom the judge is so connected as to render it improper for the judge to authorize such compensation."
[13] The Fifth Circuit's Complaint Identified by the Chief Judge of the Fifth Circuit is attached to Plaintiff's First Amended Complaint as Exhibit 1. *See* Dkt. 10-1.

"probable cause to believe that misconduct by Judge Jones has occurred"[14] and noting "[r]ecusal considerations applicable to a judge's spouse should also be considered with respect to a person other than a spouse with whom the judge maintains both a household and an intimate relationship"[15]).

23. And, it has been held that when a judge fails to comply with the obligation to disqualify himself or herself, any further actions taken are taken without jurisdiction. *See e.g., In re Marriage Dickey*, No. 06-23-00004-CV, 2023 Tex. App. LEXIS 6860, *3 (Tex. App.—Texarkana 2023, no pet.) ("[I]f a judge is disqualified, the judge is without jurisdiction to hear the case"); *accord State ex rel. Carver v. Whipple*, 608 S.W.2d 410, 412 (Mo. 1980) ("Because respondent ignored or improperly refused relator's application for disqualification, his further action to the substantive matters, disposing of the Rule 27.26 motion, was without jurisdiction…. As disqualification is mandatory, he exceeds his jurisdiction when he refuses to do so….").

25. Similarly, Jones' actions were taken without jurisdiction because he was disqualified from presiding over a case in which his live-in girlfriend, and her law firm, were participating and seeking compensation.

**IV. Plaintiff's Amended Complaint Does Not Seek Declaratory or Injunctive Relief Regarding a Prior Court Order and is Not a Collateral Attack on the Appellate Process.**

---

[14] Dkt. 10-1 at 1.
[15] *Id.* at 4.

26. According to Jones, "[t]o the extent that the Plaintiff seeks declaratory and injunctive relief regarding a prior court order, this action constitutes an inappropriate collateral attack on the ongoing appellate process, fails to include necessary parties, and cannot proceed."[16] This argument is mooted by Plaintiff's First Amended Complaint, which does not seek declaratory or injunctive relief regarding a prior court order, and is not a collateral attack on the ongoing appellate process.

27. Plaintiff's First Amended Complaint asserts causes of action, and turns upon facts, that were neither at issue, nor adjudicated, in the adversary proceeding against the officers or former officers of the bankruptcy debtor. For example, Plaintiff's RICO causes of action concern Defendants' "conduct, management, and operation of the affairs of the Jones-Freeman-Jackson Walker-Kirkland & Ellis Enterprise, which was engaged in and affected interstate commerce through a pattern of racketeering activity consisting of numerous acts of racketeering in the State of Texas and elsewhere, indictable under Title 18 U.S.C. § 1503 (obstruction of justice), § 1341 (mail fraud), § 1343 (wire fraud), § 152 (bankruptcy fraud) and § 1346 (honest services fraud)."[17] Those issues, among others, are entirely independent from the issues raised in Van Deelen's appeal from the adversary proceeding directed at officers or former officers of the bankruptcy debtor. Additionally, this action seeks

---

[16] Dkt. 9 at 1.
[17] Dkt. 10 at 35–36.

damages (including statutory damages under RICO, mental anguish damages, and others) from Jones and the profiteering lawyers and law firms, not the officers or former officers of the bankruptcy debtor. Quite simply, Plaintiff's lawsuit is not a collateral attack on the appeal from the adversary proceeding in which Jones is not even a defendant.

## CONCLUSION AND PRAYER

28. Plaintiff Michael Van Deelen respectfully requests that the Court dismiss Defendant's Motion to Dismiss Under Fed. R. Civ. P. 12(B)(6) as moot; alternatively, Plaintiff requests that the Court deny the motion outright.

**Dated January 18, 2024**

                                Respectfully submitted,

By: /s/ Mikell A. West
Mikell A. West
Texas State Bar No. 24070832
S.D. Tex. Bar No. 1563058
Robert W. Clore
Texas State Bar No. 24012426
S.D. Tex. Bar No. 2032287
BANDAS LAW FIRM, P.C.
802 Carancahua Street, Suite 1400
Corpus Christi, Texas 78401
Telephone: (361) 698-5200
Facsimile: (361) 698-5222
mwest@bandaslawfirm.com
rclore@bandaslawfirm.com

## Certificate of Service

I the undersigned attorney, do hereby certify, that the foregoing instrument was served to all parties of record by the below mentioned FRCP approved method:

***Via E-service:***
David R. Jones
6530 Rolla Street
Houston, Texas 77055

DEFENDANT *PRO SE*

***Via E-mail: bigkirk@gmail.com***
Tom Kirkendall
c/o The Law Office of Tom Kirkendall
2 Violetta Ct.
The Woodlands, Texas 77381

ATTORNEY FOR ELIZABETH FREEMAN

***Via CMRRR: 7022 3330 0000 8637 8475***
Kirkland & Ellis, LLP
c/o CT Corporation System
1999 Bryant St., Ste. 900
Dallas, TX 75201

***Via CMRRR: 7022 3330 0000 8637 8482***
Jackson & Walker, LLP
c/o C. Wade Cooper
2323 Ross Avenue, Ste. 600
Dallas, TX 75201

***Via CMRRR: 7022 3330 0000 8637 8499***
Kirkland & Ellis International, LLP
c/o National Registered Agents, Inc.
1209 Orange ST
Wilmington, DE 19801