IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Michael D. Van Deelen,<br><br>        Plaintiff,<br><br>v.<br><br>David R. Jones, Elizabeth Carol Freeman, Jackson Walker, LLP, Kirkland & Ellis, LLP, and Kirkland & Ellis International, LLP,<br><br>        Defendants. | Civil Action<br>No. 4:23-cv-03729 |

**DEFENDANT DAVID R. JONES' MOTION TO DISMISS
UNDER FED.R.CIV.P. 12(B)(6)**

To the Honorable Alia Moses, Chief United States District Judge:

Defendant David R. Jones ("Jones") respectfully moves to dismiss the Plaintiff's First Amended Complaint with prejudice (the "Complaint").

**INTRODUCTION**

1. "As early as 1872, the [Supreme] Court recognized that it was 'a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Stump v. Sparkman*, 435 U.S. 349, 355 (1978), quoting *Bradley v. Fisher*, 13 Wall. 355, 347, 20 L. Ed. 646 (1872). And thus, the Supreme Court reiterated that the "governing principle" of judicial immunity "is well established." *Stump v. Sparkman*, 435 U.S. at 355. This case demands the application of this "well established" principle to dismiss this lawsuit against defendant David R. Jones, whom Plaintiff sued for no reason other than issuing court orders pursuant to his statutory jurisdiction.

2. A plain reading of Plaintiff's Amended Complaint reveals a simple inescapable truth: the only loss incurred by Plaintiff – the loss of his shares of McDermott Equity (defined below) under the McDermott Debtors' chapter 11 plan – was solely the result of the Plan Confirmation Order entered by Judge Jones in his capacity as the United States Bankruptcy Judge presiding over the McDermott Bankruptcy Case. Even if the Court takes a broader view as to the Bankruptcy Court orders that brought harm upon Plaintiff (which it should not), the analysis and result does not change. As detailed below, it is difficult to imagine a situation that is more tailor-made for the straightforward application of judicial immunity than the present situation. This action must be dismissed on judicial immunity grounds as to Judge Jones.

## STANDARD OF REVIEW

3. In ruling on a Rule 12(b)(6) motion to dismiss, "[t]he complaint must be liberally construed in favor of the plaintiff." *Nationwide*, 512 F.3d at 140. However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 421 (5th Cir. 2006) (quotations omitted). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice to state a claim upon which relief can be granted." *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 177 (5th Cir. 2018) (cleaned up).

## PROCEDURAL HISTORY

4. On October 4, 2023, Michael D. Van Deelen ("Plaintiff") filed his Complaint against Jones initiating this action. *See*, Docket No. 1.

5. On October 24, 2023, this action was transferred and assigned to Chief Judge Alia Moses of the Western District of Texas, sitting by designation. *See*, October 24, 2023 Docket minute entry.

6.      On December 29, 2023, Jones, *pro se*, filed his initial motion to dismiss under FED. R. CIV. P. 12(b) (the "Initial Motion to Dismiss"). *See*, Docket No. 9.

7.      On January 11, 2024, Plaintiff filed his First Amended Complaint, the currently operative complaint in this action. *See*, Docket No. 10.

8.      On January 18, 2024, Plaintiff filed his response to the Initial Motion to Dismiss ("Plaintiff's Response"). *See*, Docket No. 11.

9.      On January 23, 2024, the Court entered an order requiring Jones to inform the Court as to whether he intended to file a new motion to dismiss in light of the Plaintiff's Amended Complaint. *See*, Docket No. 12.

10.     On January 29, 2024, Jones filed his notice stating his intention to file a new motion to dismiss Plaintiff's Amended Complaint. *See*, Docket No. 19.

## RELEVANT INCONTROVERTIBLE FACTS

11.     McDermott International, Inc. ("McDermott") and 225 affiliates (together with McDermott, the "Debtors") filed chapter 11 bankruptcy cases in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") on January 1, 2020 (the "Petition Date"), initiating jointly-administered cases under Case No. 20-30336 (the "Bankruptcy Case"). [Docket No. 1, Case No. 20-30336 (hereinafter referred to as "Bankruptcy Docket")].[1] Defendant

---

[1] "In deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). *See Brown v. Lippard*, 350 F. App'x 879, 883 n.2 (5th Cir. 2009) (citing *Marine Electric Co. v. United Jersey Bank*, 959 F.2d 1194 (3d Cir.1992), for the proposition that a court may take "judicial notice of the docket entries in a bankruptcy court's file" (cleaned up)). *Cf., e.g.*, *Anderson v. Wells Fargo Bank, N.A.*, 953 F.3d 311, 314 (5th Cir. 2020) (affirming the district court's grant of a motion to dismiss under Rule 12(b)(6) and taking "judicial notice of the previous judgments and opinions, matters of public record that were attached to the motion to dismiss").

