# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF TEXAS

### HOUSTON DIVISION

| | | |
|---|---|---|
| Michael D. Van Deelen, | ) | Case No. 4:23-cv-3729 |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| David R. Jones, Elizabeth Carol Freeman, | ) | |
| Jackson Walker, LLP, Kirkland & Ellis, LLP, | ) | |
| and Kirkland & Ellis International, LLP, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

## DEFENDANTS KIRKLAND & ELLIS LLP AND KIRKLAND & ELLIS INTERNATIONAL LLP'S MOTION FOR SANCTIONS PURSUANT TO RULE 11

Defendants Kirkland & Ellis LLP and Kirkland & Ellis International LLP ("Kirkland") file this motion for sanctions pursuant to Federal Rule of Civil Procedure 11.

---

## TABLE OF CONTENTS

Page(s)

I.     INTRODUCTION ................................................................................................... 1

II.    BACKGROUND .................................................................................................... 5

III.   LEGAL STANDARD............................................................................................. 8

IV.    ARGUMENT ......................................................................................................... 8

       A.     Plaintiff's Factual Allegations Against Kirkland Are Frivolous ......................... 8

       B.     Plaintiff's RICO Claims Are Legally Frivolous .................................................. 13

       C.     The FAC Was Filed for an Improper Purpose ...................................................... 17

       D.     Monetary Sanctions Are Necessary to Deter Plaintiff's Conduct ...................... 19

V.     CONCLUSION....................................................................................................... 20

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allstate Ins. Co. v. Benhamou,*
190 F. Supp. 3d 631 (S.D. Tex. 2016) .......................................................................... 15

*Allstate Ins. Co. v. Plambeck,*
802 F.3d 665 (5th Cir. 2015) ....................................................................................... 14

*Annamalai v. Moon Credit Corp.,*
2017 WL 5646925 (S.D. Tex. Apr. 21, 2017) .............................................................. 17

*Babineaux v. Wells Fargo Bank, N.A.,*
2023 WL 9508094 (S.D. Tex. Nov. 29, 2023) ............................................................. 20

*Barlow v. McLeod,*
666 F. Supp. 222 (D.D.C. 1986) .................................................................................. 17

*Bruno v. Starr,*
2006 WL 2631861 (E.D. La. Sept. 12, 2006) ........................................................ 13, 15

*Celanese Corp. v. Coastal Water Auth.,*
475 F. Supp. 2d 623 (S.D. Tex. 2007) ........................................................................... 9

*Chapman & Cole v. Itel Container Int'l B.V.,*
865 F.2d 676 (5th Cir. 1989) ..................................................................................... 1, 9

*Collie v. Kendall,*
1999 WL 462327 (N.D. Tex. July 6, 1999) ................................................................. 20

*Compass Bank v. Villarreal,*
2011 WL 1740270 (S.D. Tex. May 5, 2011) ............................................................... 15

*Crowe v. Henry,*
43 F.3d 198 (5th Cir. 1995) ......................................................................................... 15

*Dangerfield v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
2003 WL 22227956 (S.D.N.Y. Sept. 26, 2003) .......................................................... 13

*Davis-Lynch, Inc. v. Moreno,*
667 F.3d 539 (5th Cir. 2012) ....................................................................................... 15

*Difebbo-Kass v. Par. of Plaquemines,*
2015 WL 7281616 (E.D. La. Nov. 16, 2015) .............................................................. 19

*Edelson PC v. Bandas L. Firm PC,*
2018 WL 723287 (N.D. Ill. Feb. 6, 2018) ..................................................................... 4

*Elliott v. Foufas*,
    867 F.2d 877 (5th Cir. 1989) ................................................................. 13, 14

*Erwin v. Russ*,
    481 F. App'x 128 (5th Cir. 2012) ................................................................ 14

*F.D.I.C. v. Maxxam, Inc.*,
    523 F.3d 566 (5th Cir. 2008) ................................................................. 8, 17

*Fernandez-Lopez v. Hernandez*,
    2020 WL 9396487 (W.D. Tex. Nov. 20, 2020)............................................ 14

*Galindo v. City of Del Rio*,
    2021 WL 2763033 (W.D. Tex. Mar. 26, 2021) ............................................ 15

*Garber v. Off. of Comm'r of Baseball*,
    2017 WL 752183 (S.D.N.Y. Feb. 27, 2017).............................................. 19

*Garr v. U.S. Healthcare, Inc.*,
    22 F.3d 1274 (3d Cir. 1994)...................................................................... 9

*Harrison v. Dean Witter Reynolds, Inc.*,
    132 F.R.D. 184 (N.D. Ill. 1990).............................................................. 12

*Heisler v. Kean Miller, LLP*,
    2021 WL 5919507 (E.D. La. Dec. 15, 2021).............................................. 11

*Homecare CRM, LLC v. Adam Grp., Inc. of Middle Tennessee*,
    952 F. Supp. 2d 1373 (N.D. Ga. 2013)...................................................... 11

*In re Australia & New Zealand Banking Grp. Ltd. Sec. Litig.*,
    712 F. Supp. 2d 255 (S.D.N.Y. 2010)........................................................ 10

*In re Cathode Ray Tube Antitrust Litig.*,
    281 F.R.D. 531 (N.D. Cal. 2012).............................................................. 19

*In re Eon Enterprises Corp.*,
    59 F.3d 174 (9th Cir. 1995) .................................................................... 12

*In re MasterCard Int'l Inc.*,
    313 F.3d 257 (5th Cir. 2002) .................................................................. 15

*In re McDermott Int'l, Inc.*,
    2023 WL 8215341 (S.D. Tex. Jan. 9, 2023)................................................ 18

*In re Valeant Pharms. Int'l Sec. Litig.*,
    2020 WL 7585741 (D.N.J. Dec. 21, 2020).................................................... 4

*Iris Connex, LLC v. Dell, Inc.*,
  235 F. Supp. 3d 826 (E.D. Tex. 2017) .......................................................... 20

*Jackson v. Rohm & Haas Co.*,
  2006 WL 680933 (E.D. Pa. Mar. 9, 2006) ..................................................... 16

*Johnson v. Tuff N Rumble Mgmt., Inc.*,
  2000 WL 622612 (E.D. La. May 15, 2000) .................................................... 17

*Jones v. Herrman & Herrman, PLLC*,
  2023 WL 6064790 (S.D. Tex. Mar. 28, 2023) ......................................... 5, 7, 8

*Katzman v. Victoria's Secret Catalogue*,
  167 F.R.D. 649 (S.D.N.Y. 1996) ................................................................... 17

*LCS Grp., LLC v. Shire LLC*,
  2019 WL 1234848 (S.D.N.Y. Mar. 8, 2019) .................................................. 12

*Manax v. McNamara*,
  660 F. Supp. 657 (W.D. Tex. 1987) ............................................................... 14

*Marquette v. S. Fid. Ins. Co.*,
  2015 WL 5083617 (E.D. La. Aug. 26, 2015) ........................................... 1, 13

*Martin v. Magee*,
  504 F. App'x 309 (5th Cir. 2012) .................................................................. 19

*Mercury Air Group, Inc., v. Mansour*,
  237 F.3d 542 (5th Cir. 2001) ........................................................................ 19

*Merriman v. Sec. Ins. Co. of Hartford*,
  100 F.3d 1187 (5th Cir. 1996) ...................................................................... 19

