# EXHIBIT 3

The Big Read   Law

# The downfall of the judge who dominated bankruptcy in America

David R Jones made Houston the nation's insolvency capital before an undisclosed relationship forced his resignation and prompted calls for reform

**Sujeet Indap** in New York NOVEMBER 21 2023

"There is simply no ambiguity in my mind," said Judge David R Jones as he made a ruling last May in the bankruptcy case of Serta Simmons Bedding, a large, private equity-backed mattress company.

"And I appreciate that perhaps a different court reached a different conclusion but, again, I sit in with these matters every single day . . . this is very easy for me."

Jones was then the chief judge for the Southern District of Texas (SDTX) federal bankruptcy court and based in Houston. His decision cleared the way for a slim majority group of creditors to take control of the company and leave another group's holdings close to worthless. Serta Simmons itself would go on to quickly exit court supervision, as the company wished.

In the oral ruling, Jones had pre-empted an ongoing lawsuit over the Serta Simmons gambit that was winding its way through an arguably more senior federal district court in New York, prompting many lawyers and legal scholars to both grumble and marvel at what they regarded as a power play predicated upon cavalier legal reasoning.

Still, the ruling cemented the status of Jones as the ultimate kingmaker in big US bankruptcy cases — so far in 2023, of the 54 large Chapter 11 cases filed, 25 landed in SDTX, where only two judges, including Jones, oversaw large restructurings. This near-majority was more than those total bankruptcy filings in the traditional stalwarts, Delaware and New York, combined.

Top corporate lawyers and investment bankers gravitated to his court, where swaggering private equity firms and hedge funds won and lost fortunes in complex legal chess matches. Jones had made Houston, and by extension himself, the epicentre of US corporate bankruptcy litigation.

"I'm a big fan of the Houston court," says a well-known financial adviser who has appeared in several cases before the judge.

"Jones entirely changed the paradigm of the 'sleepy court' where you had to wait around and feel like you were dealing with government bureaucracy," this adviser adds. "Houston brought a service orientation to the bankruptcy court system. They woke up Delaware and SDNY [Southern District of New York]."

But in October, the Jones empire abruptly collapsed. A lawsuit, brought in relation to a 2020 bankruptcy, accused the judge of concealing a longstanding romantic relationship with Elizabeth Freeman, also known as Liz, a lawyer who frequently worked on matters assigned to Jones.



Judge David R Jones. His efficiency in handling bankruptcy cases earned him a reputation, and attracted top corporate lawyers and investment bankers from across the country © Brett Coomer/Houston Chronicle/Getty Images

Property records showed the couple co-owned a home and Jones quickly admitted to living with Freeman, who had previously been a clerk for him at the court and a colleague in private practice. Days later he resigned from the bench.

Jones's success at attracting cases and his modus operandi meant he was a polarising figure even before the Freeman issue became public. His downfall has prompted more scrutiny of the Houston court and the world of blockbuster bankruptcies is bracing for more revelations.

The episode comes as intense distressed debt fights escalate among Wall Street firms, and are likely to accelerate given the financial pressures that higher interest rates are inflicting on US companies. Such disputes leave bankruptcy judges to determine who wins and loses, and their judgments — as in the Serta Simmons matter — set legal and marketplace precedents.

It has also prompted more criticism of America's bankruptcy laws, which allow companies to file for protection from creditors in jurisdictions far from their operations or headquarters if they believe a particular judge will rule favourably. This in turn has led to accusations that judges are marketing themselves as friendly arbiters in order to draw big cases.

One prominent retired bankruptcy jurist says that while a particular New York-based judge had often been accused of marketing himself to companies entering bankruptcy, "there did not seem to be similar complaints about the assignment system in SDTX, where the two-judge system was purposefully designed to attract mega cases".

## Houston: bankruptcy central

Jones had initially been appointed to the Houston bankruptcy court in 2011 after several years as a private practice bankruptcy lawyer. The court was no stranger to the occasional big case, though most were local energy companies that had gone bust.

But in 2016, SDTX implemented new procedures for large, so-called complex cases where debtors with more than $200mn of liabilities would be assigned to one of only two judges: Jones and Marvin Isgur.

The pair also happened to be personally close. "It all started with Judge Isgur and [his partner] Tom Kirkendall," said Jones in remarks made while accepting a lifetime achievement award from Emory University earlier this year. "Tom and Judge Isgur gave me my first job as a lawyer." That was in 1992, when the duo hired Jones out of law school. "They took me in, taught me how to think, how to write and how to be a lawyer."

# Nearly half of all large US bankruptcy cases this year have landed in Houston

Venue of Chapter 11 or Chapter 15 cases filed in 2023 with greater than $500mn in listed liabilities



FINANCIAL TIMES                                     Source: bankruptcydata.com

In the years after the creation of the complex case system, Houston quickly attracted large bankruptcies that previously might have landed in Delaware or New York.

