**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| Michael D. Van Deelen, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| David R. Jones, Elizabeth Carol Freeman, | ) | Case No. 4:23-cv-3729 |
| Jackson Walker, LLP, Kirkland & Ellis, LLP, | ) | |
| and Kirkland & Ellis International, LLP, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS KIRKLAND & ELLIS LLP AND KIRKLAND & ELLIS INTERNATIONAL LLP'S MOTION TO DISMISS

Defendants Kirkland & Ellis LLP and Kirkland & Ellis International LLP ("Kirkland") file this motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

6617142

TABLE OF CONTENTS

Page(s)

I.      INTRODUCTION ...................................................................................................1

II.     FACTUAL ALLEGATIONS ..................................................................................2

III.    LEGAL STANDARD ..............................................................................................6

IV.     ARGUMENT ...........................................................................................................7

        A.      All of Plaintiff's Claims Must be Dismissed for Multiple Threshold Reasons.......7

                1.      Plaintiff's core factual allegations are not sufficiently alleged .................7

                2.      Plaintiff lacks standing under the shareholder standing rule....................11

                3.      Plaintiff fails to plausibly plead proximate causation as to Kirkland........13

                4.      Plaintiff fails to establish any materially false statement ..........................17

        B.      Plaintiff's Claims Must Independently Be Dismissed for Additional Reasons ....24

                1.      Plaintiff has failed to allege RICO claims (Counts I, II)...........................26

                2.      Plaintiff's conspiracy claims fail for lack of agreement (Counts II, VIII, XI) .......................................................................................................32

                3.      Plaintiff's alleged Bivens conspiracy exceeds the bounds of Bivens (Count XI) ........................................................................................................33

                4.      Plaintiff's state law claims fail for lack of reliance ..................................35

                5.      Plaintiff's state law claims are preempted.................................................36

                6.      Plaintiff's state law claims are barred by Texas's "attorney immunity" and "judicial-proceedings privilege." ...............................................................38

                7.      Counts VI, VII, IX, and XI are time barred ...............................................40

                8.      Plaintiff cannot assert fiduciary duty or malpractice claims (Counts IV & VII) ...............................................................................................................42

                9.      Counts V and XII assert claims that do not exist .....................................42

        C.      Plaintiff's Claims Should Be Dismissed With Prejudice .......................................43

V.      CONCLUSION .....................................................................................................44

KIRKLAND'S MOTION TO DISMISS

6617142

TABLE OF AUTHORITIES

Page(s)

Cases

*A. v. Laredo Indep. Sch. Dist.*,
  2007 WL 189458 (S.D. Tex. Jan. 22, 2007) ........................................................ 14

*Agar Corp., Inc. v. Electro Circuits. Int'l, LLC*,
  580 S.W.3d 136 (Tex. 2019) ...................................................................... 40, 41

*Alegre v. United States*,
  2019 WL 3322382 (S.D. Cal. July 24, 2019) ...................................................... 34

*Alix v. McKinsey & Co*,
  2023 WL 5344892 (S.D.N.Y. Aug. 18, 2023) ................................................ 19, 21

*Allgood v. R.J. Reynolds Tobacco Co.*,
  80 F.3d 168 (5th Cir. 1996) ........................................................................ 35

*Allstate Ins. Co. v. Benhamou*,
  190 F. Supp. 3d 631 (S.D. Tex. 2016) ............................................................ 28

*Allstate Ins. Co. v. Plambeck*,
  802 F.3d 665 (5th Cir. 2015) ...................................................................... 28

*Almanza v. United Airlines, Inc.*,
  851 F.3d 1060 (11th Cir. 2017) .................................................................... 33

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................... 6

*Associated Builders, Inc. v. Alabama Power Co.*,
  505 F.2d 97 (5th Cir. 1974) ......................................................................... 20

*Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*,
  976 F.3d 585 (5th Cir. 2020) ......................................................................... 3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................... 6

*Biron v. Upton*,
  2020 WL 85146 (N.D. Tex. Jan. 7, 2020) ......................................................... 34

*Blankinship v. Brown*,

    399 S.W.3d 303 (Tex. App. 2013) ........................................................................... 35

*Bomar Oil & Gas, Inc. v. Loyd*,

    2009 WL 2136404 (Tex. App. July 15, 2009) ........................................................ 36

*Bradford v. Apollo Educ. Grp. Inc.*,

    2019 WL 13193884 (N.D. Tex. July 23, 2019) ..................................................... 43

*Brennan v. Chestnut*,

    973 F.2d 644 (8th Cir. 1992) .................................................................................. 13

*Brown v. Bilek*,

    401 F. App'x 889 (5th Cir. 2010) ............................................................................. 7

*Brunson v. Nichols*,

    2018 WL 7286410 (W.D. La. Dec. 7, 2018) .......................................................... 34

*Burback v. Oblon*,

    2022 WL 2841482 (E.D. Tex. July 20, 2022) ....................................................... 17

*Butler v. S. Porter*,

    999 F.3d 287 (5th Cir. 2021) .................................................................................. 33

*Cantey Hanger, LLP v. Byrd*,

    467 S.W.3d 477 (Tex. 2015) ............................................................................ 39, 40

*Chapman & Cole v. Itel Container Int'l B.V.*,

    865 F.2d 676 (5th Cir. 1989) .................................................................................... 8

*City of Clinton, Ark. v. Pilgrim's Pride Corp.*,

    632 F.3d 148 (5th Cir. 2010) .................................................................................... 8

*Cledera v. United States*,

    834 F. App'x 969 (5th Cir. 2021) ........................................................................... 43

*Coleman v. Combs*,

    2023 WL 9051705 (N.D. Tex. Nov. 27, 2023) ..................................................... 40

*Collins v. Zolnier*,

    2019 WL 2292333 (Tex. App.—Beaumont May 30, 2019, pet. denied) ............... 38

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media,*

  140 S. Ct. 1009, 206 L. Ed. 2d 356 (2020) ................................................................. 13

*Crowe v. Henry,*

  43 F.3d 198 (5th Cir. 1995) .......................................................................................... 28

*Daniels v. Aetc II Privatized Hous., LLC,*

  2023 WL 2562714 (W.D. Tex. Jan. 18, 2023) ............................................................ 17

*Digene Corp. v. Ventana Med. Sys., Inc.,*

  476 F. Supp. 2d 444 (D. Del. 2007) ............................................................................ 19

*Egbert v. Boule,*

  596 U.S. 482 (2022) ......................................................................................... 33, 34, 35

*Erikson v. Renda,*

  590 S.W.3d 557 (Tex. 2019) ........................................................................................ 40

*Erwin v. Russ,*

  2010 WL 11506838 (W.D. Tex. July 19, 2010) ..................................................... 32, 33

*Falkenhorst v. Sepolio,*

  2023 WL 2466398 (S.D. Tex. Feb. 21, 2023) ............................................................. 39

*Fisher v. Bureau of Alcohol, Tobacco & Firearms,*

  2023 WL 2082552 (W.D.N.Y. Feb. 17, 2023) .............................................................. 8

*Fisher v. Halliburton,*

  2009 WL 5170280 (S.D. Tex. Dec. 17, 2009) ............................................................. 27

*Franchise Tax Bd. v. Alcan Aluminium Ltd.,*

  493 U.S. 331 (1990) ...................................................................................................... 11

*Fringe Benefit Grp. Inc. v. FCE Benefit Administrators Inc.,*

  No. 1:18-CV-369-LY, 2019 WL 2563833 (W.D. Tex. Mar. 19, 2019) ....................... 43

*Galindo v. City of Del Rio,*

  2021 WL 2763033 (W.D. Tex. Mar. 26, 2021) ...................................................... 12, 32

*Gamboa v. Shaw,*

  956 S.W.2d 662 (Tex. App. 1997) ............................................................................... 42

- iv -

*Glenn v. Hoteltron Systems, Inc.*,

    74 N.Y.2d 386 (1989) ..................................................................................................... 11

*Good v. Khosrowshahi*,

    296 F. App'x 676 (10th Cir. 2008) ................................................................................ 18

*Haskett v. Capital Land Services, Inc.*,

    2015 WL 12556307 n.2 (S.D. Tex. Dec. 9, 2015) .................................................... 43

*Haynes & Boone, LLP v. NFTD, LLC*,

    631 S.W.3d 65 (Tex. 2021) ........................................................................................... 39

*HCB Fin. Corp. v. McPherson*,

    8 F.4th 335 (5th Cir. 2021) ........................................................................................... 26

*Hemi Grp., LLC v. City of New York, N.Y.*,

    559 U.S. 1 (2010) ........................................................................................................... 14

*Hobbs v. Stanley*,

    2023 WL 7027994 (W.D. Tex. Oct. 23, 2023) .......................................................... 34

*Holmes v. Air Line Pilots Ass'n, Int'l*,

    745 F. Supp. 2d 176 (E.D.N.Y. 2010) ........................................................................ 24

*In re Acis Cap. Mgmt., L.P.*,

    604 B.R. 484 (N.D. Tex. 2019) .................................................................................... 13

*In re Am. Int'l Refinery, Inc.*,

    676 F.3d 455 (5th Cir. 2012) ........................................................................................ 42

*In re Am. Int'l Refinery, Inc.*,

    436 B.R. 364 (Bankr. W.D. La. 2010) ........................................................................ 42

*In re Brentwood Lexford Partners, LLC*,

    292 B.R. 255 (Bankr. N.D. Tex. 2003) ...................................................................... 37

*In re Caprock Oil Tools, Inc.*,

    585 B.R. 823 (Bankr. S.D. Tex. 2018) ....................................................................... 16

*In re Chaussee*,

    399 B.R. 225 (B.A.P. 9th Cir. 2008) ........................................................................... 37

KIRKLAND'S MOTION TO DISMISS

*In re Citric Acid Litig.*,

   191 F.3d 1090 (9th Cir. 1999) ................................................................................. 10

*In re Enron Corp.*,

   2002 WL 32034346 (Bankr. S.D.N.Y. May 23, 2002) ........................................... 22

*In re Enron Corp.*,

   2006 WL 1662596 (S.D. Tex. June 7, 2006) ......................................................... 35

*In re Eon Enterprises Corp.*,

   59 F.3d 174 (9th Cir. 1995) ......................................................................... 1, 21, 22

*In re Fundamental Long Term Care*,

   614 B.R. 753 (Bankr. M.D. Fla. 2020) .................................................................. 21

*In re Ganas*,

   513 B.R. 394 (Bankr. E.D. Cal. 2014) .............................................................. 37, 38

*In re GSC Grp., Inc.*,

   502 B.R. 673 (Bankr. S.D.N.Y. 2013) .................................................................. 22

*In re Highland Cap. Mgmt., L.P.*,

   2023 WL 5523949 (Bankr. N.D. Tex. Aug. 25, 2023) ........................................... 16

*In re Loggins*,

   513 B.R. 682 (Bankr. E.D. Tex. 2014) .................................................................. 15

*In re MasterCard Intern. Inc.*,

   313 F.3d 257 (5th Cir.2002) .................................................................... 17, 28, 29

*In re McDermott Int'l, Inc.*,

   2023 WL 8215341 (S.D. Tex. Jan. 9, 2023) ...................................................... 4, 16

*In re NC12, Inc.*,

   478 B.R. 820 (Bankr. S.D. Tex. 2012) .............................................................. 12, 13

*In re Radnor Holdings Corp.*,

   564 B.R. 467 (D. Del.) ...................................................................................... 12, 13

*In re SBMC Healthcare, LLC*,

   2017 WL 2062992 (S.D. Tex. May 11, 2017) ....................................................... 43

KIRKLAND'S MOTION TO DISMISS

6617142

*In re SBMC Healthcare, LLC*,

   519 B.R. 172 (Bankr. S.D. Tex. 2014) ..................................................................13

*In re Shirley*,

   134 B.R. 940 (B.A.P. 9th Cir. 1992) ....................................................................37

*In re Sims*,

   278 B.R. 457 (Bankr. E.D. Tenn. 2002) ..............................................................37

*In re Steed*,

   614 B.R. 395, 411 n. 13 (Bankr. N.D. Ga. 2020) ................................................18

*In re TOCFHBI, Inc.*,

   413 B.R. 523 (Bankr. N.D. Tex. 2009) ...............................................................42

*Inorio v. Wells Fargo Bank, N.A.*,

   522 F. Supp. 3d 417 (N.D. Ill. 2021) ..................................................................36

*Jackson v. Nat'l Ass'n for Advancement of Colored People*,

   546 F. App'x 438 (5th Cir. 2013) ........................................................................26

*Jackson v. Small Bus. Admin.*,

   2023 WL 375351 (N.D. Tex. Jan. 24, 2023) .......................................................11

*Jackson v. Small Bus. Admin.*,

   2022 WL 18456351 (N.D. Tex. Dec. 16, 2022) ..................................................11

*Jackson v. Varono*,

   2018 WL 5046227 (W.D. La. Oct. 17, 2018) ......................................................34

*Jackson v. Wray*,

   2023 WL 7029378 (N.D. Tex. Sept. 27, 2023) ...................................................32

*Joe N. Pratt Ins. v. Doane*,

   2008 WL 819011 (S.D. Tex. Mar. 20, 2008) ......................................................17

*Joffroin v. Tufaro*,

   606 F.3d 235 (5th Cir. 2010) ..............................................................................26

*Jones v. Alcoa, Inc.*,

   339 F.3d 359 (5th Cir. 2003) ..............................................................................41

KIRKLAND'S MOTION TO DISMISS

*Jones v. Herrman & Herrman, PLLC,*

    2023 WL 6064790 (S.D. Tex. Mar. 28, 2023) .......................................................................... 30

*Kariem v. United Parcel Serv., Inc.,*

    2006 WL 8437577 (N.D. Tex. Sept. 18, 2006) ...................................................................... 29

*Kashelkar v. Rubin & Rothman,*

    97 F. Supp. 2d 383 (S.D.N.Y. 2000) ..................................................................................... 30

*Kearey v. Collier,*

    2019 WL 3470759 (S.D. Tex. June 17, 2019) ....................................................................... 15

*KRW Sales, Inc. v. Kristel Corp.,*

    154 F.R.D. 186 (N.D. Ill. 1994) ............................................................................................. 20

*L. Funder, L.L.C. v. Munoz,*

    924 F.3d 753 (5th Cir. 2019) ................................................................................................. 15

*Lafrentz v. Lockheed Martin Corp.,*

    2021 WL 4350175 (S.D. Tex. Sept. 10, 2021) ...................................................................... 35

*Landry's, Inc. v. Animal Legal Def. Fund,*

    631 S.W.3d 40 (Tex. 2021) .................................................................................................... 38

*Laster v. Boyle,*

    2022 WL 4086782 (N.D. Tex. Aug. 4, 2022) ....................................................................... 34

*LCS Grp., LLC v. Shire LLC,*

    2019 WL 1234848 (S.D.N.Y. Mar. 8, 2019)......................................................................... 44

*Leamon v. KBR, Inc.,*

    2011 WL 13340587 (S.D. Tex. Aug. 29, 2011) .................................................................... 43

*Lemmer v. Nu-Kote Holding, Inc.,*

    71 F. App'x 356 (5th Cir. 2003).............................................................................................. 44

*Lemmer v. Nu-Kote Holding, Inc.,*

    2001 WL 1112577 (N.D. Tex. Sept. 6, 2001) ...................................................................... 44

*Liberty Sackets Harbor LLC v. Village of Sackets Harbor,*

    776 F. App'x 1 (2d Cir. 2019)................................................................................................ 12

