# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL D. VAN DEELEN, | § | |
| | § | |
| PLAINTIFF | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:23-CV-3729 |
| | § | |
| DAVID R. JONES, ELIZABETH CAROL | § | |
| FREEMAN, JACKSON & WALKER, LLP, | § | |
| KIRKLAND & ELLIS, LLP, AND | § | |
| KIRKLAND & ELLIS INTERNATIONAL, LLP | § | |
| | § | |
| DEFENDANTS | § | |

## DEFENDANT ELIZABETH CAROL FREEMAN's
## MOTION TO DISMISS UNDER FED.R.CIV.P. 12(b)(6) and 9(b)

TO THE HONORABLE ALIA MOSES,
CHIEF U.S. DISTRICT JUDGE:

Defendant Elizabeth Carol Freeman ("Freeman") requests that the Court dismiss the

First Amended Complaint (the "FAC") under FED. R. CIV. P. 12(b)(6) and 9(b).

### OVERVIEW

1.     A law firm and a serial litigant both known for pursuing dubious litigation have

teamed up in this case to file a real lemon.[1] Seizing upon non-disclosure in the McDermott

---

[1] Several courts have noted Plaintiff's "long history of engaging in extensive litigation" against those he disagrees with and have sanctioned him for misconduct. *Alamogordo Pub. Sch.*, 2008 WL 11417175 at *1; see also *City of Kansas City*, 2006 WL 2077640 at *16 (imposed sanctions after finding that Plaintiff filed the suit "not for the purpose of protecting his constitutional rights, but rather maliciously to vex and annoy the City"); *City of Eudora*, 1996 WL 707016 at *8 (granted Rule 11 sanctions and strongly admonished Plaintiff "to act more diligently in reviewing the facts and the relevant law in all future filings").Similarly, several courts have recognized that the Bandas Law Firm

International, Inc. chapter 11 case of a personal relationship between Freeman and co-defendant (and former U.S. Bankruptcy Judge) David Jones, Plaintiff's FAC asserts claims without explaining how they caused damages to him. From the public record, it is indisputable that Plaintiff's damages were caused by his failed equity investment in McDermott International, Inc. and a plan of reorganization that cancelled his equity interest in accordance with applicable bankruptcy reorganization law. Defendants merely fulfilled their duties to administer (and in the case of Judge Jones, adjudicate) the chapter 11 case in accordance with the plan's terms and applicable bankruptcy reorganization law, including not allowing Plaintiff to obtain treatment that was superior to the treatment that other similarly situated equity security holders received. Plaintiff's disagreement with that result is why the U.S. civil justice system provides for appeals. But such disagreement does give rise to the wild claims that Plaintiff asserts against the Defendants.

## STATEMENT OF FACTS

2.      The genesis of the Plaintiff's damage claims in the FAC is his ownership of 30,000 shares[2] of McDermott International, Inc, a large publicly owned company with 225

---

and its attorneys have been involved in in "effort[s] to extort money" through strategically vexatious filings. *In re Cathode Ray Tube Antitrust Litig.*, 281 F.R.D. 531, 533 n.4 (N.D. Cal. 2012) (citations omitted); see also *Garber v. Off. of Comm'r of Baseball*, 2017 WL 752183, at *6 (S.D.N.Y. Feb. 27, 2017) ("This Court joins the other courts throughout the country in finding that Bandas has orchestrated the filing of a frivolous objection in an attempt to throw a monkey wrench into the settlement process and to extort a pay-off.").

[2] FAC ¶¶ 6, 58. Throughout the FAC, Plaintiff refers to himself as a creditor rather than an equity security holder in the McDermott case, but that characterization is false and probably changed from Plaintiff's Original Complaint to mislead. Plaintiff's Original Complaint correctly characterizes Plaintiff as a shareholder or equity security owner of McDermott. Nothing has changed since the original Complaint to make Plaintiff a creditor in the McDermott case.

affiliates (collectively "McDermott"). On January 1, 2020, McDermott filed a chapter 11 case[3] in the Bankruptcy Court for the Southern District of Texas. Defendant Judge Jones was assigned to the case and Defendants Kirkland & Ellis, LLP ("Kirkland") and Jackson & Walker ("JW") represented McDermott in the chapter 11 case as co-debtor-in-possession counsel. Defendant Freeman was a partner at JW and was one of the members or the JW team of lawyers who worked on the case. [4]

