IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Michael D. Van Deelen, | § | Civil Action No. 4:23-cv-3729 |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Jury Trial Demanded |
| | § | |
| David R. Jones, Elizabeth Carol Freeman, | § | |
| Jackson Walker LLP, Kirkland & Ellis, LLP, | § | |
| and Kirkland & Ellis International, LLP, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANT JACKSON WALKER LLP'S**
**FED. R. CIV. P. 12(b)(1) and 12(b)(6) MOTION TO DISMISS**

**Russell Hardin, Jr.**
  State Bar No. 08972800
  Federal ID 19424
**RUSTY HARDIN & ASSOCIATES, LLP**
5 Houston Center
1401 McKinney, Suite 2250
Houston, Texas  77010
Telephone: (713) 652-9000
Facsimile:  (713) 652-9800
Email: rhardin@rustyhardin.com
**ATTORNEY-IN-CHARGE FOR DEFENDANT**
**JACKSON WALKER LLP**

**OF COUNSEL**:

**Leah M. Graham**
  State Bar No. 24073454
  Federal ID 2492848
**Jennifer E. Brevorka**
  State Bar No. 24082727
  Federal ID 1725400
**Emily Smith**
  State Bar No. 24083876
  Federal ID 1890677

**RUSTY HARDIN & ASSOCIATES, LLP**
1401 McKinney Street, Suite 2250
Houston, Texas 77010
Telephone: (713) 652-9000
Facsimile:  (713) 652-9800
lgraham@rustyhardin.com
jbrevorka@rustyhardin.com
esmith@rustyhardin.com
**ATTORNEYS FOR DEFENDANT**
**JACKSON WALKER LLP**

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................... 1

II.    FACTUAL BACKGROUND ......................................................................... 3

    A.    Mr. Van Deelen is a "professional litigant". ............................... 4

    B.    The McDermott Bankruptcy .......................................................... 5

    C.    Mr. Van Deelen sues McDermott executives in state court. ............... 10

    D.    Mr. Van Deelen alleges an intimate relationship. ............................ 11

    E.    Mr. Van Deelen sues Judge Jones. ................................................ 12

    F.    The U.S. Trustee files Rule 60(b)(6) motions. ................................ 12

    G.    Mr. Van Deelen sues Debtors' counsel. ......................................... 13

III.    ARGUMENTS AND AUTHORITIES ......................................................... 14

    A.    Dismissal is appropriate under Rule 12(b)(1). ............................... 14

        1.    Mr. Van Deelen lacks standing. ........................................ 14

            a.    Mr. Van Deelen lacks prudential standing. ................. 15

            b.    Mr. Van Deelen lacks Article III standing. ................. 19

        2.    Mr. Van Deelen's Amended Complaint is a collateral attack on the Confirmation Order. ................................... 21

        3.    Mr. Van Deelen's claims are barred by the Plan's release, injunction, and exculpation provisions. ................... 21

    B.    Dismissal is also appropriate under Rule 12(b)(6). .......................... 23

        1.    *Bivens* actions can only be asserted against individual government actors. ............................................... 24

        2.    Mr. Van Deelen cannot satisfy RICO's required elements. .......... 26

            a.    Mr. Van Deelen cannot establish standing for a RICO claim because he suffered no actual injury to his business or property. ............................................... 27

b.      Mr. Van Deelen does not establish necessary predicate criminal acts for a RICO claim. .................................................... 29

c.      Mr. Van Deelen does not establish a separate alleged enterprise or an organization with hierarcy or structure. ............. 31

d.      Mr. Van Deelen does not establish damages or proximate cause.......................................................................................... 32

e.      Mr. Van Deelen does not establish the existence of a conspiracy. ....................................................................................... 34

3.      The attorney immunity doctrine prohibits Mr. Van Deelen's tort claims (applicable to Counts III - IX and XII).......................................... 35

4.      The Bankruptcy Court retains exclusive jurisdication over Mr. Van Deelen's claims. ............................................................................... 39

5.      Additional Reasons to Dismiss. ................................................................. 41

a.      Five claims are time-barred. ......................................................... 41

b.      Jackson Walker did not owe Mr. Van Deelen a legal duty........... 41

c.      Mr. Van Deelen cannot prove justifiable reliance, detrimental reliance, or pecuniary harm. ...................................... 42

d.      Jackson Walker was not unjustly enriched. .................................. 43

e.      Mr. Van Deelen's *respondeat superior* claim fails...................... 43

C.      Mr. Van Deelen's claims should be dismissed with prejudice. ............................ 44

IV.      CONCLUSION.............................................................................................................. 45

# TABLE OF AUTHORITIES

**Cases**

*Acad. of Allergy & Asthma in Primary Care v. Quest Diagnostics, Inc.*,
   998 F.3d 190 (5th Cir. 2021) ............................................................................. 41

*Allen v. Walmart Stores, L.L.C.*,
   907 F.3d 170 (5th Cir. 2018) ............................................................................. 23

*Allstate Ins. Co. v. Benhamou*,
   190 F. Supp. 3d 631 (S.D. Tex. 2016) ............................................................... 31

*Allstate Ins. Co. v. Planbeck*,
   802 F.3d 665 (5th Cir. 2015) ............................................................................. 32

*Anza v. Ideal Steel Supply Corp.*,
   547 U.S. 451 (2006) .......................................................................................... 33

*Apex Towing Co. v. Tolin*,
   41 S.W.3d 118 (Tex. 2001) ............................................................................... 41

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) .................................... 23

*Atkinson v. Anadarko Bank & Trust Co.*,
   808 F.2d 438 (5th Cir. 1987), *cert. denied*, 483 U.S. 1032 (1987) ................... 31

*Baker v. Carr*,
   369 U.S. 186 (1962) .......................................................................................... 15

*Barcelo v. Elliott*,
   923 S.W.2d 575 (Tex. 1996) ............................................................................. 42

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) .................................... 23

*Benchmark Elec., Inc. v. J.M. Huber Corp.*,
   343 F.3d 719 (5th Cir. 2003) ............................................................................. 23

*Bethel v. Quiling, Selander, Lownds, Winslett & Moster, P.C.*,
   595 S.W.3d 651 (Tex. 2020) ...................................................................... 36, 38, 39

*Bivens v. Six Unknown Named Agents*,
   403 U.S. 388 (1971) ...................................................................................... 24, 25

*Butler v. Porter*,
   999 F.3d 287 (5th Cir. 2021) ............................................................................. 25

*Cantey Hanger, LLP v. Byrd*,
   467 S.W.3d 477 (Tex. 2015) ................................................................ 35, 36, 37, 39

*Cinel v. Connick*,
   15 F.3d 1338 (5th Cir. 1994) ............................................................................. 24

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ...................................................................................... 19, 20

*Collins v. Morgan Stanley Dean Witter*,
   224 F.3d 496 (5th Cir. 2000) ........................................................... 24

*Collins v. Zolnier*,
   No. 09-17-00418-CV, 2019 WL 2292333 (Tex. App.—Beaumont May 30,
   2019, pet. denied).......................................................................... 35

*Corr. Servs. Corp. v. Malesko*,
   534 U.S. 61 (2001)...................................................................... 24, 25

*Crowe v. Henry*,
   43 F.3d 198 (5th Cir. 1995) ........................................................ 27, 34

*Den Norske Stats Ojeselskap As v. HeereMac Vof*,
   241 F.3d 420 (5th Cir. 2001)............................................................. 14

*Dorsey v. Portfolio Equities, Inc.*,
   540 F.3d 333 (5th Cir. 2008) ........................................................... 24

*Ed & F Man Biofuels Ltd. v. MV FASE*,
   728 F. Supp. 2d 862 (S.D. Tex. 2010) ............................................... 43

*Elledge v. Friberg-Cooper Water Supply Corp.*,
   240 S.W.3d 869 (Tex. 2007)....................................................... 41, 43

*Escobar v. Gaines*,
   No. 3-11-0994, 2013 WL 1344900 (M.D. Tenn. April 1, 2013) ................... 25

*Exxon Corp. v. Emerald Oil & Gas Co., L.C.*,
   348 S.W.3d 192 (Tex. 2011)............................................................. 41

*Fed. Land Bank Ass'n of Tyler v. Sloane*,
   825 S.W.2d 439 (Tex. 1992)............................................................. 42

*Foman v. Davis*,
   371 U.S. 178 (1962)....................................................................... 44

*G & H Towing Co. v. Magee*,
   347 S.W.3d 293 (Tex. 2011)............................................................. 43

*GTE Southwest, Inc. v. Bruce*,
   998 S.W.2d 605 (Tex. 1999)............................................................. 43

*HECI Exploration Co. v. Neel*,
   982 S.W.2d 881 (Tex. 1998)............................................................. 43

*H.J. Inc. v. Nw. Bell Tel., Co.*,
   492 U.S. 229 (1989)....................................................................... 26

*Hancock v. Chicago Title Ins. Co.*,
   635 F. Supp. 2d 539 (N.D. Tex. 2009) ............................................... 43

*Haynes and Boone, LLP v. NFTD, LLC*,
   631 S.W.3d 65 (Tex. 2021)....................................................... 35, 36, 38, 42

*Holmes v. Secs. Investor Protection Corp.*,
   503 U.S. 258 (1992)................................................................. 32, 33

iv

*Home Builders Ass'n, Inc. v. City of Madison*,
    143 F.3d 1006 (5th Cir. 1998) ...................................................................... 14

*Hughes v. Tobacco Institute, Inc.*,
    278 F.3d 417 (5th Cir. 2001) ........................................................................ 27

*In re 4E Brands Northamerica, LLC*,
    Case No. 22-50009 (MI) (Bankr. S.D. Tex. Feb. 15, 2024) ........................... 17

*In re Burzynski*,
    989 F.2d 733 (5th Cir. 1993) ........................................................................ 34

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*,
    668 F.3d 281 (5th Cir. 2012) ........................................................................ 14

*In re Intercontinental Terminals Co., LLC, Deer Park Fire Litig.*,
    No. 4:19-CV-01460, 2023 WL 4209867 (S.D. Tex. June 27, 2023) ............... 41

*In re Martin*,
    617 B.R. 866 (Bankr. S.D. Miss. 2020) ........................................................ 19

*In re Old ANR, LLC*,
    Case No. 19-00302-KRH, 2019 WL 2179717 (Bankr. E.D. Va. May 17, 2019) ............. 16

*In re SRC Liquidation LLC*,
    Case No. 15-10541 (BLS), 2019 WL 4386373 (Bankr. D. Del. Sept. 12, 2019) ............. 16

*In re SunEdison, Inc.*,
    No. 16-10992 (SMB), 2019 WL 2572250 (Bankr. S.D.N.Y. June 21, 2019) ...... 16, 17, 18

*In re Taxable Mun. Bond Sec. Litig.*,
    51 F. 3d 518 (5th Cir. 1995) ............................................................. 3, 26, 27, 28

*Jackson v. Wray*,
    No. 3:23-CV-0558-M-BH, 2023 WL 7029378 (N.D. Tex. Sept. 27, 2023),
    report and recommendation adopted, No. 3:23-CV-0558-M-BH, 2023 WL
    7027511 (N.D. Tex. Oct. 24, 2023) ............................................................... 25

*Jones v. Bock*,
    549 U.S. 199 (2007) ...................................................................................... 41

*Jones v. Herrman & Herrman, PLLC*,
    No. 2:22-CV-00079, 2023 WL 6064790 (S.D. Tex. Mar. 28, 2023) ............... 3, 29

*JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*,
    546 S.W.3d 648 (Tex. 2018) ........................................................................ 42

*Kelly v. Nichamoff*,
    868 F.3d 371 (5th Cir. 2017) ........................................................................ 35

*Landry's, Inc. v. Animal Legal Def. Fund*,
    631 S.W.3d 40 (Tex. 2021) ........................................................................... 35

*Lormand v. U.S. Unwired, Inc.*,
    565 F.3d 228 (5th Cir. 2009) ........................................................................ 23

*Marucci Sports, L.L.C. v. Nat'l Collegiate Athletics Ass'n*,
    751 F.3d 368 (5th Cir. 2014) ........................................................................ 44

*Matter of LaHaye*,
    17 F.4th 513 (5th Cir. 2021) ................................................................ 21, 40

*McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*,
    991 S.W.2d 787 (Tex. 1999) .................................................................... 42

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010) .................................................................................. 15

*Mowbray v. Avery*,
    76 S.W.3d 663 (Tex. App.—Corpus Christi–Edinburg 2002, pet. denied) ...................... 43

*Norman v. Apache Corp.*,
    19 F.3d 1017 (5th Cir. 1994) ................................................................... 44

*Patterson v. Mobil Oil Corp.*,
    335 F.3d 476 (5th Cir. 2003) ................................................................... 27

*Pena v. United States*,
    157 F.3d 984 (5th Cir. 1998) ................................................................... 41

*Price v. Pinnacle Brands, Inc.*,
    138 F.3d 602 (5th Cir. 1998) ................................................................... 26

*Ramming v. United States*,
    281 F.3d 158 (5th Cir. 2001) ................................................................... 14

*Sligh v. City of Conroe*,
    87 F.4th 290 (5th Cir. 2023) ................................................................... 24

*Span Enterprises v. Wood*,
    274 S.W.3d 854 (Tex. App.—Hous. [1st Dist.] 2008, no pet.) .................... 41

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016), as revised (May 24, 2016) .................................... 15

*St. Germain v. Howard*,
    556 F.3d 261 (5th Cir. 2009) ............................................................ 3, 29

