IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Michael D. Van Deelen,<br><br>Plaintiff,<br><br>v.<br><br>David R. Jones, Elizabeth Carol Freeman, Jackson Walker, LLP, Kirkland & Ellis, LLP, and Kirkland & Ellis International, LLP,<br><br>Defendants. | Civil Action File<br>No. 4:23-cv-3729<br><br><br><br>Jury Trial Demanded |

To the Honorable Alia Moses,
Chief United States District Judge:

**PLAINTIFF'S RESPONSE TO DEFENDANT DAVID R. JONES' MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(6)**

i

**TABLE OF CONTENTS**

SUMMARY OF THE RESPONSE................................................................................................1

FACTUAL BACKGROUND..................................................................................................2

LEGAL STANDARD..............................................................................................................5

ARGUMENT ..........................................................................................................................5

I.      Judge Jones is Not Entitled to Judicial Immunity for Non-Judicial Acts......................5

         A.   Disclosure of interests and conflicts in a bankruptcy proceeding is an
             administrative act; not a judicial act. ........................................................................6

         B.   Plaintiff's claims are not based exclusively on Judge Jones' Orders ......................9

II.      Judge Jones is Not Entitled to Judicial Immunity for Actions Taken in the
        Absence of Jurisdiction.......................................................................................................9

III.    Judge Jones' Extreme Misconduct Is Not the Type of Action to which Judicial
        Immunity Should Apply .............................................................................................12

CONCLUSION AND PRAYER .................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Alix v. McKinsey & Co.,*
    23 F.4th 196 (2d Cir. 2022) ........................................................................................12

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)......................................................................................................5

*Atkinson-Baker & Assoc. v. Kolts,*
    7 F.3d 1452 (9th Cir. 1993) ........................................................................................6

*Backe v. LeBlanc,*
    691 F.3 645 (5th Cir. 2012) ........................................................................................5

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,*
    403 U.S. 388 (1971)..................................................................................................1, 4

*Butz v. Economou,*
    438 U.S. 478 (1978)......................................................................................................1

*Carver v. Whipple,*
    608 S.W.2d 410 (Mo. 1980) ......................................................................................11

*Davis v. Tarrant County Tex.,*
    565 F.3d 214 (5th Cir. 2009) ..................................................................................5, 10

*Ex parte Virginia,*
    100 U.S. 339 (1880)..................................................................................................7, 8

*Forrester v. White,*
    484 U.S. 291 (1988)..............................................................................................5, 6, 7

*Gregory v. Thompson,*
    500 F.2d 59 (9th Cir. 1982) ........................................................................................6

*Hinojosa v. Livingston,*
    807 F.3d 657 (5th Cir. 2015) ......................................................................................5

*Holloway v. Walker,*
    765 F.2d 517 (5th Cir. 1985) ....................................................................................12

*Howell v. Supreme Court of Texas,*
    885 F.2d 308 (5th Cir. 1989) ....................................................................................11

*In re Marriage Dickey,*
    No. 06-23-00004-CV, 2023 Tex. App. LEXIS 6860,
    (Tex. App.—Texarkana 2023, no pet.) ..................................................................................11

*Jones v. King,*
    No. P:22-CV-00030-DC, 2023 U.S. Dist. LEXIS 199137,
    (W.D. Tex. Nov. 4, 2023) ......................................................................................................8

*Kennedy v. Staples,*
    336 S.W.3d 745 (Tex. App.- Texarkana 2011, no pet.)......................................................11

*Malina v. Gonzales,*
    I994 F.2d 1121 (5th Cir. 1993) ..............................................................................................6

*Mireles v. Waco,*
    502 U.S. 9 (1991)...............................................................................................................5, 10

*Nichols v. Alley,*
    71 F.3d 347 (10th Cir. 1995) ................................................................................................10

*Raj v. Louisiana State Univ.,*
    714 F.3d 322 (5th Cir. 2013) ..................................................................................................5

*Tejero v. Portfolio Recovery Assocs., LLC,*
    955 F.3d 453 (5th Cir. 2020) .............................................................................................2, 10

*Tramonte v. Chrysler Corp.,*
    136 F.3d 1025 (5th Cir. 1998). ............................................................................................11

