IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Michael D. Van Deelen, | Civil Action File No. 4:23-cv-3729 |
| Plaintiff, | |
| v. | Jury Trial Demanded |
| David R. Jones, Elizabeth Carol Freeman, Jackson Walker, LLP, Kirkland & Ellis, LLP, and Kirkland & Ellis International, LLP | |

To the Honorable Alia Moses,
Chief United States District Judge:

**PLAINTIFF MICHAEL D. VAN DEELEN'S RESPONSE TO DEFENDANT
ELIZABETH CAROL FREEMAN'S MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................................1

STATEMENT OF FACTS ..........................................................................................................2

    A.  Judge Jones's Relationship with Elizabeth Freeman, a Partner at Jackson Walker, and Plan to Transform the Southern District of Texas into a Center for Bankruptcy Litigation .................2

    B.  Judge Jones Awards Millions of Dollars in Fees to his Live-In Girlfriend and the Firm Where She Was a Partner ....................................................................................................3

    C.  Plaintiff's Discovery of the Jones-Freeman Relationship and Defendants' Efforts to Keep the Relationship Secret ........................................................................................................5

    D.  The Intimate Relationship Between Freeman and Jones Comes to Light ..........................6

STANDARD ...............................................................................................................................7

ARGUMENT & AUTHORITIES ..............................................................................................8

    I.       PLAINTIFF ADEQUATELY PLEADS CAUSATION DAMAGES ...........................8

    II.      PLAINTIFF'S RICO CLAIMS ARE ADEQUATELY ALLEGED ..........................9

        A.  Plaintiff Has Sufficiently Alleged Each Challenged Element of His RICO Claim .......9

          1.  Plaintiff has sufficiently alleged injury and causation ................................10

          2.  Plaintiff has sufficiently pleaded the existence of the Enterprise ..........................10

          3.  Plaintiff has alleged a purpose for the Enterprise that is separate from its predicate acts of racketeering ................................................................................10

          4.  The Enterprise had a separate structure and functioned as a continuing unit .....12

          5.  Plaintiff has properly alleged Freeman's Agreement to the RICO conspiracy.....14

          6.  Plaintiff has adequately alleged racketeering activity by Freeman and the other Defendants ................................................................................................................16

    III.     THE *BIVENS* CONSPIRACY CLAIM IS ADEQUATELY PLED ..............................17

    IV.    FREEMAN'S FOOTNOTES ON STATUTES OF LIMITATIONS, MALPRACTICE, FIDUCIARY DUTIES, AND RESPONDEAT SUPERIOR CLAIMS ARE INSUFFICIENT ................................................................................................................19

    V.      PLAINTIFF HAS STANDING ........................................................................................20

VI.     PLAINTIFF REQUESTS LEAVE TO AMEND HIS COMPLAINT PRIOR TO DISMISSAL ............................................................................................................... 22

CONCLUSION .............................................................................................................................. 22

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anderson v Valdez,*
     845 F.3d 580 (5th Cir. 2016) ..................................................................................7

*Alix v. McKinsey & Co.,*
     23 F.4th 196 (2d Cir. 2022) ....................................................................................9

*Ashcroft v. Iqbal,*
     556 U.S. 662 (2009) ...............................................................................................7

*Benchmark Elecs., Inc. v. J.M. Huber Corp.,*
     343 F.3d 719 (5th Cir. 2003) ..................................................................................8

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,*
     403 U.S. 388 (1971) ...........................................................................7, 17, 18, 19

*Boyle v. U.S.,*
     556 U.S. 938 (2009) ................................................................................12, 13, 14

*Brickley for CryptoMetrics, Inc. Creditors' Tr. V. ScanTech Identification Beams Sys., LLC*
     566 B.R. 815 (W.D. Tex. 2017) ............................................................................15

*Bridas S.A.P.I.C. v. Gov't of Turkmenistan,*
     345 F.3d 347 (5th Cir. 2003) ................................................................................19

*Bush v. Lucas,*
     647 F.2d 573 (5th Cir. 1981) ................................................................................18

*Court Gate Guard Services L.P. v. Perez,*
     14 F. Supp.3d 825 (S.D. Tex. 2014) .....................................................................19

*Dell Inc. v. Mishra,*
     No. A-16-CV-00641-SS, 2018 WL 3717119 (W.D. Tex. Aug. 3, 2018)....................13

*Diamond Consortium, Inc. v. Manookian,*
     2017 WL 1495091 (E.D. Tex. April 26, 2017) .......................................................12

*Egbert v. Boule,*
     596 U.S. 482 (2022) ..............................................................................................18

*Fernandez-Lopez v. Hernandez,*
     2020 WL 9396487 (W.D. Tex. Nov. 20, 2020) ......................................................11

*Galindo v. City of Del Rio,*
     2021 U.S. LEXIS 126766 (W.D. Tex. Mar. 26, 2021) ............................................20

iv

*In re 4E Brands Northamerica, LLC,*
    Case No. 22-50009 (Bankr. S.D.Tex. Jan 9, 2024) ........................................................ 9

*In re Ins. Brokerage Antitrust Litig.,*
    618 F.3d 300 (3d Cir. 2010) ........................................................................................ 13

*Lormand v. US Unwired, Inc.,*
    565 F.3d 228 (5th Cir. 2009) ........................................................................................ 8

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ............................................................................................. 21, 22

*Manax v. McNamara,*
    660 F.Supp. 657 (W.D. Tex. 1987) ............................................................................ 12

*McClellon v. Lone Star Gas Co.,*
    66 F.3d 98, 103 (5th Cir. 1995) .................................................................................. 22

*Oakes Farms Food & Distrib. Servs., LLC v. Sch. Dist. Of Lee. Cty.,*
    541 F. Supp. 3d 1334 (M.D. Fla. May 28, 2021) ....................................................... 21

*Oliva v. Nivar,*
    973 F.3d 438 (5th Cir. 2020) ...................................................................................... 19

*Servicios Azucareros de Venez., C.A. v. John Deere Thibodeaux, Inc.,*
    702 F.3d 794 (5th Cir. 2012) ...................................................................................... 20

*U.S. v. Elliott,*
    571 F.2d 880 (5th Cir. 1978) ...................................................................................... 15

*United States v. Hardman,*
    297 F.3d 1116 (10th Cir. 2002) .................................................................................. 19

*Van Deelen v. Dickson, et al.,*
    20-03309 ....................................................................................................................... 5

