IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL D. VAN DEELEN, | § | |
| | § | |
| PLAINTIFF | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:23-CV-3729 |
| | § | |
| DAVID R. JONES, ELIZABETH CAROL | § | |
| FREEMAN, JACKSON & WALKER, LLP, | § | |
| KIRKLAND & ELLIS, LLP, AND | § | |
| KIRKLAND & ELLIS INTERNATIONAL, LLP | § | |
| | § | |
| DEFENDANTS | § | |

**DEFENDANT ELIZABETH CAROL FREEMAN'S REPLY TO
PLAINTIFF'S RESPONSE TO FREEMAN'S MOTION TO DISMISS**

TO THE HONORABLE ALIA MOSES,
CHIEF U.S. DISTRICT JUDGE:

Defendant Elizabeth Carol Freeman ("Freeman") replies to Michael D. Van Deelen's ("Plaintiff")[1] Response ("Plaintiff's Response") to Freeman's Motion to Dismiss the First Amended Complaint (the "FAC") under FED. R. CIV. P. 12(b)(6) and 9(b).

A. **PLAINTIFF FAILS TO ESTABLISH CAUSATION AND STANDING.**

1. All Plaintiff's nine claims against Freeman in the FAC rest upon the non-sequitur that the non-disclosure of Judge Jones's relationship with Freemen caused damages

---

[1] This Reply incorporates the abbreviations used in Freeman's Motion to Dismiss.

Page | 1

to the Plaintiff. As noted in Freeman's Motion to Dismiss, Plaintiff's damages were caused by the investment risk that he took in buying 30,000 of common equity shares in McDermott. One of the consequences of that risk was the cancellation of those shares under a chapter 11 reorganization plan that McDermott management proposed and McDermott creditors overwhelmingly approved. The Bankruptcy Court orders that approved and enforced the McDermott plan were demonstrably correct under applicable bankruptcy reorganization law.

2. Plaintiff suggests that the undisclosed Freeman-Jones relationship has caused him damages,[2] but all of Plaintiff's alleged damages are litigation risk expenses that he incurred in connection with litigating his objection to the McDermott plan and his attempt to circumvent the plan release and injunction[3] under the McDermott plan by pursuing the state court lawsuit[4] against McDermott officers. The non-disclosure of the relationship did not prevent him from pursuing any of his objections, some of which he is still pursuing.

3. Plaintiff's failure to establish causation dovetails with his failure to establish his standing to pursue claims against the Defendants based on non-disclosure of the relationship. Earlier this month, the Fifth Circuit addressed a similar lack of standing in the context of an appeal from an order by a judge who subsequently recused himself.[5] In that case, the

---

[2] Plaintiff's Response ¶ 24.
[3] McDermott case no. 20-30334, Dkt #684, Articles VIII.C, D, E, and F of the attached plan.
[4] Freeman's Motion to Dismiss ¶ 7.
[5] *Matter of Roman Cath. Church of Archdiocese of New Orleans*, No. 22-30539, 2024 WL 2125507 (5th Cir. May 13, 2024).

bankruptcy court *sua sponte* removed four members of the creditors' committee because of the misconduct of the members' personal lawyer. The removed members appealed the removal order, and District Judge Guidry granted the debtors' motion to dismiss the appeal because the members lacked standing to pursue the appeal. Months later, Judge Guidry recused himself from the appeal because of publicity over his connections with the debtors' charities, and the removed members moved to vacate Judge Guidry's prior order dismissing their appeal. The new District Judge (Judge Ashe) denied the motion to vacate Judge Guidry's dismissal order, concluding that the order was correct under applicable law and that Judge Guidry's failure to recuse before issuing the dismissal order was harmless error. The Fifth Circuit upheld Judge Ashe's ruling, citing the countervailing risk of "'mindlessly vacat[ing]' a recused judge's rulings—especially where that ruling rested on sound legal reasoning [citation omitted]."[6] The Fifth Circuit went on to hold that the removed members had no standing to pursue an appeal of the bankruptcy court's removal order. After concluding that the removed members did not have standing to appeal the bankruptcy court removal order, the Fifth Circuit observed the following:[7]

> But even if we were to assume, arguendo, that the "narrower" bankruptcy appellate standing test did not apply and that Article III standing controls this appeal, the outcome would be the same. Appellants cannot show that the bankruptcy court's order removing them from the Committee injured a legally protected interest. Specifically, they were not in any way "sanctioned," and no creditor has a "right" to serve or continue serving on a Creditors Committee.