3

Jones, at that time a United States Bankruptcy Judge for the Southern District of Texas, presided over the Bankruptcy Case. [Complaint ¶ 39].

12.    Plaintiff has alleged to have owned 30,000 shares of McDermott common equity (*i.e.*, Plaintiff was an equity shareholder in McDermott), since prior to the Debtors' Petition Date.[2] [First Amended Complaint ¶¶ 6, 58; Bankruptcy Docket Nos. 510 (p.2), 441 (p.2), and 253].

13.    On the Petition Date, the Debtors filed their prepackaged chapter 11 plan of reorganization (the "Initial Plan"). [Bankruptcy Docket No. 5]. The Initial Plan called the cancellation and extinguishment of all shares of McDermott common equity (hereinafter referred to as "McDermott Equity"). *Id*. Thus, the Initial Plan provided for the cancellation and extinguishment of Plaintiff's alleged holdings of McDermott Equity. Even Plaintiff has acknowledged and conceded that "[t]he McDermott bankruptcy was a prepackaged bankruptcy where the details of the bankruptcy had been worked out between McDermott and its creditors *prior to* the Chapter 11 filing." [Bankruptcy Docket No. 939, attaching Plaintiff's Petition for Writ of Mandamus, p. 9] (emphasis added).

14.    The Bankruptcy Court entered orders approving, without opposition, employment applications (collectively, the "Employment Orders") for defendants Jackson Walker and Kirkland

---

[2] Throughout the First Amended Complaint, the Plaintiff refers to himself as a "creditor" in the Debtors' Bankruptcy Case. This allegation or characterization is demonstrably false. In multiple prior bankruptcy filings and in the original Complaint, the Plaintiff correctly characterizes himself as a shareholder or equity owner. It is presumed this change of position is intended to mislead the Court. There is a meaningful legal and factual distinction between being a creditor and an equity holder. The difference is of utmost importance in, *inter alia*, chapter 11 processes. Nowhere in the First Amended Complaint or in the Bankruptcy Docket does Plaintiff ever allege a single fact that would indicate that he was a creditor -- held a "claim" -- in the Debtors' Bankruptcy Case. In the absence of any facts that would support Plaintiff's "creditor" status (as opposed to the naked unsupported denomination of Plaintiff as a "creditor" of the Debtors), the Court should ignore Plaintiff's patently false assertion that he was a McDermott creditor.

4

Case 4:23-cv-03729   Document 39   Filed on 03/11/24 in TXSD   Page 5 of 18

& Ellis in accordance with Bankruptcy Code Section 327 on March 9 and 17, 2020, respectively. [First Amended Complaint ¶ 43; Bankruptcy Docket Nos. 591 and 692].

15.     On March 12, 2020, the Bankruptcy Court entered its order ("Confirmation Order") confirming the Debtors' Amended Plan of Reorganization (the "Plan"). [Bankruptcy Docket No. 684]. The Confirmation Order was not appealed and is now a final and non-appealable order. Under the confirmed Plan, McDermott Equity (Class 14 under the Plan) was cancelled and extinguished, cancelling over 193 million common equity shares [Bankruptcy Docket No. 1, Attachment to Voluntary Petition], including the 30,000 shares alleged to be owned by Plaintiff. [Bankruptcy Docket No. 684 (Plan attached)].

16.     Plaintiff filed an objection to Plan confirmation in advance of the confirmation hearing (the only party in the Bankruptcy Case to object to Plan confirmation). [First Amended Complaint ¶ 58; Bankruptcy Docket No. 510 (and Bankruptcy Docket generally)]. The overarching theme of Plaintiff's opposition to the Plan was that McDermott Equity should not, and need not, be cancelled. Plaintiff's opposition to the Plan even included an alternative reorganization "plan" proposed by Plaintiff that did not cancel existing McDermott Equity. [Bankruptcy Docket No. 510]. Plaintiff appeared at the confirmation hearing and urged his objection. [Bankruptcy Docket No. 690 (hearing transcript)]. The Confirmation Order explicitly overruled and denied all objections to Plan confirmation, including Plaintiff's objection. [Bankruptcy Docket No. 684, decretal ¶ 11].