*Raines v. City of Starkville*,
  1996 WL 33370638 (N.D. Miss. Mar. 8, 1996) ............................................ 16

*Ritter v. Howard*,
  29 F.3d 624 (5th Cir. 1994) ............................................................................ 1

*Roor Int'l BV v. Stinky's Smoke Shop, LLC*,
  2021 WL 5514594 (E.D. Tex. Nov. 24, 2021) .............................................. 18

*Rygg v. Hulbert*,
  2014 WL 5023627 (W.D. Wash. Oct. 8, 2014) ............................................. 18

*Segal v. Lynch*,
  2007 WL 9753726 (S.D. Tex. June 29, 2007) ............................... 13, 14, 19, 20

*Sheshtawy v. Conservative Club of Houston, Inc.*,
    2016 WL 10880233 (S.D. Tex. Dec. 14, 2016) ........................................................... 18

*Soo San Choi v. D'Appolonia*,
    252 F.R.D. 266 (W.D. Pa. 2008) ................................................................................ 15

*St. Germain v. Howard*,
    556 F.3d 261 (5th Cir. 2009) ....................................................................................... 8

*Stanley v. Univ. of Tex. Med. Branch*,
    296 F. Supp. 2d 736 (S.D. Tex. 2003) ......................................................................... 8

*Van Deelen v. Alamogordo Pub. Sch.*,
    2008 WL 11417175 (D.N.M. Mar. 14, 2008) ............................................... 2, 16, 19, 20

*Van Deelen v. City of Eudora*,
    1996 WL 707016 (D. Kan. Nov. 5, 1996) .............................................................. 3, 19

*Van Deelen v. City of Kansas City*,
    2006 WL 2077640 (W.D. Mo. July 24, 2006) ........................................................ 3, 19

*Van Deelen v. Texas Workforce Comm'n*,
    2021 WL 245483 (Tex. App. Jan. 26, 2021) ................................................................. 2

*Walker v. Beaumont Indep. Sch. Dist.*,
    938 F.3d 724 (5th Cir. 2019) ..................................................................................... 13

*Walker v. S.W.I.F.T. SCRL*,
    517 F. Supp. 2d 801 (E.D. Va. 2007) .......................................................................... 9

*Whelan v. Winchester Prod. Co.*,
    319 F.3d 225 (5th Cir. 2003) ..................................................................................... 13

## **Rules**

Federal Rule of Civil Procedure 11 ................................................................... passim

Fed. R. Civ. P. 11(b)(1) ................................................................................... 17

Fed. R. Civ. P. 11(b)(1)-(3) .............................................................................. 8

Fed. R. Civ. P. 11(c)(4) .................................................................................. 20

## I.   **INTRODUCTION**

"Civil RICO law provides extraordinary remedies in response to egregious conduct and is concerned with long-term criminal conduct. It is not a weapon to be employed indiscriminately." *Ritter v. Howard*, 29 F.3d 624, 624 (5th Cir. 1994). Because RICO claims carry with them a threat of treble damages and an "almost inevitable stigmatizing effect" on the defendant, they are properly viewed as "draconian weapons." *Marquette v. S. Fid. Ins. Co.*, 2015 WL 5083617, at *3 (E.D. La. Aug. 26, 2015). Weighing these concerns, the Fifth Circuit has made clear that "an attorney's responsibility to conduct a reasonable prefiling investigation is particularly important in RICO claims." *Chapman & Cole v. Itel Container Int'l B.V.*, 865 F.2d 676, 685 (5th Cir. 1989). The Fifth Circuit requires counsel to back up RICO allegations with "concrete" and "solid" evidence of criminal conduct—"or risk sanctions for failing to do so." *Id.* at 685.

Despite the Fifth Circuit's admonition, Plaintiff has accused law firm Kirkland & Ellis ("Kirkland") of criminal RICO conduct on the thinnest of reeds—namely, two vague sentences in a newspaper article suggesting that unnamed "Kirkland partners" knew about the alleged misconduct of an attorney at a separate law firm. (Dkt. 10 [First Amended Complaint ("FAC")] ¶ 70.) Specifically, Plaintiff's case against Kirkland hinges on a report that "Kirkland partners" were "aware" that a partner at Jackson Walker LLP (which Kirkland used as local counsel in some of its bankruptcy matters) had been in a "romantic relationship" with former bankruptcy judge David Jones (who presided over some of those matters). (*Id.*) From this alleged "aware[ness]" about the alleged misconduct of its local counsel, Plaintiff accuses Kirkland of conspiring to commit a host of federal crimes, including mail fraud, wire fraud, obstruction of justice, bankruptcy fraud, and honest services fraud. (*Id.* ¶ 99.)

All the while, Plaintiff ignores the overwhelming evidence disproving his claims against

Kirkland. All reliable evidence, including admissions from each of Kirkland's purported "co-conspirators," has made clear that Kirkland was lied to about the existence and extent of the improper relationship—just like everyone else. (*See In re: 4E Brands Northamerica LLC*, Bk No. 22-50009, Dkt. 526-1 ("JW Exhibit 1") at 4 (Jackson Walker General Counsel stating in 2021 that "Elizabeth [Freeman] has confirmed there is no current romantic relationship between herself and Judge Jones and that none is expected going forward," and that the couple "have not lived together"); *id.* at 1 (Freeman confirming Jackson Walker's statements); Furlow Decl., Ex. 1 ("WSJ Article") (Jones admitting that the relationship was not disclosed).)

But while the allegations against Kirkland are both unsupported and unsupportable, it is less than surprising that Plaintiff has sought to manufacture legal claims where none exists. Both Plaintiff and his counsel have astounding track-records of filing meritless cases. Plaintiff himself has a "long history" of filing such cases in federal and state court. *Van Deelen v. Alamogordo Pub. Sch.*, 2008 WL 11417175, at *1 (D.N.M. Mar. 14, 2008).[1] Plaintiff has often filed these suits against entities and individuals who had confronted what they perceived to be his "disturbed" and "extremely unstable" real-world behaviors. *Id.* at *6.[2] In litigating these cases, moreover, Plaintiff

---

[1] *See also id.* at *1 (summarizing cases Plaintiff brought against, among others, (1) a "volunteer [baseball] association" that had "suspended Van Deelen from coaching a little-league team because he had a history of using profanity and of behaving irrationally while coaching"; (2) a prosecuting attorney "who charged Van Deelen with assault after victim identified Van Deelen as his aggressor"; (3) a school district that "barr[ed] Van Deelen from school property because of his conduct of using inappropriate language and obscene hand gestures towards teachers, students, and the principal of another school at a wrestling match" and where "the principal physically feared Van Deelen"; and (4) "six state-court judges . . . and a judicial assistant" after "one judge informed Van Deelen that, because of Van Deelen's oral threat to sue the judge and his administrative assistant, all communication should be in writing") (citations omitted).

[2] *See also Van Deelen v. Texas Workforce Comm'n*, 2021 WL 245483, at *1 (Tex. App. Jan. 26, 2021) (rejecting Plaintiff's suit for unemployment benefits after he was fired from his role as a teacher; affirming finding that he was "terminated for misconduct"; and summarizing evidence that Plaintiff had, among other things, "made false accusations against student and staff" that they had dealt drugs (when they had actually shared "chewing gum"); admitted to "stealing a lot of
(Continued...)

has been repeatedly sanctioned. *See, e.g.*, *Van Deelen v. City of Kansas City*, 2006 WL 2077640, at *14 (W.D. Mo. July 24, 2006), *aff'd*, 262 F. App'x 723 (8th Cir. 2007) (imposing sanctions after finding that Plaintiff "abused the judicial process by fabricating evidence"); *Van Deelen v. City of Eudora*, 1996 WL 707016, at *8 (D. Kan. Nov. 5, 1996) (finding Plaintiff had violated Rule 11).