Companies can file for bankruptcy wherever they have even a minor subsidiary, attaching the entire company to that single filing. Big companies often had a Texas division, or could create one quickly by incorporating a shell company, opening a bank account or leasing a post office box.

Jones told the Financial Times in 2022 that Houston had become popular for two reasons. First, he and Isgur were sophisticated in law as well as finance; both had MBA degrees and years of experience.

Second, they had a unique intensity in processing cases. In the instance of retailer Belk in 2021, the court confirmed a bankruptcy plan within 24 hours of filing, a turnaround time described by one prominent law professor as emblematic of what he believed was Chapter 11's "descent into lawlessness".

In local media interviews at the time, Jones said he was no longer married, only had dogs, and was thus available to work nights and weekends. His case manager, Albert Alonzo, famously kept his court-provided cell phone switched on, allowing lawyers — and thus Jones — to reach him at any time.

Like Isgur, Alonzo was also a longstanding friend. "Over the past twelve years, he has become my brother," Jones said at the Emory awards ceremony. "I eat holiday meals with his family every year. I learned how to make tamales in his mother's kitchen."

The bankruptcy adviser who has appeared before the judge says that earlier this year, Jones's responsiveness had been instrumental in getting an emergency order to withdraw a client's cash out of Signature Bank just before its collapse. Another says courts in New York and Delaware districts have a judge or two who can be pedantic in rulings, creating delays that turn into business risks for companies already running out of cash.

In court hearings, Jones was warm and friendly towards all participants, and was especially "solicitous" — as one lawyer put it — towards the big-time advisers from New York, Los Angeles and Chicago who appeared in front of him, eager to heap praise upon their written briefs and oral arguments.

"He made us look good in front of our CEO clients and also the junior lawyers on our team", says the person. Jones was also popular for almost never pushing back on creeping fees for advisers.

However, he was also well-known for two memorable verbal fusillades launched during the 2020 bankruptcy hearings for department store chain Neiman Marcus, perhaps the most sensational case that landed in his court.

At the outset, Jones sharply denounced the testimony of one of Neiman's directors as "uneducated, unprepared, and borderline incompetent".



Houston federal courthouse. The city's court has come under scrutiny following Jones' downfall © Carol M Highsmith/Library of Congress

Dan Kamensky, a hedge fund executive who helped win a $172mn settlement for Neiman's unsecured creditors but was later caught attempting to appropriate the winnings for himself, also felt Jones's wrath.

"I don't think you are a good person," the judge said to Kamensky in open court during a hearing to settle the misconduct charges. "The court believes you to be a thief . . . a person of the lowest character that attempted to steal not based on need, not out of necessity, but out of pure greed."

"You disrespect me one more time you will see the other side of me that I don't want to come out," Jones warned. "If you doubt my conviction, you talk to any of your lawyers from Houston who know me, they'll tell you."

The Houston bankruptcy boom created a mini-windfall for the local economy with scores of bankruptcy professionals descending from all over America for hearings. "Jones has done more for that economy in the last 10 years than just about anyone," says one hedge fund executive only half-jokingly. "He should be the mayor of Houston."

The surge in big bankruptcies hosted in Houston led the large national law firms to beef up their presence in Texas. And it proved a gift to one local firm in particular. Jackson Walker was founded in Dallas in 1887 and today has about 500 lawyers spread across six offices across the state. Its elder statesman, Byron Egan, is considered the dean of the corporate law bar in Texas.

Even as the national firms led the big cases filed in the Texas southern district, Jackson Walker found a niche as a local co-counsel to debtors. A lawyer at one large firm says Jackson Walker was useful as a back channel to Houston's two judges; Freeman, a partner at the firm, had previously been a clerk to Jones while another bankruptcy partner, Matt Cavenaugh, had clerked for Isgur.

Neither Jones nor Isgur responded to the FT's requests for comment on multiple issues. A representative for Freeman declined to comment.

Jackson Walker has served as a bankruptcy counsel in at least 50 large Houston cases since 2018. In the retention applications that require detailed disclosure of potential conflicts of interest, the firm never disclosed the romantic relationship between Jones and Freeman.



Closed Neiman Marcus store. The department store chain's bankruptcy case was one of many to land in Jones's court © Mike Segar/Reuters

Ironically, Jones and Freeman in 2018 both were involved in the bankruptcy of Westmoreland Coal, a restructuring that became best known for allegations that management consultancy McKinsey failed to enumerate its potential conflicts in retention applications.

After the scandal broke last month, the Fifth Circuit Court of Appeals, which oversees the Texas bankruptcy court, filed a complaint stating there was "probable cause" to believe Jones breached judicial ethics standards by neither recusing himself nor disclosing the relationship at the time he was approving fees paid to Freeman.