- viii -

*Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.*,

    257 F. Supp. 2d 819 (M.D. La. 2002) ........................................................................... 29

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,

    594 F.3d 383 (5th Cir. 2010) ................................................................................. 6, 21

*Madison v. Health Care Servs. Corp.*,

    2022 WL 14225447 (W.D. Tex. Oct. 24, 2022) ......................................................... 11

*Malone v. Safety-Guard Mfg. Co., Inc.*,

    748 F.2d 312 (5th Cir. 1984) ....................................................................................... 24

*Marriott Bros. v. Gage*,

    704 F. Supp. 731 (N.D. Tex. 1988) ............................................................................ 31

*Mathis v. DCR Mortg. III Sub, I, LLC*,

    952 F. Supp. 2d 828 (W.D. Tex. 2013) ...................................................................... 36

*Matter of Banks*,

    2020 WL 5807520 (Bankr. N.D. Ga. Sept. 29, 2020) ............................................... 32

*Matter of Burch*,

    818 F. App'x 367 (5th Cir. 2020) ............................................................................... 22

*Matter of S.I. Acquisition, Inc.*,

    817 F.2d 1142 (5th Cir. 1987) .................................................................................... 11

*McCracken v. Blei*,

    2022 WL 226070 n.11 (E.D. Pa. Jan. 26, 2022) ....................................................... 10

*McDill v. McDill*,

    2020 WL 4726634 (Tex. App.—Austin July 30, 2020, pet. denied) ......................... 39

*McLean v. Int'l Harvester Co.*,

    817 F.2d 1214 (5th Cir. 1987) .................................................................................... 38

*Merkle v. Gragg*,

    2020 WL 5209538 (W.D. Tex. Aug. 31, 2020) ......................................................... 39

*Mesa*,

    885 F.3d 811 (5th Cir. 2018) ....................................................................................... 34

KIRKLAND'S MOTION TO DISMISS

6617142

*Meyer v. Biopure Corp.*,

    221 F. Supp. 2d 195 (D. Mass. 2002) ......................................................................... 8

*Millcreek Assocs., L.P. v. Bear, Stearns & Co.*,

    205 F. Supp. 2d 664 (W.D. Tex. 2002) ..................................................................... 17

*Miller Glob. Properties, LLC v. Marriott Int'l*, Inc.,

    418 S.W.3d 342 (Tex. App. 2013) ............................................................................ 35

*N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*,

    898 F.3d 461 (5th Cir. 2018) .................................................................................... 23

*Nocula v. UGS Corp.*,

    520 F.3d 719 (7th Cir. 2008) .................................................................................... 11

*Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*,

    868 F.2d 740 (5th Cir. 1989) .............................................................................. 26, 27

*Oceanic Exploration Co. v. Phillips Petroleum Co.*,

    352 F. App'x 945 (5th Cir. 2009) ............................................................................. 16

*Oliva v. Nivar*,

    973 F.3d 438 (5th Cir. 2020) .................................................................................... 33

*Omrazeti v. Aurora Bank FSB*,

    2013 WL 3242520 (W.D. Tex. June 25, 2013) ......................................................... 36

*Pertuso v. Ford Motor Credit Co.*,

    233 F.3d 417 (6th Cir. 2000) .................................................................................... 37

*Price v. Pinnacle Brands, Inc.*,

    138 F.3d 602 (5th Cir. 1998) .................................................................................... 27

*Rangel v. Adtalem Global Educ., Inc.*,

    2019 WL 13150012 (W.D. Tex. Apr. 23, 2019) ....................................................... 35

*Reddy v. Litton Indus., Inc.*,

    912 F.2d 291 (9th Cir. 1990) ...................................................................................... 9

*Robinson v. Standard Mortg. Corp.*,

    191 F. Supp. 3d 630 (E.D. La. 2016) ....................................................................... 29

- x -

*Rodriguez v. Blaine Larsen Farms, Inc.*,

    2022 WL 484924 (N.D. Tex. Feb. 15, 2022) .......................................................................... 13

*Rodriguez v. Xerox Bus. Servs., LLC*,

    2017 WL 3023213 (W.D. Tex. Mar. 27, 2017) ....................................................................... 43

*Rote v. Comm. on Jud. Conduct & Disability of Jud. Conf. of United States*,

    577 F. Supp. 3d 1106 (D. Or. 2021) ..................................................................................... 34

*Rynearson v. United States*,

    2013 WL 11309342 (W.D. Tex. Sept. 30, 2013) ................................................................... 33

*Savoia-McHugh v. McCrary*,

    2022 WL 1997191 (S.D. Tex. June 6, 2022) ........................................................................ 40

*Schertz–Cibolo–Universal City, Indep. Sch. Dist. (In re Educators Grp. Health Trust)*,

    25 F.3d 1281 (5th Cir. 1994) ................................................................................................ 11

*Sciortino Bankr. Est. v. Shapiro Pentergast & Hasty LLP*,

    2018 WL 7075244 (N.D. Ga. Nov. 21, 2018) ...................................................................... 18

*Settle v. George*,

    2012 WL 2923302 (Tex. App.—Fort Worth July 19, 2012, no pet.) ..................................... 38

*Sheller v. Corral Tran Singh, LLP*,

    551 S.W.3d 357 (Tex. App.—Houston [14th Dist.] 2018, pet. denied .................................. 39

*Sherwood Partners, Inc. v. Lycos, Inc.*,

    394 F.3d 1198 (9th Cir. 2005) .............................................................................................. 36

*Sheshtawy v. Gray*,

    697 F. App'x 380 (5th Cir. 2017) .......................................................................................... 27

*Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*,

    17 F. Supp. 3d 207 (E.D.N.Y. 2014) ................................................................................... 26

*Snow Ingredients, Inc. v. SnoWizard, Inc.*,

    833 F.3d 512 (5th Cir. 2016) ................................................................................................ 28

*Stevens v. Lowder*,

    643 F.2d 1078 (5th Cir. 1981) .............................................................................................. 13

KIRKLAND'S MOTION TO DISMISS

*Stevenson v. Thornburgh*,

    2024 WL 645187 (S.D.N.Y. Feb. 14, 2024) ................................................9, 18, 28, 32

*Stockman v. Flotek Indus., Inc.*,

    2010 WL 3785586 (S.D. Tex. Sept. 29, 2010)..........................................................8

*Story v. Our Lady of Lake Physician Grp.*,

    2018 WL 1902687 (M.D. La. Apr. 20, 2018) ..........................................................14

*Strates Shows, Inc. v. Amusements of Am., Inc.*,

    379 F. Supp. 2d 817 (E.D.N.C. 2005) ....................................................................15

*Tampico v. Martinez*,

    987 F.3d 387 (5th Cir. 2021) ..................................................................................40

*Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*,

    975 F.2d 1134 (5th Cir. 1992)................................................................................18

*Tenamee v. Schmukler*,

    438 F. Supp. 2d 438 (S.D.N.Y. 2006) ....................................................................30

*Tim Cross, LLC v. Associated Adjusters Network, Inc.*,

    2023 WL 9005635 (C.D. Cal. Nov. 30, 2023) ..........................................................9

*Trevino v. City of Pleasanton*,

    2019 WL 1793360 (W.D. Tex. Apr. 23, 2019) ..........................................................9

*Troice v. Proskauer Rose, L.L.P.*,

    816 F.3d 341 (5th Cir. 2016)..................................................................................40

*Turk v. Pershing LLC*,

    No. 3:09-CV-2199-N, 2023 WL 36080 (N.D. Tex. Jan. 3, 2023) ...........................42

*U.S. ex rel. Grubbs v. Kanneganti*,

    565 F.3d 180 (5th Cir. 2009)...................................................................................7

*U.S. ex rel. Lam v. Tenet Healthcare Corp.*,

    481 F. Supp. 2d 673 (W.D. Tex. 2006) ...................................................................3

*United States ex rel. Integra Med Analytics, L.L.C. v. Baylor Scott & White Health*,

    816 F. App'x 892 (5th Cir. 2020)...............................................................7, 10, 23

KIRKLAND'S MOTION TO DISMISS

*United States ex rel. Petratos v. Genentech Inc.*,

   855 F.3d 481 (3d Cir. 2017) ............................................................................24

*United States v. Dental Health Programs, Inc.*,

   2020 WL 3064712 (N.D. Tex. June 8, 2020) ..................................................18

*United States v. Greenlaw*,

   84 F.4th 325 (5th Cir. 2023) ...........................................................................30

*United States v. Kaster*,

   139 F.3d 902 (7th Cir. 1998) ..........................................................................32

*United States v. Kirkham*,

   129 F. App'x 61 (5th Cir. 2005) ......................................................................30

*United States v. Pettis*,

   720 F. App'x 306 (7th Cir. 2017) ......................................................................8

*United States v. Richardson*,

   676 F.3d 491 (5th Cir. 2012) ..........................................................................29

*United States v. Teel*,

   691 F.3d 578 (5th Cir. 2012) ..........................................................................31

*United States v. Vasquez*,

   2023 WL 7381427 (5th Cir. Nov. 7, 2023) ....................................................31

*United States v. Wright*,

   665 F.3d 560 (3d Cir. 2012) ...........................................................................31

*Varco LP v. Bohnsack*,

   2009 WL 10698303 (S.D. Tex. Oct. 1, 2009) ................................................42

*Varela v. Gonzales*,

   2014 WL 1284985 (N.D. Tex. Mar. 31, 2014) ..............................................27

*Varela v. Gonzales*,

   773 F.3d 704 (5th Cir. 2014) ..........................................................................27

*VeroBlue Farms USA, Inc. v. Wulf*,

   465 F. Supp. 3d 633 (N.D. Tex. 2020) .............................................................6

KIRKLAND'S MOTION TO DISMISS

6617142

*von Falkenhorst v. Hunter*,

    2023 WL 6878911 (5th Cir. Oct. 18, 2023) ...................................................39

*Warnock v. State Farm Mut. Auto. Ins. Co.*,

    833 F. Supp. 2d 604 (S.D. Miss. 2011) ......................................................29

*Whalen v. Carter*,

    954 F.2d 1087 (5th Cir. 1992) ...................................................................27

*Whelan v. Winchester Prod. Co.*,

    319 F.3d 225 (5th Cir. 2003) .....................................................................28

*Wilkinson v. USAA Fed. Sav. Bank Tr. Servs.*,

    2014 WL 3002400 ......................................................................................38

*Williams v. WMX Techs.*,

    112 F.3d 175 (5th Cir. 1997) ...............................................................6, 29

*Yan v. State Bar of Texas*,

    2023 WL 9659175 (N.D. Tex. Dec. 28, 2023) ..........................................40

*Ziglar v. Abbasi*,

    582 U.S. 120 (2017) ...................................................................................33

Statutes

11 U.S.C. § 105(a) ...............................................................................................37

11 U.S.C. § 328(c) ...............................................................................................37

18 U.S.C. § 152(6) ...............................................................................................32

Rules

Fed. R. Bankr. P. 9011, and (3) ..........................................................................37

Fed. R. Bankr. P. 2014(a) ...................................................................................39

Federal Rule of Civil Procedure 9(b) .........................................................6, 7, 8, 9

Federal Rule of Civil Procedure 12(b)(6) ..............................................................1

KIRKLAND'S MOTION TO DISMISS

# I.     **INTRODUCTION**

The national bankruptcy landscape was indisputably altered when former Chief Bankruptcy Judge David Jones admitted to concealing a long-term romantic relationship with Jackson Walker partner Elizabeth Freeman.  (Dkt. 10 ("FAC") ¶ 32.)  But whatever the alleged conduct of Jones, Freeman, and Jackson Walker, it has nothing to do with Kirkland & Ellis.  At bottom, Plaintiff Michael Van Deelen brings these serious claims against Kirkland on what amounts to a tortured theory of bystander liability.  Even accepted as true, Plaintiff's allegations against Kirkland establish at most that: (1) certain unnamed "Kirkland partners" knew that Jones and Freeman had, at some point, been romantically involved, but "did not know how advanced [their relationship] was" and, in any event, "assumed the pair had received clearance" (FAC ¶ 70); and (2) in bankruptcy cases where Jackson Walker served as Kirkland's co-counsel, Kirkland's conflict disclosures—which were explicitly limited to identifying *Kirkland*'s potential conflicts— did not disclose this *Jackson Walker* conflict on *Jackson Walker's* behalf.  (FAC ¶ 32-34.)

These allegations are plainly insufficient to support any of Plaintiff's claims.  Contrary to Plaintiff's repeated assertions, the bankruptcy rules did not require Kirkland to disclose potential conflicts of "its local counsel's partner."  (FAC ¶ 110(b).)  Indeed, similar arguments based on these same bankruptcy rules have been rejected as not only incorrect, but sanctionable.  *See In re Eon Enterprises Corp.*, 59 F.3d 174, at *1 (9th Cir. 1995) (affirming sanctions against "clear[ly] frivolous[]" argument that bankruptcy firm should have been "disqualified because of local counsel's conflict of interest" or "should be required to disgorge its fees because it failed to disclose another law firm's conflict of interest").  Despite being clearly wrong, Plaintiff uses this purported violation of procedural bankruptcy rules as the legal foundation for his theory that Kirkland engaged in widespread and far-reaching criminal activity.  (*E.g.*, FAC ¶¶ 106, 109.)  The inadequacy of Plaintiff's criminal accusations against Kirkland is only compounded by the flimsy facts Plaintiff cites to support them.  Plaintiff has hurled these allegations against Kirkland based solely on his imaginative reading of a single public news article—an article that mentions Kirkland but does not so much as hint at anything resembling the grave allegations Plaintiff asserts here. (*E.g.*, FAC ¶¶ 28-31, 70.)

- 1 -

Given that Plaintiff accuses Kirkland of complex crimes that serve as a basis for notoriously difficult-to-plead claims in a case where Kirkland should not even be named as a defendant, all of Plaintiff's eleven causes of action against Kirkland fail many times over.  As a threshold matter, Plaintiff fails to allege misconduct by Kirkland with the particularity and plausibility required by Rule 9(b) for at least four independent reasons.  (*Infra* section III.A.1.)  In addition, as a mere shareholder of McDermott, Plaintiff lacks standing to assert claims based on injury to the estate.  (*Infra* section III.A.2.)  On top of that, Plaintiff's theory that Kirkland proximately caused him harm, which is wrong on many levels, adds four more fatal deficiencies.  (*Infra* section III.A.3.)  And for three additional reasons, Plaintiff's claims against Kirkland fail for lack of any material "false" statement.  (*Infra* section III.A.4.)

Moreover, the legal deficiencies in Plaintiff's individual causes of actions are as diverse as they are numerous.  For instance, Plaintiff's RICO claims lack multiple essential elements.  (*Infra* section IV.B.1.)  Plaintiff's state law claims are not only barred by Texas's judicial-proceedings privilege and attorney immunity, but also preempted by federal law.  (*Infra* section IV.B.5-6.)  At least two of Plaintiff's asserted causes of action do not actually exist.  (*Infra* section IV.B.9.)  And at least four others are untimely under the applicable statutes of limitations.  (*Infra* section IV.B.7.)  In all, every single one of Plaintiff's claims must be dismissed for at least eight independent reasons (*see infra* section IV.A).  (*See infra* section IV.B (table summarizing arguments).)

The pervasive errors in the FAC not only require dismissal with prejudice, but also reinforce the basic premise of this motion and Kirkland's sanctions motion: that Plaintiff carelessly accused Kirkland of engaging in criminal misconduct without doing the basic due diligence required of any litigant filing in federal court.  (*See* Dkt. 41 ("Rule 11 Mot.").)

## II.   <u>FACTUAL ALLEGATIONS</u>

This lawsuit arises from the Chapter 11 bankruptcy of McDermott International, Inc. ("McDermott"), in which Kirkland and Jackson Walker served as counsel for the debtors and debtors in possession (collectively, "Debtors").  (FAC ¶ 43.)  Plaintiff was one of McDermott's shareholders and an active participant in the bankruptcy proceedings.  (*See id.* ¶ 2; Bk. 20-30336,

Dkt. 589, Exhibit A at 2 (listing Van Deelen as among the "Objecting Shareholder[s]").)[1]  Plaintiff

filed a written objection to the Debtors' plan of reorganization ("Plan"), alleging he was an

"interested party," and that it was devised "for the sole purpose of enriching McDermott's

management and Board."  (FAC ¶ 58; Bk. 20-30336, Dkt. 510 at 4.)  Plaintiff also attended several

hearings, during which he repeatedly clashed with Judge Jones.  (FAC ¶ 58; *see, e.g.*, Bk. No. 20-

30336, Dkt. 664 at 27:14-19 (Van Deelen to Jones: "[Y]ou seem very antagonistic towards me and

I'm very much cognizant of my right to petition the court, and I don't think that includes being

berated by a judge constantly and interrupted by a judge constantly.").)  Jones ultimately overruled

Plaintiff's objection and confirmed the Debtors' Plan at a hearing on March 12, 2020.  (FAC ¶ 44.)

As a result of the Plan being confirmed, Plaintiff "lost his entire investment of 30,000 shares in

McDermott."  (FAC ¶ 2.)

Plaintiff soon began blaming Kirkland for his perceived harm.  During the confirmation

hearing, which Plaintiff attended, Plaintiff made vulgar and threatening comments to Kirkland

partner Joshua Sussberg, who was lead counsel for the Debtors.[2]  (*See* Bk. 20-03309, Dkt. 59-1

(Sussberg Decl.); *id.*, Dkt. 59-2 (Greco Decl.).)  The Debtors subsequently filed a motion to hold

Plaintiff in contempt based on these and other actions—such as unexpectedly showing up at the

home of the McDermott's CFO—which the Court granted.  (*See* Bk. 20-30336, Dkt. 719.)  As part

of that order, the Court concluded that "Mr. Van Deelen poses a legitimate risk to the safety of

courthouse staff and litigants that oppose his position," and "prohibited [Plaintiff] from contacting

Joshua Sussberg or any member of his family in any manner."  (*Id.* at 2.)

Instead of appealing the confirmation order, however, Plaintiff filed a separate *pro se*

---

[1] "[C]ourts may take judicial notice of court filings to establish the fact of litigation and related
filings."  *U.S. ex rel. Lam v. Tenet Healthcare Corp.*, 481 F. Supp. 2d 673, 680 (W.D. Tex. 2006).
Indeed, all of the court filings relied upon in this motion were cited in the Amended Complaint,
(*e.g.*, FAC ¶¶ 42, 106(b), 110(b)), and Plaintiff has expressly sought judicial notice of them.  (*See*
FAC ¶ 32 n.35.)  "[W]hen reviewing a motion to dismiss, a district court must consider . . .
documents incorporated into the complaint by reference, and matters of which a court may take
judicial notice."  *Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*, 976 F.3d 585, 589 (5th Cir. 2020)
(cleaned up).
[2] As described in Kirkland's Rule 11 Motion, Plaintiff also called Jones a "son of a bitch" during
the same hearing, and then filed a false affidavit claiming he had not done so.  (Rule 11 Mot. at 3.)

lawsuit in state court against Sussberg and several McDermott executives, making the same basic allegations he asserted in his objection to the Plan—that McDermott executives and Kirkland caused McDermott to undergo an unnecessary chapter 11 restructuring for their own benefit. (*See* Bk. No. 20-03309, Dkt. 57.)  Plaintiff's suit included claims against Sussberg personally for fraud, assault, and false imprisonment.  (*Id.*)  When the defendants removed the case to federal court, Plaintiff sought to recuse Judge Jones from hearing the suit "based on what he contended was inappropriate or biased conduct in the prior McDermott bankruptcy proceedings."  *In re McDermott Int'l, Inc.*, 2023 WL 8215341, at *1 (S.D. Tex. Jan. 9, 2023).