3.      Freeman and Judge Jones had a close personal relationship when she joined JW in March, 2018. When JW appeared as co-debtor-in-possession counsel in the McDermott chapter 11 case, Judge Jones elected not to disclose the relationship with Freeman in the McDermott case. Neither Kirkland nor JW knew about the Freeman-Jones relationship at the time, and FED. R. BANKR. P. 2014 does not require disclosure of such a relationship in connection with being approved as co-counsel for the debtor-in-possession.[5] Judge Jones approved Kirkland and JW as co-debtor-in-possession counsel for McDermott without opposition.[6]  Subsequently, on September 8, 2020, Judge Jones approved without opposition

[3] The McDermott chapter 11 case number is 20-30336.

[4] Although Freeman was on the team of JW lawyers who worked on the McDermott chapter 11 case, she did not appear in any hearing before Judge Jones during the McDermott case.

[5] FED. R. BANKR. P. 2014 requires that a law firm requesting approval to be a debtor-in-possession's lawyer must disclose the firm's "connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." In other words, except for the U.S. Trustee and its employees, Bankruptcy Rule 2014 requires disclosure of connections to parties in interest that hold or represent an economic interest or stake in the bankruptcy estate. Judge Jones was not a party in interest in the case and held no economic interest or stake in the case.

[6] McDermott case no. 20-30336, Dkt ## 591 & 692.

the final fee applications of Kirkland and JW in the McDermott case (collectively, "the fee orders").[7]

4.      In the parlance of bankruptcy reorganizations, McDermott's chapter 11 case was a "pre-pack" case. That means that McDermott filed its chapter 11 case with a reorganization plan that had already been approved (i.e., "pre-packaged") by McDermott management and the major creditor constituencies of the company. Management of large companies often prefer such pre-packaged reorganization plans because it accelerates the chapter 11 process and reduces the time and administrative expense that the debtor company is required to spend in chapter 11.[8]

5.      The McDermott plan was a "debt for equity" plan that converted a substantial amount of the company's debt to new equity in the reorganized company, which improved McDermott's balance sheet and allowed it to obtain the financing necessary to emerge from its chapter 11 case as a viable going concern. In accordance with applicable bankruptcy law relating to the higher priority of creditors' claims over equity security interests, the McDermott plan cancelled over 193 million of common equity security shares in the company that were owned by tens of thousands of shareholders that existed when McDermott filed its chapter 11 case, including Plaintiff and his 30,000 shares.[9] As protection for key McDermott

---

[7] McDermott case no. 20-30336 Dkt ## 1020 & 1021.

[8] McDermott case no. 20-30336, Dkt #5. The McDermott Disclosure Statement at Dkt #4 explains the process involved in preparing the pre-packaged plan of reorganization.

[9] McDermott case no. 20-30336, Dkt #684, Class 14 treatment under the plan attached to the confirmation order.

management personnel who were important to the success of the reorganized company, the McDermott plan also contained a series of releases, exculpations, and injunctions. These provisions released all claims that McDermott held directly, as well as derivatively, against McDermott's officers and directors, and enjoined any party-in-interest from asserting the released claims ("the plan release and injunction").[10]

6.      Plaintiff was the only equity security holder in the McDermott case to file an objection to confirmation of the McDermott plan and pursue that objection in the hearing on confirmation of the plan in the Bankruptcy Court.[11]  During the confirmation hearing, Plaintiff acted badly,[12] which resulted in Judge Jones issuing an order providing security and restricting Plaintiff's contact with the Court and a Kirkland lawyer.[13] Judge Jones denied Plaintiff's objection and confirmed the McDermott plan on March 12, 2020 ("the confirmation order").[14] No appeal was filed regarding the confirmation order, so it is now final and non-appealable.