*St. Paul Fire & Marine Ins. Co. v. Labuzan*,
    579 F.3d 533 (5th Cir. 2009) ................................................................... 15

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) .................................................................................. 14

*Superior MRI Servs., Inc. v. Alliance Healthcare Servs., Inc.*,
    778 F.3d 502 (5th Cir. 2015) ................................................................... 16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) .................................................................................. 24

*Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*,
    975 F.2d 1134 (5th Cir. 1992) ............................................................ 27, 34

*Troice v. Proskauer Rose, L.L.P.*,
    816 F.3d 341 (5th Cir. 2016) ................................................................... 35

*United States v. Delgado*,
    401 F.3d 290 (5th Cir. 2005) ...................................................... 26, 27, 34

*United States v. Kanneganti*,
    565 F.3d 180 (5th Cir. 2009) ................................................................. 24

*United States v. Turkette*,
    452 U.S. 576 (1981) ............................................................................ 31

*Valdery v. Louisiana Workforce Comm'n.*,
    No. 15-01547, 2015 WL 5307390 (E.D. La. Sept. 10, 2015) ........................... 14

*Van Deelen v. Alamogordo Pub. Sch..*,
    No. CV 07-171 MV/LCS, 2008 WL 11417175 (D. N.M. Mar. 14, 2008) .................. 4

*Van Deelen v. Cain*,
    628 Fed. App'x 891 (5th Cir. 2015) ............................................................ 4

*Van Deelen v. City of Eudora*,
    No. 96-4040-SAC, 1996 WL 707016 (D. Kan. Nov. 5, 1996) .............................. 5

*Van Deelen v. City of Kansas City, Missouri*,
    No. 04-989-CV WGAF, 2006 WL 2077640 (W.D. Mo. July 24, 2006), aff'd as
    modified, 262 Fed. App'x 723 (8th Cir. 2007) ......................................... 4, 5

*Van Deelen v. McAnany*,
    No. 03-1408 (D. Kan. Jan. 27, 2004) ......................................................... 4

*Van Deelen v. Ramirez*,
    No. 00-4067-SAC, 2001 WL 789275 (D. Kan. May 1, 2001) ............................... 4

*VeroBlue Farms USA, Inc. v. Wulf*,
    465 F. Supp. 3d 633 (N.D. Tex. 2020) ....................................................... 24

*Villarreal v. Wells Fargo Bank, N.A.*,
    814 F.3d 763 (5th Cir. 2016) ................................................................. 24

*Warth v. Seldin*,
    422 U.S. 490 (1975) ....................................................................... 14, 15

*Whelan v. Winchester Prod. Co.*,
    319 F.3d 225 (5th Cir. 2003) .............................................................. 31, 32

*Williams v. WMX Techs. Inc.*,
    112 F.3d 175 (5th Cir. 1997) .............................................................. 23, 24

*Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*,
    90 F.3d 118 (5th Cir. 1996) .............................................................. 26, 34

*Youngkin v. Hines*,
    546 S.W.3d 675 (Tex. 2018) ............................................................... 36, 37

*Zastrow v. Houston Auto Imps. Greenway Ltd.*,
    789 F.3d 553 (5th Cir. 2015) ................................................................. 32

*Ziglar v. Abbasi*,
    582 U.S. 120 (2017) ........................................................................... 24

**Statutes**

11 U.S.C. § 1141 ............................................................................................ 21

11 U.S.C. § 1141(a) ....................................................................................... 40

11 U.S.C. § 1144 ........................................................................................ 9, 39

18 U.S.C. § 1961(4) ........................................................................................ 31

18 U.S.C. § 1961(5) ........................................................................................ 26

18 U.S.C. § 1962(c) .............................................................................. 26, 27, 31

18 U.S.C. § 1962(d) ............................................................................. 26, 27, 34

18 U.S.C. § 1964(c) ............................................................................. 27, 32, 33

**Rules**

Fed. R. Civ. P. 9(b) .............................................................................. 22, 23, 24

Fed. R. Civ. P. 12(b)(1) ................................................................. 3, 14, 23, 45

Fed. R. Civ. P. 12(b)(6) ............................................................................. passim

**Treatises**

8 Collier on Bankruptcy § 1141.02 (16th ed. 2021) ...................................... 21

Restatement Second, Torts § 552, comment a ............................................... 42

To The Honorable Alia Moses, Chief United States District Judge:

Defendant Jackson Walker LLP ("Defendant" or "Jackson Walker") files this motion to dismiss and would respectfully show the Court as follows:

## I.    INTRODUCTION

1.    Mr. Van Deelen's Amended Complaint is a sprawling pleading that rests upon irrelevant, conclusory allegations, most of which are unsupported by facts, and none of which withstand legal scrutiny. The Amended Complaint spans 95 pages and asserts 12 claims against all Defendants. Despite the length, the pleading merely complains of fees awarded to Jackson Walker, without objection, for services indisputably performed on behalf of McDermott International, Inc. ("McDermott"), during McDermott's Chapter 11 bankruptcy proceeding (the "McDermott Bankruptcy").

2.    The Amended Complaint rings hollow, however, and only serves to consume valuable judicial resources. Mr. Van Deelen knows (because the Bankruptcy Court informed him) that the claims he advanced before, and now asserts again, albeit against a different defendant, are derivative and belong to McDermott. Mr. Van Deelen also knows (again, because the Bankruptcy Court informed him) that McDermott's reorganization plan (the "Plan"), which the Bankruptcy Court confirmed, bars *all* his claims raised relating to the McDermott Bankruptcy, *except* one. That claim, common law fraud against certain McDermott officers, he previously asserted in a different forum and lost. Additionally, the Amended Complaint flouts the Plan. The document expressly provides that the allegations and claims raised herein belong in the first instance before the Bankruptcy Court. That court retained exclusive subject matter jurisdiction over the Plan and all matters relating to its implementation and compensation of professionals retained in the McDermott Bankruptcy.

3.      Mr. Van Deelen, and now with his counsel, knowingly and intentionally filed the Amended Complaint in violation of the Plan's injunction which precludes these actions. The lawsuit is also contrary to a final enforceable order that releases and exculpates each Defendant other than former federal bankruptcy judge and co-Defendant David R. Jones ("Judge Jones"). Such disregard for, and abuse of, the judicial system is not surprising. Courts have previously sanctioned Mr. Van Deelen and his counsel for their abusive litigation conduct. Courts have noted that while Mr. Van Deelen has often appeared *pro se*, opponents characterize him as a "professional litigant", and courts have documented his past perjured testimony and falsification of evidence.

4.      Jackson Walker provides the Court with no fewer than 15 legal grounds upon which the Amended Complaint or claims should be dismissed. The reasons for dismissal generally fall into three categories. ***First,*** Mr. Van Deelen's litigation is nothing more than a collateral attack on a valid, final court order, and he lacks standing (prudential and Constitutional) to assert any of the Amended Complaint's claims. ***Second,*** contrary to his representation, Mr. Van Deelen is not, and has never been, a McDermott "creditor." He was never entitled to receive any recovery or distributions from the bankruptcy estate. Thus, even if this Court were to agree that the award of professional fees to Jackson Walker was improper and should be returned, none of that money would go to Mr. Van Deelen. Because of this, the essence of the harm alleged for all his claims is based upon fiction. ***Third,*** Mr. Van Deelen cannot, and does not, plead facts necessary to establish the required elements of his claims, including standing or the predicate acts upon which his RICO

claims depend.[1] For these reasons Jackson Walker respectfully asks for dismissal of the Amended Complaint with prejudice.

## II.     FACTUAL BACKGROUND

5.     This litigation arises from legal proceedings in which Jackson Walker represented McDermott as local counsel before the Southern District of Texas Bankruptcy Court (the "Bankruptcy Court") and the Southern District of Texas District Court. Judge Jones oversaw two of the proceedings: McDermott's Chapter 11 bankruptcy proceeding[2] and an adversarial lawsuit in which Mr. Van Deelen sued individual McDermott officers[3] and a lawyer with Defendant Kirkland & Ellis.[4] The Bankruptcy Court dismissed his claims, the order for which District Court Judge Andrew Hanen affirmed following an appeal by Mr. Van Deelen.

6.     Events occurring before the instant dispute are key to this Court's understanding of why the Amended Complaint should be dismissed under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. First, details about Mr. Van Deelen's 30-year history as a *pro se* litigant evidence how this Amended Complaint is just another mechanism used by Mr. Van Deelen to waste scarce judicial resources by using the courts as a tool to bully and harass his adversaries.

7.     Second, facts of the McDermott Bankruptcy and related proceedings allow for an unassailable conclusion: a valid, final court order (the "Confirmation Order")[5], approving and

---

[1] *See e.g.*, *In re Taxable Mun. Bond Sec. Litig.*, 51 F. 3d 518 (5th Cir. 1995); *St. Germain v. Howard*, 556 F.3d 261, 263–64, n.1 (5th Cir. 2009); *Jones v. Herrman & Herrman, PLLC*, No. 2:22-CV-00079, 2023 WL 6064790, **4–6 (S.D. Tex. Mar. 28, 2023).

[2] *In re McDermott International*, 20-30336.

[3] Mr. Van Deelen also sued 10 John/Jane Does and, eventually, added a Kirkland & Ellis lawyer as a defendant.

[4] *Van Deelen v. Dickson*, Adv. Proc. No. 20-3309 (Bankr. S.D. Tex.).

[5] *See* Ex. 1, Dkt. 684, *In re McDermott International*, 20-30336.

confirming McDermott's Chapter 11 Plan, bars this litigation and dictates this dispute, if it survives

at all, belongs in the first instance before the Bankruptcy Court.

## A.    Mr. Van Deelen is a "professional litigant".

8.    Mr. Van Deelen is a *Phi Beta Kappa* graduate of Stanford University with an MBA

from the Massachusetts Institute of Technology.[6] Since 1993, he has used the courts to battle

judges,[7] judicial assistants, lawyers, police, his employers and fellow employees, commissions,

and school districts.[8] Litigation opponents call Mr. Van Deelen's out-of-court conduct "irrational"

and "extremely unstable."[9] He has exhibited similar behavior during litigation where, for example,

he has threatened witnesses, argued with judges, and fabricated evidence.[10]

9.    Courts have noted that Mr. Van Deelen is a "professional litigant."[11] "The suits Mr.

Van Deelen has prosecuted have been hotly contested and have required extensive briefing in

motions to dismiss and for summary judgment, and he also has experience in litigating his suits at

trial."[12] After filing suit against the City of Kansas City, Missouri to determine the constitutionality

of an employment-related residency policy, for example, the District Court upheld a prior sanctions

order against Mr. Van Deelen finding:

> Van Deelen failed to comply with general rules governing proper courtroom
> decorum and respect for the Court and the judicial proceedings which he
> had initiated. Throughout the trial Van Deelen repeatedly interrupted and

---

[6] Dkt. No. 527, *In re McDermott International*, 20-30336.

[7] *Van Deelen v. McAnany*, No. 03-1408 (D. Kan. Jan. 27, 2004) (dismissing Mr. Van Deelen's § 1983 action for retaliation and violation of right of equal access to the courts, due process, and equal protection rights against state-court judge in Johnson County, Kansas).

[8] *Van Deelen v. Cain*, 628 Fed. App'x 891 (5th Cir. 2015).

[9] *Van Deelen v. Alamogordo Pub. Sch.*, No. CV 07-171 MV/LCS, 2008 WL 11417175, at *6 (D.N.M. Mar. 14, 2008).

[10] *Van Deelen v. City of Kansas City, Missouri*, No. 04-989-CV WGAF, 2006 WL 2077640, at *14 (W.D. Mo. July 24, 2006), aff'd as modified, 262 Fed. App'x 723 (8th Cir. 2007), (imposing sanctions because Plaintiff "abused the judicial process by fabricating evidence").

[11] *Van Deelen v. Ramirez*, No. 00-4067-SAC, 2001 WL 789275 at *5 (D. Kan. May 1, 2001).

[12] *Alamogordo Pub. Sch.*, 2008 WL 11417175 at *1.

argued with the Judge, counsel for the City and numerous witnesses. Van Deelen presented a voluminous amount of cumulative and irrelevant evidence wasting valuable judicial resources. His flippant and disrespectful remarks impeded the efficient resolution of his constitutional claims. Additionally, and perhaps most offensive, Van Deelen fabricated evidence to support his claims.[13]

10.    Courts have sanctioned Mr. Van Deelen for his disruptive, disrespectful, and abusive conduct no fewer than three times, the most recent in 2021 by the Bankruptcy Court.[14]

**B.    The McDermott Bankruptcy.**

11.    On January 21, 2020, McDermott filed a voluntary petition for relief (the "Petition") under Chapter 11 of the title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division.[15] On January 22, 2020, McDermott filed its Plan, which McDermott amended and supplemented several times throughout the course of the bankruptcy proceeding.[16] The Plan cancelled and extinguished all shares of McDermott common equity, including Mr. Van Deelen's 30,000 shares.

12.    Mr. Van Deelen—a self-described party-in-interest and McDermott shareholder with 30,000 non-preferential common equity shares—quickly injected himself into the bankruptcy proceeding, filing a host of motions.[17]

13.    McDermott provided Mr. Van Deelen and other claimants who were not otherwise entitled to vote on the Plan with an optional "Release Opt Out Form" (the "Form"). Importantly,

---

[13] *City of Kansas City, Missouri*, 2006 WL 2077640, *1.