*United States v. Jordan,*
    49 F.3d 152 (5th Cir. 1995) ...............................................................................................2, 10

*United States v. Lee,*
    106 U.S. 196 (1882)...............................................................................................................1

**Statues**

Bankruptcy Rule 5004(b)...........................................................................................2, 10

Fed. R.Civ.P. 12(b)(6).............................................................................................1, 13

Fed. R.Bankr. P. 2014 ................................................................................................7

11 U.S.C. § 101(14), ..................................................................................................7

18 U.S.C. § 1962(c) ....................................................................................................4

28 U.S.C. §§ 151-155, *et. Seq*.....................................................................................4

28 U.S.C. § 455................................................................................................2, 10, 11

Plaintiff Michael D. Van Deelen files this response to Defendant David R. Jones' Motion to Dismiss Under Fed.R.Civ.P. 12(b)(6) and would respectfully show the Court the following:

## SUMMARY OF THE RESPONSE

*No man in this country is so high that he is above the law. No officer of the law may set that law at defiance with impunity. All officers of the government, from the highest to the lowest, are creatures of the law, and are bound to obey it.*

-- *Butz v. Economou*, 438 U.S. 478, 506 (1978) (quoting *United States v. Lee*, 106 U.S. 196, 220 (1882)).

1.      Former Chief Bankruptcy Judge David Jones resigned in disgrace after the Fifth Circuit found "probable cause" to believe he engaged in "misconduct"[1] over years of hiding an intimate, domestic relationship with attorney Elizabeth Freeman, while awarding millions of dollars to her, her law firm, and a nationwide law firm that appeared with the consortium in most cases.[2]

2.      When Plaintiff's actions uncovered the secret relationship, Jones disclaimed any disclosure obligation and asserted his entitlement to a "to a certain degree of privacy."[3]  His motion to dismiss assumes a similarly dismissive tone, brazenly accusing Plaintiff of "attempt[ing] to scandalize" what Jones perceives as "largely irrelevant facts."[4]  But, the Fifth Circuit did not find Jones' concealment of the Jones-Freeman relationship to be irrelevant.  To the contrary, it indicated Jones

---

[1] Dkt. 10-1 at 1.

[2] As alleged in Plaintiff's First Amended Complaint, misconduct by Jones included oversight over numerous misleading and dishonest federal court filings by Jackson Walker and Kirkland & Ellis without anyone disclosing the Jones-Freeman relationship, amounted to bankruptcy fraud, honest services fraud, mail and wire fraud, and obstruction of justice—all actionable under RICO. Jones additionally breached his fiduciary duties to creditors, investors, and other interested parties in the bankruptcies,[2] committed fraud, negligent misrepresentations, participated in a civil conspiracy, committed constitutional violations under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971), and was unjustly enriched.

[3] Dkt. 10 at 25–26.

[4] Defendant David R. Jones' Motion to Dismiss, Dkt. 39 at 7.

had a mandatory duty to disclose and recuse,[5] and found probable cause that he engaged in misconduct in failing to do so.[6]

3.      Now, with a light finally shining on his misconduct, Jones seeks the cover of judicial immunity. But the facts alleged in Plaintiff's First Amended Complaint demonstrate plausible bases for overcoming Jones' claimed immunity. First, judicial immunity does not shield non-judicial acts performed by a judge. Here, Defendants' scheme to gain profits and prestige rested on Judge Jones' decidedly non-judicial acts in maintaining an intimate relationship with an attorney who regularly practiced in his Court and failing to disclose that intimate relationship to others who appeared in his Court. Disclosing interests in a proceeding is a non-judicial, administrative matter in that it is required of _all_ key participants in a bankruptcy proceeding (not merely judges). Second, because the intimate relationship between himself and Freeman required Judge Jones to recuse himself in actions where Freeman was involved but he did not, his actions were taken in the absence of jurisdiction. Lastly, the extreme and egregious misconduct at issue in this case is not the sort intended to be shielded by judicial immunity. For each of these reasons, judicial immunity does not entitle Jones to dismissal.