*Van Deelen v. Dickson, et al.,*
    21-03369 ....................................................................................................................... 6

*Van Deelen v. Dickson, et al.,*
    23-20436 ....................................................................................................................... 6

*Walker v. Beaumont Indep. Sch. Dist.,*
    No. 1:15-cv-379, 2016 WL 6823512 (E.D. Tex. July 13, 2016)................................. 13

**Statutes**

Fed. R. Bankr. P. 2014 .............................................................................................4

Fed. R. Civ. P. 9(b) .............................................................................................1, 7

Fed. R. Civ. P. 12(b)(6).........................................................................................1,7

Fed. R. Civ. P. 60(b)(6)............................................................................................7

11 U.S.C. §§ 101 (14), 327 .....................................................................................4

18 U.S.C. §1503, §1341, §1343, §152, §1346................................................. 16, 20

Plaintiff Michael D. Van Deelen ("Plaintiff' or "Van Deelen") respectfully states the following in support of his Response to Defendant Elizabeth Carol Freeman's ("Freeman") Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) and 9(b).

## INTRODUCTION

1.      Freeman boldly casts aspersions on Plaintiff (whom she accused of being a "serial litigant") and his lawyers (whom she accused of submitting "vexatious filings") while largely passing over her own central role in what is perhaps the most significant bankruptcy scandal in U.S. history, as recently documented by the Fifth Circuit.[1]

2.      For years, the (recently resigned) Chief Judge of the Bankruptcy Court for the Southern District of Texas, Judge David R. Jones ("Jones"), awarded millions of dollars in attorneys' fees to his live-in girlfriend, attorney Elizabeth Freeman, and Jackson Walker, LLP ("Jackson Walker"), the law firm where Freeman was a partner.  Jones, Freeman, Jackson Walker, Kirkland & Ellis LLP, and Kirkland & Ellis International LLP[2] (collectively, "Defendants"), were able to replicate the scheme in multiple mega-bankruptcy cases by carefully concealing the existence of the Jones-Freeman relationship from creditors, shareholders and others who would be likely to object to the debtor being represented by the girlfriend of the presiding judge.

3.      It is this scheme by Defendants to fraudulently conceal the Jones-Freeman relationship while reaping financial and reputational benefits from it that is the genesis for Plaintiff's claims. Interestingly, Freeman barely mentions her secret relationship with Judge Jones in her account of the facts. And she passes over *entirely* her failure to come clean even after Plaintiff expressly raised concerns about a Jones-Freeman relationship in a motion to recuse Judge Jones: a motion that Defendants opposed without revealing the existence of the relationship. It is these acts and the greater

---

[1] *See* Complaint Identified by the Chief Judge of the Fifth Circuit Court of Appeals Against United States Bankruptcy Judge David R. Jones, Southern District of Texas, Under the Judicial Improvement Act of 2002., Dkt. 10-1.
[2] Kirkland & Ellis LLP and Kirkland & Ellis International LLP are collectively referenced herein as "Kirkland."

scheme they were a part of – not the loss of Plaintiff's investment in McDermott stock – that lies at the heart of Plaintiff's claims in this case.

## STATEMENT OF FACTS

**A.      Judge Jones's Relationship with Elizabeth Freeman, a Partner at Jackson Walker, and Plan to Transform the Southern District of Texas into a Center for Bankruptcy Litigation.**

4.      In 2015, Judge Jones was appointed Chief Judge of the Bankruptcy Court for the Southern District of Texas. Jones quickly transformed the Southern District of Texas into a nationwide center for high-dollar complex Chapter 11 bankruptcies.[3] Judge Jones signed a general order in 2018 directing all complex Chapter 11 cases filed in the District to just two judges—himself and Judge Marvin Isgur.[4]

5.      Freeman clerked for Judge Jones for six years[5]—sometime between 2011 and 2018. At some point, the two began a romantic relationship. By 2017, they were living together.[6] On June 26, 2017, they executed a survivorship agreement as co-owners of a million dollar-plus home in Houston.[7]

6.      After Freeman left her six-year clerkship, she joined Jackson Walker's Houston office.[8] Jackson Walker announced Freeman as a partner in 2018.[9] Upon Freeman's arrival, Jackson Walker

---

[3] Sujeet Indap, *The downfall of the judge who dominated bankruptcy in America*, THE FINANCIAL TIMES (Nov. 21, 2023), accessible at https://www.ft.com/content/574f0940-d82e-4e4a-98bd-271058cce434 (last visited Dec. 4, 2023).
[4] *See* General Order 2018-1 (Jan. 29, 2018).
[5] https://lizfreemanlaw.com/about.html (last visited December 4, 2023).
[6] Dkt. 10-1.
[7] *See* June 26, 2017 Survivorship Agreement executed by Freeman and Jones, Dkt. 10-2; e-filed and e-recorded by the Harris County Clerk on June 27, 2017. Judge Jones filed his November 24, 2023 pro se motion to confirm and/or extend response date from his co-owned home.
[8] Chief Judge Priscilla Richman of the Fifth Circuit stated in her written order that Freeman "was a partner in the Jackson Walker LLP law firm, it appears from at least 2017 until December 2022." Dkt. 10-1 at 1.
[9] https://www.jw.com/news/jackson-walker-expands-bankruptcy-reorganization-wealth-planning-and-white-collar-defense-practices/ (last visited Dec. 4, 2023).

began securing appointments in myriad large Chapter 11 cases where Jackson Walker served as local counsel with Kirkland as lead[10] (despite Kirkland itself having a local Houston office).

7.     By 2019, Jackson Walker was "the leading counsel firm for corporate debtors filing for bankruptcy in Houston."[11] "Kirkland & Ellis [led] large debtor-side representations … by a significant margin, while Jackson Walker, Kirkland's preferred local counsel in the Southern District of Texas, picked up more local debtor's representations than any other firm."[12]

## B.   Judge Jones Awards Millions of Dollars in Fees to his Live-In Girlfriend and the Firm Where She Was a Partner.

8.     Judge Jones presided over at least 26 cases in which he awarded Jackson Walker more than $12 million in attorneys' fees and expenses while Freeman was a partner at Jackson Walker and while Freeman and Jones were living together and having an intimate relationship.[13] This includes approximately $1 million in fees billed directly by Freeman herself.[14] Meanwhile, Kirkland was awarded over $162 million in attorneys' fees as lead counsel in cases in which Jackson Walker served as co-counsel before Judge Jones. None of the Defendants ever disclosed the Jones-Freeman relationship in any of these cases.