---

[6] *Id.* p. 3.
[7] *Id.* p. 5.

Likewise, Plaintiff here has failed to plead, much less demonstrate, that any of the Bankruptcy Court orders from which he complains injured a legally protected interest of Plaintiff as a McDermott equity security holder or sanctioned him in any way. Plaintiff received the same treatment under the Bankruptcy Court's orders as thousands of other McDermott equity security holders. Plaintiff has no better standing to sue Defendants here than the removed committee members had standing to appeal in *Matter of Roman Cath. Church*.

4. Moreover, numerous courts have evaluated whether creditors or shareholders can pursue claims based on the alleged fraudulent conduct of professionals in bankruptcy cases as Plaintiff seeks to do here. Those courts have uniformly concluded that such claims are derivative in nature, belong to the debtor's estate, and that only the trustee, debtor-in-possession, or post-confirmation estate representative have standing to pursue the claims.[8]

5. Plaintiff cannot establish a particularized injury under any of his claims that results from the Defendants' conduct. The injury, if any, resulting from the non-disclosure of the Freeman-Jones relationship was to the McDermott bankruptcy estate, not Plaintiff. Inasmuch as Plaintiff had no right to distributions from the McDermott estate under the McDermott plan, he has no entitlement or right to funds that McDermott used to compensate

---

[8] *In re SunEdison, Inc.*, Case No. 16-10992 (SMB), 2019 WL 2572250, *6 (Bankr. S.D.N.Y. June 21, 2019); *In re NC12, Inc.*, 478 B.R. 820, 836 (Bankr. S.D. Tex. 2012); *In re Greenhaw Energy, Inc.,* 359 B.R. 636, 641–42 (Bankr. S.D. Tex. 2007); *Matter of Acis Cap. Mgmt., L.P.*, 850 F. App'x 302 (5th Cir. 2021); *In re Acis Cap. Mgmt., L.P.*, 604 B.R. 484, 509–10 (N.D. Tex. 2019), *aff'd sub nom*; *In re SRC Liquidation LLC*, No. 15-10541 (BLS), 2019 WL 4386373, *1 (Bankr. D. Del. Sept. 12, 2019); *In re Radnor Holdings Corp.*, 564 B.R. 467, 471 & 480 (D. Del. 2017), aff'd, 706 F. App'x 94 (3d Cir. 2017).

the Defendants. As with Mar-Bow's claims in *SunEdison*,[9] Plaintiff's claims are derivative of the theoretical direct harm inflicted on McDermott. Plaintiff lacks prudential standing to assert his fraud-based claims.

### B. PLAINTIFF'S FAC IS A COLLATERAL ATTACK ON A FEDERAL COURT'S ORDERS.

6.      Plaintiff's lack of standing highlights the fact that the FAC is an illegal collateral attack on the Bankruptcy Court's confirmation order,[10] the plan release order,[11] and various fee and employment orders in the McDermott chapter 11 case. Amidst the FAC's blizzard of hyperbole and conclusory allegations, it is important to remember that Plaintiff's original and main objection in the McDermott case is that Judge Jones did not allow him to obtain better treatment than other equity security holders under the McDermott plan by pursuing derivative claims against McDermott officers in the state court lawsuit.[12] Contrary to Plaintiff's allegations of Judge Jones' bias against him, the public record reflects that Judge Jones patiently gave Plaintiff multiple opportunities over a five month period to amend his state court lawsuit to assert direct claims against the McDermott officers that he owned rather than the derivative claims that McDermott owned and that were subject to the plan release and injunction.[13] After