17.     During the Plan confirmation hearing, Plaintiff became combative and made threats to Debtors' counsel. [Bankruptcy Docket No. 690, pages 172-72; Complaint ¶ 58]. Plaintiff further acknowledges "heated exchanges" in other court hearings. [Complaint ¶ 58]. These actions resulted in an order dated March 23, 2020 (i) prohibiting Plaintiff from contacting Bankruptcy

5

Court staff, (ii) requiring any Plaintiff communication to the Bankruptcy Court be made in writing and filed with the Clerk of the Court, (iii) prohibiting Plaintiff from contacting Debtors' counsel or any family members, and (iv) barring Plaintiff from entering the federal courthouse unless escorted by a court security officer (the "Conduct Order"). [Bankruptcy Docket No. 719]. Plaintiff's subsequent petition for a writ of mandamus was denied by the Fifth Circuit Court of Appeals by order entered March 12, 2021. [Appeal No. 20-20286, USCA].

18. The Plan and Confirmation Order contain a series of releases, exculpations and injunctions in favor of, among others, the Debtors' officers and directors. [Bankruptcy Docket No. 684, attached Plan, Arts. VIII C, D, E and F]. All parties were enjoined against attempting to assert released claims. [Bankruptcy Docket No. 684, attached Plan, Art VIII F].

19. Despite the Plan releases and injunction, Plaintiff filed suit against certain of the Debtors' directors and officers (the "D&O Lawsuit") relating to the loss of value of his McDermott Equity. [Docket No. 1, Bankruptcy Adversary Proceeding No. 20-3309]. The D&O Lawsuit was removed to the Bankruptcy Court and the defendants sought enforcement of the Plan and Confirmation Order. [Docket No. 1, Bankruptcy Adversary Proceeding No. 20-3309]. Ultimately, the Bankruptcy Court issued an order (the "October 12, 2021 Order") dismissing the Plaintiff's D&O Lawsuit. [Docket No. 81, Bankruptcy Adversary Proceeding No. 20-3309].

20. Plaintiff appealed the October 12, 2021 Order (among others), and the District Court affirmed the October 12, 2021 Order in all respects. [Docket No. 33, C.A. No. 4:21-cv-3369]. Plaintiff's appeal of this decision to the Fifth Circuit remains pending. [Appeal No. 23-20436, USCA].

21. On September 8, 2020, the Bankruptcy Court entered orders, without any opposition from any party, under Bankruptcy Code Section 328 approving fee applications filed

by Jackson Walker and Kirkland & Ellis (collectively, the "Fee Orders"). [Complaint ¶ 46; Bankruptcy Docket Nos. 1020 and 1021].

22. On October 5, 2022, the Bankruptcy Court entered a final decree in the Bankruptcy Cases closing the Debtors' Bankruptcy Case (the "Final Decree"). [Complaint ¶ 50; Bankruptcy Docket No. 1128].

**ARGUMENT**

**JUDICIAL IMMUNITY MANDATES THE DISMISSAL OF THIS SUIT FOR DAMAGES AGAINST JUDGE JONES**

23. While the Complaint alleges a multitude of largely irrelevant facts, the particular and specific economic harm alleged in the Complaint to have fallen upon Plaintiff is that Plaintiff's 30,000 shares of McDermott Equity (along with 193 million other shares) were cancelled and rendered worthless by the Confirmation Order entered in the Bankruptcy Case – nothing more and nothing less. The cancellation of his shares of McDermott Equity is the only economic harm alleged by Plaintiff. While Plaintiff may complain of, and attempt to scandalize, his "treatment" during the Bankruptcy Case, the various other orders of the Bankruptcy Court noted above, and the Jones/Freeman relationship and any disclosure concerns as to same, none of these ancillary matters caused economic harm to the Plaintiff. It is indisputable that Plaintiff incurred his economic loss solely due to entry of the Plan Confirmation Order, a matter at the very heart of the normal daily function of the United States' bankruptcy court system.[3] As such, Judge Jones is entitled to judicial immunity and dismissal of this action.