Plaintiff's tactics were on full display in the bankruptcy court proceedings that led to this lawsuit.[3] For example, during a court hearing that took place more than a year before Plaintiff ever alleged that Jones and Freeman were in a relationship, Plaintiff "called the Court a 'son of a bitch,'" then filed a "sworn affidavit" denying "that he made such a remark." (Bk No. 20-30336, Dkt. 719.) But contrary to Plaintiff's sworn statement, "the Court's staff [heard] Mr. Van Deelen's statement and immediately reported it to chambers," and "Mr. Van Deelen's statement [was] audible on the original audio with headphones." (*Id.*)[4] As a result of these and other actions, the Court expressed "concerns about Mr. Van Deelen's mental stability" and "conclude[d] that Mr. Van Deelen poses a legitimate risk to the safety of courthouse staff and litigants." (*Id.* at 2.) Meanwhile, Plaintiff expanded his crusade against individual employees of the debtor (McDermott) and debtor's counsel (Kirkland partner Josh Sussberg), including by suing them for "fraud" and "false

---

stuff" from the school; assaulted the school's principal; concealed that he had been previously investigated by school districts for "committ[ing] various [crimes] on school property"; and been the subject of "more than 24 student complaints" for conduct ranging from "thr[owing] students' work away before grading it" to "call[ing] students clowns and animals").

[3] This lawsuit arises from Chapter 11 proceedings for McDermott International Inc. ("McDermott"), Bk No. 20-30336. Kirkland & Ellis LLP and one of its international affiliates, Kirkland & Ellis International LLP, represented McDermott. *See* FAC ¶ 40. Plaintiff, one of McDermott's shareholders, objected to the reorganization plan. *See id.* ¶ 58. Jones confirmed the plan over Plaintiff's objection in March 2020, and approved Kirkland's fees. *See id.* ¶¶ 44, 46.

[4] While not caught on audio recording—and thus denied by Plaintiff—Plaintiff made multiple other "vulgar remarks" during the hearing, including several aimed at Kirkland partner Josh Sussberg. (*See* Bk. No. 20-30336, Dkt. 694 at 3-4 ("Mr. Van Deelen waited for Mr. Sussberg outside of the restroom and called him a 'pasty white f***' and said 'I'll have my way with your wife.'"); *see also* Bk. No. 20-03309, Dkt. 59 at 9 ("Van Deelen responded: 'suck my d***.'").)

KIRKLAND'S MOTION FOR RULE 11 SANCTIONS

imprisonment," and by showing up unannounced at the home of the McDermott CFO, as caught on the CFO's doorbell camera. (Bk. No. 20-03309, Dkt. 57; Bk. No. 20-30336, Dkt. 694 at 4.)



For their part, Plaintiff's counsel—Bandas Law Firm—has been "widely criticized by . . . courts around the country" for its "lengthy and extremely troubling history." *In re Valeant Pharms. Int'l Sec. Litig.*, 2020 WL 7585741, at *5 (D.N.J. Dec. 21, 2020). The Bandas firm and its attorneys have been "condemned" by courts for their practices, which include allegedly engaging in litigation conduct that has "no genuine social value," that is "inconsistent with the ethical standards of the legal profession," and that "[g]ame[s] the rules of the legal system solely for personal self-enrichment." *Edelson PC v. Bandas L. Firm PC*, 2018 WL 723287, at *2 (N.D. Ill. Feb. 6, 2018); *see also Valeant*, 2020 WL 7585741 at *3 (denying a Bandas attorney's *pro hac vice* application given the firm's history, including behavior "unfitting for any member of the legal profession").

Plaintiff's counsel also has a history of pursuing baseless conspiracy and RICO claims against law firms. In 2018, for instance, Bandas filed retaliatory counterclaims alleging that another law firm had engaged in a "conspiracy to commit fraud" by "inducing" Bandas and its client to engage in mediation. *Edelson PC v. The Bandas Law Firm PC*, Case No. 1:16-cv-11057, Dkt. 143 at 56-60 (N.D. Ill., Dec. 3, 2018); *id.* at 51-52 (alleging that the counter-defendant firm schemed to "extort money from companies" while "duping its clients" with a "bag of dirty tricks").

But after making these serious and inflammatory allegations, just weeks later—and shortly after the court compelled discovery into Bandas's tactics—Bandas abruptly opted for an "unconditional surrender," "withdraw[ing] their Counterclaim" and "recogniz[ing] the disservice to the legal profession" created by their conduct. *Id.*, Dkt. 157 at 1 (N.D. Ill., Jan. 3, 2019); *id.*, Dkt. 175 at 3, 5 (N.D. Ill., Jan. 15, 2019). Even more on point, the Bandas attorneys who signed the FAC here have also pursued—and lost—meritless RICO claims that foreclose the FAC's theories against Kirkland. The FAC (incorrectly) accuses Kirkland of violating the Bankruptcy Rules by failing to disclose the Jones-Freeman relationship, thus allowing Kirkland to improperly collect "fees . . . and expenses." (FAC ¶ 42.) But less than a year ago, Bandas was told by a court in this District that its RICO complaint against yet another law firm failed as a matter of law because the alleged improper collection of "attorneys' fees or expenses" amounts to "at worst violations of the rules of professional responsibility" and does not "rise to the level of a criminal act for RICO purposes." *Jones v. Herrman & Herrman, PLLC*, 2023 WL 6064790, at *5 (S.D. Tex. Mar. 28, 2023).

In short, Plaintiff's complaint lacks both the factual and legal support that the law requires. And both Plaintiff and Plaintiff's counsel know this. Under these circumstances, Rule 11 sanctions are not only appropriate but necessary to deter such conduct in the future.

## II.  <u>BACKGROUND</u>

Kirkland & Ellis is one of the world's leading law firms and "the dominant US debtor law firm" for corporate bankruptcies. (FAC ¶¶ 29-30.) As go-to counsel for high-dollar complex bankruptcies, Kirkland often appeared in the Bankruptcy Court for the Southern District of Texas—itself "the nationwide center for high-dollar complex" bankruptcies. (FAC ¶ 20.) Like all complex bankruptcies in the Southern District, Kirkland's cases were randomly assigned to one of two judges: Judge Marvin Isgur and former Chief Bankruptcy Judge David Jones. (FAC ¶ 20.)

And like other major bankruptcy law firms practicing in the Southern District of Texas, Kirkland often retained Texas-based Jackson Walker LLP to serve as local counsel. (FAC ¶¶ 29-31.) Jackson Walker's broad appeal as local counsel was straightforward. The firm not only had substantial on-the-ground resources in Houston, but also included in its partnership the former clerks of both Judge Isgur and former-Judge Jones. (FAC ¶ 31.)