His resignation from the bench has ended the inquiry into his conduct by judicial authorities. But the damage to the Houston bankruptcy ecosystem may only just be starting.

## 'Closed insider system'

Early in November, the Office of the US Trustee, a Justice Department agency that oversees bankruptcy administration, released the findings of its preliminary investigation.

It revealed that Jackson Walker had been awarded more than $13mn in fees and expenses in at least 26 cases since 2018 where Jones was involved, either as judge or mediator.

Freeman herself has billed more than $1mn in those cases. The US Trustee is now seeking court permission to nullify those awards, a first step to clawing back the money.

Those fees had been paid by the respective bankrupt debtors and the failure of Jackson Walker to disclose the relationship was described by the US Trustee as a "breach of fiduciary duty".

Jackson Walker responded in a court filing last week, indicating it was prepared to contest any clawback attempts and blaming Freeman for misleading the firm.

The firm has previously told the FT it was "confident it acted responsibly", citing an internal inquiry it launched in 2021 after receiving an allegation about Freeman's involvement with Jones.

Jackson Walker also stated that Freeman had told the firm the relationship had ended and would not resume. It prohibited Freeman from working on any matters where Jones was presiding. But in 2022, when the firm learned the pair's relationship continued, Freeman agreed to depart.

The tussle between Jackson Walker and the US Trustee also may invite scrutiny about who else knew of the Jones-Freeman entanglement. Kirkland & Ellis, the dominant US debtor law firm, had tapped Jackson as co-counsel in at least 46 larges cases since 2018, according to data collected by bankruptcydata.com.

Jackson Walker said it had informed Kirkland about its 2021 inquiry into Freeman's relationship with Jones. Multiple Kirkland partners told the FT that they were long aware of the romantic relationship between the pair, though did not know how advanced it was. The Kirkland lawyers assumed the pair had received clearance from a superior court or decided that it was not Kirkland's place to intervene in Jackson's retention applications.



Downtown Houston. Jones had made the Texan city the epicentre of US corporate bankruptcy litigation, creating a mini-windfall for the local economy © Kruck20/Alamy

Kirkland declined to comment.

Judge Isgur, Jones's longtime friend and mentor, may also face questions. He rejected a bankruptcy court claimant's 2021 recusal motion against Jones's — where the Freeman relationship was first alleged — and referred several cases in his court to Jones as an external mediator, used to resolve disputes within cases.

In several similar mediations, Freeman had represented clients with Jones overseeing these negotiations. In one mediation held in New York, Freeman and a handful of other participating lawyers joined Jones at a steakhouse dinner afterwards, according to one participant.

Bankruptcy courts in New York and Virginia have in recent years tightened their procedures to keep debtors from picking friendly judges. In an open letter, a group of prominent academics and lawyers recently asked the Houston court to broaden its judge assignment pool for large cases.

Senator Elizabeth Warren, a former bankruptcy scholar and a longstanding critic of the finance industry, has previously proposed forcing companies to file for bankruptcy in courts near to their operations or headquarters.

Cliff White, who previously managed the US Trustee programme, described the scandal as "a body blow to the integrity" of the bankruptcy system. "It has the appearance of the closed insider system that the modern bankruptcy code was designed to thwart."

But top bankruptcy advisers remain convinced that only a handful of judges are capable of managing large, complex cases where they say efficiency and predictability are paramount.

Kirkland & Ellis recently chose the New Jersey district for big bankruptcy cases such as Bed Bath & Beyond, Rite-Aid and WeWork, suggesting that in bankruptcy terms, the northeastern state could yet become the new Texas.

After leaving Jackson Walker, Freeman established the Law Office of Liz Freeman. Business was immediately brisk; Jackson Walker has hired her as a contract attorney or co-counsel on multiple occasion in 2023, even letting her occasionally use a conference room, according to a person familiar with the matter. The firm declined to comment on these appointments.

On November 11, a month after her relationship with Jones was revealed, Freeman submitted a fee request for $257,000 for work on IEH Auto Parts' bankruptcy. Isgur, overseeing the case, assigned Jones to lead a New York City mediation session in April for which she billed her time at $750 per hour, plus travel expenses. Her application attested to her "disinterestedness" — and still made no mention of her relationship with David R Jones.

2/14/24, 3:50 PM
Case 4:23-cv-03729   Document 41-4   Filed on 03/18/24 in TXSD   Page 12 of 17
The downfall of the judge who dominated bankruptcy in America

Copyright The Financial Times Limited 2024. All rights reserved.

2/14/24, 3:50 PM
Case 4:23-cv-03729 Document 41-4 Filed on 03/18/24 in TXSD Page 17 of 17
The downfall of the judge who dominated bankruptcy in America