Then, just a few days before the recusal motion was scheduled to be heard by Bankruptcy Judge Marvin Isgur, Plaintiff amended his recusal motion.  In an addendum, Plaintiff claimed to have received an anonymous letter informing him of an intimate relationship between Judge Jones and Elizabeth Freeman, a partner at Jackson Walker. (FAC ¶ 59; *see* Dkt. 1-1.)  Because the sole basis for Plaintiff's allegations was the anonymous letter, Judge Isgur found they were not credible and denied the motion.  (*See* FAC ¶ 60; Bk. No. 20-03309, Dkt. 47 ("All that we really have is a complaint about rulings in a judicial proceeding.").)

With the recusal issue seemingly settled, multiple courts proceeded to reject Plaintiff's claims on the merits.  Judge Jones dismissed Plaintiff's adversary suit against Sussberg and others for failure to state a claim.  (FAC ¶ 61.)  Plaintiff appealed both Judge Jones's dismissal order and Judge Isgur's recusal order to the district court (*id.*)—and included the anonymous letter in the record on appeal.  (*See* Case No. 21-cv-03369, Dkt. 22 (S.D. Tex.).)  The district court affirmed the bankruptcy judges' rulings on all counts.  *See In re McDermott Int'l, Inc.*, 2023 WL 8215341 at *20.  Plaintiff subsequently sought rehearing, which the district court denied.  (*See* Case No. 21-cv-03369, Dkts. 34-35 (S.D. Tex.).)  He also appealed the district court's decision to the Fifth Circuit, and that appeal remains pending.  (FAC ¶ 61.)

Then, on October 4, 2023, Plaintiff filed his initial complaint in this case (the "Original Complaint"), relying on the same anonymous letter he filed in connection with his recusal motion to allege that Judge Jones's order confirming the Plan was unconstitutional.  (*See* Dkt. 1 ¶ 34; Dkt. 1-1.)  This time, however, Plaintiff backed up his accusations with results of a property-record

- 4 -

search that Plaintiff had run after acquiring a new computer program.  (Dkt. 1 ¶ 13.)  Those property records revealed that Jones and Freeman co-owned property and lived together.  (Dkt. 1 ¶¶ 8-10.)  Based on these revelations, Plaintiff asserted a single *Bivens* claim against Jones.  (Dkt. 1 ¶¶ 24-31.)  The Original Complaint made no mention of Kirkland at all.  (*See id.*)

But just a few days after Plaintiff filed his Original Complaint, in an October 7, 2023 interview with *The Wall Street Journal*, Jones publicly admitted for the first time that he was "in a relationship and has shared a home for years with" Freeman.  (FAC ¶ 62.)  Jones defended the decision not to disclose the relationship—which he admits "[he] and [he] alone made"—by explaining that he "believe[d] the relationship didn't need to be disclosed because he and Freeman aren't married."  (Rule 11 Mot., Furlow Decl., Ex. 1 at 2-3.)  Jones's judicial colleagues expressed surprise at these revelations, however, and the Chief Judge of the Fifth Circuit initiated a formal inquiry into potential judicial misconduct by Jones.  (FAC, Ex. 2; Rule 11 Mot. at 6; *see also* Ding Decl., Ex. 1 (Chief U.S. District Judge Randy Crane quoted as saying, "We're all dumbfounded and surprised and shocked.").)  Shortly thereafter, on October 15, 2023, Jones resigned.  (FAC ¶¶ 63-67.)

In the wake of these revelations, the U.S. Trustee—who has the statutory role of protecting the integrity of the bankruptcy system—sought to reopen bankruptcy cases heard by Jones and vacate the fees he awarded to Jackson Walker, including in the McDermott bankruptcy.  (FAC ¶ 68.)  In its filings, the U.S. Trustee repeatedly describes the relationship between Freeman and Jones as "secret" and observes that "information about [it] only became public on October 6, 2023, in the Business Insider, [and] was confirmed by Judge Jones on October 7, 2023."  (Bk. No. 20-30336, Dkt. 1138 ¶¶ 25, 26.)

In response to the U.S. Trustee's filings, Jackson Walker attests it first learned of an alleged relationship between Freeman and Jones in March 2021, when it received the anonymous letter Plaintiff filed in support of his recusal motion.  (*See* FAC ¶ 69; *In re 4E Brands*, Bk. No. 22-50009, Dkt. 526 ¶ 13.)  Jackson Walker further attests it subsequently conducted an investigation and confirmed the existence of a past relationship, but Freeman (falsely) told Jackson Walker that the romantic relationship had ended prior to March 2020, and she and Judge Jones "do not and have

not lived together." (*In re 4E Brands*, Bk. No. 22-50009, Dkt. 526-1 at 4.)  As a result, although Jackson Walker notified Kirkland of Plaintiff's allegations based on the anonymous letter in March 2021 (FAC ¶ 69), there was no indication at that time of any relationship, or that Freeman and Jones lived together.  Indeed, in response the U.S. Trustee's filings, Jackson Walker asserts that "Ms. Freeman . . . continued to deny the existence of an intimate relationship until 2022."  (Bk. No. 20-30336, Dkt. 1142 at 9.)

Meanwhile, Plaintiff retained counsel and filed an amended complaint on January 11, 2024, which added 11 claims against Kirkland.  The First Amended Complaint ("FAC") alleges that Kirkland conspired with Jones, Freeman, and Jackson Walker to conceal the Jones-Freeman relationship while using the relationship to "enrich themselves" and to "influence, issue, and secure favorable bankruptcy court rulings."  (FAC ¶¶ 82, 93.)  Plaintiff's theory is that Kirkland allegedly furthered the conspiracy by filing numerous "federal court papers" that did not disclose the relationship in violation of "the rules governing bankruptcy proceedings."  (FAC ¶¶ 4-5, 36.)

### III.   LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (cleaned up).

Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") further requires a party alleging fraud to "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  To satisfy this heightened pleading standard, the plaintiff must allege "the who, what, when, and where" of the alleged fraud.  *Williams v. WMX Techs.*, 112 F.3d 175, 178 (5th Cir. 1997).  Rule 9(b) applies here to all of Plaintiff's claims—even those not overtly framed in terms of fraud—because each is expressly "based on the same set of alleged facts" related to Kirkland's claimed fraudulent conduct in failing to disclose the Jones-Freeman relationship.  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 n.3 (5th Cir. 2010); *see also VeroBlue Farms USA, Inc. v. Wulf*, 465

F. Supp. 3d 633, 653 (N.D. Tex. 2020) ("[W]hat triggers specific pleading for fraud claims is not the label attached to the claims but the substance of the allegations.").

## IV.   ARGUMENT

Kirkland's arguments in support of dismissal are organized as follows: Section A sets forth four cross-cutting reasons why all of Plaintiff's claims must be dismissed; Section B identifies additional deficiencies in individual claims and subsets of claims; and Section C explains why leave to amend should not be granted.

### A.   All of Plaintiff's Claims Must be Dismissed for Multiple Threshold Reasons

All of Plaintiff's claims fail under Rule 12(b)(6) for four threshold reasons: (1) Plaintiff's core factual allegations are not alleged with sufficient particularity or plausibility; (2) Plaintiff lacks standing under the shareholder standing rule; (3) Plaintiff has not and cannot plead any injury proximately caused by Kirkland's conduct; and (4) Plaintiff has not plausibly alleged any materially false statement by Kirkland.

#### 1.   Plaintiff's core factual allegations are not sufficiently alleged.

Plaintiff's essential factual theory, which underlies all his claims, is that Kirkland knew of the relationship between Jones and Freeman long before Plaintiff raised his allegations in March 2021, and conspired with Jones, Freeman, and Jackson Walker to conceal the relationship in order to "enrich themselves." (FAC ¶¶ 4, 82, 85.) For four independent reasons, Plaintiff fails to plead this "alleged misbehavior" by Kirkland "with the particularity required by Rule 9(b)," *Brown v. Bilek*, 401 F. App'x 889, 894-95 (5th Cir. 2010), or the plausibility required by *Iqbal* and *Twombly*. *See United States ex rel. Integra Med Analytics, L.L.C. v. Baylor Scott & White Health*, 816 F. App'x 892, 898 (5th Cir. 2020) ("Rule 9(b)'s particularity requirement supplements Rule 8(a)'s demand that a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." (cleaned up)); *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009) ("Rule 9(b) has long played [a] screening function, standing as a gatekeeper to discovery, a tool to weed out meritless fraud claims sooner than later.").

*First,* the core premise of Plaintiff's claims against Kirkland—that Kirkland knew about the Jones-Freeman relationship prior to Plaintiff's recusal filing in March 2021—lacks any factual

support.  (*See* FAC ¶ 70.)  Plaintiff's knowledge allegations are based on a willful and misleading misreading of two sparse sentences in a November 2023 Financial Times ("FT") article. (Rule 11 Mot. at 9-10.)  But this "unverified hearsay" in the FT article is not sufficiently reliable or specific to meet Plaintiff's pleading burden on this critical threshold fact—particularly in the face of contrary admissions from Jackson Walker, Freeman, and Jones.  (*See id.* at 10-11 (quoting *Chapman & Cole v. Itel Container Int'l B.V.*, 865 F.2d 676, 685 (5th Cir. 1989)); *Stockman v. Flotek Indus., Inc.*, 2010 WL 3785586, at *15 (S.D. Tex. Sept. 29, 2010) (holding that "statements attributed to CW1" are insufficient to support plaintiff's claims under Rule 9(b) because "they are hearsay" and "lack indicia of reliability required by case law to raise an inference that the defendants' statements were materially false and misleading"); *see also Meyer v. Biopure Corp.*, 221 F. Supp. 2d 195, 206 (D. Mass. 2002) (article from TheStreet.com was "simply not specific enough to satisfy the plaintiffs' pleading burden").

And even taking the FT's reporting about Kirkland as true, the remainder of the two sentences about Kirkland provides an innocent—and understandable—explanation for Kirkland's decision not to independently report the Jones-Freeman relationship: Kirkland "did not know how advanced" the Freeman-Jones relationship was and "assumed the pair had received clearance" for whatever relationship they may have had.  (FAC ¶ 70.)  Said another way, Plaintiff's allegations establish at most that Kirkland mistakenly presumed that a federal judge was complying with his statutory and ethical obligations.  (*Id.*)  While this assumption was, in hindsight, mistaken, the notion that a party may assume a federal judge is acting properly—and certainly is not required to assume that a federal judge is acting improperly—is well-ingrained in the law.  *See, e.g.*, *United States v. Pettis*, 720 F. App'x 306, 310 (7th Cir. 2017) (holding that plaintiff's "[s]peculation" was "insufficient to overcome the presumption that judges are neutral decision-makers"); *Fisher v. Bureau of Alcohol, Tobacco & Firearms*, 2023 WL 2082552, at *10 (W.D.N.Y. Feb. 17, 2023) (plaintiff had "compounded th[e] implausibility" of his allegations by alleging that "three federal judges" were co-conspirators).

*Second*, Plaintiff cannot dispute that other inferences are at least "equally plausible" to the ones he now makes implicating Kirkland.  *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d

- 8 -

6617142

148, 153 (5th Cir. 2010) (dismissing fraud claim).  Indeed, Plaintiff's allegations against Kirkland represent his third different interpretation of these same facts.[3]  Upon first receiving an anonymous letter about the Freeman-Jones relationship in 2021, Plaintiff conjured up multiple salacious theories of misconduct, none of which involved Kirkland.  (Bk. No. 20-03309, Dkt. 39 at 3 [sealed]

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████.)  By the time he filed his Original Complaint in this case in 2023, Plaintiff had shifted to identify Judge Jones as the primary bad actor and cast Freeman as merely a "scapegoat." (Dkt. 1 ¶ 14.)   Given these prior, alternative interpretations of the same facts, Plaintiff's latest theory—that Jones, Freeman, Jackson Walker, and Kirkland were all co-conspirators in the same criminal scheme—does not rise "above the speculative level."  *Trevino v. City of Pleasanton*, 2019 WL 1793360, at *3 (W.D. Tex. Apr. 23, 2019), *report and recommendation adopted*, 2019 WL 13318340 (W.D. Tex. May 24, 2019) ("While pleading in the alternative may be appropriate in certain circumstances, the type of incoherent and internally inconsistent factual allegations presented here are of an entirely different character and are insufficient to state a plausible claim for relief."); *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990) (affirming dismissal of RICO claim in original complaint with prejudice because amendments would "contradict[] the allegations of his original complaint").

   **Third**, Plaintiff's contradictory and inconsistent allegations against Kirkland "are indicative of a failure to plead a plausible claim."  *Stevenson v. Thornburgh*, 2024 WL 645187, at *13 (S.D.N.Y. Feb. 14, 2024); *Tim Cross, LLC v. Associated Adjusters Network, Inc.*, 2023 WL 9005635, at *3 (C.D. Cal. Nov. 30, 2023) ("These inconsistencies in the timeline leave far too many blanks in the eyes of the Court to sustain fraud claims under Rules 9(b) and 12(b)(6)").  In particular, Plaintiff alleges that Kirkland worked with Jackson Walker as co-counsel in order to

---

[3] While Plaintiff's prior actions raising overlapping issues may implicate collateral estoppel, Kirkland will raise those question, if necessary, on later motion.

exploit the "Jones-Freeman conduit." (FAC ¶ 4; *id.* ¶ 30 ("With 200 lawyers in its Houston office, it might be questioned why Kirkland & Ellis would need local counsel at all.").) But Kirkland worked with Jackson Walker *before* Freeman joined the firm and continued working with Jackson Walker even *after* Freeman left the firm in 2022. (*See, e.g.*, *In Re: Anglo Suisse Offshore Pipeline Partners LLC, Delaware EPL of Texas LLC, et al.*; Bk. No. 16-31928 (S.D. Tex.); FAC ¶ 29 n.28 (citing website stating: "The report . . . shows that Jackson Walker's team has served as local debtor's counsel a nation-leading 14 times [*in 2023*], often in partnership with Kirkland & Ellis."). Thus, "the timing of [Kirkland's] decision [to work with Jackson Walker] does not fit with [plaintiff's] theory of conspiracy." *In re Citric Acid Litig.*, 191 F.3d 1090, 1101 (9th Cir. 1999); *see McCracken v. Blei*, 2022 WL 226070, at *5 n.11 (E.D. Pa. Jan. 26, 2022) ("The incredibility of [plaintiff's] conspiracy is reflected in the fact that several of his allegations are wholly inconsistent with others and defy common sense" including "with respect to the . . . timing of this alleged conspiracy.").

*Fourth*, setting Plaintiff's conspiracy theory aside, every fact alleged is "consistent with a legal and obvious alternative explanation." *Integra Med Analytics*, 816 F. App'x at 898. In fact, Plaintiff's allegations of wrongdoing are not merely *consistent* with innocent alternative explanations, they are exclusively *sourced* from an article describing those innocent alternatives. (*See* FAC ¶¶ 69-70.) Kirkland was approved as debtor's counsel not due to "intimate relationships and self-interest" (FAC ¶ 91), but because it is a "dominant US debtor law firm" that is routinely approved for high-profile matters throughout the country. (FAC ¶ 29; Bk. No. 20-30336, Dkt. 428 ¶¶ 7-8 ("The Debtors seek to retain Kirkland because of Kirkland's recognized expertise and extensive experience and knowledge.").) And Kirkland had good reason to use Jackson Walker as local counsel irrespective of Freeman's romance with then-Judge Jones (FAC ¶¶ 4, 30) because of Jackson Walker's substantial local knowledge. (FAC ¶ 31 (alleging that Jackson Walker partners had clerked for Judges Jones and Isgur).)

For each of these four reasons—both separately and collectively—Plaintiff fails to plausibly plead the key facts necessary for his claims as required by Rule 9(b) and Rule 12(b)(6).

### 2.   Plaintiff lacks standing under the shareholder standing rule.

Plaintiff lacks standing to bring *any* of his claims because each violates the "shareholder standing rule": a "longstanding equitable restriction that generally prohibits shareholders" like Plaintiff "from initiating actions to enforce the rights of the corporation."[4]   *Franchise Tax Bd. v. Alcan Aluminium Ltd.*, 493 U.S. 331, 336 (1990).  In the bankruptcy context, this rule serves an especially important purpose given bankruptcy's unique equitable considerations.   When a plaintiff's allegations would benefit a broader class of creditors or shareholders, but a plaintiff pursues them alone, "to allow the plaintiff's actions to proceed would undercut the general bankruptcy policy of ensuring that all similarly-situated [individuals] are treated fairly." *Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142, 1153 (5th Cir. 1987).  That is especially true here given that Plaintiff, as a McDermott shareholder, has lower priority in the bankruptcy hierarchy than other stakeholders—awarding damages "directly to a shareholder" like him "could impair the rights of creditors whose claims may be superior to [his]." *Glenn v. Hoteltron Systems, Inc.*, 74 N.Y.2d 386, 393 (1989).  Thus, Plaintiff cannot sue where, as here, the claims in question "belong[] to the estate"; instead, "the Trustee has *exclusive* standing to assert" them.   *Schertz-Cibolo-Universal City, Indep. Sch. Dist. (In re Educators Grp. Health Trust)*, 25 F.3d 1281, 1284 (5th Cir. 1994) (emphasis added).