7.      Consistent with his litigious legacy, Plaintiff soon violated the plan release and injunction by filing a state court lawsuit on June 23, 2020 against three named and multiple unnamed current or former officers of McDermott ("the state court lawsuit"). Plaintiff sought

---

[10] McDermott case no. 20-30334, Dkt #684, Articles VIII.C, D, E, and F of the attached plan.
[11] McDermott case no. 20-30336, Dkt #510.
[12] McDermott case no. 20-30336, Dkt. #690, Transcript of 3/12/2020 hearing, pp 172-73.
[13] McDermott case no. 20-30336, Dkt #719. Plaintiff filed a petition for a writ of mandamus with the Fifth Circuit Court of Appeals in regard to this Order, but the Fifth Circuit denied the writ by order entered March 12, 2021. Fifth Circuit Appeal No. 20-20286.
[14] McDermott case no. 20-30334, Dkt #684.

to recover in the state court lawsuit damages attributable to the loss of value in Plaintiff's 30,000 cancelled common equity shares under the McDermott plan. Plaintiff's state court lawsuit violated the McDermott plan for two reasons. First, it asserted claims, including derivative claims, that McDermott owned under the McDermott plan.[15] Secondly, the plan release and injunction released the state court lawsuit defendants from any liability for such claims and enjoined Plaintiff or anyone else from asserting those claims.[16] Subsequently, the defendants in the state court lawsuit removed the case to the Bankruptcy Court and sought enforcement of the plan release and injunction.[17] After a flurry of competing motions and hearings in which Judge Jones patiently gave Plaintiff an opportunity to assert direct claims (if, in fact, he owned any) against the defendants rather than the derivative claims that McDermott owned, Judge Jones ultimately enforced the plan release and injunction and dismissed Plaintiff's lawsuit by order dated October 12, 2021 ("the plan release order")[18]

8. Plaintiff appealed the plan release order along with several other orders. After the U.S. District Court affirmed the plan release order on January 9, 2023,[19] Plaintiff appealed the District Court's decision to the Fifth Circuit Court of Appeals, where it remains pending.[20] Plaintiff filed this civil action on October 14, 2023 and filed the FAC on January 11, 2024.

---

[15] McDermott case no. 20-30334, Dkt #684, ¶ 22 on p. 44.
[16] McDermott case no. 20-30334, Dkt #684, Articles VIII.C, D, E, and F of the attached plan.
[17] McDermott Adv Pro. 20-3309, Dkt #1
[18] McDermott Adv Pro. 20-3309, Dkt. #81.
[19] U.S. District Court civil action No. 4:21-cv- 3369, Dkt #33.
[20] Fifth Circuit Appeal No. 23- 20436.

## STANDARD OF REVIEW

1.      A complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) if a plaintiff fails to "state a claim upon which relief can be granted." To satisfy the requirements of Rule 8, and to survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that offers only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Instead, to survive a motion to dismiss, the complaint must contain more than "conclusory allegations or legal conclusions masquerading as factual conclusions[.]" *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1250 (5th Cir. 1997).[21] Moreover, in considering a motion to dismiss, the court is not bound to accept as true a legal conclusion couched as a factual allegation. *Iqbal*, 566 U.S. at 678-79 (holding that Rule 8 "does not unlock the doors for discovery for a plaintiff armed with nothing more than conclusions.") Likewise, "'when the allegations in a complaint, however true, could not raise a claim or entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 558).

---

[21] See also *Iqbal*, 556 U.S. 662, 663 (2009) (holding that "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" are insufficient); *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (holding that, to survive a motion to dismiss, a complaint must contain direct factual allegations "on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.").

2.    Furthermore, fraud and RICO claims trigger a heightened pleading standard under which a plaintiff must state "with particularity the circumstances constituting the fraud." FED. R. CIV. P. 9(b). A motion to dismiss for failure to plead fraud with particularity under Rule 9(b) is treated the same as a Rule 12(b)(6) motion[.]" *Futrell v. JPMorgan Chase Bank, NA*, No. 3:19-cv-054-S-BH, 2019 WL 3948222, at 4 (N.D. Tex. July 19, 2019) (Ramirez, Mag. J.), adopted by 2019 WL 3947713, at *1 (N.D. Tex. Aug. 21, 2019) (Scholer, J.).And the heightened pleading standard requires, at a minimum, "the who, what, when, where, and how to be laid out' with respect to a fraud claim." *Id.* (quoting *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)). A fraud claim must be dismissed for failure to set forth "specific facts" in support of those fundamental elements, and reliance on solely conclusory allegations and "unwarranted deductions of fact[.]" *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994); *Futrell*, 2019 WL 3948222, at *4 (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008)). Similarly, RICO claims that are based on mail or wire fraud also must satisfy FED. R. CIV. P. 9(b) by stating the circumstances constituting fraud with particularity by identifying the time, place, and content of the fraudulent communications, as well as the parties to the communications. The heightened pleading standards under *Twombly* and *Iqbal* are particularly important in RICO cases to protect defendants against baseless charges of racketeering that are serious, harmful, and expensive to defend. *Id.*[22]