[14] *See also City of Kansas City, Missouri*, 2006 WL 2077640, at *14 (imposing sanctions after finding that Mr. Van Deelen "abused the judicial process by fabricating evidence"); *Van Deelen v. City of Eudora*, No. 96-4040-SAC, 1996 WL 707016, at *8 (D. Kan. Nov. 5, 1996) (finding Mr. Van Deelen violated Rule 11); Dkt. 719, *In re McDermott International*, 20-30336 (concluding that Mr. Van Deelen lied about calling the Court a "son of a bitch" and had intimidated witnesses and lawyers.).

[15] Dkt. 1, *In re McDermott International,* 20-30336.

[16] Dkts. 121, 520, 620, 622, 647, 651, 684, *In re McDermott International*, 20-30336.

[17] *See e.g.*, Dkt. 253, 436, 441, 510, 511, 527, 557, *In re McDermott International*, 20-30336.

the Form only permitted Mr. Van Deelen to opt out of the Plan's "Third Party Release,"[18] not the

Plan's other customary release and exculpation provisions.[19] Specifically, the Form advised:[20]

> Holders of Claims and Interests are deemed to grant the Third-Party Release set forth in the Notice unless a holder affirmatively opts out or files an objection to the Third-Party Release with the Bankruptcy Court on or before the Plan Voting Deadline.
>
> If you believe you are a holder of a Claim or Interest with respect to McDermott International, Inc. or its affiliates and choose to opt out of the Third-Party Release set forth in Article VIII.D of the Plan, please complete, sign, and date this Opt Out Form and return it promptly via first class mail (or in the enclosed reply envelope provided), overnight courier, via the Solicitation Agent's online E-Ballot Portal, or hand delivery to Prime Clerk LLC (the "Solicitation Agent") at the address set forth below.

The Form outlined the Plan's "Third Party Release" provisions and provided Mr. Van Deelen with

the ability to opt out of these—and only these—provisions of the Plan:[21]

> Certifications. ☑ By checking this box, you elect to opt <u>out</u> of the Third-Party Releases. Item 3.

14.     On February 13, 2020, Mr. Van Deelen timely opted out of the Plan's Third-Party

Releases.[22] The Form did <u>not</u> preserve actual or potential claims against Debtors' counsel.[23]

15.     On February 27, 2020, Mr. Van Deelen filed a motion[24] in which he alleged that

McDermott had improperly sought Chapter 11 relief and he sought denial of the Plan. Specifically,

---

[18] Article VIII.D of the Plan contains the detailed Third Party Release, which was also provided to Mr. Van Deelen (*see* Dkt. 52-1, *Van Deelen v. Dickson*, Adv. Proc. No. 20-03309). *See* Ex. 1 at pp. 19, ¶¶ 38–40, 50; p. 157-158. Article VIII.D details who is a releasing party, what parties are released, and the limits of the Third Party Release.

[19] Dkt. 52-1, pp. 8-10, *Van Deelen v. Dickson*, Adv. Proc. No. 20-03309.

[20] Dkt. 52-1, p. 8, *Van Deelen v. Dickson*, Adv. Proc. No. 20-03309.

[21] *Id.* at 8–11.

[22] Dkt. 52-1, *Van Deelen v. Dickson*, Adv. Proc. No. 20-03309.

[23] Dkt. 684 ¶¶ 16, 39, 41, *In re McDermott International*, 20-30336; *see also* Dkt. 52-1, *Van Deelen v. Dickson*, Adv. Proc. No. 20-03309.

[24] Dkt. 510, *In re McDermott International*, 20-30336.

Mr. Van Deelen alleged that "[t]he McDermott bankruptcy was a prepackaged bankruptcy where the details of the bankruptcy had been worked out between McDermott and its creditors prior to the Chapter 11 filing."[25] Mr. Van Deelen objected to McDermott's proposed reorganization, which would render his shares worthless. Though other McDermott shareholders faced the same result,[26] Mr. Van Deelen was the **only** shareholder who adopted a scorched earth approach.

16.     For instance, on February 27, 2020, Mr. Van Deelen appeared unannounced at the home of McDermott's former CFO where he spoke to the CFO's wife and asked her to confirm their address for the purpose of issuing a subpoena. A doorbell camera captured the visit:



17.     Shortly thereafter, on March 12, 2020, the Bankruptcy Court conducted a hearing on confirmation of the Plan (the "Confirmation Hearing"), which Mr. Van Deelen personally attended. At the end of the hearing, Mr. Van Deelen called the Bankruptcy Court a "son of a bitch," which was audible on the audio recording of the hearing.[27] Mr. Van Deelen then called Debtors' counsel a "pasty white fuck" and threatened him by saying "I will have my way with your wife."[28]

---

[25] Dkt. 939, *In re McDermott International*, 20-30336.

[26] Dkts. 467, 489, 490, 492, *In re McDermott International*, 20-30336.

[27] Dkt. 59, p. 9, *Van Deelen v. Dickson*, Adv. Proc. No. 20-03309.

[28] Dkt. 59, p. 9, *Van Deelen v. Dickson*, Adv. Proc. No. 20-03309.

18.     On March 14, 2020, over Mr. Van Deelen's objections, the Bankruptcy Court issued its Confirmation Order approving the Plan.[29] The Plan:

- Vests **exclusive jurisdiction in the Bankruptcy Court** for matters pertaining to the award of professional fees and any future litigation involving *any* aspect of the Plan or the McDermott Bankruptcy;[30]

- **Releases and exculpates Jackson Walker**, and others, from claims related to, among other things, the McDermott Bankruptcy;[31]

- **Releases claims related to the McDermott Bankruptcy**, unless specifically objected to;[32] and,

- **Permanently enjoins Mr. Van Deelen**, and other holders of Released Claims, from commencing or continuing any action against the Exculpated or Released Parties[33] in connection with the McDermott Bankruptcy.[34]

19.     The Confirmation Order and Plan are clear: as a non-preferred equity holder, Mr. Van Deelen is not entitled to receive any distribution from the bankruptcy estate. Shareholders' interests, as is often the case in bankruptcy proceedings, were "canceled, released, and extinguished as of the" Plan's effective date[35]—June 30, 2020.[36] The Plan also vests exclusive jurisdiction "over all matters arising out of, or relating to the Chapter 11 cases and the Plan" in the Bankruptcy Court.[37] Mr. Van Deelen did not appeal or seek to modify the Confirmation Order.

---

[29] Ex. 1, Dkt. 684, *In re McDermott International*, 20-30336.

[30] Ex. 1, Dkt. 684, pp. 125-126, Art. II(C), and pp. 163-164, Art. XI, *In re McDermott International, et. al.*, 20-30336.

[31] *See* Ex. 1, Dkt. No. 684, Confirmation Order ¶¶ 52-53, pp. 157-158, Art. VIII.D, *In re McDermott International*, 20-30336.

[32] *See* Dkt. No. 684, Confirmation Order ¶¶ 48-51, *In re McDermott International*, 20-30336.

[33] *See* Ex. 1, Dkt. 684, p. 104, Art. I § A, *In re McDermott International*, 20-30336.

[34] *See* Ex. 1, Dkt. 684, pp. 65-66, ¶¶ 54–55, *In re McDermott International*, 20-30336.

[35] Ex. 1, Dkt. 684, p. 133, ¶ 17, *In re McDermott International,* 20-30336.

[36] Dkt. 970, *In re McDermott International*, 20-30336.

[37] *See* Ex. 1, Dkt. 684, p. 163, Article XI ("Retention of Jurisdiction"), *In re McDermott International*, 20-30336.

20.     Shortly after entry of the Confirmation Order, lawyers for McDermott filed an emergency motion asking that the Bankruptcy Court sanction Mr. Van Deelen for his threatening conduct.[38] True to form, Mr. Van Deelen responded and included a supporting affidavit that falsely denied statements he made during and after the adversarial proceedings.[39] The Bankruptcy Court granted McDermott's request, in part, and referred Mr. Van Deelen's conduct to the U.S. Attorney's Office.[40] The Bankruptcy Court's order prohibits Mr. Van Deelen from (1) contacting the court or its staff unless done so via filing; (2) contacting counsel at Kirkland & Ellis, and (3) entering the federal courthouse without the escort of a security officer. In its order, the Bankruptcy Court concluded that Mr. Van Deelen "poses a legitimate risk to the safety of courthouse staff and litigants that oppose his position."[41] Mr. Van Deelen filed a petition for a writ of mandamus with the Fifth Circuit Court of Appeals on June 2, 2020.[42] The petition was denied by order entered March 12, 2021.[43]

21.     On August 14, 2020, Jackson Walker filed its *Jackson Walker LLP's First and Final Fee Application* (the "Fee Application").[44] The Bankruptcy Court entered an order approving the Fee Application (the "Fee Order") on September 8, 2020, without objection.[45] Mr. Van Deelen did not contest the Fee Application or appeal the Fee Order. Nor did he move to modify or revoke the Confirmation Order under Rule 60 or 11 U.S.C. § 1144.

---

[38] Dkt. 694, *In re McDermott International*, 20-30336.

[39] Dkt. 701, p. 16, *In re McDermott International*, 20-30336.

[40] Dkt. 719, *In re McDermott International*, 20-30336.

[41] Dkt. 719, p. 2, *In re McDermott International*, 20-30336.

[42] *In re Van Deelen*, 20-20286 (5th Cir.).

[43] *In re Van Deelen*, 20-20286 (5th Cir.).

[44] *See* Dkt. No. 991, *In re McDermott International*, 20-30336.

[45] *See* Dkt. No. 1021, *In re McDermott International*, 20-30336.

### C.     Mr. Van Deelen sues McDermott executives in state court.

22.     After entry of the Confirmation Order, Mr. Van Deelen filed a lawsuit in June 2020, in Texas state court against various McDermott officers.[46] That litigation, similar to this action, asserted various claims related to the loss of value of Mr. Van Deelen's common shares.[47] The state court petition was removed to the Bankruptcy Court and became an adversary proceeding related to the McDermott Bankruptcy.[48]

23.     On March 10, 2021, Judge Jones held a scheduling conference in connection with the adversary proceeding. At the beginning of the hearing, Judge Jones advised Mr. Van Deelen that his petition contained potential (i) claims released under the Plan; (ii) derivative claims owned by the bankruptcy estate; and (iii) direct claims.[49] Judge Jones gave Mr. Van Deelen the opportunity to proceed with his motion to remand or to amend his petition. Mr. Van Deelen elected to amend. Additionally, Judge Jones informed Mr. Van Deelen on the limited effect of his opt-out from the Plan's Third-Party Releases.[50]

24.     Mr. Van Deelen subsequently amended his complaint twice. In this third amended petition,[51] Mr. Van Deelen continued asserting his fraud claims. In addition, Mr. Van Deelen added assault and fraud claims against McDermott's former lead bankruptcy counsel at Kirkland & Ellis, Mr. Sussberg. The assault claims concerned events that supposedly took place outside Judge Jones's courtroom just after the March 2020 Confirmation Hearing. The fraud claim focused on

---

[46] Mr. Van Deelen initially sued three McDermott officers and "10 John/Jane Does". He later amended his action to include a Kirkland & Ellis lawyer as a defendant.

[47] Dkt. 1, *Van Deelen v. Dickson*, Adv. Proc. No. 20-03309.

[48] *See* Dkt. 1, *Van Deelen v. Dickson*, Adv. Proc. No. 20-03309.

[49] Ex. 2, p. 8–12; *see also* Dkt. 46, 3:19-4:6, *Van Deelen v. Dickson*, Adv. Proc. No. 20-03309.

[50] Ex. 2 at p. 8–12.

[51] Dkt. 57, *Van Deelen v. Dickson*, Adv. Proc. No. 20-03309.

Debtors' counsel's purported pre-petition involvement in concealing financial losses by the Debtors and the decision to file bankruptcy.

25. On October 12, 2021, Judge Jones dismissed the adversary proceeding finding:

> **Under the confirmed Amended Plan, the Debtors released all direct and derivative claims held by the bankruptcy estate.** [Docket No. 684, attached plan, Art. VIII.C, Case No. 20-30336]. … In addition, the Amended Plan contains an exculpation provision that releases all claims arising out of or related to the bankruptcy process. [Docket No. 684, attached plan. Art. VIII.E, Case No. 20-30336]. While the Amended Plan also contains a third-party release provision in Art. VIII.D, Mr. Van Deelen exercised his opt-out right. [Docket No. 52-1]. **Finally, the Amended Plan provides an injunction that prohibits the initiation or continuation of any litigation for any released or exculpated claim.** [Docket No. 684, attached plan, Art. VIII.F, Case No. 20-30336].[52]
>
> ...
>
> The McDermott bankruptcy case is over. The Court's confirmation order is final and binding. In the hope that common sense will prevail, the Court denies the motions for sanctions without prejudice. **Any further state court litigation brought by Mr. Van Deelen regarding McDermott or these proceedings should be removed immediately to this Court.** ….[53]

## D.   Mr. Van Deelen alleges an intimate relationship.

26. About a year after the Confirmation Hearing, on Saturday, March 6, 2021, Mr. Van Deelen emailed a Jackson Walker partner asking for the first time whether Ms. Freeman and Judge Jones had a romantic relationship. The next business day, March 8, 2021, in a sealed filing, Jackson Walker provided the Bankruptcy Court the e-mail and attachments.[54] Mr. Van Deelen sent the e-mail a few days before a scheduled Bankruptcy Court hearing on Mr. Van Deelen's previously

---

[52] Dkt. 1108, p. 8, *In re McDermott International*, 20-30336; Dkt. 81, p. 8, *Van Deelen v. Dickson*, Adv. Proc. No. 20-03309.