---

[5] Jones never challenged the Fifth Circuit's opinion.  Yet, he challenges substantively similar allegations in Plaintiff's First Amended Complaint by asserting (without argument or citation to authority) that "Plaintiff's assertions that Jones was either disqualified or should have recused in the Bankruptcy Case are incorrect." Dkt. 39 at 15.

[6] Dkt. 10-1; 28 U.S.C. § 455; Bankruptcy Rule 5004(b). It goes without saying that any reasonable person would harbor "doubts concerning the judge's impartiality" under these circumstances. _See Tejero v. Portfolio Recovery Assocs., L.L.C._, 955 F.3d 453, 463 (5th Cir. 2020) (quoting _United States v. Jordan_, 49 F.3d 152, 155 (5th Cir. 1995)).

## FACTUAL BACKGROUND

4.       Plaintiff's lawsuit follows perhaps the most significant bankruptcy scandal in U.S. history, with the Fifth Circuit finding probable cause that Jones committed misconduct.[7] For years, Jones, awarded Jackson Walker, the law firm where his live-in girlfriend, Freeman, was a partner, millions of dollars in attorneys' fees, a significant amount of which were billed and earned by Freeman.   Neither Jones, Freeman, Jackson Walker, nor Kirkland & Ellis, the firm which has relied on Jackson Walker as local counsel in 42 of 46 mega-bankruptcies filed in the Southern District of Texas since 2019,[8] [Complaint ¶ 29] disclosed this long-term and ongoing personal relationship between judge and attorney in any bankruptcy proceeding.

5.       Plaintiff owned 30,000 shares of McDermott International, Inc. stock. [Complaint ¶ 2]. Accordingly, Plaintiff Van Deelen was a shareholder in McDermott's bankruptcy case before Judge Jones in which Kirkland & Ellis served as lead counsel with Jackson Walker (and Freeman) serving as local counsel. [Complaint ¶ 5]. Plaintiff also sought damages against the Debtor for misconduct by the McDermott Board of Directors that Plaintiff asserts caused damage to himself and his "investment."   Plaintiff also objected to the proposed confirmation plan and participated in several hearings before Judge Jones on his claim (which McDermott did not object to). Thus, Plaintiff was both an equity holder and a creditor.[9]

---

[7] *See* Dkt. 10-1.

[8] Of note, while retaining Jackson Walker as "local counsel" Kirkland and Ellis has a Houston office with 200+ lawyers, hardly the profile of an out of town law firm needing local assistance.

[9] In Plaintiff's First Amended Complaint, Plaintiff referred to himself as an *investor and a creditor* in the broader sense.  Jones criticizes Plaintiff for using the terms interchangeably but fails to identify how this misled the Court in any way or why the distinction is "of utmost importance" to this case.  Notably, Jones does not suggest this distinction relieves him of a duty to Plaintiff as an investor, or otherwise diminishes Plaintiff's claims against him in any respect. Nor does he tie this distinction to his claim for judicial immunity.

6.     In 2021, Plaintiff inadvertently uncovered the Jones-Freeman relationship when he received an anonymous letter that he filed as an addendum to a motion to recuse Jones. Initially, Plaintiff filed this action against Jones alone for violations of his constitutional rights. Since then, it has become increasingly clear that Plaintiff (and many others) were the victims of a larger enterprise acting in concert and consisting of, at a minimum, Jones, Freeman, Jackson Walker, and Kirkland & Ellis.

7.     Specific to Jones, Plaintiff asserts causes of action for violations of 18 U.S.C. § 1962(c) (RICO– bankruptcy fraud[10]), violations of 18 U.S.C. § 1962(D) (RICO conspiracy), common-law fraud, breach of fiduciary duty, negligent misrepresentation, common-law civil conspiracy, unjust enrichment, constitutional violations under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971), and conspiracy to commit constitutional violations. Plaintiff's Amended Complaint seeks actual damages, including the return of the attorneys' fees awarded by Judge Jones to the Defendant law firms, statutory damages, compensatory damages including mental anguish, and other damages in connection with Defendants' violations of RICO and breaches of fiduciary duty, among other cause of action.

8.     Jones filed a motion to dismiss Plaintiff's Original Complaint, followed by a renewed motion to dismiss to address Plaintiff's First Amended Complaint.