9.     Under the rules governing bankruptcy proceedings, for a firm to be employed by a debtor or debtor-in-possession, it must show that it is disinterested and must disclose all connections. 11 U.S.C. §§ 101(14), 327; Fed. R. Bankr. P. 2014 (requiring a verified statement of the person to be

---

[10] *See* Brenda Sapino Jeffries, *Kirkland's Bankruptcy Partnership With Jackson Walker Could Be a Sign of Things to Come*, Law.com (Aug. 25, 2020), accessible at https://www.law.com/americanlawyer/2020/08/25/kirklands-bankruptcy-partnership-with-jackson-walker-could-be-a-sign-of-things-to-come/ (last visited Dec. 4, 2023).

[11] Tom Hals, *Exclusive-Law Firm Tied to Bankruptcy Judge Resignation Did Not Make Conflict Disclosures-Data Analysis*, Reuters (Oct. 30, 2023), https://www.usnews.com/news/top-news/articles/2023-10-30/exclusive-law-firm-tied-to-bankruptcy-judge-resignation-did-not-make-conflict-disclosures-data-analysis (last visited Dec. 4, 2023).

[12] Dan Roe, *Kirkland & Ellis, Jackson Walker Dominate Debtor-Side Bankruptcy as Restructuring Market Heats Up*, Law.com (Aug. 3, 2023), accessible at https://www.law.com/americanlawyer/2023/08/03/kirkland-ellis-jackson-walker-dominate-debtor-side-bankruptcy-as-restructuring-market-heats-up/.

[13] Motion for Relief for Judgment in *In re 4E Brands NorthAmerica LLC*, filed on November 3, 2023, No. 22-50009, Dkt. 517 at Ex. 6A–B. Plaintiff respectfully moves for this Court to take judicial notice of all federal court filings referenced in the amended complaint.

[14] *Id.*

3

employed setting forth the person's connections with the debtor, creditor, or any other party of interest).

10.     In *In re McDermott*, Jackson Walker filed a Chapter 11 bankruptcy petition on behalf of McDermott International, Inc., ("McDermott") a provider of engineering, procurement, construction, and installation and technology services for customers in the energy industry.[15] Although initially assigned to Judge Isgur, Judge Jones ultimately presided over the McDermott case.[16] Jackson Walker filed an application to be appointed as co-counsel and conflicts counsel for debtors and debtors in possession. In the engagement letter attached to the application, Jackson Walker's representation of McDermott was noted "as local and conflicts counsel to assist … primary reorganization counsel Kirkland & Ellis LLP and Kirkland & Ellis International LLP …."[17]

11.     Declarations of disinterestedness were filed, under penalty of perjury, on behalf of Jackson Walker and Kirkland in the McDermott proceeding—neither of which disclosed the Jones-Freeman relationship.[18]

12.     Plaintiff, who owned 30,000 shares in McDermott stock, objected to the McDermott reorganization plan. Plaintiff participated in several hearings before Judge Jones, which included heated exchanges, with Plaintiff expressing his belief that the judge was antagonistic towards him.[19] Ultimately, Judge Jones confirmed McDermott's plan and awarded the firms their full fee requests.[20]

---

[15] *In re McDermott*, 20-30336, Dkt. 1.
[16] *In re McDermott*, 20-30336, Docket entry from Jan. 22, 2020 ("Judge David R Jones added to case. Involvement of Judge Marvin Isgur Terminated").
[17] *Id.* at Dkt. 424-1 at PDF 3.
[18] *See id.* at Dkt. 424-2, Dkt. 428, Dkt. 428-1.
[19] *See id.* at Dkt. 510, Dkt. 664 at 27, Dkt. 690 at 138.
[20] *See id.* at Dkts. 665, 684, 1020, 1021.

**C.    Plaintiff's Discovery of the Jones-Freeman Relationship and Defendants' Efforts to Keep the Relationship Secret.**

13.    For over a year after the McDermott chapter 11 case was filed, Plaintiff was one of the many creditors/shareholders who were kept in the dark about the personal influence Freeman (and her associated firms) wielded before Judge Jones.

14.    Plaintiff inadvertently uncovered the Jones-Freeman relationship after receiving an anonymous letter that he brought to the attention of Defendants by filing it as an addendum to a previously-filed[21] motion to recuse Judge Jones.[22]

15.    After conferring with Judge Jones, Judge Isgur decided to hear the recusal motion in the adversary proceeding, ordered the addendum sealed, and after a hearing, denied the recusal motion.[23] Neither Jackson Walker, nor Freeman, nor Kirkland, nor Judge Jones admitted to the relationship during the hearing or in response to the motion to recuse.[24] Judge Jones dismissed the adversary proceeding, which Van Deelen appealed along with the denial of the motion to recuse to the district court, with Judge Andrew Hanen presiding.[25] Again, neither Jackson Walker, nor Freeman, nor Kirkland, nor Judge Jones disclosed the relationship, and Judge Hanen affirmed the dismissal and denial of the motion to recuse.[26] An appeal on that decision is before the Fifth Circuit.[27]

---

[21] Van Deelen had filed an action in state district court against McDermott officers, alleging conversion, fraud, and other state-law torts. *Van Deelen v. Dickson, et al.*, 20-03309, Dkt. 1-1 (original state court petition). The officers, represented by Jackson Walker and Kirkland & Ellis, removed and the case was assigned to Judge Jones. *Id.* at Dkt. 1. Van Deelen filed an initial motion to recuse on July 27, 2020, without awareness of the intimate relationship between Judge Jones and Freeman. *Id.* at Dkt. 6.

[22] *Id.* at Dkt. 39.

[23] *Id.* at Dkt. 40.

[24] *Id.* at Dkt. 47.

[25] *Id.* at Dkt. 81; *Van Deelen v. Dickson, et al.*, 21-03369, Dkt. 1.

[26] *Id.* at Dkt. 33.

[27] *Van Deelen v. Dickson, et al.*, 23-20436 (5th Cir.).