---

[9] *In Re SunEdison, Inc.* Case No. 16-10992 (SMB), 2019 WL 2572250 (Bankr. S.D.N.Y. June 21, 2019).
[10] McDermott case no. 20-30334, Dkt #684, Articles VIII.C, D, E, and F of the attached plan.
[11] McDermott Adv Pro. 20-3309, Dkt. #81.
[12] McDermott Adv Pro. 20-3309, Dkt #1.
[13] McDermott Adv Pro. 20-3309 Dkt ## 43, 46 (audio), 55, 56 (audio), 70.5, 71 (audio).

Page | 5

Plaintiff filed two additional amended petitions[14] attempting to assert direct claims, Judge Jones issued the plan release order that found that Plaintiff's state court lawsuit asserted derivative claims that McDermott owned and were subject to the McDermott plan release and injunction.[15] Plaintiff appealed the plan release order to the District Court,[16] which affirmed, and then to the Fifth Circuit Court of Appeals, where it remains pending.[17] Although Judge Jones ultimately ruled against him, neither Judge Jones nor any of the other Defendants deprived Plaintiff of his due process rights in pursuing his objections in the McDermott chapter 11 case.

7.  Consequently, the FAC is a replay of the Plaintiff's state court lawsuit where he is again illegally attempting to obtain better treatment than any other equity security holder under the McDermott plan. Even though the release, injunction, and exculpation provisions of the McDermott confirmation order and plan prohibit claims such as those contained in the FAC,[18] Plaintiff ignored the McDermott confirmation order and filed the FAC anyway, just as he did in 2020 in filing the state court lawsuit against the McDermott officers. The FAC is

---

[14] McDermott Adv Pro. 20-3309 Dkt ## 50 & 57.
[15] McDermott Adv Pro. 20-3309, Dkt. #81.
[16] U.S. District Court civil action No. 4:21-cv- 3369, Dkt #33.
[17] Fifth Circuit Appeal No. 23- 20436.
[18] McDermott case no. 20-30334, Dkt #684, Articles VIII.C, D, E, and F of the attached plan.

a transparent collateral attack[19] of final and non-appealable orders of the Bankruptcy Court and Plaintiff cannot rationalize his way around that fact.

### C. Plaintiff's Pleading of RICO Claims Remains Deficient.

8. As noted above, Plaintiff's Response fails to establish his standing generally to pursue RICO claims against the Defendants that, if they exist at all, are derivative in nature. But he also fails to address several other deficiencies in his RICO claims.

9. For example, as a former McDermott equity security holder, Plaintiff is not entitled to any distributions from the McDermott estate and, thus, his allegation of damages to his property or business resulting from the alleged RICO enterprise fail.[20] Similarly, Plaintiff's allegation that the private lawyer Defendants had wrongly received compensation in the McDermott case does not constitute a pattern of racketeering activity for RICO purposes.[21] Regarding the alleged RICO enterprise, Plaintiff fails to demonstrate how the alleged enterprise functioned or existed separate from the alleged scheme to obtain compensation in chapter 11 cases without disclosing alleged conflicts of interest, which is insufficient to support a RICO claim.[22] Plaintiff even fails to establish necessary proximate

---

[19] *Matter of LaHaye*, 17 F.4th 513, 519 (5th Cir. 2021).

[20] *In re Taxable Mun. Bond Sec. Litig.*, 51 F. 3d 518, 521 (5th Cir. 1995).