---

[3] Again, even if this Court were to take a broader view as to the Bankruptcy Court orders relevant to Plaintiff's claims, each of the other orders (professional employment and fee approval orders, enforcement of confirmation order, etc.) are similarly typical bankruptcy judge functions.

24. Judges have absolute immunity from suits seeking damages. *Mireles v. Waco*, 592 U.S. 9, 10 (1991). "Judicial immunity is immunity from suit, not just from ultimate assessment of damages." *Id*, 592 U.S. 11. Judicial immunity is "a threshold question, to be resolved as early in the proceedings as possible."[4] *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994), citing, *Siegert v. Gilley*, 500 U.S. 226, 231-33 (1991). Thus, judicial immunity may be decided upon a Rule 12(b)(6) motion to dismiss. *See, e.g., Ballard v. Wall*, 413 F.3d 510, 514-15 (5th Cir. 2005).

25. "Few doctrines were more solidly established at common law than the immunity of judges from liability for acts…. This immunity applies even when the judge is accused of acting maliciously and corruptly…. [A judge's] errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption." *Pierson v. Ray*, 368 U.S. 547, 553-555 (1967).[5]

26. Judicial immunity "is overcome in only two sets of circumstances. First, a judge is not immune from liability for non-judicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11-12. Neither exception applies here.

A. **Judge Jones' Orders Were Judicial Acts.**

27. "A judge's acts are judicial in nature if they are 'normally performed by a judge' and the parties affected 'dealt with the judge in his judicial capacity.'" *Boyd*, 31 F.3d at 285

---

[4] Because Jones is entitled to threshold consideration and application of judicial immunity, Jones has not included in this Motion any additional Rule 12 dismissal grounds. Jones reserves all rights to assert additional grounds in the future.

[5] So important is absolute judicial immunity that "orders denying absolute immunity are automatically appealable under *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949)." *Holloway v. Walker*, 765 F.2d 517, 521 (5th Cir. 1985). *See also, e.g.*, *McCullough v. Finley*, 907 F.3d 1324, 1330 (11th Cir. 2018) ("[A] defendant may immediately appeal a denial of absolute judicial immunity.").

(quoting *Mireles*, 592 U.S. at 12). The Fifth Circuit has established a four-factor test to aid in determining whether an action is "judicial in nature":

> (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity.

*Malina v. Gonzales,* 994 F.2d 1121, 1124 (5th Cir. 1993), citing *McAlester v. Brown*, 469 F.2d 1280, 1282 (5th Cir. 1972). These factors "should be broadly construed in favor of immunity." *Adams v. McIlhany*, 764 F.2d 294, 297 (5th Cir. 1985). Further, "there are situations in which immunity must be afforded even though one or more of the [four] factors fails to obtain. Nor are the factors to be given equal weight in all cases; rather, they should be construed in each case generously to the holder of the immunity and in light of the policies underlying judicial immunity." *Id.*

28. Application of the *McAlester* factors to the present case unquestionably shows that the complained of Jones' acts were "judicial in nature."

29. First, the precise act complained of – the sole proximate cause of Plaintiff's loss – is Judge Jones' entry of the Confirmation Order. In assessing this factor, courts are to "look to the particular act's relation to a general function normally performed by a judge." *Malina*, 994 F.2d at 1124. It is undeniable that a core function performed by a judge is the entry of orders. *See, e.g.*, *Tomasella on Behalf of Est. of Tomasella v. Kaufman County*, No. 22-10760, 2022 WL 17752124, at *3 (5th Cir. Dec. 19, 2022) (affirming the district court's grant of a motion to dismiss for judicial immunity, holding that the judge did "not lose his judicial immunity for issuing an order that was ultimately reversed in part on appeal," and labeling an argument that the judge lost immunity by entering an "illegal order" as "without merit"). Similarly, a core function of a bankruptcy judge is

9

the entry of confirmation orders (and to the extent relevant to Plaintiff's claims, orders for attorney employment and attorney fee payment). *Cf., e.g., Farrier v. Leicht*, No. 20-3528, 2020 WL 13017227, at *2 (6th Cir. Nov. 24, 2020) ("[The plaintiff] complained about [the bankruptcy judge's] rulings in the bankruptcy proceedings over which the bankruptcy court had jurisdiction. Accordingly, the district court properly concluded that [the judge] was entitled to absolute judicial immunity."); *Shemonsky v. Thomas*, 255 F. App'x 687, 688 (3d Cir. 2007) ("Because the act that [the plaintiff] complains of—dismissal of his bankruptcy action—was performed by [the bankruptcy judge] in his official capacity, [the judge] is entitled to judicial immunity."). The first *McAlester* factor is satisfied.