New information came to light in October 2023, however, after Plaintiff Michael Van Deelen filed this lawsuit. Originally naming only Jones as a defendant, Plaintiff alleged that then-Judge Jones had improperly favored Jackson Walker's client during the McDermott bankruptcy because of an alleged romantic relationship between Jones and Jackson Walker partner Elizabeth Freeman. (Dkt. 1 ¶¶ 8-9.) Days after Plaintiff filed suit, Jones—despite previously denying the relationship with Freeman—admitted to the Wall Street Journal that he was in a long-term relationship with Freeman and that they shared a home. (FAC ¶ 62; *see* WSJ Article.) News of Jones's secret relationship with Freeman "rocked the corporate bankruptcy world." (Furlow Decl., Ex. 2 (quoting former bankruptcy judge: "I am both shocked and saddened.").)

Jones initially defended the propriety of his secret relationship with Freeman. Jones asserted that "he and Freeman [had] agreed years ago that she would never appear in his court room" and that he was "entitled to a certain degree of privacy." (FAC ¶ 62.) He also made clear that "[he] and [he] alone made the call" not to disclose the relationship or recuse himself from cases. (WSJ Article at 3.) But when it was later revealed that Jones had approved more than $1 million dollars in fees for work done by Freeman herself, Jones agreed to step down from handling complex bankruptcy cases and eventually chose to resign. (FAC ¶¶ 63-67.)

In the face of this scandal, the institutions surrounding the Southern District Bankruptcy Court stood strong. The Fifth Circuit's Chief Judge Priscilla Richman took the rare step of issuing

- 6 -

a public order finding that Jones had likely engaged in misconduct when he awarded fees to Jackson Walker. (FAC ¶ 63.) And the U.S. Trustee—the federal watchdog with the statutory obligation to protect the integrity of the bankruptcy system—filed motions to vacate the "fees and expenses awarded to Jackson Walker" by Jones in the various cases he presided over "while Ms. Freeman was both a Jackson Walker partner and living with him in an intimate relationship," including the McDermott bankruptcy. (FAC ¶ 68 nn. 117-18; *see* Bk. No. 30-30336, Dkt. 1138.)

Judge Richman's order, the U.S. Trustee motions, and even Plaintiff's initial complaint in this case had one thing in common: none mentioned Kirkland & Ellis. (*See* Dkt. 1; FAC, Ex. 2; *In re: 4E Brands Northamerica LLC*, Bk. No. 22-50009, Dkt. 517 ("UST *4E Brands* Mtn.").) This made sense. Freeman worked at Jackson Walker, not Kirkland. (*See* UST *4E Brands* Mtn. ¶ 45 ("Due to the intimate, cohabiting relationship between Judge Jones and Ms. Freeman, Ms. Freeman and Jackson Walker were so connected to Judge Jones 'as to render it improper' for Judge Jones to have presided over or approved any Jackson Walker fee application.").) Nor did Kirkland benefit from the purportedly tainted fees that Jones awarded to Jackson Walker. (*See* FAC, Ex. 2 at 2 ("[T]here is a reasonable probability that Elizabeth Freeman, as a partner [at Jackson Walker], obtained a financial benefit from, or had a financial interest in, fees approved by Judge Jones.").)

Then Bandas Law Firm entered the picture. On January 11, 2024, Bandas filed the FAC on Plaintiff's behalf. (FAC at p. 95.) Dramatically expanding (and often contradicting) Plaintiff's original allegations, the FAC alleged that "Van Deelen and many others [were] victims of a larger enterprise consisting of, at a minimum, Judge Jones, Freeman, Jackson Walker, and Kirkland & Ellis." (FAC ¶ 2.) This was not the first time the Bandas Law Firm asserted meritless RICO claims against a law firm. In *Jones v. Herrman & Herrman, PLLC*, Bandas sued a personal injury law firm (along with four members of the firm) and alleged that the firm's practice of charging an

"administrative fee of $195" to cover administrative expenses constituted "wire fraud" and violated RICO. 2023 WL 6064790 at *1, *4. The court swiftly rejected that theory, holding that the alleged "practices of overcharging the plaintiffs were not '*criminal* acts under RICO.'" *Id.* at *5 (quoting *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009)). Nevertheless, less than a year later, the same Bandas lawyers who signed the *Herrman & Herrman* pleadings signed this civil RICO complaint against Kirkland. (*See* FAC at p. 95.)

## III.   LEGAL STANDARD

Rule 11 "requires attorneys and parties to conduct reasonable investigation into the facts and laws surrounding a case before filing a lawsuit or any other paper before a court." *Stanley v. Univ. of Tex. Med. Branch*, 296 F. Supp. 2d 736, 738 (S.D. Tex. 2003). By filing a complaint, a litigant certifies that (1) "it is not being presented for any improper purpose"; (2) "the claims [and] legal contentions" are warranted or justifiable by existing law; and (3) the factual contentions have adequate evidentiary support. Fed. R. Civ. P. 11(b)(1)-(3). Violating any of these obligations is an "independent bas[is] for sanctions." *F.D.I.C. v. Maxxam, Inc.*, 523 F.3d 566, 577 (5th Cir. 2008).

## IV.   ARGUMENT

Plaintiff's FAC violates each of Rule 11's three subparts: it is factually groundless, legally frivolous, and was filed for an improper purpose. *See* Fed. R. Civ. P. 11(b)(1)-(3).

### A.   Plaintiff's Factual Allegations Against Kirkland Are Frivolous

The core factual allegation underpinning all of Plaintiff's claims—including its RICO claims—is that Kirkland filed various "misleading and dishonest federal court papers without disclosing the Jones-Freeman relationship." (FAC ¶ 5.) Because Kirkland could not have disclosed information it knew nothing about, all of Plaintiff's claims depend on his allegation that Kirkland "long knew of the relationship" between Freeman and Jones, (FAC ¶ 75; *see also id.* ¶ 4 (alleging

that Kirkland "knew of the relationship and used it to profit")). *See, e.g.*, *Celanese Corp. v. Coastal Water Auth.*, 475 F. Supp. 2d 623, 637 (S.D. Tex. 2007) (fraud occurs only if "a party conceals or fails to disclose a material fact within the knowledge of that party").

Plaintiff lacked a sufficient factual basis to make this critical allegation and all allegations stemming from it. These allegations are sanctionable for three separate reasons: (1) a single, unverified source is insufficient to justify accusations that Kirkland engaged in sweeping criminal activity; (2) Plaintiff ignored other credible information that contradicts his allegation; and (3) Plaintiff mischaracterizes the single source cited.

*First*, it was unreasonable to allege that Kirkland engaged in intentional criminal activity based on unverified and unattributed hearsay in a publicly reported article. Despite repeatedly asserting that "Kirkland" knew of Jones and Freeman's "long-term and ongoing relationship" (FAC ¶ 1), Plaintiff's allegations of such knowledge are limited to a single paragraph. (*See id.* ¶ 70.) There, he selectively quotes from a Financial Times ("FT") article, alleging that "multiple" unnamed "Kirkland partners told the [FT] that they were long aware of the romantic relationship between the pair, though they did not know advanced it was." (*Id.*) Such "unverified hearsay" is "not a sufficient basis upon which to 'subject one to the burdens of complex litigation and heavy legal costs'" which attend RICO claims. *Chapman*, 865 F.2d at 685 (affirming Rule 11 sanctions); *see also Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 807 (E.D. Va. 2007) (reliance on a *New York Times* piece could not satisfy Rule 11 obligations, which would "reduce that duty to the mere purchase of a newspaper"); *Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274, 1280 (3d Cir. 1994) (affirming Rule 11 sanctions where plaintiffs' allegations rested on statements from a "Wall Street Journal article" and two other unverified sources).