Even if Plaintiff had any viable claims against Kirkland—and he does not—those claims would belong to the McDermott estate, not Plaintiff directly.   Indeed, Plaintiff explicitly

---

[4] Many cases, including those cited here, frame this principle as "standing" to sue; this brief follows suit.  *See also Jackson v. Small Bus. Admin.*, 2022 WL 18456351, at *3 (N.D. Tex. Dec. 16, 2022) (concluding that "[t]he argument that a shareholder or principal lacks standing to bring suit to enforce the rights of the corporation is a matter of prudential standing" properly addressed under Rule 12(b)(6)), *report and recommendation adopted*, 2023 WL 375351 (N.D. Tex. Jan. 24, 2023); *Nocula v. UGS Corp.*, 520 F.3d 719, 726-27 (7th Cir. 2008) (a shareholder's injury, "although indirect, may suffice to satisfy Article III standing, but the prudential rule against shareholder suits for injuries to the corporation precludes him from bringing these claims because they belong to the corporation").  Other courts have concluded it is a matter of "capacity" to sue instead.  *See, e.g.*, *Madison v. Health Care Servs. Corp.*, 2022 WL 14225447, at *3 (W.D. Tex. Oct. 24, 2022) ("While Plaintiffs may have suffered an injury sufficient to confer standing, they are not the appropriate party to bring suit—thus Plaintiffs lack capacity."), *report and recommendation adopted,* 2022 WL 17732718 (W.D. Tex. Dec. 9, 2022).  Whatever the label, Kirkland intends to assert the correct doctrine implicated by the cases cited herein.

acknowledges his alleged injuries are entirely based on alleged harm suffered by McDermott. For example, with respect to his RICO claims (Counts I and II) and unjust enrichment claim (Count IX), Plaintiff asserts his "financial recovery . . . was reduced because *the bankruptcy estate* . . . was diminished by the fees improperly awarded" to Kirkland. (FAC ¶¶ 96, 202 (emphasis added).)   Plaintiff's common law fraud claim (Count III) and negligent misrepresentation (Count VI) claims similarly assert he suffered injury "when . . . [Kirkland was] appointed and awarded attorneys' fees *from the bankruptcy estate* by Judge Jones . . . without disclosure of the intimate relationship." (FAC ¶¶ 136, 138, 142, 182 (emphasis added).)   His breach of fiduciary duty claims (Counts IV and V) likewise frame the duty as running from Kirkland "*to the bankruptcy estate*" and complain that Kirkland's breaches to this end "thereby reduc[ed] *the estate* that was available to pay . . . Plaintiff." (FAC ¶¶ 145, 147, 149 (emphasis added).)  And his other claims are predicated on the notion that Kirkland wrongfully "enrich[ed] [itself]" at the estate's expense or breached some duty to the estate. (*See* FAC ¶¶ 190 (Count VII - professional negligence), 198 (Count VIII - civil conspiracy), 219 (Count IX - Bivens conspiracy).) In short, there is thus "no indication of any harm to [Plaintiff] *other than* the harm[s] to [McDermott]," meaning he lacks standing to recover individually for them. *In re NC12, Inc.*, 478 B.R. 820, 836 (Bankr. S.D. Tex. 2012).[5]

Courts have uniformly rejected these claims, both in the bankruptcy context and outside it. In one particularly helpful example, plaintiff shareholder in *In re Radnor Holdings Corp.* brought a host of claims including for breach of fiduciary duty, fraud, conspiracy, and malpractice, based on an alleged "conspiracy . . . to hide conflicts of interest [and] retain Skadden as [debtor's] bankruptcy counsel." 564 B.R. 467, 471, 480 (D. Del.), *aff'd*, 706 F. App'x 94 (3d Cir. 2017).

---

[5] Plaintiff at several points makes the bare claim that he suffered "mental anguish" and "emotional distress" as a result of Defendants' alleged misconduct (*e.g.*, FAC ¶¶ 157, 182), but even these damages "are derivative injuries that indirectly stem from the alleged harm" to McDermott. *Galindo v. City of Del Rio*, 2021 WL 2763033, at *4 (W.D. Tex. Mar. 26, 2021) (cleaned up); *see also, e.g.*, *Liberty Sackets Harbor LLC v. Village of Sackets Harbor*, 776 F. App'x 1, 3 (2d Cir. 2019) (finding no standing for an LLC member to recover for emotional distress and legal expenses because those damages "indirectly stem[med] from the alleged harm to [the LLC]").

The court affirmed dismissal of these claims in part because plaintiff shareholder lacked standing—the shareholder plaintiff was "affected *through* [the debtor], by virtue of his ownership of equity" meaning that "[the debtor] would be the only proper plaintiff to assert such derivative claims." *Id.* at 484.  Likewise, in *In re NC12*, the court dismissed shareholders' breach of fiduciary duty claims where defendant allegedly "stripped [the company] of assets to the detriment of [its] creditors and shareholders" in part via "large amounts of professional fees and expenses"—what the court termed a "fundamentally derivative" claim.  478 B.R. at 836.  And in *In re Acis Cap. Mgmt., L.P.*, the court concluded that a shareholder's claim that its interest in the debtor was "being decimated by administrative expenses" could not confer standing because it was "quintessentially derivative of [the company's] own interests."  604 B.R. 484, 509-10 (N.D. Tex. 2019), *aff'd sub nom. Matter of Acis Cap. Mgmt., L.P.*, 850 F. App'x 302 (5th Cir. 2021).[6]

In sum, the law is clear that "only a corporation and not its shareholders, not even sole shareholders, can complain of an injury sustained by, or a wrong done to, the corporation."[7] *Id.* at 507.  The Court's analysis can end there.  Plaintiff's claims should be dismissed.

### 3.    Plaintiff fails to plausibly plead proximate causation as to Kirkland.

"It is a bedrock rule of tort that a defendant is only liable for harms he proximately caused." *Rodriguez v. Blaine Larsen Farms, Inc.*, 2022 WL 484924, at *5 (N.D. Tex. Feb. 15, 2022); *see also Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014, 206 L. Ed. 2d 356 (2020) ("It is 'textbook tort law' that a plaintiff seeking redress for a defendant's legal

---

[6] *See, e.g.*, *In re SBMC Healthcare, LLC*, 519 B.R. 172, 184 (Bankr. S.D. Tex. 2014) ("Because the causes of action based on devaluation of SBMC stock are derivative, they belong exclusively to SBMC's estate and should be dismissed for lack of standing."), *aff'd*, 2017 WL 2062992 (S.D. Tex. May 11, 2017); *Stevens v. Lowder*, 643 F.2d 1078, 1080 (5th Cir. 1981) (holding plaintiffs had "no independent cause of action" because claims arose "only from the loss in value of their stock as a result of injury to the corporation"); *Brennan v. Chestnut*, 973 F.2d 644, 648 (8th Cir. 1992) (applying shareholder standing rule to bar RICO claims based on "diminution in the value of shares").

[7] The Debtors released the claims under their Plan that Plaintiff purports to assert here. Specifically, the Debtors and "any person seeking to exercise the rights of the Debtors or their Estates" released Kirkland and other "related parties" of the Debtors and other entities from all "Claims and Causes of Action" that are "based on or relating to, or in any manner arising from…," among other things, the Debtors' Chapter 11 cases.  (*See* Bk. 20-30336, Dkt. 684 at 59-60, 117.)

wrong typically must prove but-for causation."); *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010) ("[T]o state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense not only was a 'but for' cause of his injury, but was the proximate cause as well."). Plaintiff attempts to meet this standard by alleging that his potential "financial recovery" in the bankruptcy "was diminished by the fees improperly awarded to Jackson Walker, Freeman, and Kirkland & Ellis by Judge Jones." (FAC ¶ 96; *see also id.* ¶ 2 (alleging that Plaintiff "lost his entire investment of 30,000 shares in McDermott" during the alleged improper proceedings).) But this theory of harm is speculative, counterfactual, and fails for at least four independent reasons.

*First*, Plaintiff's causation allegations "overlook the temporal requirement" that cause must precede effect. *A. v. Laredo Indep. Sch. Dist.*, 2007 WL 189458, at *5 (S.D. Tex. Jan. 22, 2007). Plaintiff's shares in McDermott were cancelled by the March 2020 order confirming McDermott's reorganization plan, which became effective as of June 30, 2020. (Bk. No. 20-30336, Dkt. 684 at 41 ("On the Effective Date, all equity interests of McDermott International Inc. shall be cancelled.").) It was months later—in August and September 2020—that Kirkland applied for and was awarded its requested fees. (FAC ¶ 105(d), (f).) And it was not until the next year that Kirkland learned of an alleged relationship between Jones and Freeman. (*See supra* section IV.A.1.) Because "[l]ogically, an effect cannot precede its cause," Plaintiff "cannot establish the necessary causal link" to support his claims. *Story v. Our Lady of Lake Physician Grp.*, 2018 WL 1902687, at *4 (M.D. La. Apr. 20, 2018), *aff'd*, 779 F. App'x 266 (5th Cir. 2019) (citations omitted).

*Second*, even setting this threshold temporal deficiency aside, Plaintiff fails to plausibly allege a causal chain connecting his alleged injury to Kirkland. Plaintiff cannot show—and, indeed, has not even alleged—that Kirkland did not squarely earn all of the fees it was awarded.[8]

---

[8] Nor could he. The McDermott bankruptcy was a "pre-packaged" bankruptcy—meaning that the company exhaustively negotiated the plan's terms with its creditors for many months before filing in court. (*See* Bk. 20-30336, Dkt. 62 at 2-3.) The Plan left trade creditors unimpaired (*id.*, Dkt. 684 at 128-29), and was accepted by 99% of creditors, (*id.*, Dkt. 589 at 4). With Kirkland at the
(Continued...)

(*See* FAC ¶¶ 96.)  To the contrary, Plaintiff admits the *only* fees that "otherwise would not have been achieved" but-for Defendants' alleged wrongful conduct are the fees Judge Jones improperly awarded to *Jackson Walker.*  (FAC ¶ 203; *id.* ¶ 204 ("Had the Defendants not engaged in the wrongful conduct, . . . *Defendants Jackson Walker and Freeman would not have been awarded fees* by Judge Jones.") (emphasis added).)  Regardless, even if Plaintiff could somehow establish that Kirkland should not have been awarded fees for its work as debtor's counsel, Plaintiff's claim still "stumbles on cause in fact" because McDermott "in all likelihood would have found another attorney to take [Kirkland's] place" and still "incurred the contested fees and expenses."  *L. Funder, L.L.C. v. Munoz*, 924 F.3d 753, 761 (5th Cir. 2019); *see also Strates Shows, Inc. v. Amusements of Am., Inc.*, 379 F. Supp. 2d 817, 832 (E.D.N.C. 2005) ("Given that such costs would have been incurred either with or without the defendants' illegal acts, plaintiff cannot show that defendants' illegal conduct was even a 'cause-in-fact' of plaintiff's costs in preparing the . . . proposals.").

   *Third*, Plaintiff alleges no facts to support the naked assertion that *his* potential "financial recovery" as an individual shareholder was in fact "reduced" by any fees awarded to Kirkland.[9] (FAC ¶ 96.)  Plaintiff did not plead any of the information necessary to even begin this inquiry, such as: the size of McDermott bankruptcy estate; the total assets available to creditors; the size and number of claims by creditors; and whether the assets were sufficient to satisfy all creditor claims such that shareholders like Plaintiff would be entitled to any recovery at all.  *See In re Loggins*, 513 B.R. 682, 703 (Bankr. E.D. Tex. 2014) (observing that creditors may have "no

---

helm, the Plan was approved expeditiously within two months of its filing.  And while Plaintiff objected to confirmation of the Plan alongside other shareholders that were "out of the money" (*id.* at 74-81; Exhibit A at 2), he did not appeal the confirmation order.  All of these facts demonstrate the efficacy of Kirkland's work; there can be no genuine question as to the substantive outcome of the proceedings or the Firm's role in it.

[9] Plaintiff has not even attempted to allege he was injured by bankruptcies other than the McDermott bankruptcy.  Without such "personalized" injury, he has no standing to assert claims as to those bankruptcies.  *See Kearey v. Collier*, 2019 WL 3470759, at *4 (S.D. Tex. June 17, 2019), *report and recommendation adopted*, 2019 WL 3457646 (S.D. Tex. July 31, 2019) ("Swift ordered the book and video, not Kearey, and any injury resulting from their denial belongs to Swift.").

KIRKLAND'S MOTION TO DISMISS

reasonable expectation of payment" depending on "the size of the debt owed" to other, higher priority creditors); *Oceanic Exploration Co. v. Phillips Petroleum Co.*, 352 F. App'x 945, 952 (5th Cir. 2009) (complaint failed where plaintiff offered "no reason to believe" that it would have won the contract at issue absent defendant's alleged bribery).

While the FAC leaves these essential questions unasked, the exhibits to Plaintiff's pleadings provide definitive answers that refute any claimed causation. Indeed, the McDermott bankruptcy was sprawling, involving billions of dollars of claims asserted by hundreds of creditors—all of whom would have needed to have been paid in full before Plaintiff could recover anything. (*E.g.*, Bk. No. 30336, Dkt. 684 at 120 (describing "senior secured letter of credit exit facility in an amount up to $1.326 billion")); *see In re Caprock Oil Tools, Inc.*, 585 B.R. 823, 828 (Bankr. S.D. Tex. 2018) ("It is settled in the Bankruptcy Code that common stock shareholders are not paid until higher priority claims—secured creditors, unsecured creditors, and preferred stock shareholders—are satisfied."). The Chapter 11 process itself eliminated approximately *$4.1 billion* in McDermott debt. (Bk. No. 20-30336, Dkt. 589 ¶ 1.) Thus, even if the roughly $8 million in fees awarded to Kirkland were added back to the estate—roughly 0.2% of the debt eliminated through bankruptcy—Plaintiff still would have recovered nothing from that additional drop in the estate's bucket. *See, e.g.*, *In re Highland Cap. Mgmt., L.P.*, 2023 WL 5523949, at *32 (Bankr. N.D. Tex. Aug. 25, 2023) ("Even if there is unlawful conduct asserted . . . there is nothing other than a hypothetical theory of an alleged injury (i.e., an allegedly less likelihood of a distribution on a Contingent Claimant Trust Interest).").

*Fourth*, even if Plaintiff could somehow establish that Kirkland was a plausible cause of his injury, Plaintiff himself has identified what he believed to be an independent and superseding cause to this exact same injury. Plaintiff's prior lawsuit against McDermott executives alleged that McDermott purposefully "destroy[ed] shareholder equity" by "unnecessarily writing down goodwill and intangible assets" and had "unnecessarily declar[ed] Chapter 11 bankruptcy" to "enrich[] . . . company insiders" and to "cancel the stock of plaintiffs and other shareholders." *In re McDermott Int'l, Inc.*, 2023 WL 8215341 at *4. Because Plaintiff himself has identified "another reason for [his] loss of investment," that superseding cause independently "defeat[s] the

element of proximate cause." *Millcreek Assocs., L.P. v. Bear, Stearns & Co.*, 205 F. Supp. 2d 664, 682 (W.D. Tex. 2002).

### 4.   Plaintiff fails to establish any materially false statement.

Each of Plaintiff's claims hinges on an allegation that Kirkland made material, false statements.  (*See* FAC ¶ 114 (as to RICO claim, alleging that Defendants made "material, false representations"); *id.* ¶ 134 (as to common law fraud, alleging that Defendants made "material misrepresentations" that "are set forth in more detail in Count I"); *id.* ¶ 149 (as to breach of fiduciary duty, alleging that "Plaintiff relied on the false representations of . . . Kirkland & Ellis"); *id.* ¶ 165 (as to negligent misrepresentation, alleging that "Defendants provided misleading and false information"); *id.* ¶ 188 (as to professional negligence claim, alleging that Defendants "negligently, intentionally and/or fraudulently made representations to Plaintiff"); *id.* ¶ 203-204 (as to unjust enrichment, alleging that Defendants engaged in "fraudulent conduct" by not "reveal[ing] the existence of an intimate relationship between Judge Jones and Freeman"); *id.* ¶ 221 (as to *Bivens* conspiracy, alleging that "Defendants' conspiracy" included "mail fraud" and "wire fraud").)[10]   Therefore, all of Plaintiff's claims against Kirkland require a material false statement to survive dismissal.[11]  But Plaintiff fails to establish either of the essential aspects of this assertion.  The FAC lacks the particular facts demanded by Rule 9(b) to show that Kirkland made *any* statement that was false—much less one that was materially so.

---

[10] Plaintiff's related conspiracy claims (Counts II, VIII), respondeat superior claim (Count XII), and aiding and abetting claim (Count V) are expressly based on the same theories.