---

[22] See also *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008) (affirmed dismissal of RICO claims and warned against permitting a plaintiff "with a largely groundless claim to simply take up the time of a number of other people, with the right to do so representing an in terrorem

3.     All of Plaintiff's claims are either barred as a matter of law or are alleged in a conclusory and speculative fashion, and otherwise fail "'to state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570); *In re Great Lakes Dredge & Dock Co., LLC,* 624 F.3d 201, 210 (5th Cir. 2010); *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). Because Plaintiff's claims are barred as a matter of law, there is "no set of facts" they can plead to overcome these fatal defects. *Search Int'l., Inc. v. Snelling & Snelling, Inc.*, 31 F. App'x 151 (5th Cir. 2001) (per curiam); *Epie v. Neiman Marcus Direct*, 2001 WL 585766, at *1 (N.D. Tex. May 29, 2001).

### ARGUMENT

### A. THE FAC DOES NOT PLEAD CAUSATION OF DAMAGES ADEQUATELY.

4.     All Plaintiff's claims in the FAC are based upon the non-sequitur that the non-disclosure of Judge Jones's relationship with Freemen caused damages to the Plaintiff. In fact, non-disclosure of Judge Jones's relationship with Freeman had nothing to do with the damages that Plaintiff incurred.[23] Rather, Plaintiff's damages were caused by the investment risk that he took in buying 30,000 of common equity shares in McDermott and one of the consequences of that risk – that is, the cancellation of those shares under the McDermott plan,

---

increment of the settlement value, rather than a reasonably founded hope that the [discovery] process will reveal relevant evidence."); *Williams v. WMX Technologies, Inc.*, 112 F.3d 175 (5th Cir. 1997) and *Allstate Ins. Co. v. Donovan*, No. CIV.A. H-12-0432, 2012 WL 2577546 (S.D. Tex. July 3, 2012 – Judge Lake).

[23] Alleged non-disclosure under FED. R. BANK. P. 2014 is not grounds for a private cause of action. *In re Steed*, 614 B.R. 395, 411 n. 13 (Bankr. N.D. Ga. 2020) ("The Federal Rules of Bankruptcy Procedure are designed and maintained to aid in the just and efficient resolution of matters pending before the Court . . . [and] do no allow for a private cause of action for damages from violating a rule of procedure.")

which McDermott management proposed and McDermott creditors overwhelmingly approved. The Bankruptcy Court orders that approved and enforced the McDermott plan were demonstrably correct under applicable bankruptcy reorganization law. Plaintiff's decision not to appeal the confirmation order for the McDermott plan is a tacit admission that such order was approved in accordance with applicable law and that further litigation to reverse his loss resulting from that order was futile. And Plaintiff has appealed the plan release order, so he has and is pursuing his remedy regarding that order. Consequently, on a threshold basis, all the Plaintiff's claims should be dismissed under FED. R. CIV. P. 12(b)(6) and 9(b) because he has failed to state a claim on how the Defendants – rather than the loss of his equity under the McDermott plan – caused damages to him. In cases of alleged fraud-based claims, the Fifth Circuit has stated that "Rule 9(b) has long played [a] screening function, standing as a gatekeeper to discovery, a tool to weed out meritless fraud claims sooner than later. We apply Rule 9(b) to fraud complaints with 'bite' and 'without apology,'. . . which after *Twombly* must make relief plausible, not merely conceivable, when taken as true." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009) (citing *Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Plaintiff's FAC simply does not make a plausible case that the non-disclosure of the Jones-Freeman relationship or any action of the Defendants caused damages to Plaintiff or prevented him from exercising his rights in opposing the McDermott plan that caused his damages.[24]

---

[24] Indeed, it bears noting that Defendants' enforcement of the plan release and injunction prevented Plaintiff from obtaining treatment -- i.e., the assertion of McDermott estate claims against the state

**B.  PLAINTIFF'S PLEADING OF RICO CLAIMS IS DEFICIENT.**

5.      In addition to lack of causation and damages, Plaintiff's RICO claims are deficient under Fifth Circuit precedent, Rule 12(b)(6), and Rule 9(b) in multiple ways.