[53] Dkt. 1108, p. 13, *In re McDermott International*, 20-30336; Dkt. 81, p. 13, *Van Deelen v. Dickson*, Adv. Proc. No. 20-03309. (emphasis added).

[54] The document was filed under seal given concerns of Mr. Van Deelen's credibility (which were previously raised in the McDermott Bankruptcy) and the personal nature of the allegations against a sitting bankruptcy judge.

filed motion to recuse Judge Jones for alleged biases. Mr. Van Deelen then supplemented his recusal motion to include allegations about an alleged relationship between Judge Jones and Ms. Freeman. Bankruptcy Judge Marvin Isgur considered Mr. Van Deelen's recusal motion and, after an evidentiary hearing, denied it.[55] Mr. Van Deelen appealed this ruling, which District Court Judge Hanen also denied.[56]

**E.     Mr. Van Deelen sues Judge Jones.**

27.     On October 4, 2023, Mr. Van Deelen filed an Original Complaint against then-current sitting Judge Jones, initiating this proceeding.[57] Mr. Van Deelen asserted Judge Jones had violated his constitutional rights (*Bivens* Claim) and sought declaratory and injunctive relief.

28.     On October 24, 2023, Mr. Van Deelen's action against Judge Jones was transferred and assigned to Chief Judge Alia Moses of the Western District of Texas, sitting by designation.[58]

**F.     The U.S. Trustee files Rule 60(b)(6) motions.**

29.      On or around November 2, 2023, the Office of the U.S. Trustee, a component of the Department of Justice that is assigned in every bankruptcy case, filed Rule 60(b) motions in approximately seventeen (17) bankruptcy cases seeking to vacate fees previously awarded to Jackson Walker in those cases.

30.     On December 9, 2023, Chief Bankruptcy Judge Eduardo Rodriguez commenced, and is presiding over, a Miscellaneous Proceeding addressing the discovery and pre-trial matters in all of the bankruptcy cases at issue.[59] The Bankruptcy Court's order contemplates that the

---

[55] *See* Dkt. 42, *Van Deelen v. Dickson*, Adv. Proc. No. 20-03309.

[56] See Dkt. 102, *Van Deelen v. Dickson*, Adv. Proc. No. 20-03309

[57] Dkt. 1, *Van Deelen v. Jones et al.*, No. 4:23-cv-3729.

[58] The order (General Order No. 2023-21) pertained only to lawsuits *against David R. Jones* and thus does not encompass the transfer of lawsuits against Defendants such as Jackson Walker.

[59] Dkt. 1, *In re Professional Fee Matters Concerning the Jackson Walker Law Firm*, Case No. 23-00645.

remaining substantive issues would be handled by the presiding bankruptcy judge given that the specific terms and provisions of each confirmed plan of reorganization or liquidation now control.[60]

31.     On January 31, 2024, the U.S. Trustee filed a Motion to Reopen the McDermott Bankruptcy proceeding, which Jackson Walker subsequently opposed. As of the date of this motion's filing, the Bankruptcy Court has not yet reopened the McDermott Bankruptcy proceeding and a hearing on the matter is set for April 11, 2024. If reopened, the Bankruptcy Court will ultimately consider the U.S. Trustee's Rule 60 motions, which would undoubtedly involve reconsideration of fee awards to counsel.

**G.     Mr. Van Deelen sues Debtors' counsel.**

32.     On January 11, 2024, in response to a motion to dismiss filed by former Judge Jones, Mr. Van Deelen filed his Amended Complaint in this Court joining as defendants: Elizabeth Carol Freeman, Jackson Walker, and Kirkland & Ellis, LLP and Kirkland & Ellis International, LLP.

---

[60] One case, *In re Brilliant Energy, LLC*, Case No. 21-30936, is a Chapter 7 case pending before Chief Bankruptcy Judge Rodriguez. The complexity with respect to each of the underlying cases and their respective confirmed plans of reorganization and/or liquidation was highlighted by both Judge Isgur and Chief Bankruptcy Judge Rodriguez. To this point, Judge Isgur issued an order in each of the four (4) cases pending before him requiring any party that asserts an interest in the Jackson Walker attorney fee matters to file a notice, as such standing and indispensable party determinations must be made at the outset and are determined by each confirmed plan. *See Order Requiring Any Party-in-Interest Who Asserts Standing or Indispensable Party Status to File a Notice Stating a Basis for Indispensable Party Status or Standing in Connection with Jackson Walker LLP Fee Matters*; Case No. 22-50009 [Dkt. 582]; Case No. 20-32519 [Dkt. 3202]; Case No. 21-90054 [Dkt. 1521]; Case No. 20-35740 [Dkt. 853]. Chief Bankruptcy Judge Rodriguez issued a similar order. Case No. 21-30936 [Dkt. 281].

## III.   ARGUMENTS AND AUTHORITIES

### A.   Dismissal is appropriate under Rule 12(b)(1).

33.   Federal courts have limited jurisdiction that must be conferred upon them by statute or by Article III of the Constitution.[61] Under Rule 12(b)(1), a claim is "properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate" the claim.[62] The party asserting jurisdiction bears the burden of establishing that the district court possesses jurisdiction.[63]

34.   In deciding a Rule 12(b)(1) dismissal motion, a court may rely on: "(1) the complaint alone, presuming the allegations to be true; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts."[64]

### 1.   Mr. Van Deelen lacks standing.

35.   A court lacks subject matter jurisdiction when the party bringing claims lacks standing to assert such claims.[65] Standing includes both constitutional and prudential components. As the Supreme Court held in *Warth v. Seldin*[66]:

> "[i]n its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III. This is the threshold question in every federal case, determining the power of the court to entertain the suit." Of great import when considering standing is whether "the plaintiff has 'alleged such a personal stake in

---

[61] *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286–87 (5th Cir. 2012).

[62] *Home Builders Ass'n, Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir. 1998) (internal citation omitted).

[63] *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001).

[64] *Valdery v. Louisiana Workforce Comm'n.*, No. 15-01547, 2015 WL 5307390 at *1 (E.D. La. Sept. 10, 2015) (citing to *Den Norske Stats Ojeselskap As v. HeereMac Vof,* 241 F.3d 420, 424 (5th Cir. 2001)).

[65] *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109–110 (1998).

[66] *Warth v. Seldin*, 422 U.S. 490, 498–499 (1975).

the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf."[67]

36.    Article III requires that "an injury be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling."[68] Similarly, a plaintiff's injury must not be "conjectural or hypothetical."[69] A particularized injury "must affect the plaintiff in a personal and individual way."[70]

37.    In addition to Constitutional standing, a party litigating in a federal court must have prudential standing. This judicially created limit considers:

> (1) whether a plaintiff's grievance arguably falls within the zone of interests protected by the statutory provision invoked in the suit, (2) whether the complaint raises abstract questions or a generalized grievance more properly addressed by the legislative branch, and (3) whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties.[71]

If a plaintiff lacks prudential standing, a court need not consider Constitutional standing.

38.    Here, Mr. Van Deelen lacks both prudential and Article III standing necessary to assert the claims identified in his Amended Complaint.

### a.    Mr. Van Deelen lacks prudential standing.

39.    Mr. Van Deelen's Amended Complaint asserts 10 claims against Jackson Walker,[72] three of which rest upon federal legal doctrines—RICO and *Bivens*—and seven of which involve tort claims under Texas common law. Every claim rests upon the same factual foundation: Jackson

---

[67] *Id*. at 498–99 (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).

[68] *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010).

[69] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), as revised (May 24, 2016) (internal quotations and citations omitted).

[70] *Id.* (internal quotations and citations omitted).

[71] *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 539 (5th Cir. 2009).

[72] In total, the Amended Complaint raises 12 claims, but two pertain only to other Defendants.

Walker's alleged failure to disclose the relationship between Judge Jones and Ms. Freeman during the McDermott Bankruptcy proceedings, a relationship of which Ms. Freeman flatly denies Jackson Walker had knowledge.[73]

40.     While the precise legal elements for each of the 10 claims differ, all require that Mr. Van Deelen personally suffer damages due to Jackson Walker's actions. Mr. Van Deelen can <u>never</u> fulfill this element, in part, because he asserts only derivative claims, which belong to McDermott, not to Mr. Van Deelen.

41.     For prudential standing, Mr. Van Deelen must assert "his own legal right and interests, and cannot rest his claim on the legal rights or interests of third parties."[74] Mr. Van Deelen's alleged injury mirrors several cases[75] in which bankruptcy courts considered similar challenges and held that post-confirmation, a confirmed plan governs a litigant's standing to challenge retention or fee orders. According to these decisions, a court must analyze purported injuries alleged under a confirmed plan and confirmation order, even if fraudulent conduct is asserted.

42.     For example, in *In re SunEdison, Inc.*,[76] an unsecured creditor, Mar-Bow, sought an order disgorging all professional fees paid to McKinsey Recovery & Transformation Services U.S., LLC ("McKinsey"). The Rule 60 motion sought vacatur of orders approving payment of fees and expenses, alleging that McKinsey had "committed a fraud on the court by failing to disclosure

---

[73] See Dkt. 45 at ¶ 3, *Van Deelen v. Jones*, Doc. No. 4:23-cv-03729.

[74] *Superior MRI Servs., Inc. v. Alliance Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015).

[75] *In re SunEdison, Inc.*, No. 16-10992 (SMB), 2019 WL 2572250 (Bankr. S.D.N.Y. June 21, 2019); *In re Old ANR, LLC*, Case No. 19-00302-KRH, 2019 WL 2179717, at *1 (Bankr. E.D. Va. May 17, 2019); *In re SRC Liquidation LLC*, Case No. 15-10541 (BLS), 2019 WL 4386373, at *1 (Bankr. D. Del. Sept. 12, 2019).

[76] Case No. 16-10992 (SMB), 2019 WL 2572250 (Bankr. S.D.N.Y. June 21, 2019).

disqualifying connections to the Debtors and their estates."[77] McKinsey objected, alleging that the creditor, Mar-Bow, lacked standing. The court agreed.

43.     In reaching its decision, the *SunEdison* court considered the same standing issues now before this Court. To determine that litigant's standing, the *SunEdison* court first evaluated the plan and confirmation order to see what, if any, distribution rights the creditor held post-confirmation. Because the plan held that unsecured creditors lacked rights to any future distributions, the *SunEdison* court determined that unsecured creditors such as Mar-Bow lacked prudential and Constitutional standing to assert fraud claims and seek forfeiture and disgorgement of professional fees.[78]

44.     That court concluded that McKinsey's "alleged representation of conflicting interest while acting as the Debtors' financial advisor, including the payment of its fees and expenses, harmed the [bankruptcy] estates," not the unsecured creditors. Because of this, Mar-Bow's claim constituted a derivative claim based on "a secondary effect from harm done to the [debtor]" and it did not constitute a direct claim for which Mar-Bow could directly trace its injury to another party's conduct. Additionally, Mar-Bow "failed to identify a particularized injury that it suffered distinct from the injuries, if any, that all unsecured creditors suffered and it lacks standing to assert a fraud on the court claim based on a secondary effect of an injury to the Debtors (pre-petition) or their estates (post-petition)."[79] The court held that Mar-Bow lacked prudential standing to assert a claim that involved fraudulent conduct of the debtor's professional advisors.[80]

---

[77] *In re SunEdison, Inc.*, 2019 WL 2572250, *1.

[78] *In re SunEdison, Inc.*, 2019 WL 2572250, *5, *6, *11.

[79] *Id*. at *6.

[80] *Id*. Bankruptcy Judge Isgur recently concluded the same in connection with a Rule 60 motion filed by an unsecured creditor against Jackson Walker in the *In re 4E Northamerica LLC* bankruptcy case. *See In re 4E Brands Northamerica, LLC*, Case No. 22-50009 (MI) (Bankr. S.D. Tex. Feb. 15, 2024), Dkt. 639, 642, Hr'g Tr. 39:15-18

45.     The same holds true here. Mr. Van Deelen lacks a particularized injury—under any of his claims—due to Jackson Walker's alleged conduct. The harm inflicted, if any, by Jackson Walker's lack of disclosure impacted the Debtors, not Mr. Van Deelen. During the bankruptcy proceedings and upon confirmation of the Plan, Mr. Van Deelen lacked <u>any</u> right to distributions from the Debtors. He had no legal claim—then or now—to money set aside for Jackson Walker's bills. His claims, like Mar-Bow's in *SunEdison*, are derivative of the direct harm allegedly inflicted on the Debtors, and he is no longer a shareholder as his interest was wiped out by the Plan. Mr. Van Deelen, like Mar-Bow, lacks prudential standing to assert claims based upon his fraud allegations.

46.     Similarly, Mr. Van Deelen's alleged injuries are not individualized, which makes it impossible for him to achieve prudential standing. Mr. Van Deelen's economic loss allegedly occurred when his 30,000 equity shares in McDermott were cancelled and rendered worthless by the Confirmation Order and Plan. As Mr. Van Deelen previously acknowledged, however, "[t]he McDermott bankruptcy was a prepackaged bankruptcy where the details of the bankruptcy had been worked out between McDermott and its creditors *prior to* the Chapter 11 filing."[81] The Confirmation Order's entry resulted in Mr. Van Deelen's alleged harm, not the failure to disclose the relationship between Judge Jones and Ms. Freeman even if Jackson Walker knew of such relationship (which it did not) at the time. Thousands of other McDermott non-preferential shareholders also suffered the same result as Mr. Van Deelen.