16.    It should be noted that Jones' motion contains a section entitled "Relevant Incontrovertible Facts" that includes both controvertible and inaccurate statements of purported fact. For example, Jones references his own disparaging findings concerning Plaintiff that were made after the confirmation hearing to justify extreme measures taken against Plaintiff,[11] including banning

---

[10]     RICO specifically enumerates some of the statutory claims that includes 28 U.S.C. §§ 151- 155, *et. seq*.
[11] Dkt. 39 at 5–6.

Plaintiff from the federal courthouse unless escorted by a security officer. Thus, Jones' so-called "incontrovertible facts" are merely the self-serving findings of a judge who aimed to railroad anyone—in this case, Plaintiff Van Deelen—who represented a potential threat to Defendants' unlawful enterprise and wrongful objectives.

**LEGAL STANDARD**

9.      A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests whether a complaint states a plausible claim for relief. *See Raj v. Louisiana State Univ.*, 714 F.3d 322, 329-30 (5th Cir. 2013). Construing the complaint liberally in favor of the plaintiff, a motion to dismiss should be denied where the complaint contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim has facial plausibility when the factual content of the complaint allows the court to draw a reasonable inference that defendant is liable for the harm alleged. *Id.; Backe v. LeBlanc,* 691 F.3d 645, 648 (5th Cir. 2012). These standards are the same when a motion to dismiss is based on an immunity defense. When immunity is asserted, the question is whether the complaint pleads facts that, when taken as true, would overcome the movant's assertion of immunity. *Hinojosa v. Livingston,* 807 F.3d 657, 663 (5th Cir. 2015) (considering a motion to dismiss based on a qualified immunity defense). Because Plaintiff's First Amended Complaint states a plausible factual basis for overcoming Judge Jones' assertion of judicial immunity, Jones' motion to dismiss should be denied.

**ARGUMENT**

**I.      Judge Jones is Not Entitled to Judicial Immunity for Non-Judicial Acts.**

10.      A judge's immunity from civil liability only extends to acts that are judicial in nature. *Davis v. Tarrant County Tex.*, 565 F.3d 214, 221 (5th Cir. 2009), *Mireles v. Waco*, 502 U.S. 9, 11 (1991). A judicial act is defined by the function of the act, not by the office of the person who performed

it. *See Forrester v. White,* 484 U.S. 291, 227-29 (1988). The Fifth Circuit has identified four, non-

mandatory factors that may aid in determining whether a judge's conduct involved judicial acts:

> (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether those acts arose directly out of a visit to the judge in his official capacity.

*Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir. 1993). Cases finding nonjudicial actions

commonly involve either administrative acts or highly aberrational behavior. *E.g., Gregory v.*

*Thompson,* 500 F.2d 59 (9ᵗʰ Cir. 1982).

11.     Here, much of Jones' conduct that forms the basis for Plaintiff's claims, including his

essential role in the corrupt RICO enterprise, was non-judicial. At the heart of the RICO enterprise

was the secret Jones-Freeman relationship which enabled Defendants to secure favorable rulings

for their clients, boost their professional reputations and collect millions of dollars in fees. Yet,

there can be little debate that maintenance *and concealment* of an intimate relationship with a

practicing attorney who appears regularly in the judge's court, is not a normal function of a United

States District Judge. Plaintiff's Amended Complaint raises both administrative and highly

aberrational acts by Judge Jones that could plausibly be found to be outside of the range of judicial

conduct shielded by judicial immunity.

        **A.     Disclosure of interests and conflicts in a bankruptcy proceeding is an administrative act; not a judicial act.**

12.      Administrative-type acts performed by a judge are not regarded as judicial in nature. In

other words, when a judge's actions do not involve the "performance of the function of resolving

disputes between parties, or of authoritatively adjudicating private rights," they are not protected

by judicial immunity. *Forrester v. White*, 484 U.S. 219, 227 L.Ed.2d 555, 108 S.Ct. 538 (1988);

*Atkinson-Baker & Assoc. v. Kolts,* 7 F.3d 1452, 1454 (9ᵗʰ Cir. 1993). This is so, even if the administrative act might be essential to the functioning of a court. Absolute judicial immunity does not attach to administrative acts performed by judges because such acts do not threaten judicial independence in the adjudicative process.