**D.      The Intimate Relationship Between Freeman and Jones Comes to Light.**

16.      Months after Plaintiff's valid accusations, Judge Jones finally admitted both his intimate relationship with Freeman and that he had shared a home with her for years.[28]

17.      On October 13, 2023, Chief Judge Priscilla Richman of the Fifth Circuit entered a written order identifying a complaint against Judge Jones.[29] Chief Judge Richman found "probable cause to believe that misconduct by Judge Jones has occurred."[30] Further, Chief Judge Richman observed that "Judge Jones is in an intimate relationship with Elizabeth Freeman. It appears that they have cohabited (living in the same house or home) since approximately 2017."[31] She further recognized that Judge Jones had awarded substantial attorneys' fees payable to Jackson Walker for services performed by Freeman, and, even in cases in which it does not appear Freeman provided legal services or advice, there is a reasonable probability that Elizabeth Freeman, as a partner in that firm, obtained a financial benefit from, or had a financial interest in, fees approved by Judge Jones. [32]

18.      Judge Jones submitted his resignation in October 2023.

19.      On November 3, 2023, the U.S. Trustee began filing motions under Fed. R. Civ. P. 60(b)(6) requesting that orders awarding fees and expenses be set aside, noting "all orders awarding fees and expenses are tainted" in light of Judge Jones's failure to recuse himself from presiding over cases where Jackson Walker was counsel while Freeman was both living with him and a partner at Jackson Walker.[33]

20.      Plaintiff filed this action initially against Judge Jones for violations of his constitutional rights. It was subsequently determined that Plaintiff (and many others) were the victims of a larger

---

[28] Alexander Gladstone & Andrew Scurria, *Bankruptcy Judge Jones Named in Lawsuit Over Romantic Relationship with Local Lawyer*, Wall Street Journal Pro, (Oct. 7, 2023), https://www.wsj.com/articles/bankruptcy-judge-jones-named-in-a-lawsuit-over-romantic-relationship-with-local-lawyer-71df2c00.
[29] *See* Dkt. 10-1.
[30] *Id.* at 1.
[31] *Id.*
[32] *Id.* at 2.
[33] *See 4E Brands*, 22-50009, Dkt. 517.

enterprise consisting of, at a minimum, Judge Jones, Freeman, Jackson Walker, and Kirkland. Plaintiff filed his First Amended Complaint on or about January 11, 2024, asserting claims against Jones, Freeman, Jackson Walker and Kirkland.

21.     On March 18, 2024, Freeman filed her Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) and 9(b) ("Motion to Dismiss"), asserting pleading deficiencies in Plaintiff's First Amended Complaint ("Complaint") related to Plaintiff's damages, Racketeer Influenced and Corrupt Organizations Act ("RICO"), *Bivens*, and standing claims.

## STANDARD

22.     To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The plausibility standard is not akin to a probability requirement. *Id.* All well-pleaded facts must be accepted as true and viewed in the light most favorable to the plaintiff. *Anderson v. Valdez*, 845 F.3d 580, 589 (5th Cir. 2016); *see also Lormand v. US Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009). ("Usually, under Rule 12(b)(6), [courts] must draw all reasonable inferences in the plaintiff's favor.").

23.     Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003), opinion modified on denial of reh'g, 355 F.3d 356 (5th Cir. 2003). Put simply, Rule 9(b) requires the who, what, when, where, and how to be laid out. *Id.* What is essential is that the defendant be put on notice of the alleged fraudulent conduct. *See id.*

7

## ARGUMENT & AUTHORITIES

## I.    PLAINTIFF ADEQUATELY PLEADS CAUSATION DAMAGES.

24.    Plaintiff was directly damaged by Defendants' wrongful acts. Freeman's argument that Plaintiff has not adequately pled causation of damages is based on the faulty presumption that Plaintiff's damage is solely the loss of his 30,000 shares of McDermott stock or the attorney's fees paid to Defendants. Not so. Plaintiff's asserted damages include, but are not limited to, (1) the costs and expenses incurred in filing motions and attending hearings in a bankruptcy proceeding that he did not realize were futile because the playing field was tilted against him from the outset, (2) the costs and expenses incurred in presenting a motion to recuse based on the Jones-Freeman relationship (and appealing the denial of that motion) when such motion would not have been necessary had Defendants been truthful about the existence of that relationship, (3) the loss of his due process rights and harm to the bankruptcy process in which he took part, which, at a minimum, entitled Plaintiff to nominal damages, and (4) mental anguish damages based on the harsh treatment he received from the judge and attorneys who were at risk of being exposed by him, and based on the distress of learning the bankruptcy process he invested substantial time, effort and resources participating in was tainted by corruption.  Each of these damages was a direct and inevitable result of Defendants' wrongdoing and resulted in harm to Plaintiff directly.

25.    Moreover, the injury visited upon the bankruptcy system and process by Defendants' acts also represents a direct harm to Plaintiff. "If [a Defendant's] conduct has corrupted the process of engaging bankruptcy advisors, as [Plaintiff] plausibly alleges, then the unsuccessful participants in that process are <u>directly harmed</u>." *Alix v. McKinsey & Co.*, 23 F.4th 196, 204 (2d Cir. 2022) (emphasis added). Defendants' wrongful acts corrupted the bankruptcy process and inflicted direct harm on Plaintiff as a participant in that bankruptcy process.

26.     Lastly, it cannot be said at this early stage in proceedings that Plaintiff has no financial interest in the fees that were wrongfully paid to Jackson Walker, Freeman, and Kirkland and that may be ordered disgorged. Although Plaintiff is unlikely to share in the recovered fees if they are distributed under the existing plan, the U.S. Trustee has theorized that disgorged legal fees could be distributed by other means including a modified Plan. *See In re 4E Brands Northamerica, LLC,* No. 22-50009, Dkt 600 at 4-5 (Bankr. S.D.Tex, Jan. 9. 2024) (discussing potential distributions of fees and recognizing that the confirmed Plan could be modified to allow for distribution of disgorged fees). Given this, and since this Court must give Plaintiff all reasonable inferences at this stage, under the "plausibility" pleading standard, the Complaint is sufficient.

27.     [For a more detailed discussion of Plaintiff's damages, the Court is respectfully directed to the Argument set forth at Section III.B.2.a. of Plaintiff's Response to Defendant Jackson Walker's Motion to Dismiss, which is incorporated herein by reference].

## II.     PLAINTIFF'S RICO CLAIMS ARE ADEQUATELY ALLEGED.

### A.     Plaintiff Has Sufficiently Alleged Each Challenged Element of His RICO claim.

28.     Freeman erroneously asserts that Plaintiff does not sufficiently plead certain specific facts of his RICO claim. Plaintiff's Complaint, however, alleges each of the items Freeman claims are lacking, including: an injury and causation, an Enterprise that existed separate and apart from its racketeering activity, a structure and continuing existence of the Enterprise, and acts constituting racketeering activity. In short, Plaintiff has sufficiently alleged each challenged element of his RICO claim and Freeman's motion to dismiss Plaintiff's RICO claims should be denied.