[21] *St. Germain v. Howard*, 556 F.3d 261, 263–64, n.1 (5th Cir. 2009);

[22] *Zastrow v. Houston Auto Imps. Greenway Ltd.*, 789 F.3d 553, 562 (5th Cir. 2015); *see also*: *Crawford's Auto Ctr. v. State Farm Mut. Auto. Ins. Co*, 945 F.3d 1150 (11th Cir. 2019). Plaintiff suggests that the U.S. Supreme Court decision in *Boyle v. U.S.*, 556 U.S. 938 (2009) essentially eliminated the enterprise requirement of a RICO claim. Plaintiff's Response ¶ 34. But *Boyle* did no such thing. The decision refined, rather than eliminated, the enterprise requirement and confirmed that a structure is indeed

causation to pursue a RICO claim[23] because none of the compensation that the lawyer Defendants received in the McDermott case caused damage to Plaintiff's equity security interest, which was worthless long before Defendants received any compensation in the McDermott chapter 11 case. Finally, Plaintiff's RICO conspiracy claim does not assert a coherent agreement between the Defendants to commit the necessary predicate acts to support such a claim,[24] and Defendants' actions in enforcing the McDermott plan and confirmation order over Plaintiff's objections cannot constitute either such predicate acts or an agreement to commit predicate acts.[25] Simply put, Plaintiff has established neither his standing to pursue the RICO claims nor a legal basis for such claims.

D. **PLAINTIFF'S BIVINS CLAIM IS TOO SPECULATIVE TO SURVIVE DISMISSAL.**

10.  Plaintiff's *Bivens* conspiracy claim alleges that private actors conspired to commit the underlying *Bivens* tort. However, a valid *Bivens* claim only exists against individual federal officers, not private actors.[26] When a lawsuit involves federal officers and private citizens, the *Bivens* conspiracy claim may only be pursued against the federal officers.[27] Moreover, the only

---

a necessary element of a RICO enterprise. The Court stressed that it had no intention of merging the enterprise requirement with either the pattern of racketeering activity or the separate crime of conspiracy. *Boyle*, 556 U.S. at 950 & n. 5, 129 S.Ct. 2237.

[23] *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).

[24] *Crowe v. Henry*, 43 F.3d 198, 206 (5th Cir. 1995) (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1140 (5th Cir. 1992)).

[25] *Kim v. Kimm*, 884 F.3d 98 (2d Cir. 2018)

[26] *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001).

[27] *Id.* ("On the logic of *Meyer*, inferring a constitutional tort remedy against a private entity like CSC is therefore foreclosed.")

federal officer involved in this case is Judge Jones, who is protected by judicial immunity[28] and is a type of governmental official not involved in prior key *Bivens* decisions.[29] In fact, Plaintiff's *Bivens* claim is based on alleged Fifth and Fourteenth Amendment violations in contexts that the Supreme Court has neither considered nor approved.[30] Finally, Plaintiff's *Bivens* claim does not contain the special factors necessary to extend *Bivens* in the context of this case. Congress has already created a mechanism for addressing such claims through the U.S. Trustee's office. Inasmuch as Plaintiff had and still has avenues for redress of his objections in the McDermott chapter 11 case, Plaintiff cannot fulfill the second prong for extending a *Bivens* claim to the circumstances of this case.[31]

### E. PLAINTIFF'S OTHER CLAIMS SHOULD BE DISMISSED.

11. Elevating form over substance, Plaintiff objects to the placement of the basis for dismissal of the Plaintiff's Texas common law tort claims in footnotes rather than the body of Freeman's Motion to Dismiss.[32] But elevating such claims to the body of a pleadings does not increase their validity.

---

[28] *Stump v. Sparkman*, 435 U.S. 349, 356, 98 S.Ct. 1099, 1104, 55 L.Ed.2d 331 (1978); *Mays v. Sudderth*, 97 F.3d 107, 110 (5th Cir. 1996).
[29] *Id. See also*: *Carlson v. Green*, 446 U.S. 14 (1980); *Davis v. Passman*, 442 U.S. 228 (1979); *Ziglar v. Abbassi*, 582 U.S. 120, 135 (2017).
[30] *Butler v. S. Porter*, 999 F.3d 291, 293-94 (5th Cir. 2021).
[31] *Ziglar v. Abbassi*, 582 U.S. 120, 136-7 (2017).
[32] Plaintiff's Response ¶ 50, p. 29.