30. Second, Plaintiff's involvement and interactions with Judge Jones occurred solely in the Bankruptcy Court. Plaintiff does not allege any non-court interactions with Judge Jones. The second *McAlester* factor is satisfied.

31. Third, the present controversy – the cause of Plaintiff's economic harm – centered around a case pending in Judge Jones' court. Plaintiff's loss of his McDermott Equity occurred in the Bankruptcy Case pending in Judge Jones' Bankruptcy Court. The third *McAlester* factor is satisfied.

32. Fourth, the complained of act arose directly out of Plaintiff's appearance before Judge Jones acting in his official Bankruptcy Judge capacity. Plaintiff appeared before Judge Jones in the Bankruptcy Court and *actually litigated* his opposition to the Plan. The Bankruptcy Court (Judge Jones) overruled Plaintiff's opposition and entered the Confirmation Order. The fourth *McAlester* factor is satisfied.

33. The analysis and conclusion does not change even if the Court were to take a broader view and assess Plaintiff's allegations of "poor treatment" in the Bankruptcy Court or the

additionally noted bankruptcy orders -- including the Employment Orders, the Fee Orders, the Conduct Order, the October 12, 2021 Order and the Final Decree. Each is undeniably a "judicial act" by Judge Jones even if done or entered as a result of malice or corruption (which they plainly were not).

34. In his opposition to the Initial Motion to Dismiss (now moot), Plaintiff argues that the conduct (the act) at issue is not Jones's entry of *orders* but the *Jones/Freeman relationship* and Jones' failure to disclose the relationship [Plaintiff's Response ¶¶ 14-19]. This approach is intentionally deceptive as it ignores any notion of causation – the act that resulted in Plaintiff's loss of McDermott Equity was entry of the Confirmation Order, not the Jones relationship or the lack of disclosure. The relationship is not actionable, utterly irrelevant, and caused no harm (economic or otherwise) to Plaintiff. Plaintiff is merely using the relationship to opportunistically "throw mud at the wall" in the hopes of diverting focus from where the focus must be. Even if the Plaintiff were correct on the disclosure requirement, the decision to disclose or not disclose is clearly a judicial act governed by the Judicial Code of Conduct. The Court should not be deceived. Jones' entry of orders, not the relationship, are the relevant acts and they are indisputably *judicial* acts.

35. The case of *Holloway v. Walker* is instructive as to the reach of judicial immunity as the case involved particularly egregious judicial conduct that was nonetheless found to be covered by judicial immunity. *Holloway v. Walker*, 765 F.2d 517 (5th Cir. 1985). In *Holloway*, a Texas state court judge was sued for allegedly conspiring with other defendants to seize control of an oil company through abuse of his judicial office. *Id*. at 520. The complaint also alleged that the judge acted pursuant to a bribe. *Id*. at 521. The district court's denial of the judge's motion to dismiss on judicial immunity grounds was appealed to the Fifth Circuit. *Id*. The Fifth Circuit

rejected the plaintiff's assertions that the various acts by the judge that resulted in the seizure of the company (including the issuance of injunctions and imposing a receivership) were not judicial acts. Indeed, the Fifth Circuit determined that the harm to plaintiff was caused by the judge's acts and that "[b]ut for those obviously 'judicial acts,' none of the harm [judge] is alleged to have caused would have come about. As noted above, it is irrelevant that [judge] is alleged to have performed those acts pursuant to a bribe or a conspiracy; they remain 'judicial acts.'" *Id*. at 524.