But even if Plaintiff could use the FT article for the limited purpose of inferring that

KIRKLAND'S MOTION FOR RULE 11 SANCTIONS

Kirkland knew of the Jones-Freeman relationship, he did not stop there: Plaintiff further alleged that Kirkland "deliberately concealed" the relationship (FAC ¶ 101), "influenc[ed] the orders issued in bankruptcy proceedings for the benefit of Defendants" (*id.* ¶ 92(i)), and even "communicate[d] with clients and potential clients regarding the favorable outcomes Defendants . . . have and would be able to obtain in proceedings before Judge Jones" (*id.* ¶ 105). None of these inflammatory allegations—which go far beyond mere knowledge of the misconduct of third parties—find any support in the FT article or any other source. *See In re Australia & New Zealand Banking Grp. Ltd. Sec. Litig.*, 712 F. Supp. 2d 255, 265 (S.D.N.Y. 2010) (imposing Rule 11 sanctions where Plaintiff "came to rest his entire case on a misread news article").

*Second*, Plaintiff not only relies on a lone hearsay source, but also willfully disregards other more reliable information that contradicts his narrative. Specifically, Jackson Walker has represented in court filings that it disclosed the Jones-Freeman relationship to Kirkland for the first time in March 2021. (FAC ¶ 69 (citing JW Exhibit 1 at 3-4).) Importantly, at that time, Jackson Walker had been (falsely) told by Freeman that the relationship was over and that she and Jones "do not and have not lived together." (JW Exhibit 1 at 3-4; *compare with* Bk. No. 30-30336, Dkt. 1138 (Freeman admitting in 2024 in a "day-long interview with the U.S. Trustee" that since 2017, "she never moved out of the home she shared and owned with Jones").) Jones has similarly admitted that he did not disclose the relationship, that he believed he was entitled to "privacy" on the matter, and that "[he] alone made [that] call." (WSJ Article at 3.) And Chief Judge Richman held that Jones had likely concealed the relationship from even his closest judicial colleague— Judge Isgur—even though Judge Isgur had been charged with determining if any such relationship existed. (*See* FAC, Ex. 2 at 2 ("Judge Jones referred the motion to recuse to another bankruptcy judge but did not disclose to that judge the facts regarding his relationship with Ms. Freeman.");

*see also* Bk. No. 20-30336, Dkt. 1138 ¶ 25 (U.S. Trustee motion describing the Jones-Freeman relationship as "secret").)

Despite all these facts, Plaintiff persists in alleging that Kirkland knew of the relationship "[f]rom the point that Freeman joined Jackson Walker (either in 2017 or 2018)." (FAC ¶ 85.) But such factual allegations are no longer tenable in light of the information provided by all three of Kirkland's alleged co-schemers and that was uncovered by Chief Judge Richman and the U.S. Trustee. *See Heisler v. Kean Miller, LLP*, 2021 WL 5919507, at \*4 (E.D. La. Dec. 15, 2021) (awarding sanctions where plaintiff and her attorney made "material factual allegations in the complaint [that] were false, and were contradicted by public records provided" to them); *Homecare CRM, LLC v. Adam Grp., Inc. of Middle Tennessee*, 952 F. Supp. 2d 1373, 1385 (N.D. Ga. 2013) (awarding sanctions where plaintiff "ignored evidence in its possession that directly contradicts [the complaint's] factual allegations").

*Third*, in continuing to allege that Kirkland had knowledge of the Jones-Freeman relationship before March 2021, Plaintiff subtly but materially mischaracterizes the FT article as contradicting Jackson Walker's statement that it informed Kirkland of the allegations against Freeman in 2021. (FAC ¶¶ 69-70.) Below, the text of the FT article is contrasted with Plaintiff's misleading quotations:

| ***Financial Times* Article** | **FAC ¶ 69-70** |
| --- | --- |
| "Jackson Walker said it had informed Kirkland about its 2021 inquiry into Freeman's relationship with Jones. Multiple Kirkland partners told the FT that they were long aware of the romantic relationship between the pair, though did not know how advanced it was. The Kirkland lawyers assumed the pair had received clearance from a superior court or decided that it was not Kirkland's place to intervene in Jackson's retention applications." (Furlow | Jackson Walker "claim[ed] it learned of the relationship [in 2021] . . . [and] then "disclosed these matters to our Kirkland co-counsel, who disclosed them to the client." **However,** "[m]ultiple Kirkland partners told the FT that they were long aware of the romantic relationship between the pair, though [they] did not know how advanced it was." **Rather than believing the relationship had ended,** "[t]he Kirkland lawyers assumed the pair had received clearance from a superior court or decided that |

| Decl., Ex. 3 ("FT Article") at 9.) | it was not Kirkland's place to intervene." (emphasis added) |

In the FT article, the statements attributed to "Kirkland partners" have no specified time frame and are consistent with the statement that "Jackson Walker informed Kirkland about its 2021 inquiry." (FT Article at 9.) Yet Plaintiff inexplicably inserts "However" before the second sentence to suggest that the "Kirkland partners" admitted to knowing of the relationship prior to 2021, when they did no such thing. *See* Oxford Dictionary, *However* (3d ed.) ("Used to introduce a statement that contrasts with or seems to contradict something that has been said previously."). In addition, Plaintiff inserted the phrase "[r]ather than believing the relationship had ended," before a second quote from the FT. (FAC ¶ 70.) But nowhere does the FT article even suggest the Kirkland lawyers did not "believ[e] the relationship had ended." (*Id.*) Plaintiff appears to have simply invented a material allegation against Kirkland. At the very least, Plaintiff's allegations are "misleading representations of inferences as facts," which "can lead to sanctions" "whether careless or deliberate." *Harrison v. Dean Witter Reynolds, Inc.*, 132 F.R.D. 184, 188 (N.D. Ill. 1990).

While each of these three actions independently violates Rule 11, together they make plain that Plaintiff had no reasonable basis to accuse Kirkland of criminal misconduct. Plaintiff's allegations merely establish that in the course of Kirkland's bankruptcy practice, Kirkland's local counsel made poor decisions. They do not show that Kirkland committed federal crimes. *See LCS Grp., LLC v. Shire LLC*, 2019 WL 1234848, at *15 (S.D.N.Y. Mar. 8, 2019) ("[I]mproper RICO claims are even more egregious when levied against a law firm" because "the consequences to a law firm, in particular, are nothing short of disastrous."); *In re Eon Enterprises Corp.*, 59 F.3d 174 (9th Cir. 1995) (affirming sanctions where plaintiff did not "provide any factual or legal support for his argument" that defendant law firm "should be required to disgorge its fees because it failed to disclose another law firm's conflict of interest").

### B.     **Plaintiff's RICO Claims Are Legally Frivolous**

Rule 11 requires a party to engage in a "reasonable inquiry into the relevant law." *Bruno*

*v. Starr*, 2006 WL 2631861, at *4 (E.D. La. Sept. 12, 2006), *aff'd*, 247 F. App'x 509 (5th Cir.

2007). "[T]he Fifth Circuit has stressed the importance of a sufficient pre-filing factual and legal

inquiry when filing RICO claims because 'a RICO cause of action by definition involves complex

litigation and high legal costs.'" *Segal v. Lynch*, 2007 WL 9753726, at *7-8 (S.D. Tex. June 29,

2007). Accordingly, "[c]ourts have not hesitated to impose sanctions under Rule 11 when RICO

claims have been found to have been frivolous." *Dangerfield v. Merrill Lynch, Pierce, Fenner &*

*Smith, Inc.*, 2003 WL 22227956, at *13 (S.D.N.Y. Sept. 26, 2003) ("Rule 11's deterrence value is

particularly important in the RICO context."); *Marquette*, 2015 WL 5083617 at *3 ("Civil RICO

claims are extremely susceptible to the impropriety embraced within Rule 11." (cleaned up).)