[11] *See, e.g.*, *In re MasterCard Intern. Inc.*, 313 F.3d 257, 263 (5th Cir. 2002) (noting that a "particularly compelling" reason to dismiss a RICO claim is because the plaintiff does not "show that the Defendants made a false or fraudulent misrepresentation"); *Joe N. Pratt Ins. v. Doane*, 2008 WL 819011, at *6 (S.D. Tex. Mar. 20, 2008) (finding no wire fraud or mail fraud was alleged because plaintiff fails to allege that defendant "made a false or fraudulent misrepresentation"); *Daniels v. Aetc II Privatized Hous., LLC*, 2023 WL 2562714, at *2 (W.D. Tex. Jan. 18, 2023) (dismissing common law fraud and unjust enrichment because "Plaintiffs failed to plead any alleged misrepresentations with particularity"); *Burback v. Oblon*, 2022 WL 2841482, at *7 (E.D. Tex. July 20, 2022), *aff'd sub nom. Burback v. Brock*, 2023 WL 4532803 (5th Cir. July 13, 2023) (dismissing breach of fiduciary duty claim because "the FAC fails to sufficiently allege that Brock made statements that were false at the time and that he had knowledge of the fraudulent scheme, such that he would have breached any informal fiduciary duty he may have had").

       (a)      ***Kirkland did not make any "false" statements.***

Plaintiff's allegations of "falsity" fail for at least three independent reasons. (FAC ¶ 141.)

*First*, despite referring repeatedly to Kirkland's "false representations," Plaintiff fails to quote or even specifically identify a single actual statement by Kirkland.  (FAC ¶ 114.)  Instead, Plaintiff cites to purportedly fraudulent Kirkland court submissions—some of which span hundreds of pages—and broadly casts the documents as fraudulent because they failed to "disclos[e] the Jones-Freeman relationship."  (FAC ¶ 175 (referencing Kirkland's 600-page fee application and 113-page supporting declaration).)  These conclusory characterizations of voluminous filings fail to meet Plaintiff's burden to "specify the content of any misrepresentation." *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992).  The FAC should be dismissed for this reason alone.  *See also United States v. Dental Health Programs, Inc.*, 2020 WL 3064712, at *6 (N.D. Tex. June 8, 2020) (claim dismissed in part because "[Plaintiff] does [not] identify the particular false statements with respect to those certifications that form the basis of her claim"); *Stevenson*, 2024 WL 645187 at *17 ("Plaintiffs have also failed to plead any non-conclusory facts or make references to specific portions of documents in support of their claim that the Steal the List Scandal involved mail fraud.").

*Second*, Plaintiff cannot establish falsity merely by asserting that Kirkland violated "the rules governing bankruptcy proceedings."  (FAC ¶ 36.)  Rather than identify even a single false statement of fact, Plaintiff attempts to shortcut his pleading burden by asserting that Kirkland's filings violated Rule 2014 of the Bankruptcy Rules of Procedure ("Rule 2014"), which requires debtor's counsel to be "disinterested."  (FAC ¶¶ 36-37, 49-50, 52, 119, 135-140, 149, 166-67, 170.)  But it is well-settled that the "rules governing procedure in the federal courts do not give rise to private causes of action."  *Good v. Khosrowshahi*, 296 F. App'x 676, 680 (10th Cir. 2008).  Thus, Plaintiff "cannot assert a grievance about [Kirkland's] purported non-compliance with . . . procedural rules in the bankruptcy court by way of his civil action in this district court."  *Sciortino Bankr. Est. v. Shapiro Pentergast & Hasty LLP*, 2018 WL 7075244, at *18 (N.D. Ga. Nov. 21, 2018); *see also In re Steed*, 614 B.R. 395, 411 n. 13 (Bankr. N.D. Ga. 2020) ("The Federal Rules of Bankruptcy Procedure are designed and maintained to aid in the just and efficient resolution of

matters pending before the Court. . . . [They] do not allow for a private cause of action for damages from violating a rule of procedure.").

To be clear, Kirkland is not arguing that actionable fraud is insulated from liability simply because it appears in a procedural bankruptcy disclosure under Rule 2014 statement.  But Plaintiff repeatedly and explicitly alleges that Kirkland's statements were fraudulent *because* Kirkland supposedly violated Rule 2014.  (*See, e.g.*, FAC ¶ 105(g) (alleging Kirkland's motion "violat[ed] its continuing responsibility to supplement its declaration of disinterestedness"); *id.* ¶¶ 137-38 (alleging various Kirkland "pleadings and documents" constituted "material misrepresentations" by implicitly warranting that Kirkland's "previously-filed disclosure of disinterestedness [was] valid").)  The recent case of *Alix v. McKinsey & Co.* helpfully demonstrates this distinction.  2023 WL 5344892 (S.D.N.Y. Aug. 18, 2023).   Like Plaintiff here, the plaintiff in *Alix* alleged the defendant violated RICO by committing fraud through its Rule 2014 disclosures.  *See id.* at *13. In assessing these allegations, the court explained that "the relevant question" was "not whether [the defendant] complied with Rule 2014," but whether the defendant committed fraud by "knowingly conceal[ing] connections to the debtors" in those disclosures.  *Id.* at *17 n.13.  The court thus dismissed as insufficient allegations that merely called into question whether defendant "violated Rule 2014," while denying the motion as to statements that were facially false or misleading.  *Id.* at **13-16, 17 nn.10 & 13.[12]  But unlike in *Alix*—and as explained both above and in the next paragraph—Plaintiff does not plausibly allege that Kirkland's Rule 2014 disclosures were facially fraudulent.  Without that fraud-based hook, Plaintiff "has not identified anything other than [procedural violations] as the basis for [his] claim[s]," meaning his claims "necessarily fail[.]"  *Digene Corp. v. Ventana Med. Sys., Inc.*, 476 F. Supp. 2d 444, 451-52 (D. Del. 2007);

---

[12] For instance, on one occasion, "where the debtor allegedly hired McKinsey to investigate its parent company, NRG," McKinsey did not disclose that NRG was "an existing McKinsey client"—despite the fact that McKinsey had disclosed its relationship with NRG in other bankruptcies.  *Id.* **10, 15.  On another occasion, McKinsey portrayed its disclosure as reflecting input from all McKinsey "affiliates," but failed to disclose that McKinsey's "investment arm" had a potential conflict.  *Id.* at *15.

KIRKLAND'S MOTION TO DISMISS

*KRW Sales, Inc. v. Kristel Corp.*, 154 F.R.D. 186, 188 (N.D. Ill. 1994) (dismissing state law claims because they "simply seek[] to hold KRW accountable for its violation of [a procedural rule]").

*Third*, Plaintiff's theory that it was misleading for Kirkland to not disclose the conflict of a "Jackson Walker partner" is disproven by the content of the disclosures themselves.  (FAC ¶ 106(a)-(b).)   Far from misleadingly making any representation about "its local counsel's conflicts" (*id.*), Kirkland's disclosure does not *even mention* Jackson Walker.  (Bk. No. 20-30336. Dkt. 428-1 (Sussberg Declaration).)  Instead, Kirkland's disclosures very clearly list the firm's *own* conflicts and potential conflicts, not those of Jackson Walker.  (*See, e.g.*, *id.* ¶¶ 54-58 (identifying all "**Kirkland** employees [who] had clerkships in the United States Bankruptcy Court for the Southern District of Texas during the last three years"); *id.* ¶ 32 & Schedule 2 (identifying all McDermott equity holders that "are current, former, or closed clients of **Kirkland**") (emphases added).)  And when *Kirkland* lawyers had even marginal or indirect personal connections to an interested party, Kirkland erred on the side of disclosure.  (*Id.* ¶ 60 (disclosing that "[t]he spouse of Kirkland partner Helen E. Witt"—a litigator who did not even work on the McDermott matter— "is a managing director of JPMorgan Chase & Co.," one of McDermott's many note holders).) Kirkland, moreover, described its internal conflict-check process at length—making clear it searched for potential connections within *Kirkland*'s "electronic database" and further surveyed "all *Kirkland* attorneys who billed 10 or more hours" on any potentially adverse matter.  (*Id.* ¶ 20). And Kirkland then qualified the conclusions in its disclosures as being based on and subject to that internal Kirkland conflict-check process.  (*Id.* ¶ 64 ("Based on the conflicts search conducted to date and described herein, to the best of my knowledge . . . Kirkland is a 'disinterested person.'").)

While Plaintiff attempts to ignore the actual content of Kirkland's allegedly fraudulent disclosures, the devil is in the details.  Kirkland's statements of disinterestedness must be read "as a whole" and "in light of the circumstances in which [they were] made."  *Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 101 (5th Cir. 1974).  Even if Plaintiff was confused about the meaning of a "declaration of disinterestedness," the substance of the declaration would have dispelled any confusion and definitively disprove the theories Plaintiff asserts in his complaint. *See id.* at 101-102 (affirming motion to dismiss ruling that bond "prospectus was not misleading,

as a matter of law" where "incomplete" statement on page 1 was adequately explained by "disclosures made . . . on page 27"); *Lone Star Fund V*, 594 F.3d at 389 (affirming dismissal due to lack of "actionable misrepresentation" when document was "read [its] entirety" and criticizing plaintiff-appellant's "efforts to focus on a single representation amid hundreds of pages of contractual documents are " as "misplaced").

*Fourth,* Plaintiff has not even attempted to show that the challenged "statements of disinterestedness" were false within "the declarant's own knowledge." *Alix*, 2023 WL 5344892, at *16. Plaintiff pleads no facts—let alone the particular facts required under Rule 9(b)—to show that Kirkland partner Joshua Sussberg had actual knowledge that Plaintiff's allegations about the Freeman-Jones relationship were true. To the contrary, as a member of the McDermott bankruptcy team, Sussberg would have been aware that: (1) Plaintiff had been reprimanded for submitting false statements to the Court; and (2) after holding an evidentiary hearing to determine if Plaintiff's allegations about Freeman and Jones were supported by "credible" evidence—at which Plaintiff was allowed to testify—Judge Isgur found that Plaintiff's allegations about Freeman and Jones were unsubstantiated. (Bk. No. 30336, Dkt. 719; Bk. No. 20-03309, Dkts. 40, 47 ("All that we really have is a complaint about rulings in a judicial proceeding.").) Moreover, Sussberg made clear that his conclusions were based on the results of Kirkland's conflict check process. (Sussberg Declaration ¶ 64). Plaintiff does not plead any facts to show that Sussberg concealed information revealed during that conflict-check process or misleadingly manipulated the conflict check. *See In re Fundamental Long Term Care*, 614 B.R. 753, 762 (Bankr. M.D. Fla. 2020) ("There is nothing in the record to show that Shumaker disregarded flags that should have alerted it to the connections, that Shumaker's conflict check system is inherently flawed, or that Shumaker maintains the system in a manner that reflects poor intra-firm communication and data input.").

*Fifth,* even if Plaintiff is correct that mere procedural violations could amount to fraud, the caselaw interpreting Rule 2014 confirms that Kirkland was not required to disclose Jackson Walker's conflict. Plaintiff's attempt to hold Kirkland liable for "fail[ing] to disclose another law firm's conflict of interest" is precisely the sort of "clear[ly] frivolous[]" and "improper" theory that courts have not only rejected but deemed sanctionable. *In re Eon Enterprises Corp.*, 59 F.3d

174 at *1 (9th Cir. 1995).   And other courts from around the country have confirmed that bankruptcy "professionals are required to be retained separately and *are required to submit separate disclosures.*"   *In re GSC Grp., Inc.*, 502 B.R. 673, 738 (Bankr. S.D.N.Y. 2013) (emphasis added); *see also In re Enron Corp.*, 2002 WL 32034346, at *5 (Bankr. S.D.N.Y. May 23, 2002) ("A review of Exco's motion reveals that it seeks disqualification of Milbank based upon a failure to disclose—not connections as required under [Rule] 2014—but a failure to disclose every conceivable interpretation of its connections and possible consequence resulting from the connections.").

Plaintiff's FAC solidifies this analysis by admitting there was no direct relationship between Kirkland and Judge Jones that required disclosure.   Plaintiff repeatedly alleges that Jones was required only to disclose his connections to *Jackson Walker*—not any connections to Kirkland.   (*See, e.g.*, FAC ¶ 106(f) ("Judge Jones did not disclose that he was awarding fees to his intimate partner, Freeman, and to his intimate partner's firm, Jackson Walker."); *id.* ¶ 106(c) ("Judge Jones did not disclose in the Order the intimate relationship he was having with Jackson Walker partner, Freeman.").)   Plaintiff offers no explanation—and there is none—for his attempt to hold Kirkland to a higher disclosure standard than the federal judiciary.   *See Matter of Burch*, 818 F. App'x 367, 368 (5th Cir. 2020) (noting that federal judges must recuse when there could be even "the general *appearance* of impartiality" (emphasis added)).

(b)       ***None of Kirkland's allegedly false statements are "material."***

Even if Plaintiff could establish falsity, Kirkland's alleged misrepresentations are not "material" as a matter of law.   (FAC ¶¶ 93, 114, 133, 136, 165; *see also supra* section IV.A.4.) Plaintiff cannot establish materiality for three separate reasons.

*First*, Kirkland's alleged non-disclosure of Jackson Walker's conflict was not material because it could not have impacted Kirkland's ongoing representation of McDermott.   As noted above, there is no "legal support" for the claim that a firm like Kirkland would be disqualified for or denied fees because of "local counsel's conflict."   *In re Eon Enterprises Corp.*, 59 F.3d 174 at *1.   Because Kirkland's disclosure of the Freeman-Jones relationship could not have impacted the

outcome of "the transaction[s] in question," it is not material as a matter of law.  *N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 474 (5th Cir. 2018).

*Second*, Plaintiff does not even allege that Kirkland would not have been approved as debtor's counsel or awarded fees had Kirkland disclosed the Freeman-Jones relationship.  The only fees that Plaintiff alleges "would not have otherwise" been awarded were the fees to Jackson Walker.  (FAC ¶ 203 ("Specifically, Jackson Walker took $286,885 in attorneys' fees in the McDermott bankruptcy, including $28,223 in fees billed by Freeman.").)  And the only other "outcome" that Plaintiff alleges "likely" would have changed had the Freeman-Jones relationship been disclosed is the motion to recuse Jones, where Jones himself appears to have hidden the relationship from Judge Isgur.  (FAC ¶ 65 ("Judge Jones' failure to apprise the courts of the relationship during the motion to recuse likely changed the outcome of the motion.").)  In any event, even if Plaintiff had alleged that Kirkland's non-disclosure of the Freeman-Jones relationship could have prevented Kirkland from being retained or appointed, there is an "alternative explanation" that is far more plausible.  *Integra Med Analytics*, 816 F. App'x at 897 (dismissing claim where facts were "consistent with both Baylor having submitted fraudulent Medicare reimbursement claims to the government and with Baylor being ahead of most healthcare providers in following new guidelines from CMS").  Kirkland has been appointed debtor's counsel and awarded its fees because it is a preeminent bankruptcy firm with a proven track record —not for any reason related to the Freeman-Jones relationship.  (*See* Bk. No. 20-30336, Dkt. 428 at ¶¶ 7-8 ("The Debtors seek to retain Kirkland because of Kirkland's recognized expertise and extensive experience and knowledge.").)

*Third*, Plaintiff's efforts to meet the materiality standard are actually an attempt to rewrite it.  Plaintiff asserts that Kirkland's statements were "material representations in that the disclosure was required to secure appointment under the Bankruptcy Code."  (FAC ¶ 136.)  But a statement does not become material merely because it is contained in a document that is "required to secure" some result.  (*Id.*)  Otherwise, a harmless error in a mortgage application (e.g., forgetting to list a prior residence) or a typo on a tax return (e.g., misspelling an employer's name) would be "material" simply because they were contained on "required" forms.  (*Id.*)  Courts reject this type

of reasoning, which would gut the core notion of materiality. *See, e.g.*, *Malone v. Safety-Guard Mfg. Co., Inc.*, 748 F.2d 312, 314-15 (5th Cir. 1984) ("Not every technical violation of the disclosure regulations meets this requirement of materiality."); *United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 490 (3d Cir. 2017) (evidence of "minor or insubstantial noncompliance" is not material absent showing that it would have changed the relevant decisionmaker's choice).[13]

### B.    Plaintiff's Claims Must Independently Be Dismissed for Additional Reasons

In addition to these four cross-cutting grounds for dismissal, Plaintiff's individual claims each fail for multiple independent reasons. Those arguments are detailed in sections IV.B.1 through B.9 and, in the below table, mapped onto each applicable count.

| Count | Independent Grounds for Dismissal |
|---|---|
| I (violation of RICO Act) | • Lack of RICO standing (Section IV.B.1.a)<br>• Failure to plead RICO enterprise (Section IV.B.1.b)<br>• Failure to plead "operation" or "management" (Section IV.B.1.c)<br>• Failure to plead predicate acts (Section IV.B.1.d) |
| II (RICO conspiracy) | • Lack of RICO standing (Section IV.B.1.a)<br>• Failure to plead RICO enterprise (Section IV.B.1.b)<br>• Failure to plead "operation" or "management" (Section IV.B.1.c)<br>• Failure to plead predicate acts (Section IV.B.1.d)<br>• Failure to plead an agreement (Section IV.B.2) |
| III (common law fraud) | • Lack of reliance (Section IV.B.4)<br>• Preemption (Section IV.B.5)<br>• Judicial-proceedings privilege (Section IV.B.6) |

---

[13] Plaintiff's failure to allege any materially false statement also means that the McDermott Chapter 11 Plan and Confirmation Order apply with full force to bar his claims. The Plan and Order exculpate Kirkland from "any Claims and Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases . . . ." (*See* Bk. No. 30336, Dkt. 684, Plan Art. VIII.E; Confirmation Order ¶¶ 52-53.) While the exculpation provision includes a carve-out for "actual fraud, willful misconduct, or gross negligence" (see id., Plan Art. VIII.E, Confirmation Order ¶ 41), Plaintiff has failed to sufficiently allege such misconduct for the reasons described herein. Plaintiff's claims are thus barred by the Plan and Confirmation Order, just as they fail on the law. *See Holmes v. Air Line Pilots Ass'n, Int'l*, 745 F. Supp. 2d 176, 198 (E.D.N.Y. 2010) (observing that "[e]xculpation clauses are properly considered in a Rule 12(b)(6) motion to dismiss" and dismissing claims based on such a clause).