6.      For example, reflecting a problem that Plaintiff has with all claims in the FAC, Plaintiff fails to plead the injury and causation necessary to establish his standing to assert the RICO claims. *Jackson v. Nat'l Ass'n for Advancement of Colored People*, 546 F. App'x 438, 442 (5th Cir. 2013). Plaintiff asserts that his financial recovery in the McDermott case was reduced by the allegedly improper allowance of Kirkland and JW fees (FAC ¶ 96). But that alleged injury derives from McDermott and is not distinct from the alleged injury to McDermott. In short, the alleged RICO claims are not direct claims that Plaintiff owns. Rather, they are owned by the McDermott estate. Accordingly, Plaintiff has no standing to assert the RICO claims. *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*, 868 F.2d 740, 744 (5th Cir. 1989).[25]

7.      In the Fifth Circuit, RICO claims require pleading of "specific facts, not mere conclusory allegations, which establish the existence of an enterprise." *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989). Moreover, a RICO enterprise must "exist separate and apart from the pattern of racketeering activity in which it engages." *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003). In the FAC, Plaintiff asserts that the only purpose of the alleged enterprise was to engage in the alleged RICO predicate acts of committing "bankruptcy

---

court defendants -- that was superior to the treatment of every other McDermott equity security holder under the McDermott plan.

[25] See also *Joffroin v. Tufaro*, 606 F.3d 235, 238 (5th Cir. 2010) (found no shareholder standing where plaintiff's "claims are for monies diverted from the [company's] treasury").

fraud, mail fraud, wire fraud and theft of honest services/wire fraud." Thus, Plaintiff asserts that the Defendants formed the alleged enterprise to commit the same criminal acts that Plaintiff alleges as predicate acts, which is insufficient to plead the existence of an enterprise that is separate from the alleged racketeering activity in which it engages. *Fernandez-Lopez v. Hernandez*, 2020 WL 9396487, at *12 (W.D. Tex. Nov. 20, 2020) (Moses, J.). Moreover, given that no enterprise existed, the FAC fails to explain how the enterprise made decisions or coordinated its internal affairs. *Manax v. McNamara*, 660 F. Supp. 657, 662 (W.D. Tex. 1987), aff'd, 842 F.2d 808 (5th Cir. 1988) (there is no enterprise where there is "no . . . indication of a decision-making structure" other than "a loose analogy to a Mafia family").[26]

8.     Plaintiff's RICO conspiracy claim is similarly defective. Inasmuch as a requirement of a RICO conspiracy claim is an agreement to commit predicate acts, a RICO conspiracy claim must specifically allege such an agreement. *Crowe v. Henry*, 43 F.3d 198, 206 (5th Cir. 1995). In fact, in defending a RICO claim against Plaintiff's law firm, the firm contended that "the conspiracy claim utterly fails to demonstrate that the parties ever reached any agreement that they would commit any specific acts that would constitute a RICO violation."[27] The Plaintiff's allegations in the FAC regarding an agreement to commit predicate

---

[26] See also *Elliott*, 867 F.2d at 881 (RICO claims were dismissed where plaintiff did "not allege the additional organizational characteristics necessary" for an enterprise).

[27] *Edelson PC v. Bandas L. Firm PC*, Case No. 1:16-cv-11057, Dkt. 64 at 29 (N.D. Ill. April 10, 2017).

acts are conclusory and fail to provide the Court and the Defendants with any coherent agreement regarding Plaintiff.[28]

9.      While the FAC includes conclusory references to alleged misrepresentations and an alleged conspiracy relative to the McDermott chapter 11 case, Plaintiff fails to set forth sufficient allegations to state violations of any of the particularized federal fraud, theft, or property crimes, constituting "racketeering activity" as defined in the RICO statute. Moreover, the FAC fails to allege any specific facts, dates, names, communications, or events to support the conclusory allegations of criminal activity by Defendants, nor does the FAC explain how these acts constitute racketeering activity or are related to a continued threat of criminal activity. Finally, to the extent that Plaintiff alleges that the Defendants' actions in enforcing the McDermott plan over his objections form the basis for RICO predicate acts, it's clear that fulfilling litigation duties cannot form the basis of a RICO claim. *Kim v. Kimm*, 884 F.3d 98 (2d Cir. 2018) ("[i]f litigation activity were adequate to state a claim under RICO, every unsuccessful lawsuit could spawn a retaliatory action" that "would inundate the federal courts with procedurally complex RICO pleadings"). Stated simply, Plaintiff fails to plausibly allege the necessary elements of a RICO claim. *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir.