47.     Because the injury alleged is one suffered by the Debtors, not Mr. Van Deelen, the Amended Complaint asserts derivative claims, not direct ones. Furthermore, as one of thousands

---

(The Bankruptcy Court: ". . . I find that the Maestas parties do not have standing to bring the claim because it is owned by [the plan administrator]. . . .").

[81] Dkt. 939, p. 9, *In re McDermott International*, 20-30336.

of McDermott shareholders, all of whom were equally affected by the Plan, Mr. Van Deelen lacks a particularized, individualized harm required for prudential standing.

### b. Mr. Van Deelen lacks Article III standing.

48. Mr. Van Deelen cannot establish Constitutional standing either. Article III's requirements are unfulfilled because Mr. Van Deelen's claims rely upon "a highly attenuated chain of possibilities."[82] Most importantly, his alleged injury is not redressable with the monetary damages sought here even if this Court agrees that any defendant procured a fraud upon the court.[83]

49. Throughout his Amended Complaint, Mr. Van Deelen asserts that he detrimentally relied upon the "false representations" of Jackson Walker as to their disinterested status and "the reasonableness and appropriateness of fees" paid from the bankruptcy estate, which ultimately reduced "the estate that was available to pay creditors such as Plaintiff."[84]

50. Mr. Van Deelen's injury is completely hypothetical, conjectural and wrong. Neither McDermott, the Debtors, nor the bankruptcy estates owed money to Mr. Van Deelen, nor did the Plan award him any distribution from the bankruptcy estates. Why? Because he was not a creditor; he was an out of the money equity shareholder who held non-preferential shares. Under the Plan, Mr. Van Deelen was not entitled to receive any distribution—a detail that "had been worked out between McDermott and its creditors *prior to* the Chapter 11 filing"[85] and *prior to* any alleged false representations by Jackson Walker.

---

[82] *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013).

[83] *In re Martin*, 617 B.R. 866, 880 (Bankr. S.D. Miss. 2020) (holding that Chapter 13 Trustee had standing to assert a fraud upon the court claim, for which the only permissible release is to set aside a judgment.).

[84] Amend. Compl. ¶ 149.

[85] Dkt. 939, p. 9, *In re McDermott International,* 20-30336.

51.     Mr. Van Deelen's Amended Complaint also advances a speculative theory of damages. He surmises that his alleged mental distress and purportedly diminished distributions from the bankruptcy estate will be remedied after this Court orders disgorgement of Jackson Walker's legal fees. Such a legal theory ignores three important realities.

52.     **First**, as an equity shareholder with non-preferential shares, Mr. Van Deelen never had a right to distributions from the bankruptcy estate.[86] Thus, any monies returned to the estate will never go to him. **Second**, the injury he alleges originated from the loss in value of his McDermott shares, not an award of professional fees. The loss of his shares' value is directly traced to McDermott's operations and financial condition before entering bankruptcy and the related Plan, which the company developed before commencing chapter 11 proceedings. **Third**, Mr. Van Deelen's legal theory assumes that the fees in question were inflated and earned only because of alleged fraud or, alternatively, that the Bankruptcy Court would not have awarded such fees to another law firm performing the same tasks. This is purely speculation and amounts to nothing more than a "a highly attenuated chain of possibilities"[87] insufficient to confer standing.

53.     Finally, even if this Court finds that Defendants engaged in a fraudulent scheme as alleged in Mr. Van Deelen's Amended Complaint, such a finding will not return any value to his McDermott shares. Nor will it change his financial posture under the Plan; he still would not receive any distributions from the estate. These certainties mean that his true injury is not redressable—yet another factor that weighs against Constitutional standing and that merits dismissal of the Amended Complaint.

---

[86] *See* Ex. 1; Dkt. 684, p. 133 ¶ 17, *In re McDermott International,* 20-30336.

[87] *Clapper*, 568 U.S. at 410. Notably, neither Mr. Van Deelen nor any other party objected to the reasonableness or necessity of the fees Jackson Walker incurred and sought as part of its final fee application.

**2. Mr. Van Deelen's Amended Complaint is a collateral attack on the Confirmation Order.**

54.     A final confirmation order is *res judicata* as to all justiciable issues which were or could have been decided at the confirmation hearing.[88] In providing that "the provisions of a confirmed plan bind the debtor, any creditor, and any equity security holder," section 1141 "is a statutory bar on relitigation akin to common law preclusion doctrines."[89] Section 1114(a), "like traditional *res judicata*, provides that 'a confirmed plan precludes parties from raising claims or issues that they could have or should have raised before confirmation.'"[90]

55.     Here, Mr. Van Deelen was an active participant in the McDermott Bankruptcy proceedings. Mr. Van Deelen, however, never objected to Jackson Walker's Fee Application, never appealed the Fee Order. He never appealed or sought to amend, modify or revoke the Confirmation Order. Litigation about the appropriateness of the fees awarded to Jackson Walker, therefore, is *res judicata* under both the Fee Order, the Confirmation Order and the Plan. Mr. Van Deelen's relitigation of this issue is little more than an improper collateral attack on such orders and the Plan that bind him.

**3. Mr. Van Deelen's claims are barred by the Plan's release, injunction, and exculpation provisions.**

56.     Article VIII of the Plan also contains release, injunction, and exculpation provisions that explicitly bar this litigation.

57.     The Plan's broad exculpation clause releasing Jackson Walker and Kirkland & Ellis from liability for "any Claims and Causes of Action for any claim related to any act or omission

---

[88] *See* 11 U.S.C. § 1141.

[89] *Matter of LaHaye*, 17 F.4th 513, 519 (5th Cir. 2021)

[90] *Matter of LaHaye*, 17 F.4th at 519 (quoting 8 COLLIER ON BANKRUPTCY § 1141.02 (16th ed. 2021)).

in connection with, relating to, or arising out of" the McDermott Bankruptcy proceeding and all

other actions or omissions before the Effective Date of the Plan:

> **Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur liability for, and each Exculpated Party shall be released and exculpated from any Claims and Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or termination of the Restructuring Support Agreement and related prepetition transactions (including the Superpriority Credit Agreement, the Credit Agreement, the Senior Notes Indenture or Senior Notes, the 2021 LC Agreement, and the Lloyds Letter of Credit Agreement), the Disclosure Statement, the Plan, the DIP Credit Facility, the Exit Facility Documents, the New Warrants Agreements, the Plan Supplement, the Rights Offering, or any**

> **Restructuring Transaction, contract, instrument, release or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), including any Definitive Document, created or entered into before or during the Chapter 11 Cases, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.**

> **The Exculpated Parties and other parties set forth above have, and upon confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

58.     The Plan's plain language releases and exculpates Jackson Walker from all claims

other than those due to actual fraud, willful misconduct, or gross negligence. [91] But the Amended

Complaint fails to specify the alleged material false statements, upon which Mr. Van Deelen's

claims of fraud, RICO, negligent misrepresentation and professional negligence claim all hinge.[92]

Rule 9(b)'s pleading standards and the carve out provision of the exculpation clause—allowing

---

[91] *See also* Ex. 1 p. 155, Art. VIII.A ("Pursuant to section 1141(d) of the Bankruptcy Code, . . . the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims . . . . regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests. . . .").

[92] Amended Compl. at ¶¶ 114 (RICO claim); 134 and 140 (common law fraud); 149 (breach of fiduciary duty); 165 (negligent misrepresentation); 179-181 (negligent misrepresentation); 221 (*Bivens* conspiracy).

for three limited claims—all require specific factual allegations of wrong doing (here, misstatements as alleged in the pleading). But Mr. Van Deelen has failed to provide the specifics that could legally allow this Court to conclude that he has asserted valid claims for fraud or willful misconduct that overcome the Plan's release and exculpation provisions.[93] Thus, this Court should dismiss the Amended Complaint under Rule 12(b)(1).[94]

## B.   Dismissal is also appropriate under Rule 12(b)(6).

59.   To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain enough facts "to state a claim to relief that is plausible on its face."[95] A claim is facially plausible when a plaintiff pleads facts allowing the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[96] A court "must ... accept all factual allegations in the complaint as true" and "must draw all reasonable inferences in the plaintiff's favor."[97] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice to state a claim upon which relief can be granted."[98]

60.   Federal Rules of Civil Procedure 9(b) requires that a party "state with particularity the circumstances constituting fraud" when such a claim is alleged.[99] The Fifth Circuit applies

---

[93] *See e.g., Williams v. WMX Techs. Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (Holding under Rule 9(b), a fraud claim must state "the who, what, when, where, and how".).

[94] Additionally, such fraud or gross negligence claims, even if eventually properly asserted by Mr. Van Deelen in a pleading, are all derivative and belong to the Debtor, McDermott, not him. This is because such allegations are premised upon Jackson Walker's alleged fraud on the court by failing to disclosure disqualifying connections to the Debtor and its estate. As discussed above, Mr. Van Deelen lacks standing to assert such claims even if they fall within the carve out of the release and exculpation provisions in the Plan.

[95] *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 547, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

[96] *Iqbal,* 129 S.Ct. at 1949.

[97] *Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228, 232 (5th Cir. 2009).

[98] *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 177 (5th Cir. 2018) (cleaned up).

[99] Fed. R. Civ. P. 9(b); *see also Benchmark Elec., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) ("Put simply, Rule 9b requires 'the who, what, when, where, and how' to be laid out.").

Rule 9(b) to "'fraud complaints with bite and without apology.'"[100] This particularity requirement exists when "the substance of the allegations" hinge on claims of fraud, not just when a claim is deemed "fraud" in a pleading.[101]

61.     A court considering a Rule 12(b)(6) motion, may refer to matters of public record[102] and may "also consider '[d]ocuments that a defendant attaches to a motion to dismiss ... if they are referred to in the plaintiff's complaint and are central to [his] claim.'"[103] If an allegation is qualified by the contents of an exhibit attached to the pleadings, but the exhibit instead contradicts the allegation, "the exhibit and not the allegation controls."[104] A court may also rely on "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[105]

## 1.     *Bivens* actions can only be asserted against individual government actors.

62.     For more than 30 years, the Supreme Court has refused to extend the tort claim developed in *Bivens v. Six Unknown Named Agents*[106] into new contexts, such as asserting claims against private actors.[107] This is because, in part, there exist other tort remedies a plaintiff can pursue against a private actor for constitutional violations.

---

[100] *United States v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009) (quoting *Williams v. WMX Techs., Inc.,* 112 F.3d 175, 178 (5th Cir. 1997).

[101] *VeroBlue Farms USA, Inc. v. Wulf*, 465 F. Supp. 3d 633, 653 (N.D. Tex. 2020).

[102] *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).

[103] *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016) (alteration in original) (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

[104] *Sligh v. City of Conroe*, 87 F.4th 290, 297–98 (5th Cir. 2023) (internal citations and quotations omitted).

[105] *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308 (2007).

[106] 403 U.S. 388 (1971).

[107] *Ziglar v. Abbassi,* 582 U.S. 120, 135 (2017) (citing *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)).

63.     Mr. Van Deelen's Amended Complaint fails to state a claim upon which relief may be granted because it alleges that private actors—Jackson Walker, Ms. Freeman, and Kirkland & Ellis—conspired to commit the *Bivens* tort. But a *Bivens* claim only exists against individual federal officers, not private citizens.[108] Even when a suit involves federal officers and private citizens, courts have held a *Bivens* conspiracy claim may only be advanced against the federal officers and not the private citizens.[109]

64.     Here, the Amended Complaint alleges a *Bivens* conspiracy involving one federal actor—former Judge Jones—and three private entities. Under the Supreme Court's unequivocal holding in *Malesko*, *Bivens* claims cannot involve private actors as defendants. Because of this, Mr. Van Deelen's conspiracy claim should be dismissed.

65.     Similarly, the Amended Complaint advances a *Bivens* conspiracy claim that rests on a set of underlying facts unrecognized by the Supreme Court. Mr. Van Deelen asserts that Judge Jones violated his Fifth Amendment right to due process by awarding fees to Jackson Walker without disclosing an alleged relationship with Ms. Freeman. Mr. Van Deelen's claim advances a purported Fifth Amendment violation in a new context that the Supreme Court has neither considered nor approved.[110] Because of that, the Amended Complaint's *Bivens* conspiracy claim does not—and cannot—state a claim for which relief can be granted.[111]

---

[108] *Malesko*, 534 U.S. at 68.

[109] *See e.g.*, *Escobar v. Gaines*, No. 3-11-0994, 2013 WL 1344900, *3 (M.D. Tenn. Apr. 1, 2013) ("The Federal Defendants argue that there cannot be a *Bivens* conspiracy because *Bivens* applies only to individual officers. It is true that *Bivens* does not confer a right of action for damages against federal agencies or private entities acting under color of federal law. *Corr. Servs. Corp. v. Malesko,* 534 U.S. 61 (2001). Plaintiffs' allegation of a conspiracy among individuals to violate federal law, however, is still a claim **against the individual officers**.") (emphasis added).

[110] *Butler v. Porter*, 999 F.3d 287, 293 (5th Cir. 2021).

[111] *Id.*; *see also Jackson v. Wray*, No. 3:23-CV-0558-M-BH, 2023 WL 7029378 (N.D. Tex. Sept. 27, 2023), report and recommendation adopted, No. 3:23-CV-0558-M-BH, 2023 WL 7027511 (N.D. Tex. Oct. 24, 2023).