13.      An early example of an administrative act determined to be non-judicial involved a judge charged with racial discrimination in the selection of jurors. *Ex parte Virgina,* 100 U.S. 339, 348 (1880).[12]   The duty of selecting the jurors, the court pointed out, is a duty that may be performed by non-judicial personnel including county commissioners, supervisors and assessors. *Id.* When done by these persons, jury selection can hardly be considered a judicial function; thus, the mere fact it is performed by a judge in one instance does not change its essential non-judicial character. *Id.*

14.      The same is true here. The duty to disclose conflicts is something required of <u>all</u> professionals in a bankruptcy proceeding. *See* 11 U.S.C. § 101(14), 327; Fed. R. Bankr. P. 2014. Indeed, the duty to disclose interests and conflicts within a bankruptcy proceeding is imposed on litigants, lawyers, and providers of professional service; as well as the presiding judge. *E.g.* Rule 2014(a)(imposing disclosure requirements on "attorneys, accountants, appraisers, auctioneers, agents or other professionals"). Judge Jones himself underscored that the disclosure requirement applied to non-judicial participants in bankruptcy proceedings when he admonished Jackson Walker to "review its files periodically during the pendency of these chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise" and by ordering Jackson Walker to

---

[12] Although *Ex parte Virginia* involved a criminal charge against a judge, the United States Supreme Court has noted that "the reach of the Court's analysis was not in any obvious way confined by that circumstance." *Forrester,* 484 U.S. at 228.

"promptly file a supplemental declaration" if new conflicts or disqualifying circumstances were uncovered.  Dkt. 591 at 2.

15.     The fact that disclosure of conflicts is required of non-judicial participants in a bankruptcy proceeding demonstrates that disclosure is an administrative act; rather than a judicial one. Texas courts have recognized the distinction between a judge's administrative and judicial actions in analogous circumstances. For example, in *Jones v. King*, a Justice of the Peace was performing a juror qualification proceeding during which certain prospective jurors were placed in jail for contempt. No. P:22-CV-00030-DC, 2023 U.S. Dist. LEXIS 199137, *1 (W.D. Tex. Nov. 4, 2023). The court looked at each part of the Judge's actions separately. It concluded that the judge's conduct in qualifying jurors at a general assembly is in the nature of a ministerial, and not judicial, act and so not subject to judicial immunity. *Id.* at *8. The issuance of a contempt order, on the other hand, was judicial and so subject to immunity. *Id*. In coming to its conclusions, the *Jones* court relied heavily on *Ex parte Virginia*, 100 U.S. 339 (1880), which likewise held that the act of selecting jurors could have been performed by non-judicial personnel and therefore did not trigger immunity. *Id*. at *10. In both cases, the fact that the acts at issue were ones that could be performed by non-judges as well as judges cut against the application of judicial immunity.

16.     Here, the act of disclosing interests and conflicts that might influence a proceeding or give rise to an appearance of impropriety is an act performed by judges and non-judges alike. Such acts of disclosure, whether made by a judge or another non-judge participant, do not involve the "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights"; thus, it should be viewed as an administrative act that does not implicate judicial immunity for judicial acts.

17.     The Fifth Circuit's four factor test supports viewing conflict disclosure as a non-judicial act. As previously stated, because conflict disclosure is not a judicial function, the first factor weighs decisively against Jones assertion of judicial immunity. Furthermore, while Judge Jones' secret relationship and non-disclosures became relevant to Plaintiff because Plaintiff was involved in a case pending before Judge Jones, Jones acts of concealment were not limited to the courtroom or case proceedings – Jones also failed to disclose the relationship to colleagues and to the media. Thus, Jones acts of non-disclosure went beyond the courtroom, the particular case at issue, or any visit to Jones in his official capacity. The second, third, and fourth factors favor a finding that Jones' acts were non-judicial and not subject to judicial immunity.