#### 1.     Plaintiff has sufficiently alleged injury and causation.

29.     For the reason set forth in the previous section, Plaintiff has properly alleged injury and causation due to Defendants' scheme. *See supra* Argument, I.

9

### 2. Plaintiff has sufficiently pleaded the existence of the Enterprise.

30.     Contrary to Freeman's assertion, Plaintiff has sufficiently pled sufficient facts regarding the existence of the Enterprise, outlining, among other facts: the participants, the timeline of the Jones-Freeman relationship and Freeman's association with Jackson Walker, the declarations of disinterestedness at issue, the purpose and goal of the Enterprise and how it was carried out, the fees awarded as a result of the Enterprise, and more.[34]

### 3. Plaintiff has alleged a purpose for the Enterprise that is separate from its predicate acts of racketeering.

31.     Contrary to Freeman's suggestion, Plaintiff has alleged that the Enterprise had a purpose separate and apart from its predicate acts. That is, the Enterprise undertook both legitimate actions (providing legal services related to bankruptcy proceedings) and actions which constituted a pattern of racketeering (e.g., bankruptcy fraud, mail and wire fraud, honest services fraud). Thus, the purpose of the Enterprise was not merely to commit frauds; but rather, to boost the professional reputations and financial opportunities of the Enterprise members through means that sometimes included fraudulent acts of racketeering. This was plainly alleged in Plaintiff's complaint:

> [T]he purpose of the Jones-Freeman-Jackson Walker-Kirkland & Ellis Enterprise was to utilize the intimate relationship between Judge Jones and Freeman to enrich Freeman, Jackson Walker, and Kirkland & Ellis directly and increase their prestige and influence in bankruptcy practice, while also enriching Judge Jones directly or indirectly, all without disclosing the intimate relationship to affected parties and creditors.[35]
> […]
> The Enterprise functioned to achieve the shared goal of enriching Defendants (both directly through approval of improper attorneys' fee awards and indirectly by elevating the status and demand for Defendants Jackson Walker, Freeman, and Kirkland & Ellis as bankruptcy attorneys) by securing favorable bankruptcy court appointments and rulings – including millions of dollars, if not tens of

---

[34] *See, e.g.,* Complaint ¶¶ 83-99 (including incorporation by reference of factual allegations section); *see also infra* Argument, II.C.2.
[35] Complaint ¶ 87.

> millions of dollars, awarded to Jackson Walker and Kirkland & Ellis as attorneys' fees - that were influenced by intimate relationships and self-interest and not based exclusively on the merits. [36]

32.     The distinguishable case Freeman cites where an enterprise was found not to have an existence separate and apart from the racketeering activities involved members who came together solely for a one-time criminal activity. In *Fernandez-Lopez v. Hernandez*, the RICO claim arose from a single transaction – a 2015 visa application. More specifically, the defendants in *Fernandez-Lopez* were alleged to have worked together to obtain visas for temporary workers at a landscaping business in Maryland but then funneling the workers upon arrival in the U.S. to a separate demolition business in Alabama. 2020 WL 9396487, at *1-*2 (W.D. Tex. Nov. 20, 2020). The court noted that there were no allegations of shared purpose or activities among the two enterprise members other than those related to visa fraud. *See, e.g., id.* at *12.

33.     Such shortfalls are not present in the case at bar. Defendants here are alleged to have been a working consortium of legal professionals who conspired to boost their reputational status and income through *both* legitimate legal work and illegal acts, including RICO predicate acts. This scheme, consisting of both legitimate and illegal acts, was repeated in numerous mega-bankruptcy cases filed in the Southern District of Texas over a period of years. Thus, the Enterprise did not exist merely to perform RICO predicate acts; the Enterprise existed to further the professional and financial benefits to its members and used RICO predicate acts to improperly inflate those benefits. The facts alleged in this case are akin to those in *Diamond Consortium, Inc. v. Manookian,* where enterprise members were alleged to have provided representation and acted as co-counsel in other litigations. 2017 WL 1495091, at *4 (E.D. Tex. April 26, 2017). The court in *Diamond Consortium* found that an association-in-fact

---

[36] Complaint ¶ 91.

enterprise had been adequately pled to have an existence separate and apart from the pattern of racketeering. *Id.* The same finding should follow in the case at bar.

### 4. The Enterprise had a separate structure and functioned as a continuing unit.

34.     Freeman erroneously argues that the absence of allegations regarding a decision-making or internal coordination structure within the enterprise reflects a pleading deficiency. Not so. The case Freeman cites for the requirement that a decision-making structure must be alleged pre-dates the Supreme Court's decision in *Boyle v. U.S.,* 556 U.S. 938 (2009).[37] In *Boyle,* a RICO defendant argued that the district court erred by failing to instruct the jury that it was required to find that the enterprise had an ascertainable structural hierarchy distinct from the charged predicate acts. *Id.* at 943. In rejecting such a requirement, the Supreme Court recognized that "[a]n association-in-fact enterprise is simply a continuing unit that functions with a common purpose. *Such a group need __not__ have a hierarchical structure or a 'chain of command'* ... [m]embers of the group need not have fixed roles[.]" *Id.* at 948 (emphasis added). Thus, after *Boyle*, an association in fact enterprise need have no formal hierarchy or means for decision-making. *In re Ins. Brokerage Antitrust Litig.,* 618 F.3d 300, 368 (3d Cir. 2010).