12. All of the claims that Plaintiff asserts against Freeman that are based on Texas common law[33] are barred under Texas' attorney immunity doctrine and the Texas judicial-proceedings privilege.[34] These affirmative defenses ensure that lawyers provide aggressive advocacy and representation to clients,[35] and attorney immunity has been "properly characterized as a true immunity from suit, not as a defense to liability."[36] Although attorney immunity and the judicial proceedings privilege are affirmative defenses, the Fifth Circuit supports dismissal of a complaint under Rule 12(b)(6) where the defense appears on the face of the complaint.[37]

13. The FAC fails to assert a foundation of the foregoing claims that could survive in the face of attorney immunity and the judicial proceedings privilege. Freeman, JW, and Kirkland's actions in representing McDermott were performed while discharging JW and Kirkland's duties as co-debtor-in-possession counsel in the McDermott chapter 11 case. Preparing and prosecuting bankruptcy pleadings, appearing at hearings to represent the McDermott bankruptcy estate's interests, seeking court approval of the reorganization plan, and seeking court approval of professional fees are well "within the ambit of client representation and requires the office, professional training, skill, and authority of an

---

[33] Counts 3,4, and 6-9.
[34] *Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 46 (Tex. 2021); *Haynes and Boone, LLP v. NFTD, LLC*, 631 S.W.3d 65 (Tex. 2021).
[35] *Cantey Hanger, LLP v. Byrd,* 467 S.W.3d 477, 481 (Tex. 2015).
[36] *Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341, 346 (5th Cir. 2016).
[37] *Kelly v. Nichamoff*, 868 F.3d 371, 375 (5th Cir. 2017).

attorney."[38] Accordingly, the conduct is protected by the attorney immunity doctrine and judicial proceedings privilege and cannot serve as the basis for claims asserted by a non-client such as Plaintiff.

14. Similarly, a lawyer owes a duty of care only to those with whom the lawyer has an attorney-client relationship. The parties must explicitly agree to that relationship (or by their conduct, have manifested an intention to create this relationship).[39] An attorney does not owe a duty to a non-client and is not liable to the non-client for damages that result from the lawyer's allegedly negligent performance of legal services for the lawyer's client.[40] Freeman, JW, and Kirkland represented McDermott and not Plaintiff, so the lawyers did not owe Plaintiff a legal duty that gives rise to a valid professional negligence claim. The same holds true for Plaintiff's negligent misrepresentation claim. Plaintiff represented himself in the McDermott chapter 11 case, so his reliance on any alleged false representations of McDermott's lawyers was not justified and he did not act in reliance on any of those alleged representations, anyway.[41] Given that Plaintiff cannot establish justifiable or detrimental reliance, nor pecuniary harm, the FAC's negligent misrepresentation, common law fraud, and common law civil conspiracy claims fail to state claims upon which relief can be granted.

---

[38] *Haynes and Boone,* 631 S.W.3d at 76 (Tex. 2021); *See also*: *Bethel v. Quiling, Selander, Lownds, Winslett & Moster, P.C.*, 595 S.W.3d 651, 654 (Tex. 2020)
[39] *Span Enterprises v. Wood*, 274 S.W.3d 854, 858 (Tex. App.—Hous. [1 Dist.] 2008, no pet.).
[40] *Barcelo v. Elliott*, 923 S.W.2d 575, 577 (Tex. 1996).
[41] *Haynes and Boone*, 631 S.W.3d at 78; *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 794 (Tex. 1999).

15. Finally, the FAC's unjust enrichment claim fails to explain how funds that JW and Kirkland received as compensation for representing McDermott as debtor-in-possession belonged to Plaintiff. Or how Freeman, who received no compensation directly from McDermott, could have been unjustly enriched. Inasmuch as it is indisputable that McDermott paid JW and Kirkland for valuable services performed in the chapter 11 case, Plaintiff has failed to state a valid claim for unjust enrichment.