36. The bottom line: The scope of conduct subject to absolute judicial immunity is broad. *See, e.g.*, *Stump v. Sparkman*, 435 U.S. 349, 351 (1978) (absolute judicial immunity for ordering sterilization on a fifteen-year old girl when she was "somewhat retarded"); *McAlester v. Brown*, 469 F.2d 1280, 1281 (5th Cir. 1972) (absolute judicial immunity for, while not enrobed and not in the courtroom, ordering an elderly and confused plaintiff-couple imprisoned notwithstanding the lack of a formal contempt order—or in the court's words, overacting and improperly exercising "autocratic, elephant-gun power to relieve his personal, non-judicial annoyance with a mosquito-sized problem"); *Ammons v. Baldwin*, 705 F.2d 1445, 1447 (5th Cir. 1983) (absolute judicial immunity for issuing an arrest warrant and requiring the plaintiff to pay court costs, notwithstanding that the judge verbally abused and humiliated the plaintiff); *Malina*, 994 F.2d at 1125 (absolute judicial immunity for citing the plaintiff with contempt and for sentencing him to five hours in jail).

37. Under clear Supreme Court and Fifth Circuit authority, the acts of Judge Jones that allegedly caused harm to Plaintiff -- the entry of one or more orders in the Bankruptcy Case -- were plainly "judicial acts" for purposes of judicial immunity. Plaintiff's myriad allegations designed to question or impugn Judge Jones' motives in performing those "judicial acts" have no bearing upon the application of judicial immunity under this same clear precedent.

### B. Judge Jones' Acts Were Not Done in the Clear Absence of All Jurisdiction.

38. For immunity purposes, "the term 'jurisdiction' is to be broadly construed" such that "[w]here a judge does not clearly lack all subject matter jurisdiction, he does not clearly lack *all* jurisdiction." *Holloway*, 765 F.2d at 523 (emphasis in original). In determining whether an act was taken in clear absence of all jurisdiction, the focus is not on whether the judge's specific act was proper or improper, but on whether the judge had the jurisdiction necessary to perform an act of that kind in the case. *Mireles*, 502 U.S. at 13; *Stump*, 435 U.S. at 356 (a judge "will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of authority"). "Where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes." *Adams*, 764 F.2d at 298 (citing *Bradley v. Fisher*, 80 U.S. 335, 352 (1871)).

39. Even a cursory examination of the federal bankruptcy jurisdiction regime leaves no doubt that Judge Jones did "not clearly lack all jurisdiction" in performing the proximate cause acts – the entry of one or more of the Bankruptcy Court orders. Title 28 U.S.C. §1334(a) confers upon federal district courts "original and exclusive jurisdiction of all cases under title 11." Congress has also provided that a district court may refer "any or all cases under title 11 and any or all proceedings arising under title 11 … to the bankruptcy judges for the district." 28 U.S.C. §157(a). Southern District of Texas General Order 2012-6 provides, *inter alia*, for the automatic referral of bankruptcy cases and proceedings arising under Title 11 to the District's bankruptcy judges. The Supreme Court has acknowledged that "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." See *Stern v. Marshall*, 564 U.S. 462, 494 (2011) (further noting the "broad substantive jurisdiction" exercised by bankruptcy courts under the

13

Bankruptcy Code) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984)). In accordance with this jurisdictional regime, Judge Jones had jurisdiction over the Debtors' Bankruptcy Case and various and sundry proceedings within the Bankruptcy Case.

40. Here, the direct harm Plaintiff complains of – the loss of his McDermott Equity – occurred solely and directly from entry by Jones of the Confirmation Order confirming the Plan that extinguished *all* McDermott Equity. Bankruptcy judges are explicitly statutorily empowered by Congress to "hear and determine all cases under title 11 and all core proceedings arising under title 11", and "core proceedings include … confirmations of plans." 28 U.S.C. §157(b)(1) and (b)(2)(L).

41. *Holloway* is also highly instructive as to the jurisdiction question in that the egregious nature of its facts extended to the jurisdiction issue. In *Holloway*, the plaintiff had further alleged "that many of these acts [by the judge] were committed in open defiance of a proscriptive writ of the Texas Court of Appeals ordering [the judge] to desist from interference in the affairs of the [company]." *Holloway*, 765 F.2d at 523. The plaintiff had thus argued that "this proscriptive writ clearly deprived [judge] of all jurisdiction and thus stripped him of judicial immunity…." *Id*. The Fifth Circuit flatly rejected this view. Instead, relying upon guidance of the Texas Court of Appeals, the Fifth Circuit determined that the judge's court did have subject matter jurisdiction, "but that he was acting in excess of that jurisdiction in continuing to conduct proceedings…." *Id*. at 524.