Plaintiff's RICO claims warrant sanctions because they are "clearly foreclosed by Fifth

Circuit precedent" as to at least three elements. *Bruno*, 2006 WL 2631861, at *4.

(1) RICO Enterprise: Plaintiff's RICO claims require him to "plead specific facts, not mere

conclusory allegations, which establish the existence of an enterprise." *Elliott v. Foufas*, 867 F.2d

877, 881 (5th Cir. 1989) (dismissing RICO claims). Among other things, a RICO enterprise must

"exist separate and apart from the pattern of racketeering activity in which it engages." *Whelan v.*

*Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003).

Here, Plaintiff has not even attempted to allege that the so-called "Jones-Freeman-Jackson

Walker-Kirkland & Ellis Enterprise (FAC ¶ 90) ("Enterprise") "exist[ed] for purposes other than

just to commit predicate acts." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 738 (5th Cir.

2019). To the contrary, Plaintiff's theory seems to be that the *only* "purpose" of the Enterprise was

to engage in the RICO predicate acts alleged, i.e., "to commit bankruptcy fraud, mail fraud, wire

fraud, and theft of honest services mail/wire fraud." (FAC ¶ 90; *see also id.* ¶ 87 (alleging "the purpose of the [Enterprise] was to utilize the intimate relationship between Judge Jones and Freeman to enrich Freeman, Jackson Walker, and Kirkland & Ellis . . . all without disclosing the intimate relationship to affected parties and creditors.").) Plaintiff also alleges that the Enterprise existed "[f]rom the point that Freeman joined Jackson Walker . . . until October 2023," "when Judge Jones resigned" (*id.* ¶¶ 85, 89), which is coextensive with the alleged pattern of racketeering activities (*id.* ¶ 94). In other words, the FAC alleges that "the Defendants formed the enterprise specifically to commit the very criminal acts listed as predicates . . . , and nothing beyond that," which "is not sufficient to plead the existence of an enterprise separate and apart from the pattern of racketeering activity in which it engages." *Fernandez-Lopez v. Hernandez*, 2020 WL 9396487, at *12 (W.D. Tex. Nov. 20, 2020) (Moses, J.). Plaintiff's failure to allege an enterprise—let alone one that includes Kirkland—renders his RICO claims frivolous. *See, e.g.*, *Erwin v. Russ*, 481 F. App'x 128, 132 (5th Cir. 2012) ("Plaintiffs' RICO claims were frivolous because they failed to identify a RICO enterprise."); *Segal*, 2007 WL 9753726 at *8 (awarding sanctions where "Plaintiff blatantly lacked evidentiary support" for RICO claim, including "existence of a RICO enterprise").

In addition, a RICO enterprise "must function as a continuing unit as shown by a hierarchical or consensual decision making structure." *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 673 (5th Cir. 2015). Since no such enterprise existed, the FAC is unsurprisingly devoid of allegations explaining how the alleged Enterprise made decisions or coordinated internally. *See Manax v. McNamara*, 660 F. Supp. 657, 662 (W.D. Tex. 1987), *aff'd*, 842 F.2d 808 (5th Cir. 1988) (no enterprise where there is "no . . . indication of a decision-making structure" other than "a loose analogy to a Mafia family"); *Elliott*, 867 F.2d at 881 (dismissing RICO claim where plaintiff did "not allege the additional organizational characteristics necessary" for an enterprise). Plaintiff's

failure to "even mention" this requirement "points to a lack of effort on the part of [Plaintiff] in verifying that the RICO claims were well grounded in the law." *Bruno*, 2006 WL 2631861, at *4.

(2) "Operation or Management": Plaintiff must allege that Kirkland "participated in the operation or management of the enterprise itself." *In re MasterCard Int'l Inc.*, 313 F.3d 257, 261 (5th Cir. 2002); *see also Allstate Ins. Co. v. Benhamou*, 190 F. Supp. 3d 631, 655 (S.D. Tex. 2016) ("[T]he Fifth Circuit has made clear that a defendant must have some supervisory involvement in an enterprise in order to satisfy § 1962(c)'s conduct or participate requirement."). The FAC merely parrots this requirement (*see* FAC ¶¶ 85, 88), making no effort to plead any specific facts showing Kirkland's participation in the Enterprise. At most, Plaintiff has alleged a business relationship between Jackson Walker and Kirkland, and that Kirkland may have "benefitted . . . by receiving financial compensation, enhanced status as bankruptcy attorneys, and favorable rulings for their clients." (FAC ¶ 113.) While Kirkland will prove that insinuation false, the law is clear that "[h]aving a business relationship with a RICO enterprise does not constitute operation and management of the enterprise's affairs necessary for RICO liability." *Compass Bank v. Villarreal*, 2011 WL 1740270, at *13 (S.D. Tex. May 5, 2011) (collecting cases). Nor does "receiving funds or materials" from the alleged scheme. *Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 551 (5th Cir. 2012). Plaintiff's conclusory allegation of "participation," without "some action or conduct by the party being joined that creates an inference of participation," violates Rule 11. *Soo San Choi v. D'Appolonia*, 252 F.R.D. 266, 267 (W.D. Pa. 2008) (awarding sanctions).

(3) RICO Conspiracy: As to Plaintiff's RICO conspiracy claim, "[b]ecause the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." *Galindo v. City of Del Rio*, 2021 WL 2763033, at *6 (W.D. Tex. Mar. 26, 2021) (Moses, J.) (quoting *Crowe v. Henry*, 43

F.3d 198, 206 (5th Cir. 1995)). Given the various conspiracy theories he has pursued over the years, Plaintiff has been repeatedly advised of the "agreement" requirement for conspiracy claims. *See, e.g.*, *Alamogordo Pub. Sch.*, 2008 WL 11417175 at *12 (dismissing conspiracy claims because "Van Deelen has failed to allege specific facts showing an agreement and concerted action"); *Van Deelen v. Klein Independent School District et al.*, Case No. 4:14-CV-00923, Dkt. 66 at 15 (S.D. Tex. Mar. 3, 2015) (dismissing conspiracy claim for failure to "plead any facts to . . . provide plausible grounds to suggest an agreement was made").[5]

But the only allegations in the FAC addressing any "agreement" are wholly conclusory. (*See* FAC ¶¶ 126-127; 199; 218-219.) Plaintiff does not allege that Defendants agreed or otherwise coordinated to conceal the relationship. (*Id.*) In fact, the *only* communication alleged between Kirkland and the other Defendants about the Jones-Freeman relationship is Jackson Walker's notification to Kirkland of Plaintiff's allegations in March 2021. (*See* FAC ¶ 69.) Far from supporting Plaintiff's allegation of a long-standing conspiracy, such belated notification tends to show that Kirkland was actually an *outsider* to any supposedly preexisting scheme. Like the other legal shortcomings in his RICO theory, these deficient conspiracy allegations are alone ample grounds for sanctions. *See, e.g.*, *Raines v. City of Starkville*, 1996 WL 33370638, at *12 (N.D. Miss. Mar. 8, 1996) (finding Rule 11 violation where "conclusory conspiracy charges against Spruill had neither a well-founded factual basis nor made any legal sense"); *Jackson v. Rohm & Haas Co.*, 2006 WL 680933, at *6 (E.D. Pa. Mar. 9, 2006), *aff'd*, 366 F. App'x 342 (3d Cir. 2010) (awarding Rule 11 sanctions in part because the complaint "fails to support the idea of a

---

[5] Plaintiff's counsel was likewise aware of the demanding "agreement" requirement. As the named defendant in a RICO case, Bandas argued that "the conspiracy claim utterly fails to demonstrate that the parties ever reached any agreement that they would commit any specific acts that would constitute a RICO violation." *Edelson PC v. Bandas L. Firm PC*, Case No. 1:16-cv-11057, Dkt. 64 at 29 (N.D. Ill. April 10, 2017).

conspiracy"); *see also Johnson v. Tuff N Rumble Mgmt., Inc.*, 2000 WL 622612, at *7 (E.D. La. May 15, 2000) (finding a Rule 11 violation where plaintiff's "prior experience clearly demonstrates that he is aware of the legal elements required").