| | |
|---|---|
| | • Attorney immunity (Section IV.B.6) |
| IV (breach of fiduciary duty) | • Lack of reliance (Section IV.B.4)<br>• Preemption (Section IV.B.5)<br>• Judicial-proceedings privilege (Section IV.B.6)<br>• Attorney immunity (Section IV.B.6)<br>• Lack of fiduciary duty (Section IV.B.8) |
| V (aiding and abetting breach of fiduciary duty) | • Lack of reliance (Section IV.B.4)<br>• Preemption (Section IV.B.5)<br>• Judicial-proceedings privilege (Section IV.B.6)<br>• Attorney immunity (Section IV.B.6)<br>• Lack of fiduciary duty (Section IV.B.8)<br>• No independent cause of action (Section IV.B.9) |
| VI (negligent misrepresentation) | • Lack of reliance (Section IV.B.4)<br>• Preemption (Section IV.B.5)<br>• Judicial-proceedings privilege (Section IV.B.6)<br>• Attorney immunity (Section IV.B.6)<br>• Time-barred (Section IV.B.7) |
| VII (professional negligence) | • Lack of reliance (Section IV.B.4)<br>• Preemption (Section IV.B.5)<br>• Judicial-proceedings privilege (Section IV.B.6)<br>• Attorney immunity (Section IV.B.6)<br>• Time-barred (Section IV.B.7)<br>• Lack of duty (Section IV.B.8) |
| VIII (common law conspiracy) | • Failure to plead an agreement (Section IV.B.2)<br>• Lack of reliance (Section IV.B.4)<br>• Preemption (Section IV.B.5)<br>• Judicial-proceedings privilege (Section IV.B.6)<br>• Attorney immunity (Section IV.B.6) |
| IX (unjust enrichment) | • Lack of reliance (Section IV.B.4)<br>• Preemption (Section IV.B.5)<br>• Judicial-proceedings privilege (Section IV.B.6)<br>• Attorney immunity (Section IV.B.6)<br>• Time-barred (Section IV.B.7) |
| XI (*Bivens* conspiracy) | • Failure to plead an agreement (Section IV.B.2)<br>• No cognizable *Bivens* claim (Section IV.B.3)<br>• Lack of reliance (Section IV.B.4)<br>• Preemption (Section IV.B.5)<br>• Judicial-proceedings privilege (Section IV.B.6)<br>• Attorney immunity (Section IV.B.6)<br>• Time-barred (Section IV.B.7) |
| | |

- 25 -

6617142

| XII (respondeat superior) | • Lack of reliance (Section IV.B.4)<br>• Preemption (Section IV.B.5)<br>• Judicial-proceedings privilege (Section IV.B.6)<br>• Attorney immunity (Section IV.B.6)<br>• No independent cause of action (Section IV.B.9) |
| --- | --- |

### 1.     Plaintiff has failed to allege RICO claims (Counts I, II).

"[P]laintiffs wielding RICO almost always miss the mark." *Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, 17 F. Supp. 3d 207, 220 (E.D.N.Y. 2014).  Plaintiff's FAC is no different.   Plaintiff's RICO claim fails because Plaintiff cannot plead facts substantiating: (1) standing; (2) a RICO enterprise; (3) Kirkland's operation or management of the enterprise; or (4) any predicate criminal acts.

#### (a)     *Plaintiff lacks standing to bring RICO claims.*

"[A] plaintiff must satisfy two elements to establish RICO standing: injury and causation." *Jackson v. Nat'l Ass'n for Advancement of Colored People*, 546 F. App'x 438, 442 (5th Cir. 2013). Plaintiff falls short on both counts.

*First*, "[t]o establish RICO standing, a plaintiff must prove a concrete financial loss"—i.e., "an actual loss of their own money, and not mere injury to a valuable intangible property interest." *HCB Fin. Corp. v. McPherson*, 8 F.4th 335, 344 (5th Cir. 2021) (cleaned up).  The only purportedly "financial" injury Plaintiff attempts to allege is that his "financial recovery as a bankruptcy creditor was reduced because the bankruptcy estate available to pay creditors . . . was diminished by the fees improperly awarded to Jackson Walker, Freeman, and Kirkland & Ellis."  (FAC ¶ 96.)  For one thing, Plaintiff's only purported interest in the estate is as a *shareholder*—not a creditor.  (*See supra* section IV.A.2.)  Because his injury "merely derive[s] from and thus [is] not distinct from the injury to the corporation," he has no standing to bring a RICO claim.  *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*, 868 F.2d 740, 744 (5th Cir. 1989); *see also Joffroin v. Tufaro*, 606 F.3d 235, 238 (5th Cir. 2010) (no shareholder standing where plaintiff's "claims are for monies diverted from the [corporation's] treasury").  The same would be true even if Plaintiff were a creditor: he lacks standing because his alleged injury is not a "loss" of Plaintiff's "own money," *McPherson*, 8. F.4th at 344, but rather of the bankruptcy estate's.  Indeed, the Fifth Circuit has

KIRKLAND'S MOTION TO DISMISS

6617142

explicitly held that "only the trustee in bankruptcy has standing to bring a RICO claim for monies owed to the bankruptcy estate." *Ocean Energy II*, 868 F.2d at 746. Thus, Plaintiff, as a self-described "creditor[] against a bankrupt corporation," does not have standing to seek damages for funds that "allegedly belong in the bankruptcy estate." *Whalen v. Carter*, 954 F.2d 1087, 1092-93 (5th Cir. 1992) (cleaned up).

Moreover, courts have made clear that "[i]njury to mere expectancy interests or to an intangible property interest is not sufficient to confer RICO standing." *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 607 (5th Cir. 1998) (cleaned up). As one of many shareholders, Plaintiff's theory that his financial recovery as a bankruptcy creditor would have been greater if debtors' counsel was not paid fees is purely speculative and not "concrete"—particularly since the FAC contains no allegations showing how Plaintiff could have received a recovery when creditors were not paid in full. (*See supra* section IV.A.3.) And even if Kirkland did not serve as debtors' counsel, McDermott would simply have paid attorney's fees to different law firms. *See id.*; *Fisher v. Halliburton*, 2009 WL 5170280, at *5 (S.D. Tex. Dec. 17, 2009) ("The disparity between plaintiffs' actual compensation and the theoretical compensation that they would have received had they fully been informed about the risks in Iraq, is similarly too speculative to confer RICO standing."); *Sheshtawy v. Gray*, 697 F. App'x 380, 382 (5th Cir. 2017) ("[T]he alleged injury to their share of the estate or trust is merely an expectancy interest that is too speculative and indirect to satisfy RICO standing.").

*Second*, even if Plaintiff's hypothetical financial losses could be considered "concrete," he has not plausibly alleged they were "proximately caused" by Kirkland's conduct. *Varela v. Gonzales*, 773 F.3d 704, 706 (5th Cir. 2014); *Ocean Energy II*, 868 F.2d at 748 ("But for causation is not enough to satisfy section 1964(c)'s 'by reason of' requirement."). Plaintiff's theory that Defendants' nondisclosure of the Jones-Freeman relationship caused an increase in attorney's fees awarded, which caused a reduction in the bankruptcy estate, which caused a reduction in payment to creditors and shareholders, is "beyond the pale of rational causation." *Nat'l Enterprises, Inc. v. Mellon Fin. Servs. Corp.* No. 7, 847 F.2d 251, 254 (5th Cir. 1988); *see also Varela v. Gonzales*, 2014 WL 1284985, at *5 (N.D. Tex. Mar. 31, 2014), *aff'd*, 773 F.3d 704 (5th Cir. 2014) (no

proximate causation because the SAC "relies on a two-step chain of causation").  Indeed, as explained above, Plaintiff cannot show proximate cause for multiple independent reasons.  (*See supra* section III.A.3.)

### (b)   *Plaintiff cannot show a RICO "enterprise."*

"A plaintiff asserting a RICO claim must allege the existence of an enterprise."  *Crowe v. Henry*, 43 F.3d 198, 204 (5th Cir. 1995).  Plaintiff here has not, for several reasons.  As explained in Kirkland's Rule 11 motion, Plaintiff did not even attempt to allege that the so-called "Jones-Freeman-Jackson Walker-Kirkland & Ellis Enterprise" (FAC ¶ 90) ("Enterprise") "exist[ed] separate and apart from the pattern of racketeering activity in which it engages."  *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003); *see* (Rule 11 Mot. at 13).  Plaintiff also failed to allege any facts about the "decision making structure" of the Enterprise, and thus to show that it "function[s] as a continuing unit."  *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 673 (5th Cir. 2015); *Stevenson*, 2024 WL 645187 at *13 ("Plaintiffs' conclusory allegations are far from 'concrete factual assertions as to the mechanics of the interactions among defendants, including facts indicating that the disparate defendants functioned as a unit.'") (citation omitted); (*see also* Rule 11 Mot. at 13).

### (c)   *Kirkland did not "operate" or "manage" the Enterprise.*

Plaintiff must allege that Kirkland "participated in the operation or management of the enterprise itself."  *In re MasterCard Int'l Inc.*, 313 F.3d 257, 261 (5th Cir. 2002).  As explained in Kirkland's Rule 11 motion, Plaintiff has pled no specific facts showing that Kirkland "actually operated the scheme."  *Benhamou*, 190 F. Supp. 3d at 655; (*see* Rule 11 Mot. at 15).  That Kirkland had "a business relationship with" Jackson Walker does not suffice, nor does Plaintiff's allegation that Kirkland "benefitted" from the alleged scheme.  (Rule 11 Mot. at 15); *see also Benhamou*, 190 F. Supp. 3d at 655 ("[S]imply contributing to the enterprise with the knowledge of or willful disregard for the other defendants' supposed criminal activity" "will not subject one to liability.").

### (d)   *Plaintiff fails to adequately plead predicate acts.*

Plaintiff must plead "two or more predicate criminal acts" to sustain a RICO action.  *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 524-25 (5th Cir. 2016).  The FAC attempts to

plead criminal acts based on theories of (i) obstruction of justice and (ii) fraud, including mail fraud, wire fraud, bankruptcy fraud, and honest services fraud.  (*See* FAC ¶ 99.)  Both fail.

(i) <u>Obstruction of Justice</u>: Obstruction of justice requires a showing that "the defendant acted corruptly with the specific intent to influence, obstruct, or impede the judicial proceeding in its due administration of justice."  *United States v. Richardson*, 676 F.3d 491, 506 (5th Cir. 2012) (cleaned up).  In attempt to plead that element, Plaintiff alleges that "Defendants Jackson Walker and Kirkland & Ellis used their knowledge of the relationship between Freeman and Judge Jones to influence Judge Jones to issue favorable rulings in cases where Defendants Jackson Walker and/or Kirkland & Ellis appeared before Judge Jones."  (FAC ¶ 101(b).)  But as explained in Kirkland's Rule 11 motion, Plaintiff alleges absolutely no factual basis for making that allegation. (Rule 11 Mot. at 9-10).   Plaintiff identifies no specific instance of Kirkland supposedly "influenc[ing]" Jones, let alone any facts supporting such a claim.  *See, e.g.*, *Kariem v. United Parcel Serv., Inc.*, 2006 WL 8437577, at *3 (N.D. Tex. Sept. 18, 2006) (dismissing RICO claim where plaintiff failed to "describe the alleged predicate acts with sufficient detail").

(ii) <u>Fraud</u>: Plaintiff's predicate acts of fraud—which must be pleaded with particularity, *see Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)—cannot sustain his RICO claims for three independent, cross-cutting reasons:

*First*, as already explained, Plaintiff has not alleged any actionable false representation, which is necessary for mail fraud, wire fraud, honest services fraud, and bankruptcy fraud.  *See In re MasterCard Int'l Inc.*, 313 F.3d 257, 263 (5th Cir. 2002) (mail or wire fraud elements); FAC ¶¶ 118, 121 (bankruptcy fraud requirements); *Robinson v. Standard Mortg. Corp.*, 191 F. Supp. 3d 630, 643 (E.D. La. 2016) (honest services fraud elements).

*Second*, filing "allegedly false litigation materials" cannot qualify as predicate acts of fraud.  *Warnock v. State Farm Mut. Auto. Ins. Co.*, 833 F. Supp. 2d 604, 609 (S.D. Miss. 2011); *see also Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.*, 257 F. Supp. 2d 819, 832 (M.D. La. 2002) ("Several courts have rejected the theory that legal filings may constitute mail fraud.").  Nor, as Plaintiff's counsel was recently told by another Southern District of Texas court, can Plaintiff bootstrap these allegedly false litigation arguments to argue that Kirkland's receipt of

KIRKLAND'S MOTION TO DISMISS

allegedly improper "attorney's fees or expenses" constituted "a criminal act for purposes of RICO." *Jones v. Herrman & Herrman, PLLC*, 2023 WL 6064790, at *5 (S.D. Tex. Mar. 28, 2023). Here, each of the predicate acts of fraud are based on allegedly misleading court filings during various bankruptcy proceedings. (*See* FAC ¶ 114 (as honest services fraud, alleging that Defendants made "repeated representations of disinterestedness"); *see also id.* ¶¶ 118-120 ("Defendants committed acts of bankruptcy fraud by knowingly and fraudulently declaring that they were not interested parties in cases before Judge Jones."); *id.* ¶¶ 106, 110 (as to mail and wire fraud, listing court filings that "did not disclose the intimate relationship").) Even if Kirkland's failure to disclose Jackson Walker's conflict of interest technically violated Bankruptcy Rule 2014 (and it did not), it does not constitute fraud. *See Kashelkar v. Rubin & Rothman*, 97 F. Supp. 2d 383, 392 (S.D.N.Y. 2000), *aff'd.* 1 F. App'x 7 (2d Cir. 2001) ("Garden-variety pleading errors and the filing of routine motions do not constitute RICO predicate acts."); *Tenamee v. Schmukler*, 438 F. Supp. 2d 438, 448 (S.D.N.Y. 2006) (rejecting RICO claim against an attorney because "[t]here is no indication in the complaint that [the attorney's] alleged conflict of interest constitutes criminal conduct"); *Jones*, 2023 WL 6064790, at *5 (explaining that allegations related to allegedly improperly obtained attorney's fees "at worst [show] violations of the rules of professional responsibility" but do not "rise to the level of a criminal act for RICO purposes").

*Third*, Plaintiff has not alleged the fraudulent intent required for any of the varieties of fraud he alleges. For mail and wire fraud, Plaintiff must allege "the specific intent to deceive for the purpose of causing financial loss to another or bringing about some financial gain to himself." *United States v. Greenlaw*, 84 F.4th 325, 352 (5th Cir. 2023); (*see also* FAC ¶ 112 (alleging, as to honest services mail and wire fraud, that Defendants "intended to deprive Plaintiff and the public of the intangible right of honest services").) Bankruptcy fraud likewise requires "specific intent to defraud." *United States v. Kirkham*, 129 F. App'x 61, 71 (5th Cir. 2005). But Plaintiff has not even plausibly alleged that Kirkland was aware of the truth about the Jones-Freeman relationship (*see supra* section IV.A.1)—much less that Kirkland concealed it in order to "secur[e] large awards of attorneys' fees" or for any other purpose. (FAC ¶ 92(l).) The FAC's conclusory allegations of intent do not suffice. *See* (FAC ¶¶ 112, 136); *Ranieri v. Advocare Int'l, L.P.*, 336 F. Supp. 3d 701,

716 (N.D. Tex. 2018) ("RICO mail fraud averment must . . . provide some factual basis for conclusory allegations of intent, which must, in turn, give rise to a strong inference of fraudulent intent." (cleaned up)).

In addition to these global deficiencies in the alleged predicate acts, Plaintiff's allegations of mail fraud, honest services fraud, and bankruptcy fraud also fail for additional claim-specific reasons:

As to <u>mail fraud</u>, Plaintiff has not sufficiently alleged "the use of the mails" to execute the scheme. *Marriott Bros. v. Gage*, 704 F. Supp. 731, 737-740 (N.D. Tex. 1988), *aff'd*, 911 F.2d 1105 (5th Cir. 1990) (dismissing RICO claim where "the mails were not used for the purpose of executing the scheme"). Plaintiff alleges that various unspecified "matters" were sent via mail, without plausibly alleging that any such matters even existed. (FAC ¶ 105 (speculating that Kirkland used the mails "to communicate with clients and potential clients regarding the favorable outcomes Defendants . . . have and would be able to obtain").) Plaintiff likewise lists the exact same legal filings that form the basis for its wire fraud theory, without alleging that such filings were sent by mail. (*Compare* FAC ¶ 110 (wire fraud predicate statements), *with* FAC ¶ 105 (same mail fraud predicate statements).)