---

[28] Plaintiff has had at least two other RICO conspiracy claims dismissed in which his allegations of an agreement to commit predicate acts were inadequately pled. *Alamogordo Pub. Sch.*, 2008 WL 11417175 at *12 (dismissed conspiracy claims because "Van Deelen has failed to allege specific facts showing an agreement and concerted action"); *Van Deelen v. Klein Independent School District et al.*, Case No. 4:14-CV-00923, Dkt. 66 at 15 (S.D. Tex. Mar. 3, 2015) (dismissed conspiracy claim for failure to "plead any facts to . . . provide plausible grounds to suggest an agreement was made").

2009); see also *Crawford's Auto Ctr. v. State Farm Mut. Auto. Ins. Co*, 945 F.3d 1150 (11th Cir. 2019).

### C. PLEADING OF THE BIVINS CONSPIRACY CLAIM LACKS SUFFICIENT CONTEXT.

10.     Likewise, the conspiracy to interfere with constitutional rights under Bivens not only lacks the pleading specificity required for conspiracy claims, but the claim also asserts a new context – i.e., alleged interference with rights of an equity security holder in a chapter 11 case – that the U.S. Supreme Court has never endorsed. For decades, the Supreme Court has consistently refused to extend Bivens liability to any new context or new category of defendants. *Oliva v. Nivar*, 973 F.3d 438, 443 (5th Cir. 2020), *cert. denied*, 210 L.Ed.2d 832 (2021) (citing *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001)). The Supreme Court has not extended a Bivens conspiracy claim to the context that Plaintiff asserts in the FAC and is unlikely to do so in the future. As such, the claim should be dismissed.

### D. PLAINTIFF FAILS TO PLEAD STANDING TO ASSERT ESTATE CLAIMS.

11.     Finally, in addition to lack of causation and damages, and failure to plead with sufficient particularity, Plaintiff's claims – including RICO and RICO conspiracy, professional negligence and breach of fiduciary duty,[29] common law fraud, aiding and abetting breach of fiduciary duty, negligent misrepresentation, common law civil conspiracy, unjust enrichment, and respondeat superior and/or agency liability – should be dismissed for the additional reason

---

[29] On a threshold basis, Plaintiff's claims for malpractice and breach of fiduciary duty are defective because Plaintiff was not the client of the law firms, which owed no duty to him. *In re Am. Int'l Refinery, Inc.*, 436 B.R. 364, 376 (Bankr. W.D. La. 2010), aff'd, 676 F.3d 455 (5th Cir. 2012) (concluded that debtor's counsel's "duty to the estate does not . . . extend to individual creditors and equity holders."); See also *In re TOCFHBI, Inc.*, 413 B.R. 523, 538-39 (Bankr. N.D. Tex. 2009).

that Plaintiff has failed to plead how he has standing to assert those McDermott-estate owned claims against Defendants, much less standing to assert those estate-owned claims in *other* chapter 11 cases.[30] To assert claims against the Defendants that have been reserved to the McDermott estate under the confirmed McDermott plan,[31] even a creditor, much less a former equity security holder such as Plaintiff, lacks "prudential standing to assert derivative claims arising from injuries to the debtor or its estate, including claims base on fraud on the court." *In re SunEdison, Inc.*, Case No. 16-10992 (SMB), 2019 WL 2572250 (Bankr. S.D.N.Y. June 21, 2019) at *6.[32] In *SunEdison*, the court found that the alleged actions harmed the debtors and the estates, not the individual creditor and certainly not an equity security holder. The creditor could not "identif[y] a particularized injury that it suffered distinct from the injuries, if any, that all unsecured creditors suffered and [thus,] it lack[ed] standing to assert a fraud on the court claim based on a secondary effect of an injury to the debtors (pre-petition) or their estates (post-petition)." *Id.* Plaintiff stands in even worse shoes than the creditor in *SunEdison*. He is seeking redress from Bankruptcy Court orders on grounds that the Freeman-Jones relationship was not disclosed under Bankruptcy Rule 2014, and he makes that request

---

[30] In addition to their other defects, Plaintiff's claims for negligent misrepresentation, professional negligence, unjust enrichment, and Bivens conspiracy are all barred by two-year statutes of limitation. Also, Plaintiff's claims for aiding and abetting a breach of fiduciary duty and respondeat superior should be dismissed because no such causes of action exist.