## 2.    Mr. Van Deelen cannot satisfy RICO's required elements.

66.    The Amended Complaint's lengthy narrative spans beyond the McDermott Bankruptcy trying to set the stage for a RICO claim under 18 U.S.C. § 1962(c) and a RICO conspiracy under 18 U.S.C. 1962(d).[112] The Amended Complaint fails to state a claim upon which relief can be granted because the basic elements of RICO are not met and Mr. Van Deelen lacks standing under RICO.

67.    Fifth Circuit precedent bars Mr. Van Deelen's RICO conspiracy and RICO claims on at least five separate grounds, each of which the Fifth Circuit has held as the basis for dismissal of a RICO claim at the Rule 12(b)(6) motion stage.

68.    A RICO claim has two elements that must be satisfied from the outset: (1) injury to business or property (RICO standing) and (2) causation.[113] If a plaintiff has not suffered damages or the damages asserted are speculative, the plaintiff lacks standing to sue under RICO.[114]

69.    To establish a claim under § 1962(c), a plaintiff must also show: "(1) the existence of an enterprise that affects interstate or foreign commerce, (2) that the defendant was employed by or associated with the enterprise, (3) that the defendant participated in the conduct of the enterprise's affairs, and (4) that the participation was through a pattern of racketeering activity."[115] For the existence of a pattern of racketeering activity the plaintiff must show two or more related predicate offenses that amount to or pose a threat of continued criminal activity.[116]

---

[112] As a former equity owner in McDermott who lacks standing as addressed above, Mr. Van Deelen equally lacks standing to assert alleged wrongful acts that occurred in other bankruptcy cases in which Mr. Van Deelen was neither a creditor, equity owner, nor other party in interest.

[113] *Price v. Pinnacle Brands, Inc.* 138 F.3d 602, 607 (5th Cir. 1998).

[114] *In re Taxable Mun. Bond Sec. Litig.*, 51 F. 3d 518, 521 (5th Cir. 1995).

[115] *United States v. Delgado*, 401 F.3d 290, 297 (5th Cir. 2005) (internal quotations omitted).

[116] *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996) (citing *H.J. Inc. v. Nw. Bell Tel., Co.,* 492 U.S. 229, 239 (1989)); 18 U.S.C. § 1961(5).

70.     To establish a *prima facie* RICO conspiracy claim under § 1962(d), "[a plaintiff] must establish (1) that two or more people agreed to commit a substantive RICO offense and (2) that the defendant knew of and agreed to the overall objective of the RICO offense."[117] "[B]ecause the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement."[118]

        **a.**   **Mr. Van Deelen cannot establish standing for a RICO claim because he suffered no actual injury to his business or property.**

71.     The Fifth Circuit has unequivocally held that when a plaintiff lacks damages to his property or business, no injury is sustained, and that plaintiff cannot pursue a RICO claim.[119] Thus, a plaintiff must demonstrate "concrete financial loss"[120] from the complained of conduct. Alleged mental anguish, as alleged in the Amended Complaint, will not meet this standard.

72.     For example, the Fifth Circuit held that no injury to business or property existed when a farmer claimed he lost an opportunity to obtain an agricultural loan.[121] In the case of *In re Taxable Municipal Bond Securities Litigation*, the Fifth Circuit concluded that a plaintiff-farmer could not establish the damages prong of RICO because: 1) he was never eligible for a state loan program; and 2) the lost "opportunity" to obtain a loan under the defunct program was too speculative an injury to constitute damages for purposes of a claim under § 1962(c).[122]

---

[117] *Delgado*, 401 F.3d at 296 (quotations omitted).

[118] *Crowe v. Henry*, 43 F.3d 198, 206 (5th Cir. 1995) (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1140 (5th Cir. 1992)).

[119] 18 U.S.C. § 1964(c); *In re Taxable Mun. Bond Sec. Litig.*, 51 F.3d at 521–22; *see also Hughes v. Tobacco Institute, Inc.*, 278 F.3d 417, 422 (5th Cir. 2001).

[120] *Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 492, n.16 (5th Cir. 2003).

[121] 51 F.3d at 522–23.

[122] *In re Taxable Mun. Bond Sec. Litig.*, 51 F.3d at 521.

73.     Mr. Van Deelen alleges that Jackson Walker's conduct "enriched" Jackson Walker "at the expense of the bankruptcy estate and creditors, such as Plaintiff."[123] He also claims that because of the Fee Order, "Plaintiff's financial recovery as a bankruptcy creditor was reduced because the bankruptcy estate available to pay creditors, including Plaintiff, was diminished."[124]

74.     Putting aside these wrong factual conclusions, Fifth Circuit precedent is clear:[125] Mr. Van Deelen cannot recover for the purported deprivation of "the opportunity to have bankruptcy proceedings determined on the merits free from the influence of interested parties."[126]

75.     Mr. Van Deelen has not suffered any damage to his property or business because of the purported RICO enterprise or conduct. Contrary to the Amended Complaint's prose, Mr. Van Deelen is not a creditor of the Debtor, the bankruptcy estate, nor the reorganized corporation. Instead, he was simply "a shareholder of McDermott International, Inc".[127] Mr. Van Deelen's "financial recovery" from the bankruptcy proceedings was thus not impacted by the size of the bankruptcy estate or Jackson Walker's fee award. Like the farmer-plaintiff with no substantive RICO injury,[128] Mr. Van Deelen was never eligible for distributions from the bankruptcy estate. For that reason, Mr. Van Deelen, as a former shareholder, would not be entitled to any distribution from the McDermott bankruptcy estate even if Jackson Walker is ordered to return any fees.[129]

---

[123] Amend. Compl. ¶ 96.

[124] Amend. Compl. ¶ 96.

[125] *In re Taxable Mun. Bond Sec. Litig.*, 51 F. 3d at 523. ("At best, Anderson's suit shows only a lost opportunity to obtain a NIFA loan. Such lost opportunity by itself does not constitute an injury that confers standing to bring a RICO cause of action. Likewise, because the alleged injury is speculative and does not show a conclusive financial loss, we hold that Anderson's RICO suit fails for lack of standing.").

[126] *Id.*

[127] Amend. Compl. ¶ 6.

[128] *In re Taxable Mun. Bond Sec. Litig.*, 51 F. 3d at 523.

[129] *See supra* Section IV, parts 2, 3, 4; *see also* Ex. 1, Dkt. 684, pp. 127, 133 at ¶ 17, *In re McDermott International*, 20-30336.

Thus, Mr. Van Deelen can never evidence injury to his business or property and thus lacks standing to assert his RICO and RICO conspiracy claims.

> **b.    Mr. Van Deelen does not establish necessary predicate criminal acts for a RICO claim.**

76.    For a valid RICO claim, a complaint must rest upon factual allegations that demonstrate the existence of two related predicate criminal acts. Here, the Amended Complaint alleges five predicate crimes: wire and mail fraud, violation of honest services, obstruction of justice, and bankruptcy fraud. The crux of each alleged predicate criminal act is Jackson Walker's "repeated representations of disinterestedness and failure to disclose the intimate relationship between Judge Jones and Freeman"[130] and Jackson Walker's award of attorney's fees for the work it performed in the McDermott bankruptcy proceeding. The Amended Complaint characterizes these acts as material, false representations made as part of a scheme.

77.    Even if this Court were to conclude that Jackson Walker misled the Bankruptcy Court in the McDermott proceedings, or had wrongly received fees, this does not "rise to the level of a criminal act for RICO purposes."[131] The Fifth Circuit in *St. Germain v. Howard*[132] held that when the "heart" of a RICO claim's alleged crime hinges on lawyers fraudulently obtaining fees, such conduct did not constitute "patterns of racketeering activity".[133] Rather, that conduct is, "at worst [a] violation[] of the rules of professional responsibility."[134] The Amended Complaint's allegations about Jackson Walker obtaining fees is akin to the lawyers' conduct in *St. Germain* and *Jones*, and therefore fails to establish the predicate criminal acts necessary for a RICO claim.

---

[130] Amend. Compl. ¶ 114.

[131] *Jones v. Herrman & Herrman, PLLC*, No. 2:22-CV-00079, 2023 WL 6064790, at *5 (S.D. Tex. Mar. 28, 2023).

[132] 556 F.3d 261 (5th Cir. 2009).

[133] *St. Germain v. Howard*, 556 F.3d 261, 263–64, n.1 (5th Cir. 2009).

[134] *Id.* at 263.

78.     Mr. Van Deelen's conclusory allegations also lack any grounding in concrete facts to establish the elements of the predicate crimes. Nowhere in the Amended Complaint does Mr. Van Deelen allege facts that show Jackson Walker knew of the alleged relationship prior to moving for, and being awarded, attorney's fees. Ms. Freeman has also denied that Jackson Walker knew of an alleged relationship during that time.[135] And, recent filings in Bankruptcy Court directly refute Mr. Van Deelen's conclusory assumptions.[136] Additionally, the Amended Complaint cites to various court filings[137] establishing that Jackson Walker first heard of a potential relationship from Mr. Van Deelen, whose credibility could reasonably be questioned, in March 2021—long after the McDermott Bankruptcy closed. When Jackson Walker questioned Ms. Freeman about the allegations, she affirmatively denied the existence of an intimate relationship.[138] In short, to the extent Ms. Freeman and Judge Jones had a relationship that they kept secret at any relevant time, Jackson Walker was unaware and was misled by Ms. Freeman. Such facts rebut the Amended Complaint's misguided notion that Jackson Walker made material misstatements during the McDermott proceedings.

---

[135] *See* Dkt. 45 at p. 3, ¶ 3, *Van Deelen v. Jones*, No. 4:23-cv-03729.

[136] *In re Chesapeake Exploration, L.L.C.*, No. 20-33239, (Bankr. S.D. Tex.). Even the U.S. Trustee has described the relationship between Ms. Freeman and former Judge Jones—whenever it existed and to whatever extent it existed—as a "secret" relationship among them. *See, e.g., United States Trustee's Objection to First and Final Fee Application of the Law Office of Liz Freeman for Allowance and Payment of Fees and Expenses as Co-Counsel and Conflicts Counsel to the Debtors for the Period from January 31, 2023 through June 16, 2023*, filed in *In re IEH Auto Parts Holding LLC, et al.*, Case No. 23-90054 (CML) [Dkt. 1049, ¶ 33] ("Ms. Freeman had a ***secret*** relationship with Judge Jones . . . .") (emphasis added).

[137] Dkt. 4516, ¶¶ 2, 13–17, *In re Chesapeake Exploration, L.L.C.*, No. 20-33239.

[138] See Ex. 3, Dkt. 4516, ¶¶ 2, 13–17 and Ex. 4, Dkt. 4516-1; *In re Chesapeake Exploration, L.L.C.*, No. 20-33239.

### c.   Mr. Van Deelen does not establish a separate alleged enterprise or an organization with hierarchy or structure.

79.   A valid RICO claim must establish an enterprise that is an "entity separate and apart" from the pattern of activity in which it engages."[139] An enterprise is a group of persons or entities associating together for the common purpose of engaging in a course of conduct.[140] The enterprise may be a legal entity or "any union or group of individuals *associated in fact* although not a legal entity."[141] The plaintiff alleging an association-in-fact enterprise must adduce evidence demonstrating "'an ongoing organization, formal or informal, and . . . evidence that the various associates function as a continuing unit.'"[142] The enterprise is <u>not</u> the pattern of racketeering activity alleged but must exist separate and apart from the racketeering activity in which it purportedly engages.[143]

80.   Section 1962(c) prohibits the conduct of an enterprise's affairs through a pattern of racketeering activity. A plaintiff "must plead specific facts which establish that the association exists for purposes other than simply to commit the predicate acts."[144] Thus, a plaintiff asserting a claim under this section must demonstrate that the enterprise is distinct from the series of predicate acts constituting the alleged racketeering activity <u>and</u> that the RICO "person" who commits the

---

[139] *Atkinson v. Anadarko Bank & Trust Co.*, 808 F.2d 438, 441 (5th Cir. 1987), *cert. denied*, 483 U.S. 1032 (1987); *see also Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003).

[140] *United States v. Turkette,* 452 U.S. 576, 583 (1981).

[141] 18 U.S.C. § 1961(4) (emphasis added).

[142] *Atkinson v. Anadarko Bank & Trust Co.*, 808 F.2d 438, 439–40 (5th Cir. 1987) (quoting *Turkette,* 452 U.S. at 583).

[143] *Id.* at 441.

[144] *Allstate Ins. Co. v. Benhamou*, 190 F. Supp. 3d 631, 650 (S.D. Tex. 2016).

predicate acts is distinct from the enterprise.[145] A RICO enterprise also "must function as a continuing unit as shown by a hierarchical or consensual decision making structure"[146] over time.

81.     Mr. Van Deelen's Amended Complaint articulates an enterprise[147] that exists only to engage in the predicate acts complained of: to "utilize the intimate relationship between" Judge Jones and Ms. Freeman to "enrich [Ms.] Freeman, Jackson Walker, and Kirkland & Ellis."[148] Notably, the existence of the alleged enterprise—2018 to Fall 2023—directly coincides with the alleged pattern of racketeering activities.[149]

82.     The Amended Complaint is devoid of any facts demonstrating how the enterprise functioned or existed separate and apart from the alleged plan of obtaining attorney's fees by law firms that had purportedly failed to disclose conflicts of interest. These allegations are insufficient to assert a RICO claim.[150] Similarly, the Amended Complaint is devoid of any details of the enterprise's purported organization, hierarchy, or how the association functioned other than lawyers engaging in the normal course of business. Thus, the Amended Complaint fails to assert a RICO claim for which relief can be granted.