**B.     Plaintiff's claims are not based exclusively on Jones' Orders.**

18.     Failing in his belief that he did nothing wrong or was above the law, Jones attempts to frame Plaintiff's lawsuit so narrowly as to conclude, erroneously, that Plaintiff sued him "for no reason other than issuing court orders[.]"[13] Tellingly, Jones has cited no authority (and Plaintiff is aware of none) holding that the form of a Plaintiff's economic harm is the determining factor in whether a judge's actions were judicial or non-judicial in nature.  Yet, even if some of Plaintiff's damages are established by Jones orders, Plaintiff's claims are not based exclusive*ly* on Jones' orders. Plaintiff sued Jones (and the other non-judicial Defendants) for concealing the long-standing Jones-Freeman relationship conduit so as to enable themselves to collect millions of dollars in fees and cement their places as leaders in mega-bankruptcies, all at the expense of stakeholders like Plaintiff and the United States bankruptcy system in general. Jones' orders awarding his intimate partner and her law firm with millions of dollars in attorneys' fees (all

_____

[13] Dkt. 39 at 1.

without disclosure) are one component of Plaintiff's damages. But so is Plaintiff's claim for mental

anguish caused by the harsh treatment he received from Jones and the realization that his case was

litigated in a courtroom where there was no level playing field for protesting creditors and

investors. Plaintiff's claim for mental anguish damages are not dependent on any particular order

issued by Jones.

## II.   Judge Jones is Not Entitled to Judicial Immunity for Actions Taken in the Absence of Jurisdiction.

19.   "[A] judge is not immune for actions, though judicial in nature, taken in the complete

absence of all jurisdiction." *Davis*, 565 F.3d at 214 (quoting *Mireles v. Waco*, 502 U.S. 9, 11

(1991)). As specified in the First Amended Complaint, "Jones acted in the absence of jurisdiction

by presiding over [the] case when circumstances required his dismissal."[14]

20.   Jones had a duty to recuse himself but did not. The governing statute[15] provides that "[a]ny

justice, judge, or magistrate [magistrate judge] of the United States *shall* [16]disqualify himself in any

proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455 (emphasis

added).[17] The standard is objective and considers whether a reasonable person with knowledge of

all the facts "would harbor doubts concerning the judge's impartiality." *Tejero v. Portfolio Recovery*

*Assocs., L.L.C.*, 955 F.3d 453, 463 (5th Cir. 2020) (quoting *United States v. Jordan*, 49 F.3d 152,

155 (5th Cir. 1995). Here, it is more than plausible that a reasonable person, with knowledge of the

---

[14] Dkt. 10 at 18.

[15] *See* Bankruptcy Rule 5004(a) ("[a] bankruptcy judge shall be governed by 28 U.S.C. § 455").

[16] Although Section 455 speaks in mandatory language, Plaintiff acknowledges that courts have been permitted discretion with regard to its application.  This discretion appears intended to prevent "the merest unsubstantiated suggestion of personal bias or prejudice" from being used as a judge shopping device. *Nichols v. Alley,* 71 F.3d 347, 351-52 (10th Cir. 1995).

[17] Further, under Bankruptcy Rule 5004(b), "[a] bankruptcy judge shall be disqualified from allowing compensation to a person...with whom the judge is so connected as to render it improper for the judge to authorize such compensation."

intimate, domestic relationship between Jones and Freeman would have concluded Jones' impartiality was in question. *See* Complaint Identified by the Chief Judge of the Fifth Circuit Court of Appeals Against United States Bankruptcy Judge David R. Jones, Southern District of Texas, Under the Judicial Improvement Act of 2002 (Oct. 13, 2023)[18] (finding "probable cause to believe that misconduct by Judge Jones has occurred"[19] and noting "[r]ecusal considerations applicable to a judge's spouse should also be considered with respect to a person other than a spouse with whom the judge maintains both a household and an intimate relationship"[20]).

21.     When a judge fails to comply with the obligation to disqualify himself or herself, any further actions taken by the judge are taken without jurisdiction. *See e.g., Howell v. Supreme Court of Texas*, 885 F.2d 308, 312 (5th Cir. 1989) ("It is well established, at least in Texas, that the judgment of a disqualified judge is wholly void, of no effect and subject to collateral attack"); *In re Marriage Dickey*, No. 06-23-00004-CV, 2023 Tex. App. LEXIS 6860, *3 (Tex. App.—Texarkana 2023, no pet.) (quoting *Kennedy v. Staples*, 336 S.W.3d 745, 750 (Tex. App.—Texarkana 2011, no pet.) ("[I]f a judge is disqualified, the judge is without jurisdiction to hear the case; therefore, any judgment rendered is void and a nullity"); *accord State ex rel. Carver v. Whipple*, 608 S.W.2d 410, 412 (Mo. 1980) ("Because respondent ignored or improperly refused relator's application for disqualification, his further action to the substantive matters, disposing of the Rule 27.26 motion, was without jurisdiction…. As disqualification is mandatory, he exceeds his jurisdiction when he refuses to do so….").