35.     In rejecting a strict requirement of a structural hierarchy distinct from the charged predicate acts, the Supreme Court made several comments that are instructive here. First, the Supreme Court noted that the structure of an association-in-fact enterprise may be established by looking for three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit those associated to pursue the enterprise's purpose. *Boyle,* 556 U.S. at 946. Second, the Supreme Court directly addressed whether an enterprise's structure must go "beyond that inherent in the pattern of racketeering activity in which it engages. *Id.* at 945. The court noted that, to the extent phrasing requiring a structure/purpose beyond the racketeering activity, "is

---

[37] *See* Motion to Dismiss at ¶ 7 (citing *Manax v. McNamara,* 660 F.Supp. 657, 662 (W.D. Tex. 1987), aff'd , 842 F.2d 808 (5th Cir. 1988)).

interpreted to mean that the existence of an enterprise is a separate element that must be proved, it is of course correct." *Id.* at 947. This unremarkable holding merely affirms that the existence of an enterprise is an element distinct from the enterprise's pattern of racketeering activity. *Id.* On the other hand, the Supreme Court cautioned, "if the phrase is used to mean that the existence of an enterprise may never be inferred from the evidence showing that persons associated with the enterprise engaged in a pattern of racketeering activity, it is incorrect." *Id.* To the contrary the pattern of racketeering activity and the evidence establishing an enterprise "may in particular cases coalesce." *Id.*

36.     Post *Boyle,* recent Texas federal court cases have moved away from the requirement of a hierarchical structure or decision-making process. *See Dell Inc. v. Mishra*, No. A-16-CV-00641-SS, 2018 WL 3717119, at *5 (W.D. Tex. Aug. 3, 2018) ("An association-in-fact enterprise 'need not have a hierarchical structure or a chain of command; decisions may be made on an ad hoc basis and by any number of methods−by majority vote, consensus, a show of strength, etc.'"); *Walker v. Beaumont Indep. Sch. Dist., No.* 1:15-CV-379, 2016 WL 6823512, at *3 (E.D. Tex. July 13, 2016), report and recommendation adopted, No. 1:15-CV-379, 2016 WL 4198279 (E.D. Tex. Aug. 8, 2016), aff'd, 938 F.3d 724 (5th Cir. 2019) (same).

37.     Cases that continue to reference a hierarchical or decision-making structure tend to do so as one means of demonstrating that the RICO Enterprise functions as a separate and continuing unit. But there are other means of doing so as well. Proof of an association-in-fact's separate existence may be derived from evidence of rules, routines, or processes through which the entity maintains its continuing operations and seeks to conceal its illegal acts. *Boyle*, 556 U.S. at 955 (Stevens, J., dissenting). Proof of an enterprise's separate existence may also be established through evidence that it provides goods or services to third parties, as such an undertaking will require organizational elements more comprehensive than those necessary to perform a pattern of predicate acts. *Id.* at 956. Further, the Supreme Court has cautioned against the notion that the existence of an enterprise may never be

inferred from the evidence showing that persons associated with the enterprise engaged in a pattern of racketeering activity. *Boyle*, 556 U.S. at 947. To the contrary the pattern of racketeering activity and the evidence establishing an enterprise "may in particular cases coalesce." *Id.*

38.     Here, Plaintiff has alleged that, for at least six years, the members of the Enterprise worked together to provide legitimate legal services to third parties while also increasing the demand, prestige and compensation received for those services through acts of racketeering. This is sufficient to allege the existence of a continuing Enterprise.

###### 5.     Plaintiff has properly alleged Freeman's agreement to the RICO conspiracy.

39.     Freeman charges that Plaintiff does not specifically allege that Defendants agreed to commit predicate acts.[38] In truth, Plaintiff has clearly alleged that Defendants agreed to exploit the Jones-Freeman relationship while concealing the relationship from others:

> Defendants had a meeting of the mind on the object of the conspiracy, unlawfully collecting millions in attorneys' fees and securing lucrative appointments—and on the course of action—failing to disclose the Jones-Freeman intimate relationship and affirmatively representing disinterestedness.[39]

40.     Freeman may label Plaintiff's allegations of an agreement as conclusory; but the law recognizes that agreements to commit illegal acts are rarely proclaimed from the rooftops. For that reason, direct evidence of agreement is unnecessary. *U.S. v. Elliott,* 571 F.2d 880, 903 (5th Cir. 1978). Instead, "proof of such an agreement may rest upon inferences drawn from relevant and competent circumstantial evidence ...." *Id.* The existence of an agreement, a defendant's guilty knowledge, and the defendant's participation in the RICO conspiracy may each be inferred from the circumstances.

---

[38] *See* Motion to Dismiss at ¶ 8.
[39] Complaint ¶ 197.

*U.S. v. Jones,* 873 F.3d 482, 489 (5th Cir. 2017); *Brickley for CryptoMetrics, Inc. Creditors' Tr. v. ScanTech Identification Beams Sys., LLC*, 566 B.R. 815, 857 (W.D. Tex. 2017).

41.     Here, Plaintiff has alleged ample facts showing *or inferring* Freeman's agreement to participate in a scheme to leverage the Jones-Freeman relationship for financial and reputational benefits. Freeman obviously knew of her own relationship with Judge Jones since its conception. It is implausible that four sophisticated legal defendants (including two large firms and a federal judge) would have all arrived at, and adhered for years to, the same (*wrong*) conclusion that the Jones-Freeman relationship did not have to be disclosed without ever consulting with one another and agreeing on a course of action. The more plausible explanation, and an inference supported by the alleged facts, is that Defendants agreed not to disclose the Jones-Freeman relationship.

42.     Notably, Kirkland did not file any mega-bankruptcy cases with Jackson Walker as local counsel from 2006 to 2016. Yet, after Freeman joined Jackson Walker in 2018, Kirkland hired Jackson Walker as local counsel in 42 of the 46 mega-bankruptcies it filed in the Southern District of Texas since 2019.  This was done despite Kirkland having a local office of its own (with over 200 attorneys) in Houston. The dramatic shift and proliferation of Kirkland's mega-bankruptcy filings in the Southern District of Texas (with Jackson Walker and Freeman on board as local counsel) suggests all Defendants aware of the Jones-Freeman relationship and agreed to partake in the opportunity it presented for financial and reputational benefits.[40]

43.     Ultimately questions regarding the extent and details of the agreement—and the conspiracy as a whole—will be answered after discovery. At this point, it is sufficient that Plaintiff has

---

[40] It is also odd that Kirkland hired Jackson Walker as local counsel but accepted (supposedly without inquiry or question) why Freeman, a former clerk for Judge Jones, would not perform one of the primary tasks that local counsel is hired to perform and appear in Judge Jones's courtroom. It is reasonable to infer that this abnormality was acceptable to Defendants because they were aware of the Jones-Freeman relationship.

alleged Freeman's agreement to the conspiracy and alleged facts from which it can be inferred that Freeman agreed to conceal and benefit from the Jones-Freeman relationship.