### F. GRANTING LEAVE TO AMEND SERVES NO VALID PURPOSE.

16. Plaintiff's Response requests conditional leave to amend the FAC. However, given Plaintiff's lack of standing and the collateral attack nature of the FAC, leave to amend would be futile.[42] The final and non-appealable McDermott confirmation order and plan bars collateral attacks such as the FAC. Claims against the Defendants based on their conduct during the McDermott case are property of McDermott, not Plaintiff. Inasmuch as Plaintiff cannot plead around those defects in the FAC, no purpose would be fulfilled by granting Plaintiff leave to amend.

---

[42] *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletics Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014). ("This Court may allow for amendment, but amendment is legally unsupported if it would cause undue delay in proceedings or would be futile."); *See also*: *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994); Foman v. Davis, 371 U.S. 178, 182 (1962).

## CONCLUSION

17. Plaintiff exercised his legal right to object in the McDermott chapter 11 case and Defendants did nothing to prevent Plaintiff from exercising those rights. The non-disclosure of the Freeman-Jones relationship did not cause Plaintiff's damages, and Plaintiff has no standing to pursue possible derivative claims based on that non-disclosure in either the McDermott chapter 11 case or any other chapter 11 case. Accordingly, Freeman requests that the FAC be dismissed under Fed. R. Civ. 12(b)(6) and 9(b), and for such other and further relief as is just.

Respectfully submitted,

_____
Tom Kirkendall
Texas State Bar No. 11517300
LAW OFFICE OF TOM KIRKENDALL
2 Violetta Ct
The Woodlands, TX 77381
713.703.3536 (mobile & text)
bigtkirk@gmail.com

COUNSEL FOR ELIZABETH CAROL FREEMAN, DEFENDANT

## CERTIFICATE OF SERVICE

The foregoing pleading was transmitted via electronic transmission on May 22, 2024 to respective counsel for the parties in this civil action:

| | |
|---|---|
| Mikell A. West<br>Robert W. Clore<br>Bandas Law Firm, P.C.<br>802 Carancahua Street, Suite 1400<br>Corpus Christi, Texas 78401<br>mwest@bandaslawfirm.com<br>rclore@bandaslawfirm.com<br><br>*Counsel for Plaintiff*<br><br>Gary Cruciani<br>John Sparacino<br>Patrick Pijls<br>McKool Smith, P.C.<br>300 Crescent Court, Suite 1200<br>Dallas, TX 75201<br>600 Travis Street, Suite 700<br>Houston, TX 77002<br>gcruciani@mckoolsmith.com<br>jsparacino@mckoolsmith.com<br>ppijls@mckoolsmith.com<br><br>*Counsel for David Jones*<br><br><br>_____<br>Tom Kirkendall | David Beck<br>Jacqueline M. Furlow<br>Beck Redden<br>1221 McKinney St, Suite 4500<br>Houston, TX 77010<br>dbeck@beckredden.com<br>jfurlow@beckredden.com<br><br>*Co-Counsel for Kirkland & Ellis LLP and Kirkland & Ellis International LLP*<br><br>John Hueston<br>Michael Todisco<br>Karen Ding<br>Hueston Hennigan LLP<br>523 West 6th St., Unit 400<br>Los Angeles, CA 90014<br>jhueston@hueston.com<br>mtodisco@hueston.com<br>kding@hueston.com<br><br>*Co-Counsel for Kirkland & Ellis LLP and Kirkland & Ellis International LLP*<br><br>Rusty Hardin<br>Leah Graham<br>Jennifer E. Brevorka<br>Emily Smith<br>Rusty Hardin & Associates LLP<br>1401 McKinney, Suite 2250<br>Houston, TX 77010<br>rhardin@rustyhardin.com<br>lgraham@rustyhardin.com<br>jbrevorka@rustyhardin.com<br><br>*Counsel for Jackson & Walker LLP* |