42. Plaintiff's intimations that Jones was or should have been disqualified, or should have recused himself, from presiding over the Bankruptcy Case does not impact the jurisdictional analysis for purposes of judicial immunity. Indeed, "[t]here is a meaningful difference between judicial acts which occur in 'excess of jurisdiction' – which receive judicial immunity – and those

which take place wholly lacking jurisdiction – which do not." *Kemp ex rel Kemp v. Perkins*, 324 Fed. Appx. 409, 413 (5th Cir. 2009) (citing *Stump*, 435 U.S. at 356-57 (quoting *Bradley*, 80 U.S. at 352)). While Plaintiff's assertions that Jones was either disqualified or should have recused in the Bankruptcy Case are incorrect, the assertions are simply irrelevant to the jurisdictional question posed in regards to judicial immunity. Even if Plaintiff is correct (and he is not), then at worst Jones exceeded his jurisdiction in continuing to preside over the Bankruptcy Case. Such is not sufficient to conclude that Jones "lacked *all* jurisdiction" for purposes of judicial immunity. *Cf., e.g.*, *Farrier*, No. 20-3528, 2020 WL 13017227, at *2 (rejecting a "complete absence of all jurisdiction" argument for a bankruptcy judge and affirming dismissal for absolute judicial immunity); *Shemonsky*, 255 F. App'x at 688 (same).

43. Each of Jones's bankruptcy orders identified above was supported by the law. That fact, however, matters not a whit to this Court's analysis. Plaintiff alleges harm from one or more judicial order entered by a lawfully appointed judge acting within his jurisdiction. Under controlling precedent, the case for judicial immunity could not be clearer, and all Plaintiffs' claims against Jones should be dismissed accordingly with prejudice.

### PRAYER FOR RELIEF

44. Accordingly, Jones respectfully requests that this Court dismiss the claims asserted in the Complaint with prejudice, award fees and costs to Jones, and grant such other relief as to which he may be entitled.

Dated:  March 11, 2024

Respectfully submitted,

**MCKOOL SMITH, PC**

/s/ *John J. Sparacino*
John J. Sparacino (SBN 18873700)
600 Travis Street, Suite 7000
Houston, Texas 77002
Telephone: (713) 485-7300
Facsimile (713) 485-7344
jsparacino@mckoolsmith.com

Gary Cruciani (SBN 05177300)
gcruciani@mckoolsmith.com
Patrick William Pijls (SBN 24118501)
ppijls@mckoolsmith.com
MCKOOL SMITH, PC
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044
***Counsel for David R. Jones***

## **CERTIFICATE OF SERVICE**

      I, the undersigned attorney, do hereby certify, that the foregoing instrument was served to all parties of record by the below mentioned FRCP approved method:

*Via ECF:*
Robert William Clore
Mikell Alan West
Bandas Law Firm, PC
802 N. Carancahua St., Suite 1400
Corpus Christi, TX 78401
*Attorney for Plaintiff, Michael D. Van Deelen*

*Via ECF:*
John Hueston
Hueston Hennigan LLP
620 Newport Center Drive, Suite 1300
Newport Beach, CA 92660

Karen Ding
Michal Todisco
Hueston Henningan LLP
523 West 6th St., Unit 400
Los Angeles, CA 90014

David J. Beck
Jacqueline Moore Furlow
Beck Redden LLP
1221 McKinney St., Ste. 4500
Houston, TX 77010
*Attorneys for Kirkland & Ellis, LLP and Kirkland & Ellis International, LLP*

*Via ECF:*
Jennifer Elizabeth Brevorka
Rusty Hardin & Associates, LLP
1401 McKinney St., Ste. 2250
Houston, TX 77010

*Via Email:*
Russell Hardin, Jr.
Leah Graham
Emily Smith
Rusty Hardin & Associates, LLP
1401 McKinney Street, Suite 2250
Houston, TX 77010
rhardin@rustyhardin.com
lgrahm@rustyhardin.com
esmith@rustyhardin.com
*Attorneys for Jackson Walker, LLP*

                                                            */s/ John J. Sparacino*

**CERTIFICATE OF CONFERENCE**

      Because this motion is dispositive, no conference is required under Local Rule CV-7. Separately, on January 29, 2024 and pursuant to a Court order, Jones filed his notice stating his intention to file a new motion to dismiss Plaintiff's Amended Complaint. See, Docket No. 19.

                                        /s/ *John J. Sparacino*
                                        John J. Sparacino