### C.     The FAC Was Filed for an Improper Purpose

Plaintiff's FAC also violates Rule 11 because it was filed for an "improper purpose." Fed. R. Civ. P. 11(b)(1). In determining whether a plaintiff had an "improper purpose," courts "look to objectively ascertainable circumstances rather than subjective intent." *Maxxam*, 523 F.3d at 585. Here, the objective circumstances show that Plaintiff's FAC was filed to harass Kirkland.

*First*, a pleading's lack of merit is itself sufficient to suggest an improper purpose. *See Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 661 (S.D.N.Y. 1996), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) ("The total lack of substance in the Plaintiffs' RICO claims and the egregious and unjustified neglect of the required statutory elements gives rise to the inference that the action was filed for improper purposes."); *Annamalai v. Moon Credit Corp.*, 2017 WL 5646925, at *3 (S.D. Tex. Apr. 21, 2017) (finding an improper purpose because "there is no precedent or authority to support the legal theory underlying" plaintiff's claim). That is particularly true where, as here, the plaintiff has brought meritless RICO claims, because often "the only reason these statutory claims [are] alleged [is] because they contain treble damages provisions." *Barlow v. McLeod*, 666 F. Supp. 222, 230 (D.D.C. 1986), *aff'd*, 861 F.2d 303 (D.C. Cir. 1988).

*Second*, Plaintiff's "filing of excessive motions" related to the McDermott bankruptcy are indicative of harassment. *Maxxam*, 523 F.3d at 585. Plaintiff's alleged injury in this case is that he "lost his entire investment of 30,000 shares in McDermott" during the bankruptcy proceedings. (FAC ¶ 2.) But Plaintiff has previously litigated the McDermott bankruptcy plan at least five times, including through (1) his motion for an order sustaining his objection to the Plan (*see* Bk. No. 20-

30336, Dkt. 510); (2) his adversary suit against Kirkland & Ellis partner Josh Sussberg and several

McDermott executives[6]; (3) his motion to recuse Jones from the adversary suit "based on what he

contended was inappropriate or biased conduct in the prior McDermott bankruptcy proceedings,"

*In re McDermott Int'l, Inc.*, 2023 WL 8215341 at *1 (S.D. Tex. Jan. 9, 2023)[7]; (4) his appeal of

the adversary suit (including the recusal ruling) to the district court, *see id.*; and (5) his petition for

a writ of mandamus from the Fifth Circuit to compel Jones's recusal from the adversary suit, *see*

*id.* at *11. On top of that, Plaintiff's appeal of the adversary proceeding is still "pending before the

Fifth Circuit." (FAC ¶ 61.) Plaintiff's FAC improperly "seeks to perpetuate this unreasonable

multiplication of proceedings," "particularly considering the severity of the unsupported

allegations being made (i.e.—claims of intentional criminal behavior and conspiracies)."

*Sheshtawy v. Conservative Club of Houston, Inc.*, 2016 WL 10880233, at *6 (S.D. Tex. Dec. 14,

2016) (awarding sanctions); *Roor Int'l BV v. Stinky's Smoke Shop, LLC*, 2021 WL 5514594, at *3

(E.D. Tex. Nov. 24, 2021) (sanctioning plaintiff for a motion that "reiterated arguments made in

prior motions"); *Rygg v. Hulbert*, 2014 WL 5023627, at *11 (W.D. Wash. Oct. 8, 2014)

(sanctioning Plaintiff for RICO allegations "made without a plausible pattern of racketeering, in

an attempt to bring their already-adjudicated dispute before the federal courts once again").

*Third*, the litigation histories of both Plaintiff and Plaintiff's counsel further indicate these

claims against Kirkland were filed for an improper purpose. Several courts have taken note of

Plaintiff's "long history of engaging in extensive litigation" against those he disagrees with and

---

[6] Plaintiff asserted, *inter alia*, that Defendants caused McDermott to undergo an unnecessary chapter 11 restructuring for their own benefit. (Bk. No. 03309, Dkt. 57.)

[7] Plaintiff first alleged an intimate relationship between Jones and Freeman in connection with this motion, which was heard by Bankruptcy Judge Marvin Isgur. (*See* FAC ¶¶ 59, 60.) Judge Isgur held an evidentiary hearing to determine if the allegations were "credible," (Bk No. 20-03309, Dkt. 40 at 1), after which he denied the motion (*id.*, Dkt. 42, No. 20-03309).

even sanctioned him for misconduct. *Alamogordo Pub. Sch.*, 2008 WL 11417175 at *1; *see also City of Kansas City*, 2006 WL 2077640 at *16 (imposing sanctions after finding that Van Deelen filed the suit "not for the purpose of protecting his constitutional rights, but rather maliciously to vex and annoy the City"); *City of Eudora*, 1996 WL 707016 at *8 (granting Rule 11 sanctions and "strongly adominish[ing] plaintiff to act more diligently in reviewing the facts and the relevant law in all future filings"). Likewise, courts across the country have recognized that Bandas Law Firm and its attorneys specialize in "effort[s] to extort money" through strategically vexatious filings. *In re Cathode Ray Tube Antitrust Litig.*, 281 F.R.D. 531, 533 n.4 (N.D. Cal. 2012) (citation omitted); *see also Garber v. Off. of Comm'r of Baseball*, 2017 WL 752183, at *6 (S.D.N.Y. Feb. 27, 2017) ("This Court joins the other courts throughout the country in finding that Bandas has orchestrated the filing of a frivolous objection in an attempt to throw a monkey wrench into the settlement process and to extort a pay-off."). This decades-long and nationwide misconduct provides strong indicia that this suit against Kirkland is more of the same. *See Difebbo-Kass v. Par. of Plaquemines*, 2015 WL 7281616, at *2 (E.D. La. Nov. 16, 2015) ("The courts often use . . . proof of excessive litigiousness[] to support imposing sanctions."); *Martin v. Magee*, 504 F. App'x 309, 312 (5th Cir. 2012) (sanctioning lawyer who "demonstrated a continued pattern of filing frivolous, vexatious appeals that waste judicial resources").