As to <u>honest services</u> fraud, the FAC's allegations are insufficient because honest services fraud "is limited to bribery and kickback schemes, not other conduct, such as conflict-of-interest schemes." *United States v. Teel*, 691 F.3d 578, 582 (5th Cir. 2012). Honest-services fraud based on bribery or kickbacks require "that payments were made with the intent of securing a specific type of official action in return." *United States v. Vasquez*, 2023 WL 7381427, at *2 (5th Cir. Nov. 7, 2023). Plaintiff has not alleged any such "quid pro quo." *Id.* The FAC pleads generally that Defendants "benefitt[ed] from the secret intimate relationship between Freeman and Jones" (FAC ¶ 113)—but not that Kirkland made any "offer" or "solicitation" of anything of value to Jones, much less that Kirkland had the specific intent of securing any particular "official action" by Jones. *Vasquez*, 2023 WL 7381427 at *2. In short, the FAC contains no allegations of bribery or kickbacks, just "nondisclosure of a financial interest," which does not suffice. *United States v. Wright*, 665 F.3d 560, 571 (3d Cir. 2012).

- 31 -

Plaintiff's <u>bankruptcy fraud</u> theory under 18 U.S.C. § 152(6) is flawed for similar reasons. Section 152(6) makes it a crime to "fraudulently giv[e] or receiv[e] property for acting or forbearing to act in any Chapter 11 case (i.e. giving or receiving a bribe)." *United States v. Kaster*, 139 F.3d 902, 902 (7th Cir. 1998). The FAC specifically alleges that Jones was the giver of such property and the other Defendants were the recipients—i.e., that Jones gave Jackson Walker, Kirkland, and Freeman a bribe in the form of attorney's fees. (*See* FAC ¶ 123.) This theory inexplicably reverses the roles in Plaintiff's honest services fraud theory, under which Jones allegedly would have been the bribe recipient. "Contradictory factual allegations of this sort are indicative of a failure to plead a plausible claim." *See Stevenson*, 2024 WL 645187, at *13. In any event, the FAC is silent as to why Jones supposedly gave this bribe, or what activity or non-activity Kirkland supposedly undertook in exchange. *See, e.g.*, *Matter of Banks*, 2020 WL 5807520, at *9 (Bankr. N.D. Ga. Sept. 29, 2020) (complaint failed to allege that an "incentive fee" Wells Fargo received was "in exchange for some action or non-action taken by Wells Fargo in Debtor's bankruptcy case"). Lacking such details, Plaintiff's theory fails.

### 2. Plaintiff's conspiracy claims fail for lack of agreement (Counts II, VIII, XI).

All of Plaintiff's conspiracy claims (Counts II, VIII, XI) require Plaintiff to plausibly allege an agreement to commit an illegal act. *See Galindo v. City of Del Rio*, 2021 WL 2763033, at *6 (W.D. Tex. Mar. 26, 2021) (Moses, J.) ("Because the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement."); *Erwin v. Russ*, 2010 WL 11506838, at *2 (W.D. Tex. July 19, 2010), *aff'd*, 481 F. App'x 128 (5th Cir. 2012) (under Texas law, "any claim of civil conspiracy requires a showing of a meeting of the minds on an end to be accomplished, in other words an agreement"); *Jackson v. Wray*, 2023 WL 7029378, at *4 (N.D. Tex. Sept. 27, 2023) ("[E]ven assuming *arguendo* that conspiracy is a cognizable claim under *Bivens* . . . plaintiff must show that the defendants agreed to commit an illegal act."). "To survive a motion to dismiss, the plaintiff must allege specific facts to show an agreement"; "[c]onclusory allegations . . . will not

KIRKLAND'S MOTION TO DISMISS

6617142

suffice." *Rynearson v. United States*, 2013 WL 11309342, at *12 (W.D. Tex. Sept. 30, 2013), *aff'd*, 601 F. App'x 302 (5th Cir. 2015) (Moses, J.) (cleaned up) (dismissing conspiracy claim).

The FAC contains no such facts.  As explained in Kirkland's Rule 11 motion (Rule 11 Mot. at 15-16), the only allegations of any "agreement" are wholly conclusory.  (*See* FAC ¶¶ 126-127; 199; 218-219.)  Plaintiff does not allege that Defendants communicated or otherwise agreed to conceal the relationship.  *See Erwin*, 2010 WL 11506838 at *2 (no agreement alleged where the complaint "contains no allegations of communication between Encana and Leor or other defendants regarding a conspiracy"); *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1068-69 (11th Cir. 2017) ("It [isn't] enough that the defendants all ended up doing the same fraudulent thing.").  To the contrary, the sole communication alleged between Kirkland and any other Defendant about the Jones-Freeman (i.e., Jackson Walker's March 2021 notification to Kirkland of an alleged relationship between Jones and Freeman based on an anonymous letter) only undermines, rather than supports, Plaintiff's theory of a longstanding conspiracy.  (*See* Rule 11 Mot. at 16.)

### 3. Plaintiff's alleged *Bivens* conspiracy exceeds the bounds of *Bivens* (Count XI).

Plaintiff's claim for conspiracy to interfere with constitutional rights under *Bivens* (Count VI) also fails because his claim requires an improper extension of *Bivens*.  As the Supreme Court has reiterated, "extending *Bivens* to new contexts is a 'disfavored judicial activity.'"  *Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020) (quoting *Ziglar v. Abbasi*, 582 U.S. 120 (2017)).  "[I]n recent decades, the Supreme Court has consistently refused to extend Bivens to *any* new context."  *Butler v. S. Porter*, 999 F.3d 287, 293 (5th Cir. 2021).  When considering a proposed *Bivens* claim, courts apply a two-part test: (1) "whether the case presents a new *Bivens* context—i.e., is it meaningfully different from the three cases in which the [Supreme] Court has implied a damages action," and (2) if so, "a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed."  *Egbert v. Boule*, 596 U.S. 482, 492 (2022) (cleaned up).

(1) "New" *Bivens* Context: Plaintiff's claim presents a new *Bivens* context for several reasons.  As an initial matter, Plaintiff brings his claim against then-Judge Jones based on conduct he undertook as federal judge.[14]  (*See* FAC ¶ 211 ("Judge Jones was a federal officer acting under color of federal authority at the time that he violated Plaintiff's Constitutional rights.").)  But "[n]one of the *Bivens* trilogy involved claims against a federal judge." *Laster v. Boyle*, 2022 WL 4086782, at *2 (N.D. Tex. Aug. 4, 2022); *Rote v. Comm. on Jud. Conduct & Disability of Jud. Conf. of United States*, 577 F. Supp. 3d 1106, 1137 (D. Or. 2021), *aff'd*, 2023 WL 6875413 (9th Cir. Oct. 18, 2023) ("Plaintiff's claims present a new context because they . . . involve a new category of defendants, namely, federal judges.").  Moreover, "[t]he Supreme Court has never recognized a *Bivens* action under the Due Process Clause outside of the context of gender discrimination." *Jackson v. Varono*, 2018 WL 5046227, at *5 (W.D. La. Oct. 17, 2018).  Plaintiff alleges a violation of his Due Process rights based not on gender discrimination, but rather on Jones's allegedly biased rulings in the McDermott bankruptcy proceedings (*see* FAC ¶¶ 209-210). *See Biron v. Upton*, 2020 WL 85146, at *6 (N.D. Tex. Jan. 7, 2020) ("The Supreme Court has declined to extend a *Bivens* remedy to due process claims in a number of contexts.").  Finally, a "claim for conspiracy presents a 'new *Bivens* context' not encompassed by the Supreme Court's three *Bivens* cases." *Alegre v. United States*, 2019 WL 3322382, at *5 (S.D. Cal. July 24, 2019) (cleaned up); *Brunson v. Nichols*, 2018 WL 7286410, at *3 (W.D. La. Dec. 7, 2018) (summarizing that courts have never recognized a *Bivens* claim "under any theory of "conspiracy").

(2) "Special Factors":  Several "special factors" counsel against expansion of *Bivens* to Plaintiff's claim.  "If there is even a single reason to pause before applying *Bivens* in a new context, a court may not recognize a Bivens remedy." *Egbert*, 596 U.S. at 492.  As an initial matter, the "uncertainty" created by recognizing a cause of action under *Bivens* is itself "a special factor that forecloses relief." *Id.* at 493; *see also Hernández v. Mesa*, 885 F.3d 811, 818 (5th Cir. 2018) (en banc) ("The newness of this 'new context' should alone require dismissal").  That uncertainty is

---

[14] "A *Bivens* action may only be brought against a federal officer or agent in his individual or personal capacity." *Hobbs v. Stanley*, 2023 WL 7027994, at *4 (W.D. Tex. Oct. 23, 2023).

particularly acute for Plaintiff's *Bivens* conspiracy claim, which seeks to expand *Bivens* beyond federal officers to private citizens like Kirkland.  Finally, the U.S. Trustee's power and duty to seek relief to protect the integrity of the bankruptcy system—a power that it is exercising by seeking to vacate the fees awarded to Jackson Walker (*see* Bk. No. 20-30336, Dkt. 1138)—serves as an "alternative remedial structure" militating against expanding *Bivens* to these facts.  *Egbert*, 596 U.S. at 483.

### 4.    Plaintiff's state law claims fail for lack of reliance.

Because all of Plaintiff's state law claims against Kirkland are based on alleged misrepresentations, Plaintiff must plausibly plead that he relied on those misrepresentations.  *See* (FAC ¶¶ 139, 154, 181, 188, 198, 203); *In re Enron Corp.*, 2006 WL 1662596, at *17 (S.D. Tex. June 7, 2006) ("[F]or a cause of action for breach of fiduciary duty for misrepresentation a plaintiff must show . . . plaintiff detrimentally relied on the misrepresentation."); *Miller Glob. Properties, LLC v. Marriott Int'l*, Inc., 418 S.W.3d 342, 351 (Tex. App. 2013) (holding that "[b]ecause reliance is a critical component to the causation element of Miller's professional negligence claim," "the absence of justifiable reliance" is "fatal to this claim"); *Blankinship v. Brown*, 399 S.W.3d 303, 308 (Tex. App. 2013) ("Both common law fraud and negligent misrepresentation require a showing of actual and justifiable reliance").  Plaintiff cannot do so for two reasons.

*First*, Plaintiff has not even alleged that he saw or read any of the allegedly misleading documents Kirkland filed, such as Kirkland's declaration of disinterestedness.  (*See* FAC ¶¶ 135, 137.)  There can, of course, be no reliance on a document that was not even read.  *See Allgood v. R.J. Reynolds Tobacco Co.*, 80 F.3d 168, 171 (5th Cir. 1996) (plaintiff "falls far short of proving" reliance where he failed to "prove that he read the misrepresentations"); *Lafrentz v. Lockheed Martin Corp.*, 2021 WL 4350175, at *3 (S.D. Tex. Sept. 10, 2021) ("The plaintiff cannot assert reliance on a written representation he did not read.").  And Plaintiff's general allegation that "[a]ll parties to the bankruptcy . . . relied on the false representations" (FAC ¶ 136) does not satisfy Rule 9(b)'s particularity standard.  *See, e.g., Rangel v. Adtalem Global Educ., Inc.*, 2019 WL 13150012, at *4 (W.D. Tex. Apr. 23, 2019) ("Plaintiffs must state with specificity what representations they relied upon[.]").

KIRKLAND'S MOTION TO DISMISS

*Second*, Plaintiff's claims fail because he cannot assert "reliance on representations he clearly did not believe were true." *Mathis v. DCR Mortg. III Sub, I, LLC*, 952 F. Supp. 2d 828, 836 (W.D. Tex. 2013).  According to Plaintiff's theory, Kirkland made material misrepresentations by not "disclosing the relationship between Freeman and Jones" and not "correcting the declarations of disinterestedness." (FAC ¶¶ 46, 137-138; *see also id.* ¶ 49.)  However, Plaintiff's allegations establish, at most, that Kirkland became aware of the intimate relationship at the same time Plaintiff did—in March 2021, when Plaintiff filed an anonymous letter alleging the relationship. (*See supra* section IV.A.1.)  Since discovering the anonymous letter, Plaintiff has continually asserted that Jones was, in fact, in a relationship with Freeman. (*See, e.g.*, Dkt. 1 (alleging that "Jones and Freeman . . . had a romantic relationship" despite the fact "Defendant Jones . . . denied that he had a romantic relationship").)  Plaintiff, in other words, plainly gave "no weight" to the statements he now alleges were misleading. *Mathis v. DCR Mortg. III Sub, I, LLC*, 952 F. Supp. 2d 828, 835 (W.D. Tex. 2013); *Bomar Oil & Gas, Inc. v. Loyd*, 2009 WL 2136404, at \*4 (Tex. App. July 15, 2009) (no reliance because plaintiff "was apparently suspicious of these representations and sought to evaluate the accuracy of BoMar's representations for himself").  That Plaintiff continued investigating his claims and brought this suit years later only confirms the point. *See Mathis*, 952 F. Supp. 2d at 836 (no reliance where plaintiff "hired an attorney and filed a lawsuit to prevent the foreclosure precisely because he" did not believe Defendants' representations); *Omrazeti v. Aurora Bank FSB*, 2013 WL 3242520, at \*10 (W.D. Tex. June 25, 2013) (Plaintiff's "own allegations reveal that he hired a lawyer precisely because he did not believe or rely on Defendants' representations.").

### 5.       Plaintiff's state law claims are preempted.

Plaintiff's state law claims must be dismissed because they fall within the "[t]he expansive reach of the [Bankruptcy] Code," which "preempts virtually all claims related to alleged misconduct in the bankruptcy courts." *Inorio v. Wells Fargo Bank, N.A.*, 522 F. Supp. 3d 417, 423 (N.D. Ill. 2021).  Courts have long held that "[t]here can be no doubt that federal bankruptcy law is pervasive and involves a federal interest so dominant as to preclude enforcement of state laws on the same subject." *Sherwood Partners, Inc. v. Lycos, Inc.*, 394 F.3d 1198, 1201 (9th Cir. 2005)

(cleaned up); *see also, e.g.*, *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 425 (6th Cir. 2000) ("The pervasive nature of Congress' bankruptcy regulation can be seen just by glancing at the Code."). And courts have found claims preempted where, as here, "the factual predicate for the state law claim hinged upon the alleged wrongful conduct of a party in a bankruptcy case." *In re Chaussee*, 399 B.R. 225, 233-40 (B.A.P. 9th Cir. 2008).

Because Plaintiff's state law causes of action center on Kirkland's purported misrepresentations made pursuant to and in violation of Rule 2014, they fit neatly within this preemption jurisprudence. (*See, e.g.*, FAC ¶¶ 36-37, 49-50, 52, 119, 135-140, 149, 166-67, 170.) *See also In re Sims*, 278 B.R. 457, 479-80 (Bankr. E.D. Tenn. 2002) (state law claims for "material misrepresentation" preempted, "[r]egardless of whether these allegations state a claim for relief . . . under [state] law"). The Bankruptcy Code and the Federal Rules of Bankruptcy Procedure together outline out a comprehensive set of remedies and procedures for dealing with the sort of wrongdoing Plaintiff describes, including (1) specific penalties for when a firm is "not a disinterested person," 11 U.S.C. § 328(c), (2) a detailed sanctions scheme for false representations made during bankruptcy proceedings, *see* Fed. R. Bankr. P. 9011, and (3) broad provisions granting the bankruptcy court the power to "issue any order . . . that is necessary or appropriate to carry out the provisions of this title," 11 U.S.C. § 105(a). Against this backdrop, courts have explained that Rule 2014 and the remedial framework surrounding it combine to preempt claims that, like Plaintiff's, would "circumvent the operation of provisions of the Code and Rules concerning the employment of professionals and the payment of fees in connection with bankruptcy cases." *In re Shirley*, 134 B.R. 940, 944 (B.A.P. 9th Cir. 1992); *see also In re Brentwood Lexford Partners, LLC*, 292 B.R. 255, 275 (Bankr. N.D. Tex. 2003) (declining to consider claim predicated on violation of Bankruptcy Code because "[t]he court cannot undermine or circumvent a specific Code remedy").

The case of *In re Ganas*, 513 B.R. 394 (Bankr. E.D. Cal. 2014) is instructive. There, plaintiffs brought a separate proceeding to recover for "negligence, fraud, misrepresentation, breach of contract, and conversion" based on defendant's alleged false statements on a proof of claim filed with the bankruptcy court. *Id.* at 399, 412. Because the misconduct alleged was "the

filing, preparation, and prosecution of [the proof of claim]," "[t]he remedial schemes" created by the various bankruptcy provisions were the "appropriate procedures for those [seeking] remedies." *Id.*  The same reasoning applies with full force here.  Because Plaintiff's grievance with Kirkland centers on the Firm's compliance with Rule 2014, "[t]he various state law claims by which Plaintiffs now seek remedy are preempted by the bankruptcy claims process and relief which Plaintiff may obtain thereto." *Id.*

> **6.     Plaintiff's state law claims are barred by Texas's "attorney immunity" and "judicial-proceedings privilege."**

Plaintiff's state law claims against Kirkland fail for yet another reason:  Plaintiff cannot premise liability on allegedly "misleading and dishonest federal court papers."  (FAC ¶ 5; *id.* ¶ 38 (alleging that Kirkland wrongfully "submitted [court] filings without disclosing the Freeman-Jones relationship").)  Texas's "judicial-proceedings privilege" and "attorney immunity" forbid such claims. *Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 46 (Tex. 2021).