[31] McDermott case no. 20-30334, Dkt #684, ¶ 22 on p. 44.

[32] See also *In re Radner Holdings Corp.* 564 B.R. 467, 471,480-484 (D. Del), *aff'd*, 706 F.App'x 94 (3d Cir. 2017) (affirmed dismissal of fraud-based claims because shareholder lacked standing and debtor is the proper plaintiff to assert the claims); *In re NC12, Inc.*, 604 B.R. 478 B.R. 820, 836 (Bank. S.D. Tex. 2012).

without ownership or entitlement under the McDermott plan to any disgorgement proceeds or damages that might be awarded. Thus, Plaintiff cannot meet any element of the necessary constitutional standing,[33] prudential standing,[34] or even section 1109(b) of the Bankruptcy Code standing[35] necessary to assert these claims in either the McDermott case or any other chapter 11 case, for that matter. In short, Plaintiff has no legal standing to assert these claims and all of them should be dismissed.

<u>CONCLUSION</u>

12.     The FAC is the convoluted product of a litigious Plaintiff who refuses to accept one of the consequences of the investment risk that he took in acquiring 30,000 shares of McDermott common equity. Plaintiff exercised his rights to object to the McDermott plan that McDermott management proposed and McDermott creditors overwhelming approved, and Defendants did nothing to prevent Plaintiff from exercising those rights. The non-disclosure of the Freeman-Jones relationship did not cause and had nothing to do with Plaintiff's damages, and Plaintiff has no standing to pursue possible bankruptcy estate claims based on that non-disclosure in either the McDermott chapter 11 case or any other chapter 11 case. Accordingly, Freeman requests that the FAC be dismissed under Fed. R. Civ. 12(b)(6) and 9(b), and for such other and further relief as is just.

---

[33] *In re Fieldwood Energy LLC*, No. 20-33948, 2021 WL 4839321, at *6 (Bankr. S.D. Tex. Oct. 15, 2021) (internal citations omitted).

[34] *Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 473-74 (5th Cir. 2013).

[35] See *Friede Goldman Halter Inc.*, 600 B.R. at 532 (found that a creditor, much less an equity security holder such as Plaintiff, lacked standing to move to reopen the case where it could not assert any stake in reopening the case premised on the relief to which it would be entitled as a creditor).

Respectfully submitted,

Tom Kirkendall
Texas State Bar No. 11517300
LAW OFFICE OF TOM KIRKENDALL
2 Violetta Ct
The Woodlands, TX 77381
713.703.3536 (mobile & text)
bigtkirk@gmail.com

CO-COUNSEL FOR ELIZABETH CAROL
FREEMAN, DEFENDANT

## <u>CERTIFICATE OF SERVICE</u>

The foregoing pleading was transmitted via electronic transmission on March 18, 2024

to respective counsel for the parties in this civil action:

Mikell A. West
Robert W. Clore
Bandas Law Firm, P.C.
802 Carancahua Street, Suite 1400
Corpus Christi, Texas 78401
mwest@bandaslawfirm.com
rclore@bandaslawfirm.com

*Counsel for Plaintiff*

Gary Cruciani
Patrick Pijls
McKool Smith, P.C.
300 Crescent Court, Suite 1200
Dallas, TX 75201
gcruciani@mckoolsmith.com
ppijls@mckoolsmith.com

John Sparacino
McKool Smith, P.C.
600 Travis Street, Suite 700
Houston, TX 77002
jsparacino@mckoolsmith.com

*Counsel for David Jones*

David Beck
Jacqueline M. Furlow
Beck Redden
1221 McKinney St, Suite 4500
Houston, TX 77010
dbeck@beckredden.com
jfurlow@beckredden.com

John Hueston
Michael Todisco
Karen Ding
Hueston Hennigan LLP
523 West 6th St., Unit 400
Los Angeles, CA 90014
jhueston@hueston.com
mtodisco@hueston.com
kding@hueston.com

*Counsel for Kirkland & Ellis LLP and Kirkland & Ellis International LLP*

Rusty Hardin
Leah Graham
Jennifer E. Brevorka
Emily Smith
Rusty Hardin & Associates LLP
1401 McKinney, Suite 2250
Houston, TX 77010
rhardin@rustyhardin.com
lgraham@rustyhardin.com
jbrevorka@rustyhardin.com

*Counsel for Jackson & Walker LLP*

_____
Tom Kirkendall