### d.     Mr. Van Deelen does not establish damages or proximate cause.

83.     Section 1964(c) also requires that a plaintiff's compensable injury be "by reason of" the alleged substantive violations. In *Holmes v. Securities Investor Protection Corp.*,[151] the Supreme Court announced that proximate cause governed civil RICO actions, explaining the

---

[145] *Whelan*, 319 F.3d at 229.

[146] *Allstate Ins. Co. v. Planbeck*, 802 F.3d 665, 673 (5th Cir. 2015).

[147] The "Jones-Freeman-Jackson Walker-Kirkland & Ellis Enterprise". Amend. Compl. ¶ 90.

[148] Amend. Compl. ¶ 87.

[149] *Id*. ¶¶ 85, 89, 94.

[150] *Zastrow v. Houston Auto Imps. Greenway Ltd.*, 789 F.3d 553, 562 (5th Cir. 2015) (internal quotations and citations omitted).

[151] 503 U.S. 258 (1992).

language of § 1964(c) required "some direct relation between the injury asserted and the injurious conduct alleged."[152] "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries."[153]

84.     Mr. Van Deelen does not—and cannot—establish these necessary elements.

85.     Similarly, the Amended Complaint cannot establish that the Fee Order (which Mr. Van Deelen did not object to or appeal in the McDermott Bankruptcy) was the proximate cause of Mr. Van Deelen's alleged harm. The Confirmation Order and Plan cancelled and extinguished *all* common equity shares in McDermott, including Mr. Van Deelen's.[154] There is no link—direct or indirect—between the diminished value of Mr. Van Deelen's shares and Jackson Walker's fees. Indeed, Mr. Van Deelen's common equity shares lost their value *before* the bankruptcy filing and *before* Jackson Walker sought attorney's fees. Even if Mr. Van Deelen was entitled to an award from the bankruptcy estate (which he is not) the idea that he would receive a greater distribution (or any distribution) if another law firm had represented McDermott is based on an attenuated chain of events resting on a speculative outcome and is simply wrong.

86.     The Amended Complaint has not, nor can it, establish that Mr. Van Deelen suffered any damage to his business or property due to the alleged conduct. Similarly, the damages theory advanced fails to establish that the purported lack of disclosure and the Fee Order proximately caused the devaluing of Mr. Van Deelen's stock (as it did not). Because of this, dismissal under Rule 12(b)(6) is proper.

---

[152] *Id.* at 269.

[153] *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).

[154] Ex. 1, Dkt. 684, p. 133, ¶ 17, *In re McDermott International*, 20-30336.

### e.    Mr. Van Deelen does not establish the existence of a conspiracy.

87.    To prove a RICO conspiracy under § 1962(d), "[a plaintiff] must establish (1) that two or more people agreed to commit a substantive RICO offense and (2) that the defendant knew of and agreed to the overall objective of the RICO offense."[155] At the "core of a RICO civil conspiracy is an agreement to commit predicate acts," thus, a complaint asserting this claim "at the very least, must allege specifically such an agreement.'"[156] And, as with any conspiracy claim, the complaint must plead facts that establish the *prima facie* elements of a RICO claim.[157]

88.    Here, Mr. Van Deelen's RICO conspiracy claim fails on that basis alone: the Amended Complaint cannot establish the predicate acts or various elements for RICO. Because the Amended Complaint cannot establish the necessary elements of a RICO claim, a RICO conspiracy cannot exist.

89.    The Amended Complaint also fails to put forth any facts detailing an agreement between Jackson Walker or any of the Defendants. The uncontested facts establish that Jackson Walker was unaware of any allegation of any intimate relationship until March 2021—months *after* entry of the Confirmation Order, the Plan, and the Fee Order. The Amended Complaint contains no facts—just conclusory allegations—of how Jackson Walker entered into an agreement with any other Defendant to further the purported aims of the conspiracy. Because of that, the Amended Complaint fails to state a claim for which relief can be granted and should be dismissed.

---

[155] *United States v. Delgado*, 401 F.3d 290, 296 (5th Cir. 2005) (internal quotations omitted).

[156] *Crowe v. Henry*, 43 F.3d 198, 206 (5th Cir. 1995) (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1140 (5th Cir. 1992)).

[157] *See Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996); *In re Burzynski*, 989 F.2d 733, 741–42 (5th Cir. 1993).

### 3. The attorney immunity doctrine prohibits Mr. Van Deelen's tort claims (applicable to Counts III - IX and XII).

90.     The Amended Complaint asserts[158] no fewer than seven claims based on Texas common law standards—all of which are barred under Texas' attorney immunity doctrine.[159] Lawyers and law firms in Texas are generally immune from third-party liability for legal services provided in the representation of a client.[160]

91.     Attorney immunity is an affirmative defense "intended to ensure loyal, faithful, and aggressive representation by attorneys employed as advocates."[161] This immunity is "properly characterized as a true immunity from suit, not as a defense to liability."[162]

92.     Within the Fifth Circuit, a Rule 12(b)(6) motion may be granted on a successful affirmative defense if that defense appears on the face of the complaint.[163] "[A]n attorney seeking dismissal based on attorney immunity bears the burden of establishing entitlement to the defense."[164]

93.     Describing the defense, the Texas Supreme Court has held:[165]

> [A]ttorney immunity protects an attorney against a non-client's claim when the claim is based on conduct that (1) constitutes the provision of "legal" services involving the unique office, professional skill, training, and

---

[158] Amend. Compl. at Counts III through IX, and XII.

[159] Similarly, all of Mr. Van Deelen's Texas tort claims here are also barred by the judicial-proceedings privilege, which covers statements made by judges, jurors, parties, or witnesses and attaches to all portions of proceedings "including statements made in open court, pre-trial hearings, depositions, affidavits and any of the pleadings or other papers in the case." *Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 46 (Tex. 2021). The privilege is broad and "prohibits any tort litigation based on the content of the" communications the Amended Complaint puts at issue. *Id.* (quoting *Collins v. Zolnier*, No. 09-17-00418-CV, 2019 WL 2292333, at *3 (Tex. App.—Beaumont May 30, 2019, pet. denied).

[160] *Haynes and Boone, LLP v. NFTD, LLC*, 631 S.W.3d 65 (Tex. 2021).

[161] *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015) (internal quotation omitted).

[162] *Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341, 346 (5th Cir. 2016).

[163] *Kelly v. Nichamoff*, 868 F.3d 371, 375 (5th Cir. 2017).

[164] *Id.*

[165] *Haynes and Boone*, 631 S.W.3d at 78.

authority of an attorney *and* (2) the attorney engages in to fulfill the attorney's duties in representing the client within an adversarial context in which the client and the non-client do not share the same interests and therefore the non-client's reliance on the attorney's conduct is not justifiable.

94.     This defense is applicable in "all adversarial contexts in which an attorney has a duty to zealously and loyally represent a client, including a business-transactional context."[166]

95.     The Texas Supreme Court has repeatedly held that the doctrine provides immunity to lawyers engaging in their duties as counsel even when accused of criminal conduct, fraud or misconduct by a third party.[167] This doctrine depends on "the *kind* of conduct at issue rather than the *alleged wrongfulness* of said conduct."[168] If the conduct falls within the ambit of client representation and "requires the office, professional training, skill, and authority of an attorney," then it will be found within the doctrine's bounds.[169]

96.     For example, in *Cantey Hanger*, a plaintiff in a divorce proceeding alleged that lawyers who had represented her defendant-husband committed fraud by falsifying a bill of sale that negatively impacted her divorce proceedings.[170] The Supreme Court held the attorney immunity doctrine prohibited the claim because "even conduct that is wrongful in the context of the underlying suit is not actionable if it is part of the discharge of the lawyer's duties in representing his or her client."[171]

---

[166] *Id*. at 67.

[167] *See e.g.*, *Bethel v. Quiling, Selander, Lownds, Winslett & Moster, P.C.*, 595 S.W.3d 651, 654 (Tex. 2020).

[168] *Haynes and Boone*, 631 S.W.3d at 76 (quoting *Youngkin v. Hines*, 546 S.W.3d 675, 681 (Tex. 2018).

[169] *Id*. (internal citations and quotations omitted).

[170] *Cantey Hanger*, 467 S.W.3d at 479–80.

[171] *Id*. at 481 (internal quotations and citations omitted).

97.     The Texas Supreme Court reached a similar conclusion in *Youngkin v. Hines*,[172] where a litigant accused opposing counsel of fraudulently entering into a settlement agreement, and then preparing fraudulent deeds that deprived the non-client of property.[173] The Texas Supreme Court again held that application of attorney immunity depends on "the *kind* of conduct at issue rather than the *alleged wrongfulness* of said conduct."[174] This is because the "defense exists to promote 'loyal, faithful, and aggressive representation' by attorneys, which it achieves, essentially, by removing the fear of personal liability."[175] Thus the immunity applies when a non-client's claim contests attorney conduct "within the scope of his representation of his clients," instead of behavior "outside the scope of his representation of his client" or "foreign to the duties of a lawyer."[176]

98.     Here, Mr. Van Deelen has argued that his injury stems from Jackson Walker's representation of the Debtors in the McDermott Bankruptcy proceedings and counsel's filing of various pleadings in which they allegedly failed to disclose purported conflicts of interest.[177] According to the Amended Complaint, these filings include Jackson Walker's application to serve as counsel and its fee application. Mr. Van Deelen also complains of Jackson Walker's representation of other clients in other bankruptcy proceedings before former Judge Jones and of the firm's conduct in various bankruptcy-related proceedings of which Mr. Van Deelen was neither a creditor, equity owner, nor even party-in-interest.

---

[172] 546 S.W.3d 675 (Tex. 2018).

[173] *Id*. at 678–79.

[174] *Id*. at 681.

[175] *Id*. at 682 (quoting *Cantey Hanger*, 467 S.W.3d at 481).

[176] *Id*. at 681–82 (internal quotations and citations omitted).

[177] Amend. Compl. ¶¶ 5, 41, 42.

99. The Amended Complaint's description of events—whether one accepts as true or recognizes the Amended Complaint's logical gaps—evidence how the complained of conduct cannot lay the foundation for claims upon which this Court can grant relief. Jackson Walker's conduct was part of the firm's discharge of its duties in representing the Debtor in the underlying bankruptcy proceeding. Completing bankruptcy applications and pleadings, appearing at hearings to represent the Debtor's interests, seeking court approval of the Plan and an award of professional fees, all fall "within the ambit of client representation and requires the office, professional training, skill, and authority of an attorney."[178] The conduct is protected by the attorney immunity doctrine and may not serve as the basis for claims asserted by Mr. Van Deelen, a non-client.

100. The Amended Complaint also bears similarities to the one considered by the Texas Supreme Court in *Bethel*,[179] in which a non-client sued a law firm for fraud, trespass to chattel, and conversion. In that case, the petition specified allegations about how the law firm had destroyed evidence in the underlying wrongful death litigation—the plaintiff took issue with the way the law firm had tested evidence during discovery.[180] But the Supreme Court concluded that such conduct had occurred in conjunction with the law firm's work and had involved providing legal services, which made the attorney immunity doctrine applicable.

101. This Amended Complaint, as in *Bethel*, complains of similarly protected conduct:

- Jackson Walker secured its appointment as Debtor's counsel in the McDermott bankruptcy proceeding;[181]

- Jackson Walker filed statements of disinterestedness in the McDermott bankruptcy proceeding;[182]

---

[178] *Haynes and Boone*, 631 S.W.3d at 76.

[179] *Bethel,* 595 S.W.3d at 653–54.

[180] *Id*. at 658.

[181] Amend. Compl. ¶ 43.

[182] Amend. Compl. ¶ 41.

- Jackson Walker sought orders pertaining to McDermott's reorganization and the firm's professional fees;[183] and

- Jackson Walker and Ms. Freeman represented other bankruptcy clients during mediations before Judge Jones.[184]

102. These actions are like the law firm's conduct in *Bethel* in which the purported fraud and criminal activity centered on acts constituting the provision of legal services to a client.[185] Jackson Walker rejects the Amended Complaint's accusations of fraud and alleged wrongdoing. But even if this Court accepts those theories as true at this stage, Jackson Walker's conduct is *still* protected by the attorney immunity doctrine. This is because the actions complained of were "taken in connection with representing a client in litigation."[186] The attorney immunity doctrine bars the Amended Complaint's Texas law tort claims, and those claims should be dismissed under Rule 12(b)(6).

### 4. The Bankruptcy Court retains exclusive jurisdiction over Mr. Van Deelen's claims.

103. On March 14, 2020, the Bankruptcy Court issued its Confirmation Order approving and confirming the McDermott Plan for reorganization. No party, including Mr. Van Deelen, appealed or sought to modify the Confirmation Order at any time.[187] Thus, the Confirmation Order is a final, enforceable order.[188]

104. The Confirmation Order and Plan bind every individual and entity—including Mr. Van Deelen—that holds a claim or interest in the reorganization, "regardless of whether they assert

---

[183] Amend. Compl. ¶ 44.

[184] Amend. Compl. ¶ 54, n.87.

[185] *Bethel*, 595 S.W.3d at 657–58.

[186] *Id. at* 658 (quoting *Cantey Hanger*, 467 S.W.3d at 481).

[187] *See* Ex. 5. Docket for *In re McDermott International*, 20-30336.