---

[18] The Fifth Circuit's Complaint Identified by the Chief Judge of the Fifth Circuit is attached to Plaintiff's First Amended Complaint as Exhibit 1. See Dkt. 10-1.
[19] Dkt. 10-1 at 1.
[20] *Id.* at 4.

22.     In *Tramonte v. Chrysler Corp.*, the Fifth Circuit considered whether a United States District Judge had authority to enter a remand order where she was arguably disqualified from handling the case under 28 U.S.C. § 455(b). 136 F.3d 1025, 1031 (5th Cir. 1998). The Court of Appeals reversed and remanded for a determination on the degree of relationship between the judge and the party. If the relationship triggered application of § 455(b), "her recusal would have been required and her remand to state court would be void." *Id*.

23.     Similarly, Jones' actions in this case were taken without jurisdiction because he was disqualified from presiding over a case in which his live-in girlfriend, and her law firm, were participating and seeking compensation.  Judicial immunity does not shield Judge Jones from actions taken without jurisdiction.

**III.     Judge Jones' Extreme Misconduct Is Not the Type of Action to which Judicial Immunity Should Apply.**

24.     Plaintiff acknowledges the general rule that a judge may act with bad faith, bias, personal interest or malevolence and still retain judicial immunity. The stated reason for such immunity is to ensure judges are free to act upon their convictions without fear of being hauled into court by disappointed litigants who might be overly willing to ascribe malevolent motives to judicial actions. *Holloway v. Walker,* 765 F.2d 517, 522 (5th Cir. 1985)(listing reasons for judicial immunity). The burdens on the justice system would be great if a judge's every ruling could be relitigated based on a failed litigant's assertion of wrongful motives.

That is not the situation here. This is a unique case where Plaintiff does not need to speculate about wrongdoing by Jones – Jones, Freeman, Jackson Walker and Kirkland & Ellis all acknowledge that an intimate relationship between Jones and Freeman existed and was not disclosed in the McDermott bankruptcy case. The extreme misconduct at issue impacts the very integrity of the bankruptcy system, amounting to damages to all participants in the process.

"Litigants in all our courts are entitled to expect that the rules will be followed, the required disclosures will be made, and that the court's decisions will be based on a record that contains all the information applicable law and regulations require." *Alix v. McKinsey & Co.*, 23 F.4th 196, 204 (2d Cir. 2022). If a judge's acknowledged actions have corrupted the bankruptcy process (particularly when they have done so in the extreme and aberrational manner that Judge Jones' actions have done here) in ways that are unrelated to the normal decision-making process of the judiciary, then the usual rationales for judicial immunity do not apply and judicial immunity should not attach.

### CONCLUSION AND PRAYER

26.     Plaintiff Michael Van Deelen respectfully requests that the Court deny Defendant David R. Jones' Motion to Dismiss Under Fed.R.Civ.P. 12(b)(6) and grant unto Plaintiff all other and further relief to which he is justly entitled.

**Dated May 8, 2024**

Respectfully submitted,

By:     */s/ Mikell A. West*
Mikell A. West
Texas State Bar No. 24070832
S.D. Tex. Bar No. 1563058
Robert W. Clore
Texas State Bar No. 24012426
S.D. Tex. Bar No. 2032287
BANDAS LAW FIRM, P.C.
802 Carancahua Street, Suite 1400
Corpus Christi, Texas 78401
Telephone: (361) 698-5200
Facsimile: (361) 698-5222
mwest@bandaslawfirm.com
rclore@bandaslawfirm.com

## Certificate of Service

I hereby certify that on May 8, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing via electronic mail to all counsel of record.

*/s/ Mikell A. West*