> **6.** **Plaintiff has adequately alleged racketeering activity by Freeman and the other Defendants.**

44.     Plaintiff has alleged that Defendants' pattern of racketeering activity includes, but is not limited to, two or more violations of 18 U.S.C. § 1503 (obstruction of justice), § 1341 (mail fraud), § 1343 (wire fraud), § 152 (bankruptcy fraud) and § 1346 (honest services fraud).[41] Freeman does not identify any specific flaw in Plaintiff's pleading of these predicate acts, but instead makes a two sentence argument that the sixteen (16) pages of the Complaint dedicated to predicate acts lack "any specific facts, dates, names, communication or events" alleging racketeering activity.[42] That accusation is demonstrably false. Taking Plaintiff's obstruction of justice allegations as an example, Plaintiff has alleged that Defendants violated 18 U.S.C. § 1503, which also constitutes racketeering activity within the meaning of 18 U.S.C. § 1961(1).[43] Plaintiff more specifically alleges that Freeman used her personal relationship with Jones to influence favorable rulings (including appointments and fee awards) in violation of § 1503, which prohibits influencing, obstructing, impeding or intimidating any officer of a federal court.[44] Plaintiff's various fraud allegations are even more specific alleging the statutes that were violated,[45] the existence of fraudulent statements, including statements that Defendants were disinterested and that there were no conflicts of interests,[46] specific pleadings where fraudulent statements were made and the dates they were filed.[47]

45.     The Complaint has sufficiently pled its claims to put Freeman (and the other Defendants) on notice of the claims against them.

---

[41] Complaint ¶ 99.
[42] Motion to Dismiss at ¶ 9.
[43] Complaint ¶ 100.
[44] Complaint ¶¶ 100-101.
[45] *E.g.,* Complaint ¶ 117.
[46] *E.g.,* Complaint ¶¶ 118-119.
[47] *E.g.* Complaint ¶¶ 118, 120, 123.

## III.  THE *BIVENS* CONSPIRACY CLAIM IS ADEQUATELY PLED.

46.     In just one-paragraph, Freeman asserts that Plaintiff's *Bivens* conspiracy claim[48] lacks "pleading specificity[.]"[49] However, Freeman does not provide any context or identify any particular aspect of Plaintiff's *Bivens* count that is claimed to be lacking in specificity so as to enable Plaintiff to adequately respond. Furthermore, while the Supreme Court has not previously extended *Bivens* liability to equity holders suffering a deprivation of rights in a bankruptcy proceeding, Freeman has identified no "special factors" weighing against such a claim. As outlined in *Bivens*, where a case involves "no special factors counseling hesitation in the absence of affirmative action by Congress[,]" federal courts may use any available remedy to make good the wrong done where a federal officer acting under the color of federal authority violates the Constitution. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 396 (1971).

47.     The victim of a constitutional violation by a federal agent has a right to recover damages against the agent in federal court pursuant to *Bivens*. *Bush v. Lucas*, 647 F.2d 573, 575 (5th Cir. 1981), aff'd, 462 U.S. 367 (1983). When a *Bivens* claim is asserted in a context other than what has been recognized by the Supreme Court in three previous *Bivens* cases, as Plaintiff does here, the right to recover may be recognized where: (1) the Defendant has established no "special factors" counselling hesitation in the absence of affirmative action by Congress, or (2) Congress has not provided an alternative remedy explicitly declared to be a substitute for recovery under the Constitution.  *See id.* Those conditions are met in the case at bar.

48.     Freeman asserts that the Supreme Court has refused to extend *Bivens* liability to new contexts or categories of defendants, such as equity holders like Plaintiff. As outlined in *Bivens*, where a case involves "no special factors counseling hesitation in the absence of affirmative action by

---

[48] Plaintiff's *Bivens* claim (Count X) is brought only against Judge Jones; accordingly, Freeman's argument only applies to the *Bivens* conspiracy claim (Count XI).
[49] Motion to Dismiss at ¶ 10.

Congress[,]" federal courts may use any available remedy to make good the wrong done where a federal officer acting under the color of federal authority violates the Constitution. *See Bivens,* 403 U.S. at 396. Freeman suggests the circular logic that recognition of a new cause of action is itself a special factor that should preclude recognition of a new cause of action. If the law were as Freeman suggests, there would be no need for a new context test at all; every new context would present a disqualifying special factor simply by virtue of being anew. The Supreme Court's caution about "uncertainty" as a special factor is better understood as applying to cases likely to have unpredictable and widespread consequences; not as an obstacle to recognition of narrow and egregious misconduct such as exists here. *See Egbert v. Boule*, 596 U.S. 482, 493 (2022) (cautioning that uncertainty as to "'systemwide' consequences" of recognizing a new *Bivens* action may be a special factor). Nor do the U.S. Trustee's powers provide an alternative remedy barring recognition of a *Bivens* claim. The U.S. Trustee's duties are focused on protecting the integrity of the bankruptcy system, not remedying violations of individuals' constitutional rights.

49.     The facts of this case are unprecedented and extraordinary, and thus may raise unprecedented legal questions. As the *Nivar* case Freeman cites indicates, courts confronting *Bivens* claims must ask first if the claims fall into one of the three existing actions, and "[s]econd, if not, should we recognize a new *Bivens* action here?" *Oliva v. Nivar*, 973 F.3d 438, 441-42 (5th Cir. 2020). The hesitancy to extend *Bivens* to new contexts is rooted in considerations of separation of powers, leading courts to evaluate who should decide a damages remedy—Congress or the courts. *See id.* at 443. The egregious conduct at issue here took place within the judicial branch, and thus it seems logical that same branch should address the conduct and the remedy under *Bivens*. Notably, Freeman has not cited a case that expressly states a *Bivens* claim cannot be brought in a case with facts like those in the case at bar.

## IV.   FREEMAN'S FOOTNOTES ON STATUTES OF LIMITATIONS, MALPRACTICE, FIDUCIARY DUTIES, AND RESPONDEAT SUPERIOR CLAIMS ARE INSUFFICIENT.

50.     In two short footnotes, Freeman attempts to persuade this Court to dismiss Plaintiff's claims (i) for malpractice and breach of fiduciary duty on basis that Plaintiff was not a client of the law firms,[50] (ii) for negligent misrepresentation, professional negligence, unjust enrichment, and *Bivens* conspiracy statutes of limitation grounds,[51] and (iii) for aiding and abetting breach of fiduciary duty and respondeat superior because, Freeman argues, no such causes of action exist.[52] Potentially dispositive arguments are not properly raised in footnotes. *See Court Gate Guard Services L.P. v. Perez*, 14 F. Supp. 3d 825, 833 (S.D. Tex. 2014) (argument raised in footnote is insufficient and may be disregarded by Court); *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 356 n.7 (5th Cir. 2003) (citing *United States v. Hardman,* 297 F.3d 1116, 1131 (10th Cir.2002)) ("Arguments raised in a perfunctory manner, such as in a footnote, are waived."). To the extent arguments contained only in footnotes are considered by the Court, Plaintiff respectfully directs the Court to his responses on these points in Argument Sections B.7. (statutes of limitation), B.8. (fiduciary duties and malpractice), and B.9. (fiduciary duties and respondeat superior) of Plaintiff's Response to Defendant Kirkland & Ellis LLP and Kirkland & Ellis International LLP's Motion to Dismiss.