### D.     Monetary Sanctions Are Necessary to Deter Plaintiff's Conduct

The Fifth Circuit has recognized that "[a]ttorneys' fees are an appropriate sanction designed to deter frivolous litigation." *Merriman v. Sec. Ins. Co. of Hartford*, 100 F.3d 1187, 1194 (5th Cir. 1996). Indeed, attorney's fees have "been deemed the 'least severe sanction for a lawsuit that is wholly frivolous.'" *Segal*, 2007 WL 9753726 at *9 (quoting *Mercury Air Group, Inc., v. Mansour*, 237 F.3d 542, 548 (5th Cir. 2001)). Such monetary sanctions are particularly necessary

where, as here, "previous sanctions"—including prior sanctions and admonitions—"did not discourage [Plaintiff] from filing the frivolous complaint." [8] *Collie v. Kendall*, 1999 WL 462327, at *5 (N.D. Tex. July 6, 1999) ("[A] monetary sanction is appropriate and is the least severe sanction adequate to achieve the purposes of Rule 11.").

Kirkland seeks an award of "attorneys' fees and costs expended defending against this frivolous suit," including fees and costs associated with this sanctions motion and its forthcoming motion to dismiss. *Babineaux v. Wells Fargo Bank, N.A.*, 2023 WL 9508094, at *18 (S.D. Tex. Nov. 29, 2023), *report and recommendation adopted*, 2024 WL 406776 (S.D. Tex. Feb. 2, 2024). In addition, Plaintiff should pay a "penalty into court" in an amount the Court deems appropriate. Fed. R. Civ. P. 11(c)(4); *see, e.g.*, *Iris Connex, LLC v. Dell, Inc.*, 235 F. Supp. 3d 826, 863 (E.D. Tex. 2017) (imposing penalty of $25,000). Because the FAC is both factually and legally frivolous, these sanctions should be imposed on both Plaintiff and Plaintiff's counsel. *See Segal*, 2007 WL 9753726 at *9 (apportioning attorney's fees sanction between Plaintiff and her attorney).

## V.   <u>CONCLUSION</u>

The Fifth Circuit has not minced words: a plaintiff cannot assert RICO claims without a well-founded factual and legal basis. Plaintiff has not only done just that—he ticks every box courts look to under Rule 11. Plaintiff distorts and ignores key evidence. Plaintiff has litigated (and re-litigated) his grievances with the McDermott bankruptcy. And both Plaintiff and his counsel have a long history of vexatious litigation tactics. Any and all of these violations of Rule 11 warrants sanctions. Kirkland respectfully requests that the Court grant its motion.

---

[8] *See supra* Sections I and II (describing admonitions against the Bandas Law Firm and sanctions imposed on Plaintiff); *see also Van Deelen v. Klein Independent School District et al.*, Case No. 4:14-CV-00923, Dkt. 84 (S.D. Tex. July 2, 2015) ("[C]aution[ing] Plaintiff that he may have to pay a defendant's attorney's fees in the future if he maintains any pending suit or files any suit in the future that is frivolous, unreasonable, or groundless according to applicable law.").

DATED: February 23, 2024

Respectfully submitted:

*/s/ David J. Beck*

BECK REDDEN LLP
David J. Beck
Texas Bar No. 00000070
dbeck@beckredden.com
Jacqueline M. Furlow
Texas Bar No. 24087551
jfurlow@beckredden.com
1221 McKinney, Suite 4500
Houston, Texas 77010-2010
Telephone: (713) 951-3700
Facsimile: (713) 951-3720

HUESTON HENNIGAN LLP
John Hueston
California Bar No. 164921 (*pending Pro Hac Vice*)
jhueston@hueston.com
Michael Todisco
California Bar No. 315814 (*pending Pro Hac Vice*)
mtodisco@hueston.com
Karen Ding
California Bar No. 325215 (*pending Pro Hac Vice*)
kding@hueston.com
523 West 6th St., Unit 400
Los Angeles, CA 90014

*Attorneys for Defendants Kirkland & Ellis LLP and
Kirkland & Ellis International LLP*

KIRKLAND'S MOTION FOR RULE 11 SANCTIONS

**PROOF OF SERVICE**

On February 23, 2024, I served the foregoing document(s) described as:

**DEFENDANTS KIRKLAND & ELLIS LLP AND KIRKLAND & ELLIS INTERNATIONAL LLP'S MOTION FOR SANCTIONS PURSUANT TO RULE 11; and**

**DECLARATION OF JACQUELINE M. FURLOW IN SUPPORT OF DEFENDANTS KIRKLAND & ELLIS LLP AND KIRKLAND & ELLIS INTERNATIONAL LLP'S MOTION FOR SANCTIONS PURSUANT TO RULE 11**

on the interested parties in this action as stated below:

Robert William Clore
Mikell Alan West
Bandas Law Firm PC
802 N Carancahua
Suite 1400
Corpus Christi, TX 78401
T: 361-698-5200
rclore@bandaslawfirm.com
mwest@bandaslawfirm.com

*Attorney for Plaintiff Michael D. Van Deelen*

Gary Cruciani
Patrick William Pijls
John James Sparacino
McKool Smith, P.C.
300 Crescent Court
Suite 1500
Dallas, TX 75201
T: 214-978-4004
F: 214-978-4044
gcruciani@mckoolsmith.com
ppijls@mckoolsmith.com
jsparacino@mckoolsmith.com

*Attorney for Defendant David R. Jones*

Tom Kirkendall
Law Office of Tom Kirkendall
2 Violetta Court
The Woodlands, TX 77381
T: 713-703-3536
bigtkirk@gmail.com

*Attorney for Defendant Elizabeth C. Freeman*

[X]    (BY E-MAIL) By transmitting a true copy of the foregoing document(s) to the e-mail addresses set forth above.

I declare under penalty of perjury under the laws of the State of Texas that the foregoing is true and correct.

Executed on February 23, 2024, at Houston, Texas.

Jacqueline M. Furlow
(Type or print name)

(Signature)

6598678

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on March 18, 2024, a true and correct copy of this document was served on the following counsel of record via the Court's CM/ECF system and by e-mail in compliance with the Federal Rules of Civil Procedure and Southern District of Texas Local Rule 5.3:

Robert William Clore
Mikell Alan West
Bandas Law Firm, PC
802 N. Carancahua Street, Suite 1400
Corpus Christi, Texas 78401
Telephone: (361) 698-5200
rclore@bandaslawfirm.com
mwest@bandaslawfirm.com
*Counsel for Plaintiff Michael D. Van Deelen*

John J. Sparacino
MCKOOL SMITH, PC
600 Travis Street, Suite 7000
Houston, Texas 77002
Telephone: (713) 485-7300
Facsimile (713) 485-7344
jsparacino@mckoolsmith.com

Tom Kirkendall
Law Office of Tom Kirkendall
2 Violetta Court
The Woodlands, Texas 77381
Telephone: (713) 703-3536
bigtkirk@gmail.com
*Counsel for Elizabeth C. Freeman*

Gary Cruciani
Patrick William Pijls
MCKOOL SMITH, PC
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044
gcruciani@mckoolsmith.com
ppijls@mckoolsmith.com
*Counsel for David R. Jones*

Russell Hardin, Jr.
Jennifer Elizabeth Brevorka
Leah Graham
Emily Smith
Rusty Hardin & Associates, LLP
1401 McKinney Street, Ste. 2250
Houston, TX 77010
rhardin@rustyhardin.com
jbrevorka@rustyhardin.com
lgrahm@rustyhardin.com
esmith@rustyhardin.com
*Counsel for Jackson Walker LLP*

By: */s/ Jacqueline M. Furlow*
Jacqueline M. Furlow

- 23 -