<u>Judicial-proceedings privilege:</u> "As a matter of law, communications made during a court's proceedings are absolutely privileged." *McLean v. Int'l Harvester Co.*, 817 F.2d 1214, 1220 (5th Cir. 1987).  Specifically, the privilege covers "any statement made by the judge, jurors, counsel, parties or witnesses, and attaches to all aspects of the proceedings, including statements made in open court, pre-trial hearings, depositions, affidavits and any of the pleadings or other papers in the case." *Landry's*, 631 S.W.3d at 46.  "The privilege prohibits any tort litigation based on the content of the communication at issue." *Id.* (cleaned up); *see also*, *e.g.*, *Wilkinson v. USAA Fed. Sav. Bank Tr. Servs.*, 2014 WL 3002400, at *7 (Tex. App.—Houston [14th Dist.] July 1, 2014, pet. denied) (defamation, fraud, and breach-of-fiduciary-duty claims were barred by the judicial-proceedings privilege); *Settle v. George*, 2012 WL 2923302, at *4 (Tex. App.—Fort Worth July 19, 2012, no pet.) (applying privilege to fraud claim based on an affidavit filed in litigation).  Each of Kirkland's allegedly misleading statements were documents filed "in the due course of a judicial proceeding" (the McDermott bankruptcy), so they are absolutely privileged from tort litigation. *See Collins v. Zolnier*, 2019 WL 2292333, at *2 (Tex. App.—Beaumont May 30, 2019, pet. denied) (applying privilege to statements made in the course of a bankruptcy).

KIRKLAND'S MOTION TO DISMISS

Attorney immunity: "[A]s a general rule, attorneys are immune from civil liability to non-clients for actions taken in connection with representing a client in litigation." *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). Attorney immunity applies "when the claim is based on conduct that (1) constitutes the provision of 'legal' services involving the unique office, professional skill, training, and authority of an attorney and (2) the attorney engages in to fulfill the attorney's duties in representing the client within an adversarial context in which the client and the non-client do not share the same interests and therefore the non-client's reliance on the attorney's conduct is not justifiable." *Haynes & Boone, LLP v. NFTD, LLC*, 631 S.W.3d 65, 78 (Tex. 2021).

Both requirements are met here. First, Plaintiff's claims are based on allegedly false court filings, which are classic "legal services." *See, e.g.*, *McDill v. McDill*, 2020 WL 4726634, at *9 (Tex. App.—Austin July 30, 2020, pet. denied) (finding that "filings" are "legal services"). Second, Kirkland made the allegedly false filings as "part of the discharge of his duties in representing a party"—specifically, the McDermott Debtors. *Falkenhorst v. Sepolio*, 2023 WL 2466398, at *2 (S.D. Tex. Feb. 21, 2023), *aff'd sub nom. von Falkenhorst v. Hunter*, 2023 WL 6878911 (5th Cir. Oct. 18, 2023). Each of the filings was made in the course of the McDermott bankruptcy, in Kirkland's capacity as counsel for the Debtors. *See, e.g.*, *Merkle v. Gragg*, 2020 WL 5209538, at *4 (W.D. Tex. Aug. 31, 2020) (applying attorney immunity where attorney's "actions were taken in the scope of representing his client Janie in the bankruptcy litigation"); *Sheller v. Corral Tran Singh, LLP*, 551 S.W.3d 357, 364 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (applying immunity where "Defendants' conduct was directly within the scope of their representation of their client New Millennium as the debtor-in-possession in the context of the chapter 11 bankruptcy proceeding"). Indeed, the FAC specifically alleges that Kirkland failed to disclose the Freeman-Jones relationship in purported violation of its obligation to establish "disinterestedness" and disclose potential conflicts. (*E.g.*, FAC ¶¶ 135-36, 149, 161, 166-71, 188, 195, 220.) In other words, filing statements of disinterestedness is not merely related to Kirkland's work for its clients—it is *required* by the Bankruptcy Rules. *See* Fed. R. Bankr. P. 2014(a); FAC ¶ 136 ("[T]he disclosure *was required* to secure appointment under the Bankruptcy Code."

(emphasis added)).  Such claims based on the filing of mandatory court documents are plainly barred.  *See, e.g.*, *Yan v. State Bar of Texas*, 2023 WL 9659175, at *7 (N.D. Tex. Dec. 28, 2023) (dismissing plaintiff's RICO and antitrust claims against attorney defendants because all the "alleged wrongful acts were taken as part of their representation" of a client—even "seeking an award of attorneys' fees"); *Coleman v. Combs*, 2023 WL 9051705, at *6 (N.D. Tex. Nov. 27, 2023) ("Although [plaintiff] alleges misrepresentation and conspiracy with other defendants, the conduct she cites relates to representation and appearing in court.").

Plaintiff's conclusory assertions that Kirkland's statements were "false" or "fraudulent"— while baseless (*see supra* section III.A.3)—are ultimately irrelevant to this analysis.  "[E]ven conduct that is wrongful in the context of the underlying suit is not actionable if it is part of the discharge of the lawyer's duties in representing his or her client."  *Cantey Hanger*, 467 S.W.3d at 481.  As the Fifth Circuit has explained, so long as the alleged conduct arises out of "an attorney's conduct in representing his client," the fact that such conduct "was allegedly wrongful" or conducted "in a fraudulent manner . . . is no matter."  *Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341, 343, 348 (5th Cir. 2016).

### 7.    Counts VI, VII, IX, and XI are time barred.

Plaintiff's claims for negligent misrepresentation (count VI), professional negligence (count VII), unjust enrichment (count IX), and *Bivens* conspiracy (count XI) are subject to a two-year statute of limitations.  *Savoia-McHugh v. McCrary*, 2022 WL 1997191, at *7 (S.D. Tex. June 6, 2022) (unjust enrichment and negligent misrepresentation); *Erikson v. Renda*, 590 S.W.3d 557, 563 (Tex. 2019) (professional negligence); *Tampico v. Martinez*, 987 F.3d 387, 392 (5th Cir. 2021) (*Bivens* claim).

Each of these claims accrued more than two years before Plaintiff filed this suit.  The general rule is that a claim accrues "when a wrongful act causes an injury," i.e., "when facts come into existence that permit a plaintiff to recover."  *Agar Corp., Inc. v. Electro Circuits. Int'l, LLC*, 580 S.W.3d 136, 144 (Tex. 2019).  Plaintiff's shares were cancelled when the bankruptcy Plan was confirmed in March 2020.  (FAC ¶ 44.)  And Kirkland's fees, which allegedly reduced Plaintiff's recovery as a shareholder, were awarded on September 8, 2020.  (FAC ¶ 46.)  Even

using this latter, more generous accrual date, Plaintiff's claims based on those alleged injuries expired on September 8, 2022. He did not file his claims against Kirkland until January 11, 2024. Even if Plaintiff's claims against Kirkland relate back to the Original Complaint Plaintiff filed against Jones on October 4, 2023 (and they should not), that version of the complaint was still more than a year too late. (*See* Dkt. 1 at 1.)

Nor can Plaintiff plausibly assert that these claims meet the requirements for tolling, which is limited to situations where "the injury is by its nature inherently undiscoverable." *Agar Corp., Inc.*, 580 S.W.3d at 146. Plaintiff's own pleadings establish that he received an anonymous letter on March 6, 2021 disclosing Jones's "amorous relationship with Freeman." (Dkt. 1 ¶ 8; *see also* FAC ¶ 59.) Even assuming the two-year limitations periods did not begin to run until that date, both iterations of Plaintiff's complaint would *still* be too late, having been filed many months after March 6, 2023. And while Plaintiff would later discover in 2023 additional evidence showing that "Jones and Freeman shared houses and co-owned a home" (Dkt. 1 ¶ 13), the reason Plaintiff did not discover that information was not because it was "inherently undiscoverable." *Agar Corp.*, 580 S.W.3d at 146. Rather, Plaintiff admits he "did not discover" this information earlier because he "only recently . . . obtained *Truthfinder* software"—a publicly available computer program that runs public-record searches. (Dkt. 1 ¶ 13.) In the FAC, Plaintiff confirms these public records were not difficult to obtain. (FAC ¶ 73 (alleging such information could have been uncovered through "a cursory check of real property records"); *id.* (alleging that such information was "easily" obtainable "with minimal investigation").)

In sum, Plaintiff's pleadings contain all the information needed to definitively establish that these claims are barred by the applicable two-year statutes of limitations. Plaintiff admits that: (1) his injury occurred more than two years ago (FAC ¶¶ 44, 46); (2) he learned of the injury more than two years ago (FAC ¶ 59); and (3) the only reason he claims he delayed bringing his complaint was he lacked the publicly-available computer software needed to run a "cursory" search for more information (Dkt. 1 ¶ 13; FAC ¶ 73). Plaintiff's sixth, seventh, ninth, and eleventh causes of action should be therefore dismissed. *See Jones v. Alcoa, Inc.*, 339 F.3d 359, 366, 368 (5th Cir. 2003) ("A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the

- 41 -

plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like.").

### 8. Plaintiff cannot assert fiduciary duty or malpractice claims (Counts IV & VII).

Plaintiff's claims for malpractice and breach of fiduciary duty fail because Plaintiff was not a client of Kirkland. As a mere individual shareholder of Kirkland's client McDermott, Plaintiff was owed no duty by Kirkland. *See In re Am. Int'l Refinery, Inc.*, 436 B.R. 364, 376 (Bankr. W.D. La. 2010), *aff'd*, 676 F.3d 455 (5th Cir. 2012) (Debtor's counsel's "duty to the estate does not, however, extend to individual creditors and equity holders."); *see also In re TOCFHBI, Inc.*, 413 B.R. 523, 538-39 (Bankr. N.D. Tex. 2009) ("[A] law firm owes no independent duty to creditors of its client."). Moreover, "it is well-settled law in Texas that a legal malpractice claim requires proof of an attorney-client relationship between the plaintiff and the defendant attorney." *Varco LP v. Bohnsack*, 2009 WL 10698303, at *5 (S.D. Tex. Oct. 1, 2009). "[A]an attorney owes no professional duty to a third party or non-client." *Id.*; *see also Gamboa v. Shaw*, 956 S.W.2d 662, 665 (Tex. App. 1997) (rejecting argument that "attorneys ow[e] a duty to each shareholder of any corporation they represent" because such a ruling would subject attorneys "to almost unlimited liability"). Lacking any duty, Plaintiff's claims are "not viable and must be dismissed." *TOCFHBI, Inc.*, 413 B.R. at 538-39 (dismissing fiduciary duty claim); *Varco*, 2009 WL 10698303 at *6 ("In order to establish liability for professional negligence or legal malpractice, the plaintiff must show the existence of a duty owed to him by the attorney, a breach of that duty, and damages arising from the breach." (cleaned up)).

### 9. Counts V and XII assert claims that do not exist.

Plaintiff's claims for aiding and abetting a breach of fiduciary duty (count V) and "respondeat superior" (count XII) should also be dismissed because there are no such causes of action. *See Turk v. Pershing LLC*, No. 3:09-CV-2199-N, 2023 WL 36080, at *2 (N.D. Tex. Jan. 3, 2023) ("[T]he Fifth Circuit recently clarified that federal courts may not recognize aiding and

- 42 -

abetting breach of fiduciary duty claims because 'a federal court exceeds the bounds of its legitimacy in fashioning novel causes of action not yet recognized by state courts.'" (citation omitted)); *Haskett v. Capital Land Services, Inc.*, 2015 WL 12556307, at *6 n.2 (S.D. Tex. Dec. 9, 2015) ("Haskett also asserted claims for 'respondeat superior,' but this is not an independent cause of action.").

###### C.  Plaintiff's Claims Should Be Dismissed With Prejudice

"[L]eave to amend is not required when an amendment would be futile." *Cledera v. United States*, 834 F. App'x 969, 972 (5th Cir. 2021).  Here, Plaintiff's claims not only fail many times over, but any amendment would also be futile for multiple reasons.  Among other things, Plaintiff cannot:

1.  Rewrite the challenged statements, which on their face are not misleading, *see Bradford v. Apollo Educ. Grp. Inc.*, 2019 WL 13193884, at *1 (N.D. Tex. July 23, 2019) (dismissing claims with prejudice where "no conceivable creditor could be misled" by allegedly misleading document, such that "the Court does not believe she could change the analysis with an Amended Complaint");

2.  Plead around the shareholder standing rule, *see In re SBMC Healthcare, LLC*, 2017 WL 2062992 at *20 (S.D. Tex. May 11, 2017) (affirming dismissal with prejudice of claims because "shareholders lack standing to prosecute claims derived from wrongs done to a corporation");

3.  Avoid the attorney-immunity or judicial-proceedings privileges, *see Fringe Benefit Grp. Inc. v. FCE Benefit Administrators Inc.*, No. 1:18-CV-369-LY, 2019 WL 2563833, at *2 (W.D. Tex. Mar. 19, 2019) (dismissing claims "with prejudice as barred by the judicial-proceedings privilege"); or

4.  Identify any non-speculative injury proximately caused by Kirkland's alleged misconduct, *see Rodriguez v. Xerox Bus. Servs., LLC,* 2017 WL 3023213, at *4 (W.D. Tex. Mar. 27, 2017) (dismissing claim with prejudice where Plaintiff failed to plead proximate causation); *Leamon v. KBR, Inc.*, 2011 WL 13340587, at *2 (S.D. Tex. Aug.

KIRKLAND'S MOTION TO DISMISS

29, 2011) (dismissing with prejudice cause plaintiff "has not alleged and cannot prove [he] has been injured in [his] business or property").

Because Plaintiff cannot cure all of the deficiencies in his claims, they should be dismissed with prejudice. *See Lemmer v. Nu-Kote Holding, Inc.*, 2001 WL 1112577, at *12 (N.D. Tex. Sept. 6, 2001) (dismissing complaint with prejudice in part because "there are multiple deficiencies with the Complaint" and "the extent of the deficiencies in the Complaint is a strong indication that amendment would be futile"), *aff'd*, 71 F. App'x 356 (5th Cir. 2003).

## V. <u>CONCLUSION</u>

Plaintiff's allegations of "criminal activity" directly attack Kirkland's integrity—the consequences of which "are nothing short disastrous" for law firms. *LCS Grp., LLC v. Shire LLC*, 2019 WL 1234848, at *15 (S.D.N.Y. Mar. 8, 2019). This baseless and inflammatory suit should end now. Kirkland respectfully requests that the Court grant its motion to dismiss with prejudice.

DATED: March 18, 2024                Respectfully submitted:

<u>/s/ John C. Hueston</u>
John Hueston
California Bar No. 164921 (*Pro Hac Vice*)
jhueston@hueston.com
523 West 6th St., Unit 400
Los Angeles, CA 90014
Telephone: (213) 788-4340
Facsimile: (888) 866-4825

*Attorney-in-Charge for Defendants Kirkland &*
*Ellis LLP and Kirkland & Ellis International LLP*

*Of Counsel:*

HUESTON HENNIGAN LLP
Michael Todisco
California Bar No. 315814 (*Pro Hac Vice*)
mtodisco@hueston.com
Karen Ding
California Bar No. 325215 (*Pro Hac Vice*)
kding@hueston.com
523 West 6th St., Unit 400

6617142

Los Angeles, CA 90014
Telephone: (213) 788-4340
Facsimile: (888) 866-4825

*/s/ David J. Beck*_____
BECK REDDEN LLP
David J. Beck
Texas Bar No. 00000070
Federal I.D. No. 16605
dbeck@beckredden.com
Jacqueline M. Furlow
Texas Bar No. 24087551
Federal I.D. No. 2191275
jfurlow@beckredden.com
1221 McKinney, Suite 4500
Houston, Texas 77010-2010
Telephone: (713) 951-3700
Facsimile: (713) 951-3720

GREGORY D. TORRES
ATTORNEY AT LAW, P.L.L.C.
Texas Bar No. 00791802
g_torres_law@hotmail.com
457 Jefferson Street
Eagle Pass, Texas 78852
Telephone: (830) 773-6811
Facsimile: (830) 773-6469

- 45 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on March 18, 2024, a true and correct copy of this document was served on the following counsel of record via the Court's CM/ECF system and by e-mail in compliance with the Federal Rules of Civil Procedure and Southern District of Texas Local Rule 5.3:

Robert William Clore
Mikell Alan West
Bandas Law Firm, PC
802 N. Carancahua Street, Suite 1400
Corpus Christi, Texas 78401
Telephone: (361) 698-5200
rclore@bandaslawfirm.com
mwest@bandaslawfirm.com
*Counsel for Plaintiff Michael D. Van Deelen*

John J. Sparacino
MCKOOL SMITH, PC
600 Travis Street, Suite 7000
Houston, Texas 77002
Telephone: (713) 485-7300
Facsimile (713) 485-7344
jsparacino@mckoolsmith.com

Gary Cruciani
Patrick William Pijls
MCKOOL SMITH, PC
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044
gcruciani@mckoolsmith.com
ppijls@mckoolsmith.com
*Counsel for David R. Jones*

Tom Kirkendall
Law Office of Tom Kirkendall
2 Violetta Court
The Woodlands, Texas 77381
Telephone: (713) 703-3536
bigtkirk@gmail.com
*Counsel for Elizabeth C. Freeman*

Russell Hardin, Jr.
Jennifer Elizabeth Brevorka
Leah Graham
Emily Smith
Rusty Hardin & Associates, LLP
1401 McKinney Street, Ste. 2250
Houston, TX 77010
rhardin@rustyhardin.com
jbrevorka@rustyhardin.com
lgrahm@rustyhardin.com
esmith@rustyhardin.com
*Counsel for Jackson Walker LLP*

By: */s/ Jacqueline M. Furlow*
Jacqueline M. Furlow

KIRKLAND'S MOTION TO DISMISS

6617142