[188] Indeed, the Confirmation Order cannot be challenged at this point. 11 U.S.C. § 1144 (providing that a confirmation order can only be revoked if done within 180 days and "if and only if such order was procured by fraud").

those interests before the bankruptcy court."[189] Additionally, pursuant to the Confirmation Order, the Bankruptcy Court retains "exclusive jurisdiction over **all matters** arising out of, or relating to" McDermott's Chapter 11 case or the Plan.[190]

105.     Mr. Van Deelen's Amended Complaint arises from conduct that occurred during the McDermott Bankruptcy proceedings. These claims and the relief Mr. Van Deelen seeks—disgorgement and forfeiture of professional fees, and declaratory orders finding a breach of counsel's duties—fall exclusively within the scope of the Confirmation Order and Plan. In addition to the Confirmation Order, the Bankruptcy Court issued a final enforceable order providing, in relevant part: that "[a]ny further state court litigation brought by Mr. Van Deelen regarding McDermott or these proceedings should be removed immediately to this Court."[191]

106.     For these reasons, if any of Mr. Van Deelen's claims survive, this dispute must be brought in the first instance before the Bankruptcy Court.

---

[189] *Matter of LaHaye*, 17 F.4th 513, 517–18 (5th Cir. 2021); *see also* 11 U.S.C. § 1141(a) ("the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.").

[190] *See* Ex. 1, Dkt. 684, p. 163, Article XI ("Retention of Jurisdiction"), *In re McDermott International*, 20-30336.

[191] Ex. 6, Dkt. 81, p. 13, *In re McDermott International*, 20-30336.

### 5. Additional Reasons to Dismiss.

#### a. Five claims are time-barred.

107. Rule 12(b)(6) dismissal is also appropriate because five of Mr. Van Deelen's claims are time-barred,[192] namely negligent misrepresentation;[193]professional negligence;[194] common law civil conspiracy;[195] unjust enrichment;[196] and *Bivens* conspiracy claim.[197]

108. Mr. Van Deelen's claims began accruing *at the latest* as of March 6, 2021, when he emailed a Jackson Walker partner about allegations of a relationship between Ms. Freeman and Judge Jones. Mr. Van Deelen filed his original complaint against Judge Jones on October 4, 2023. He then named Jackson Walker as a defendant on January 11, 2024. He filed both complaints more than two years after March 6, 2021. Because Mr. Van Deelen's claims for negligent misrepresentation, professional negligence, common law civil conspiracy, unjust enrichment, and *Bivens* conspiracy are all time-barred, this Court should dismiss these claims.

#### b. Jackson Walker did not owe Mr. Van Deelen a legal duty.

109. An attorney owes a duty of care *only* to those with whom the attorney has a professional attorney-client relationship. The parties must explicitly agree to that relationship, or by their conduct, have manifested an intention to create this relationship.[198] An attorney does not owe a duty to a non-client and is not liable to a nonclient for damages resulting from the negligent

---

[192] *Jones v. Bock*, 549 U.S. 199, 215 (2007) ("If the allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim . . . .").

[193] *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 202 (Tex. 2011); Tex. Civ. Prac. & Rem. Code § 16.003(a).

[194] *Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 120 (Tex. 2001).

[195] *Acad. of Allergy & Asthma in Primary Care v. Quest Diagnostics, Inc.*, 998 F.3d 190, 201 (5th Cir. 2021).

[196] *Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 870 (Tex. 2007).

[197] *Pena v. United States*, 157 F.3d 984, 987 (5th Cir. 1998) (statute of limitations on *Bivens* claim brought in Texas is two years); *In re Intercontinental Terminals Co., LLC, Deer Park Fire Litig.*, No. 4:19-CV-01460, 2023 WL 4209867, at *8 (S.D. Tex. June 27, 2023) (conspiracy is a derivative tort)).

[198] *Span Enterprises v. Wood*, 274 S.W.3d 854, 858 (Tex. App.—Hous. [1 Dist.] 2008, no pet.).

41

performance of legal services for a client.[199] Because Mr. Van Deelen was not Jackson Walker's

client, Jackson Walker did not owe Mr. Van Deelen a legal duty that gave rise to a cause of action.

### c. Mr. Van Deelen cannot prove justifiable reliance, detrimental reliance, or pecuniary harm.

110.     Negligent misrepresentation is a business-related tort.[200] To establish a claim for

relief, a litigant must show (1) the defendant made a representation to the plaintiff in the course of

the defendant's business or in a transaction in which the defendant had a pecuniary interest; (2)

the defendant supplied false information for the guidance of others; (3) the defendant did not use

reasonable care in obtaining or communicating the information; (4) the plaintiff justifiably relied

on the representation; and (5) the defendant's negligent misrepresentation proximately caused the

plaintiff a pecuniary injury.[201]

111.     *First,* Mr. Van Deelen's relationship with McDermott and Jackson Walker was

adversarial from its outset. The Bankruptcy Court filings demonstrate that McDermott and Mr.

Van Deelen did not share the same interests and that Mr. Van Deelen's shares were extinguished

under the Plan. Because the alleged misrepresentations occurred in an adversarial context, Mr. Van

Deelen's reliance, if any, was not justified.[202] *Second*, Mr. Van Deelen has asserted no facts, nor

can he, that he acted in reliance upon the alleged false representations made by Jackson Walker.

*Third,* Jackson Walker's purported failure to disclose conflicts impacted the Debtor, *not* Mr. Van

Deelen. Because Mr. Van Deelen cannot establish an essential element, his negligent

misrepresentation, common law fraud and fraudulent conspiracy claims should be dismissed.

---

[199] *Barcelo v. Elliott*, 923 S.W.2d 575, 577 (Tex. 1996).

[200] *See* Restatement Second, Torts § 552, comment a.

[201] *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653–54 (Tex. 2018) (quoting *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1992)).

[202] *See Haynes and Boone*, 631 S.W.3d at 78; *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 794 (Tex. 1999).

### d.   Jackson Walker was not unjustly enriched.

112.   The Amended Complaint contends that professional fees were improperly awarded to Jackson Walker thereby diminishing Mr. Van Deelen's recovery under the Plan.[203] Mr. Van Deelen cannot show that any funds Jackson Walker received rightfully belonged to him, nor can he demonstrate that he is somehow in a *worse* position than he would have been absent Jackson Walker's alleged conduct. The Plan extinguished the value of Mr. Van Deelen's common equity shares. Even if the fees previously awarded to Jackson Walker were returned to McDermott, Mr. Van Deelen would recover nothing. Additionally, there is no dispute, and Mr. Van Deelen has not even asserted (nor did he object to Jackson Walker's Fee Application), that Jackson Walker did not perform the legal services for which it was paid in the McDermott Bankruptcy. Nor is there any dispute that such work constituted reasonable, necessary and beneficial services to the estate

113.   Because of this, the Court should dismiss his unjust enrichment claim as a matter of law.

### e.   Mr. Van Deelen's *respondeat superior* claim fails.

114.   To hold a defendant vicariously liable, the plaintiff must prove that he was injured because of a tort.[204] There can be no vicarious liability absent an underlying tort. Plainly, Mr. Van

---

[203] As an initial matter, it is unclear whether unjust enrichment is a valid separate cause of action in Texas, or rather a quasi-contractual, restitution doctrine based on principles of equity. Regardless, its purpose is to place an aggrieved plaintiff in the position he occupied prior to his dealings with the defendant. *Ed & F Man Biofuels Ltd. v. MV FASE*, 728 F. Supp. 2d 862, 869 (S.D. Tex. 2010); *see also Hancock v. Chicago Title Ins. Co.*, 635 F. Supp. 2d 539, 560–61 (N.D. Tex. 2009) ("The Supreme Court of Texas and other courts still occasionally refer to an 'unjust enrichment claim.' These opinions do not, however, characterize unjust enrichment as a separate cause of action from money had and received; they consider it to be a general theory of recovery for an equitable action seeking restitution.") (citing *Elledge v. Friberg–Cooper Water Supply Corp.,* 240 S.W.3d 869 (Tex. 2007)); *HECI Exploration Co. v. Neel*, 982 S.W.2d 881 (Tex. 1998)); *Mowbray v. Avery*, 76 S.W.3d 663, 680 (Tex. App.—Corpus Christi–Edinburg 2002, pet. denied) ("Although the [Supreme Court of Texas] in *HECI* refers to 'the cause of action' of unjust enrichment, it also refers to unjust enrichment as a 'remedy,' 'basis for recovery,' and speaks of a 'cause of action *based on*' unjust enrichment. We do not see these statements as recognition of unjust enrichment as an independent cause of action, but simply as a reiteration of the well-established principle that a suit for restitution may be raised against a party based on the theory of unjust enrichment.").

[204] *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 296 (Tex. 2011); *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 617–18 (Tex. 1999).

Deelen has failed to state a claim for any tort, whether intentional or negligent. Without establishing such torts, he cannot establish the *respondent superior* claim against Jackson Walker. Because Mr. Van Deelen cannot establish this basic element of *respondent superior*, this claim too should be dismissed.

## C.   Mr. Van Deelen's claims should be dismissed with prejudice.

115.   For the numerous reasons discussed above, leave to amend should not be allowed as any such amendment would be futile.[205] There are no means by which Mr. Van Deelen can assert a valid claim against Jackson Walker based on the McDermott Bankruptcy or Jackson Walker's fee awards entered in that case or in any other bankruptcy case. No matter how Mr. Van Deelen couches facts, he will never be able to overcome the realities that:

- He was an out of the money equity shareholder to whom Jackson Walker owed no duty and to whom McDermott owed no money, and he cannot articulate any individualized, particularized harm or damages proximately or directly caused by Jackson Walker;

- Any tort claim he may assert under Texas law is barred by the attorney-immunity doctrine or judicial-proceedings privileged; and,

- Most federal and Texas tort claims that he has asserted are time-barred.

116.   Mr. Van Deelen cannot rectify these deficiencies. While this Court has the discretion to allow for amendment,[206] such a move is legally unsupported if the amendment would cause undue delay in proceedings or would be futile.[207] Amendment of this pleading would enact both of those harms for Jackson Walker.

---

[205] *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletics Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014). While this Court has the discretion to allow for amendment, such a move is legally unsupported if the amendment would cause undue delay in proceedings or would be futile. *See Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Here, amendment of the Amended Complaint would be both futile and would only serve to delay proceedings.

[206] *Norman*, 19 F.3d at 1021.

[207] *Foman*, 371 U.S. at 182.

## IV.    CONCLUSION

117.    Under Rules 12(b)(1) and 12(b)(6) there exists no valid basis for the Amended Complaint to stand. This motion provides the Court with a myriad of legal grounds upon which the Amended Complaint should be dismissed, not the least of which is Mr. Van Deelen's lack of standing to assert these claims before this Court or any other.

118.    Unfortunately, Mr. Van Deelen is a serial plaintiff with a 30-year-old habit of using litigation to inflict revenge upon foes. Jackson Walker and others witnessed this firsthand in the McDermott Bankruptcy, where Mr. Van Deelen litigated similar claims as those advanced here before the Bankruptcy Court in March 2021. From that past litigation, Mr. Van Deelen knows that the Plan and Confirmation Order bar his newly asserted claims in this case relating to the McDermott Bankruptcy, but for one. And that claim was previously asserted in another form: common law fraud against McDermott officers.[208] The claims advanced here, akin to the ones advanced in 2021, are derivative claims belonging to the Debtor, not Mr. Van Deelen. And, importantly, any newly asserted claims are barred by the statute of limitations and/or the attorney immunity doctrine and, at minimum, should be pursued in the first instance in the Bankruptcy Court which retained jurisdiction.

119.    Jackson Walker, therefore, respectfully seeks for this Court to dismiss the Amended Complaint with prejudice. Jackson Walker also asks that the Court provide any appropriate additional relief appropriate such as an order requiring Mr. Van Deelen and his counsel to reimburse Jackson Walker for its attorneys' fees incurred in responding to the Amended Complaint.

---

[208] The Plan's exculpation clause allows for claims based on actual fraud, gross negligence, and willful misconduct. But as explained above in Section III.A.3, such claims would only belong to the Debtor or entities receiving a distribution from the bankruptcy estate, not a shareholder such as Mr. Van Deelen.

Respectfully submitted,

*/s/ Russell Hardin, Jr.*
**Russell Hardin, Jr.**
  State Bar No. 08972800
  Federal ID 19424

**RUSTY HARDIN & ASSOCIATES, LLP**
5 Houston Center
1401 McKinney, Suite 2250
Houston, Texas  77010
Telephone: (713) 652-9000
Facsimile:  (713) 652-9800
Email: rhardin@rustyhardin.com
**ATTORNEYS FOR DEFENDANT**
**JACKSON WALKER LLP**

**OF COUNSEL**:

**Leah M. Graham**
  State Bar No. 24073454
  Federal ID 2492848
**Jennifer E. Brevorka**
  State Bar No. 24082727
  Federal ID 1725400
**Emily Smith**
  State Bar No. 24083876
  Federal ID 1890677

**RUSTY HARDIN & ASSOCIATES, LLP**
1401 McKinney Street, Suite 2250
Houston, Texas 77010
Telephone: (713) 652-9000
Facsimile:  (713) 652-9800
lgraham@rustyhardin.com
jbrevorka@rustyhardin.com
esmith@rustyhardin.com
**ATTORNEYS FOR DEFENDANT**
**JACKSON WALKER LLP**

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing *via* electronic mail to all counsel of record.

*/s/ Russell Hardin, Jr.*
Russell Hardin, Jr.