## V.   PLAINTIFF HAS STANDING.

51.     "Standing jurisprudence contains two strands: Article III [or constitutional] standing, which enforces the Constitution's case-or-controversy requirement, and prudential standing, which embodies judicially self-imposed limits on the exercise of federal jurisdiction." *Servicios Azucareros de Venez., C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 801 (5th Cir. 2012).

---

[50] *See* Motion to Dismiss at 14, fn. 29.
[51] *See* Motion to Dismiss at 15, fn. 30.
[52] *See id.*

52.     The premise of Freeman's assertion that Plaintiff lacks prudential standing is mistaken—Plaintiff's claims are not derivative of the bankruptcy. Plaintiff has uniquely personal claims from which he suffered direct harm. *See Galindo v. City of Del Rio*, 2021 U.S. LEXIS 126766, *9 (W.D. Tex. Mar. 26, 2021) (citations omitted) ("individuals have no standing to secure a personal recovery for an alleged wrong done to the business entity, unless they are able to show some direct harm to themselves").

53.     For example, Plaintiff was the victim of a RICO predicate act of obstruction of justice (18 U.S.C. § 1503) when Defendants failed to disclose the romantic, live-in relationship between Jones and Freeman despite Plaintiff's motion to recuse Judge Jones at a time when Jackson Walker admittedly knew of the romantic relationship between Jones and Freeman.[53] As a result, Plaintiff incurred legal expenses to prove a fact that Jackson Walker and the other members of the Enterprise concealed. Had Jackson Walker and the other defendants properly revealed this information from the outset, there would have been no need for Plaintiff to have incurred the expense of seeking to recuse Judge Jones. Had Jackson Walker and the other defendants confirmed the relationship at any point after Plaintiff presented the anonymous letter in connection with his motion to recuse, Plaintiff would not have incurred the expense of appealing the failed (though now proven factually accurate) motion to recuse. Plaintiff incurred these costs directly; they are not derivative of any injury to McDermott.

54.     Additionally, Plaintiff sustained mental anguish damages[54] from the harsh treatment he received in court, including Jones ordering that he could not enter the federal courthouse except with the escort of a court security officer. He also suffered mental anguish after learning his case was

---

[53] *See* FAC ¶¶ 100, 101(d) (alleging violation of 18 U.S.C. § 1503, obstruction of justice in connection with improperly influencing officers of the bankruptcy court by "knowingly and deliberately concealed, or failed to properly reveal, the existence of an intimate, personal relationship between Freeman and Judge Jones").

[54] "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (citations omitted).

litigated in a courtroom corrupted by fraud, in which the law firms, Freeman, and the judge conspired to enrich themselves, with no level playing field for protesting creditors and investors.

55.     Plaintiff's lost expenses and mental anguish allegations are not injuries under a confirmation plan or order. Rather, they are the result of the defendants' conspiracy to keep the Jones-Freeman conspiracy secret from outsiders at any cost. Plaintiff's mental anguish damages and damages for costs from the motion to recuse are independent of injuries to McDermott and the bankruptcy estate. *See Oakes Farms Food & Distrib. Servs., LLC v. Sch. Dist. of Lee Cty.*, 541 F. Supp. 3d 1334, 1343 (M.D. Fla. May 28, 2021) ("[t]he harm to Mr. Oakes's First Amendment rights is distinct and personal from the economic harm to Oakes Farms").

56.     Plaintiff's Complaint plausibly states a claim that his injuries are personalized, and not derivative of the bankruptcy. He has a sufficiently particularized, individual harm to support a finding of prudential standing.

57.     Plaintiff has also alleged Article III standing. Constitutional standing requires three elements: (i) Plaintiff suffered an injury in fact, meaning an injury is of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent; (ii) a causal connection between injury and the conduct brought before the court; and (iii) it must be likely that a favorable decision by the court will redress the injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). For the reasons outlined in Section I, Plaintiff has adequately pled injury and causation. *See supra,* Argument, I. And a favorable decision by this Court granting the relief sought by Plaintiff would redress the injury caused by Defendants. Thus, Plaintiff has Constitutional standing.

58.     [For a more detailed discussion of standing, the Court is respectfully directed to the Argument set forth at Section III.A.1 of Plaintiff's Response to Defendant Jackson Walker's Motion to Dismiss, which is incorporated herein by reference].

## VI.     PLAINTIFF REQUESTS LEAVE TO AMEND HIS COMPLAINT PRIOR TO DISMISSAL.

59.     Should this Court find the Complaint deficient in any regard, Plaintiff respectfully requests leave to amend or supplement his Complaint. "The court should freely give a complainant … leave to amend defective allegations in a pleading. … Thus, the appropriate remedy when granting a motion based on nonconforming or deficient pleadings is to grant the complainant time within which to amend the complaint." *McClellon v. Lone Star Gas Co.*, 66 F.3d 98, 103 (5th Cir. 1995). Granting Plaintiff leave to amend his Complaint would not prejudice Defendants, who are already on notice of the claims.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Freeman's Motion to Dismiss, and for such other and further relief to which Plaintiff may be entitled at law or in equity.

Dated May 8, 2024.

Respectfully submitted,

By:     /s/ Mikell A. West
Mikell A. West
Texas State Bar No. 24070832
S.D. Tex. Bar No. 1563058
Robert W. Clore
Texas State Bar No. 24012426
S.D. Tex. Bar No. 2032287
BANDAS LAW FIRM, P.C.
802 Carancahua Street, Suite 1400
Corpus Christi, Texas 78401
Telephone: (361) 698-5200
Facsimile: (361) 698-5222
mwest@bandaslawfirm.com
rclore@bandaslawfirm.com

**<u>Certificate of Service</u>**

I hereby certify that on May 8, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing via electronic mail to all counsel of record.

*/s/ Mikell A. West*